

FILED

MAY 06 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

1  DAVID L. ANDERSON (CABN 149604)
United States Attorney

2

HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  MAUREEN C. BESSETTE (CABN 165775)
Assistant United States Attorney

5

1301 Clay Street, Suite 340S
6  Oakland, California 94608
Telephone:  (510) 637-3691
7  Fax:  (510) 637-3724
E-mail:  Maureen.Bessette@usdoj.gov

8

9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                   OAKLAND DIVISION

13

14  IN THE MATTER OF THE            )      CR  4-19-70677
EXTRADITION OF DON KOLLMAR  )
15  AKA DONALD KOLLMAR             )
                                   )      MEMORANDUM OF LAW
16  _____)      IN OPPOSITION TO BAIL

17

18

19

20

21

22

23

24

25

26

27

28

MAG

Document No.
4
District Court
Criminal Case Processing

1

TABLE OF CONTENTS

2   I.      APPLICABLE LAW ...................................................................................................................1

3           A.      A strong presumption against bail governs in an international extradition
                    proceeding.................................................................................................................2

4
            B.      The fugitive must establish "special circumstances" and must not pose a risk
5                   of flight for the Court to consider the question of bail. .......................................3

6   II.     THE FUGITIVE POSES A RISK OF FLIGHT AND HAS FAILED TO ESTABLISH SPECIAL
            CIRCUMSTANCES. ...............................................................................................................12

7   III.    CONCLUSION ........................................................................................................................13

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

TABLE OF AUTHORITIES

2 <u>Federal Cases</u>

3 *Afanesjev v. Hurlburt*, 418 F.3d 1159 (11th Cir. 2005)..................................................................2

4 *Borodin v. Ashcroft*, 136 F. Supp.2d 125 (E.D.N.Y. 2001)..........................................................8

5 *Bovio v. United States*, 989 F.2d 255 (7th Cir. 1993.)..................................................................2

6 *Charlton v. Kelly*, 229 U.S. 447 (1913) .....................................................................................11

7 *Collins v. Loisel*, 259 U.S. 309 (1922)........................................................................................11

8 *DeSilva v. DiLeonardi*, 125 F.3d 1110 (7th Cir. 1997) ...............................................................11

9 *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976) ...................................................................7

10 *Extradition of Hamilton-Byrne*, 831 F. Supp. 287 (S.D.N.Y. 1993) ............................................7

11 *Extradition of Mainero*, 950 F. Supp. 290 (S.D. Cal. 1996)..................................................5, 11

12 *Extradition of Morales*, 906 F. Supp. 1368 (S.D. Cal. 1995) ......................................................4

13 *Hababou v. Albright*, 82 F. Supp.2d 347 (D.N.J. 2000.) ......................................................6, 10

14 *Hooker v. Klein*, 573 F.2d 1360 (9th  Cir. 1978)........................................................................11

15 *In re Extradition of Bowey*, 147 F. Supp.2d 1365 (N.D. Ga. 2001) .......................................6, 10

16 *In re Extradition of Chapman*, 459 F. Supp.2d 1024 (D. Haw. 2006) .........................................4

17 *In re Extradition of Gonzalez*, 52 F. Supp.2d 725 (W.D. La. 1999)............................................5

18 *In re Extradition of Heilbronn*, 773 F. Supp. 1576 (W.D. Mich. 1991)................................8, 10

19 *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210 (D. Nev. 1993) .............................. passim

20 *In re Extradition of Orozco*, 268 F. Supp.2d 1115 (D. Ariz. 2003).......................................8, 12

21 *In re Extradition of Santos*, 473 F. Supp.2d 1030 (C.D. Cal. 2006.).......................................4, 5

22 *In re Extradition of Siegmund*, 887 F. Supp. 1383 (D. Nev. 1995) ............................................12

23 *In re Extradition of Valles*, 36 F. Supp.2d 1228 (S.D. Cal. 1998)...............................................8

24 *In re Johnson*, 2012 WL 3929811 (W.D. Pa. 2012) ....................................................................9

25 *In re Klein*, 46 F.2d 85 (S.D. N.Y. 1930) ..............................................................................7, 10

26 *In re Mitchell*, 171 F. 289 (S.D. N.Y. 1909).............................................................................3, 6

27 *In the Matter of Extradition of Smyth*, 976 F.2d 1535 (9th Cir. 1992) .........................................6

28 *Jhirad v. Ferrandina*, 536 F.2d 478 (2d Cir. 1976)............................................................2, 9, 12

1   *Kamrin v. United States*, 725 F.2d 1225 (9th Cir. 1984)..........................................................1

2   *Koskotas v. Roche*, 931 F.2d 169 (1st Cir. 1991) ................................................................ 3

3   *Martin v. Warden, Atlanta*, Penitentiary, 993 F.2d 824 (11th Cir. 1993)................................ 1, 9

4   *Matter of Extradition of Drumm*, 150 F. Supp. 3d 92 (D. Mass. 2015)......................................... 9

5   *Matter of Extradition of Molnar*, 182 F. Supp.2d 682 (N.D. Ill. 2002)................................. 4, 5

6   *Matter of Extradition of Noeller*, No. 17-CR-664, 2017 WL 6462358 (N.D. Ill.  Dec. 19, 2017).........12

7   *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280 (S.D. Fla. 2017)...12

8   *Matter of Extradition of Rouvier*, 839 F. Supp. 537 (N.D. Ill. 1993) ........................................ 2, 7, 11, 12

9   *Matter of Extradition of Rovelli*, 977 F. Supp. 566 (D. Conn. 1997) .......................................... 8

10  *Matter of Extradition of Sidali*, 868 F. Supp. 656 (D.N.J. 1994) ........................................ 8, 10

11  *Matter of Extradition of Sutton*, 898 F. Supp. 691 (E.D. Mo. 1995.) ................................... 2, 12

12  *Matter of Russell*, 805 F.2d 1215 (5th Cir. 1986)................................................................ 4, 6

13  *Matter of the Extradition of Garcia*, 615 F. Supp. 2d 162 (S.D.N.Y. 2009) ............................. 8

14  *Melia v. United States*, 667 F.2d 300 (2d Cir. 1981) ............................................................. 2

15  *Sabatier v. Dabrowski*, 586 F.2d 866 (1st Cir. 1978) ............................................................ 9

16  *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989)................................................. passim

17  *Simmons v. Braun*, 627 F.2d 635 (2d Cir. 1980) ................................................................. 2

18  *United States ex rel. McNamara v. Henkel*, 46 F.2d 84 (S.D.N.Y. 1912) ............................... 10

19  *United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985)..........................................12

20  *United States v. De Lorea*, 2006 WL 1518981 (N.D. Ind. 2006) ............................................. 9

21  *United States v. Hills*, 765 F. Supp. 381 (E.D. Mich. 1991)................................................. 6, 8

22  *United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008.).............................................................. 5

23  *United States v. Kidder*, 869 F.2d 1328 (9th Cir. 1989) ........................................................ 7

24  *United States v. Kin Hong*, 83 F.3d 523 (1st Cir. 1996) ................................................. 6, 10, 11

25  *United States v. Leitner*, 784 F.2d 159 (2d Cir. 1986)......................................................... 3, 4

26  *United States v. Madoff*, 316 Fed. App'x 58 (2nd Cir. 2009)..........................................12

27  *United States v. Ramnath*, 533 F. Supp.2d 662 (E.D. Tex. 2008) ......................................... 4, 5

28  *United States v. Taitz*, 130 F.R.D. 442 (S.D. Cal. 1990) ................................................. 4, 7, 9

*United States v. Tang Yee-Chun*, 657 F. Supp. 1270 (S.D.N.Y. 1987) ........................................................ 6

*United States v. Williams*, 611 F.2d 914 (1st Cir. 1979) ........................................................... 4

*Wright v. Henkel*, 190 U.S. 40 (1903)............................................................................................. 2, 3, 6

<u>Federal Statutes</u>

18 U.S.C. § 3156...................................................................................................................................... 1

18 U.S.C. § 3156(a)(2).......................................................................................................................... 1

18 U.S.C. § 3141................................................................................................................................. 1, 2

18 U.S.C. § 3184................................................................................................................................ 1, 11

<u>Federal Rules</u>

Fed. R. Evid. 1101(d)(3) ..................................................................................................................... 2

Fed R. Crim. P. 1(a)(5)(A)................................................................................................................... 2

1    The fugitive, Don Kollmar, was arrested in San Francisco, California on May 3, 2019 pursuant to

2   a warrant issued by United States Magistrate Judge Kandis Westmore on May 1, 2019 based on a

3   complaint seeking the fugitive's extradition to Canada pursuant to an extradition treaty between Canada

4   and the United States (hereinafter, "the Treaty"), and pursuant to 18 U.S.C. §§ 3184 et seq.  The fugitive

5   is currently in the custody of the United States Marshal.

6    Authorities in Canada have 60 days from the date of arrest to provide the U.S. State Department

7   with the formal request and documents required in Article 9, for extradition of the fugitive to face

8   prosecution for the offenses of indecent assault on a female, rape, and rape of a female, in violation of

9   the Criminal Code of Canada sections 149, 143(b)(iii), and 146(2).  *See* Article 11 of the Treaty; *Bozilov*

10  *v. Seifert*, 983 F.2d 140, 144 (9th Cir. 1992) ("Extradition is facilitated by validating extradition requests

11  received by the American Embassy.  Extradition requests received by an authorized diplomatic authority

12  within the Treaty's time limit are sufficient.").  Article 2 of the Treaty provides for the extradition of

13  persons accused or convicted of these crimes.  On December 24, 2018, the Honorable Justice of the

14  Peace M.J. Callahan of the Ontario Court of Justice in Toronto, Ontario issued an arrest warrant for

15  Kollmar.

16    The United States, in execution of its treaty responsibilities and acting at the request of the

17  Government of Canada, urges that the fugitive be held without bond pending submission of formal

18  documents from Canada in support of extradition and the hearing on the certification of the extradition

19  pursuant to 18 U.S.C. §§ 3184 et seq., and files this memorandum in support thereof.

20  **I.    APPLICABLE LAW**

21    The federal statute governing extradition procedures in the United States pursuant to treaties with

22  other nations, 18 U.S.C. §§ 3184 et seq., does not provide for bail.  Moreover, an extradition proceeding

23  is not a criminal case.  *See Kamrin v. United States*, 725 F.2d 1225, 1227-1228 (9th Cir.), *cert. denied*

24  469 U.S. 817 (1984); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993).

25  Consequently, the Bail Reform Act (18 U.S.C. §§ 3141 et seq.) and its criteria governing the allowance

26  and the amount of bail in United States criminal cases do not apply in extradition matters.  The Bail

27  Reform Act applies only to "offenses" against the United States that are triable in United States courts.

28  *See* 18 U.S.C. §§ 3141(a), 3142, and 3156(a)(2).  The fugitive in this case, Kollmar, is not charged with

1

an "offense" within the meaning of 18 U.S.C. § 3156.[1]  Instead, Kollmar is charged with a criminal offense in Canada.  *See Matter of Extradition of Rouvier*, 839 F. Supp. 537, 539 (N.D. Ill. 1993); *Matter of Extradition of Sutton*, 898 F. Supp. 691, 694 (E.D. Mo. 1995.)

Similarly, neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings.[2]  Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3); *See also Afanesjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005), *cert. denied* 546 U.S. 993 (2005); *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981); *Bovio v. United States*, 989 F.2d 255, 259 n.3 (7th Cir. 1993.)

**A.     There is a strong presumption against bail in international extradition proceedings.**

The overwhelming weight of authority supports a strong presumption against granting bail in international extradition cases.  Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted only in the most unusual of circumstances.

In the landmark case of *Wright v. Henkel*, 190 U.S. 40 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was a director.  The United States argued in *Wright* that extradition courts were without power to allow bail because no statute provided for such power.  *Id.* at 55.  The Court stated that it was unwilling to hold that the circuit courts do not possess power with respect to admitting fugitives to bail other than as specifically vested by statute, but cautioned that "bail should not ordinarily be granted in cases of foreign extradition…"  *Id.* at 63.

In establishing this presumption against bail, the Supreme Court in *Wright* explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

---

[1] The term "offense" for the purposes of Section 3141 is defined in 18 U.S.C. § 3156(a)(2) as "any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress. . ."

[2] Although the issue before the Court is the fugitive's request for bail, it also should be noted that neither the prohibitions against hearsay *Simmons v. Braun,* 627 F.2d 635, 636 (2d Cir. 1980), nor the Sixth Amendment's guarantee to a speedy trial, *Jhirad v. Ferrandina,* 536 F.2d 478, 485 n. 9 (2d Cir. 1976), *cert. denied,* 429 U.S. 833 (1976), *reh. denied*, 429 U.S. 988 (1976), apply to international extradition proceedings.

1       The demanding government, when it has done all that the treaty and the law require it to do, is
2       entitled to the delivery of the accused on the issue of the proper warrant, and the other
            government is under obligation to make the surrender; an obligation which it might be
            impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited,
3       would hardly meet the international demand; and the regaining of the custody of the accused
            obviously would be surrounded with serious embarrassment.
4 *Id.* at 62.

5       The reasons for this presumption against bail in international extradition cases are clear and

6 compelling. First, it is necessary for the United States to meet its treaty obligations. A person sought

7 for extradition is already an international fugitive from justice. Therefore, it is reasonable to think that

8 person would flee if alerted to the charges. Even if the person were not in flight, the fact of an

9 impending extradition to a foreign country to face serious criminal charges, the outcome of which is

10 uncertain, is itself a strong incentive to flee.

11       Further, the ability of the United States to deliver fugitives pursuant to extradition requests has

12 significant international law implications. The international legal system depends wholly upon the

13 respect of its members for the obligations into which they freely enter. When, as here, the Government

14 of Canada meets the conditions of the treaty, the United States is obliged to deliver the fugitive. It is

15 important for the United States to be regarded in the international community as a country that honors its

16 agreements in order to be in a position to demand that other nations meet their reciprocal obligations to

17 the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond.

18 *See Wright*, 190 U.S. at 62; *see also U.S. v. Leitner*, 784 F.2d 159, 160-61 (2d Cir. 1986) (the

19 Government has an overriding foreign relations interest in complying with treaty obligations and

20 producing extradited persons.)

21       **B.**     **The fugitive must establish "special circumstances" and must not pose a risk of**
            **flight for the Court to consider the question of bail.**
22

23       In light of the strong presumption against bail in extradition cases established in *Wright*, federal

courts have uniformly held that bail shall not be granted except under "special circumstances." *See*
24

25 *Leitner*, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing

circumstances, and when the requirements of justice are absolutely peremptory") (quoting *In re Mitchell*,
26

27 171 F. 289 (S.D. N.Y. 1909) (Hand, J.); *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989)

("only 'special circumstances' will justify bail"); *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991)
28

1  ("in a case involving foreign extradition, bail should not be granted absent special circumstances").

2  Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the

3  granting of bail. *See Salerno*, 878 F.2d at 317-18, *Leitner*, 784 F.2d at 160.

4  Notably, courts have determined that certain circumstances are not "special" and do not justify

5  the release of a fugitive during extradition proceedings. First and foremost, the absence of flight risk is

6  consistently held not to constitute a special circumstance. Rather, **both** the absence of a risk of flight

7  **and** a finding of special circumstances are each independent requirements for bail in an extradition case.

8  Therefore, to qualify for bail, a fugitive is required to make a two-part showing that (1) he or she is not a

9  flight risk, and (2) that "special circumstances" exist warranting the granting of bail. *See e.g., United*

10 *States v. Ramnath*, 533 F. Supp.2d 662, 665 (E.D. Tex. 2008); *Matter of the Extradition of Molnar*, 182

11 F. Supp.2d 682, 687 (N.D. Ill. 2002); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1215 (D.

12 Nev. 1993); *In re Extradition of Chapman,* 459 F. Supp.2d 1024, 1026-27 (D. Haw. 2006); *In re*

13 *Extradition of Santos*, 473 F. Supp.2d 1030, 1035-36 (C.D. Cal. 2006). The absence of flight risk is

14 consistently held to be a requirement separate from the special circumstances test.

15 To illustrate, in *Leitner*, the fugitive was a United States citizen who had been arrested in Israel

16 and charged with acts of terrorism against Arabs. Israeli authorities released Leitner on bail after he

17 agreed to cooperate with them. After receiving death threats, Leitner fled to his home in the United

18 States and lived openly under his own name for a year and a half. He attended law school, drove a taxi

19 under his own name, and lived with or frequently visited his parents. Based upon the foregoing, a

20 magistrate judge found that Leitner did not pose a flight risk. The Second Circuit, in affirming the

21 district court's reversal of the grant of bail, held that the lack of flight risk was not a "special

22 circumstance." 784 F.2d at 161. *See also Salerno*, 878 F.2d at 318 (flight risk "is not a criteria for

23 release in an extradition case"); *Matter of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986) ("[b]eing a

24 tolerable bail risk is not in and of itself a special circumstance"); *United States v. Williams*, 611 F.2d

25 914, 915 (1st Cir. 1979) ("even applicant's arguable acceptability as a tolerable bail risk" is not a special

26 circumstance).[3] Similarly, findings regarding danger to the community both here and abroad would

27

28
---
[3] Courts differ in the order in which they consider flight risk and special circumstances. Some courts evaluate potential flight risk before proceeding to any special circumstances analysis. *E.g., Matter of the Extradition of Molnar*, 182 F. Supp. 2d at 687; *United States v. Taitz*, 130 F.R.D. 442, 445

4

1  preclude bail, even in the face of arguably special circumstances. *See In re Extradition of Gonzalez*, 52

2  F. Supp. 2d 725, 735 (W.D. La. 1999); *Ramnath*, 533 F. Supp. 2d at 665; M*olnar*, 182 F. Supp. 2d at

3  687; *Nacif-Borge*, 829 F. Supp. at 1215; *Santos*, 473 F. Supp. 2d at 1035-36.[4]

4          Assuming the fugitive is not a risk of flight and poses no danger to the community, the fugitive

5  must make an affirmative showing of special circumstances.  As discussed in greater detail below,

6  Courts have declined to find "special circumstances" based on (1) the need to consult with one's

7  attorney or participate in pending litigation; (2) the complexity of the pending litigation; (3) health

8  issues, including discomfort, dietary needs, or associated health concerns while incarcerated; (4) United

9  States citizenship or pendency of naturalization proceedings; (5) political or professional status; (6) the

10  availability of electronic monitoring; (7) the fugitive's character, past conduct, and/or ties to the

11  community; (8) delay between the commission of the crime and the submission of the formal extradition

12  request; (9) ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings;

13  (10) substantial likelihood of success against extradition or underlying criminal case in requesting

14  country; and (11) availability of bail for the same offense in the requesting country.  While in certain

15  exceptional cases, some of the above factors may have been deemed a special circumstance, for the most

16  part, where a court determines special circumstances to exist, the finding is generally based on a

17  combination of factors, as opposed to any single consideration.  Such findings are very case-specific and

18

19  _____

20  (S.D. Cal. 1990).  Other courts first determine special circumstances and then consider the potential for flight.  *E.g., Extradition of Morales*, 906 F. Supp. 1368, 1373 (9th Cir. 1995); *Nacif-Borge*, 829 F.

21  Supp. at 1216; *Extradition of Mainero*, 950 F. Supp. 290, 295 (S.D. Cal. 1996).  Regardless of the order of consideration, case authority is clear that both special circumstances and lack of flight risk must be

22  established to grant bail.  Practical considerations and judicial economy suggest determinations as to flight risk and danger to the community be made first.

23          [4] The Ninth Circuit rejected the contention that under the Bail Reform Act, a court must limit its

24  evaluation of a defendant's potential danger to a geographic location within the United States.  *United States v. Hir*, 517 F.3d 1081, 1088-89 (9th Cir. 2008.)  Instead, the court held that if the defendant is charged with a crime punishable under U.S. law, the court may consider the danger posed to a foreign

25  community, reasoning that the effect of the alleged offense occurs abroad.  *Id.*  In the international extradition context, where the Bail Reform Act does not apply, there is an even greater justification for

26  extending consideration of the threat that a fugitive might pose to a community beyond the U.S. borders. By definition, requests by other countries for extradition of a fugitive comprise violations of foreign law

27  that have a primary adverse effect on the foreign community.  If a court, in determining the issue of danger to the community, were limited to considering only geographic areas located in the United

28  States, the court would be forced to ignore the potential danger that a fugitive's release might pose in a foreign location where the crime was committed.

1   within the discretion of the court, mindful of the strong presumption against bail and the future

2   reciprocity of other countries being at stake.

3          Need to consult with counsel or participate in pending litigation

4          The majority of courts have soundly rejected the need to consult with counsel and participate in

5   pending litigation as a sufficient special circumstance to justify bail. *See, e.g., In the Matter of*

6   *Extradition of Smyth*, 976 F.2d 1535 (9th Cir. 1992) ("The need to consult with counsel, gather evidence

7   and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to

8   do these things"); *Accord Russell*, 805 F.2d at 1217. There is nothing extraordinary or "special" about

9   the need to consult with counsel or participate in litigation. Further, if these factors were recognized as

10  special circumstances, every person facing extradition would qualify for release pending extradition

11  proceedings; this would be a direct contradiction of the strong presumption against bail established by

12  the Supreme Court in *Wright.* 190 U.S. at 62.

13         Even the limited decisions granting bail to a fugitive based on these considerations have involved

14  unique and distinguishable facts. *See, e.g., Mitchell*, 171 F. at 290 (granting limited release so that

15  fugitive could defend himself in ongoing litigation upon which his entire fortune depended); *In re*

16  *Extradition of Bowey*, 147 F. Supp. 2d 1365, 1368 (N.D. Ga. 2001) (bail granted to allow fugitive to

17  participate in divorce proceedings that directly affected the extradition case.) As explained by the court

18  in *United States v. Hills*, 765 F. Supp. 381, 386 (E.D. Mich. 1991), "it is only if the court is convinced

19  that the defendant's personal participation in the conduct of the civil litigation is absolutely and

20  immediately necessary that it is deemed a sufficient 'special circumstance' to warrant release on bond."

21         Complexity of the pending litigation

22         The complexity of the pending litigation is likewise not an exceptional or special circumstance

23  justifying bail. In *Russell*, 805 F.2d at 1217, the Fifth Circuit rejected the fugitive's argument that the

24  complexity of pending extradition proceedings and the foreign criminal trial justified bail. Courts have

25  adopted this position in rejecting similar claims. *See, e.g., United States v. Kin Hong*, 83 F.3d 523 (1st

26  Cir. 1996) (lengthy history of case not cited here); *United States v. Tang Yee-Chun*, 657 F. Supp. 1270,

27  1271-72 (S.D.N.Y. 1987); *Hababou v. Albright*, 82 F. Supp.2d 347, 352 (D.N.J. 2000).

28  ///

1      <u>Health issues and health concerns while incarcerated</u>

2             Courts have declined to find discomfort, the need for a special diet, or other related health

3      concerns associated with incarceration a special circumstance, particularly if the issue is one that can be

4      controlled while incarcerated.  *See In re Klein*, 46 F.2d 85 (S.D. N.Y. 1930) (discomfort with

5      confinement not a special circumstance); *Rouvier*, 839 F. Supp. at 541 n.9 (potentially serious heart

6      condition that could be controlled with daily drug while in jail was not a special circumstance); *Nacif-*

7      *Borge*, 829 F. Supp. at 1216-17 (need for specialized diet and exercise not special circumstance because

8      no proof that incarceration raised serious deterioration of health); *Extradition of Hamilton-Byrne*, 831 F.

9      Supp. 287, 290-291 (S.D. N.Y. 1993) (serious health problems that can be dealt with in custody do not

10     constitute special circumstances).  As the Court in *Hamilton-Byrne* noted, "[w]ere health problems a

11     basis for release, both actual and feigned illnesses could rapidly empty custodial facilities."  *Id.*

12            While some courts have recognized a serious health condition as a special circumstance, these

13     courts have limited its application to conditions that can only be treated while on bail or to cases

14     involving a serious deterioration in health while incarcerated.  *See Hamilton-Byrne*, 831 F. Supp. at 290

15     ("Special circumstances might ... be found if health emergency could be established which could only be

16     treated while a detainee was on bail," but ultimately finding no evidence that condition was unique or

17     could not be treated in jail); *Salerno*, 878 F.2d at 318 (serious health deterioration while incarcerated

18     may be a special circumstance); *United States v. Taitz*, 130 F.R.D. 442, 446 (S.D. Cal. 1990) (allergic

19     reaction to sweeteners used in jail food and to soap used in jail laundry recognized as special

20     circumstance, in conjunction with other special circumstances.)

21            As a general rule, to avoid incarceration, a criminal defendant "must show that no

22     constitutionally acceptable treatment can be provided while he is incarcerated."  *Rouvier*, 839 F. Supp.

23     at 542, *United States v. Kidder*, 869 F.2d 1328, 1330-1331 (9th Cir. 1989); *Nacif-Borge*, 829 F. Supp. at

24     1217.  In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to [a prisoner's]

25     serious medical needs" violates the Eighth Amendment's ban against cruel and unusual punishment.

26     429 U.S. 97, 104 (1976), *rehg denied* 429 U.S. 1066 (1977), *cert. denied*, 434 U.S. 974 (1977).

27            <u>United States citizenship or pendency of naturalization</u>

28            Courts have found no special circumstances for fugitives who are U.S. citizens or are in the

7

1   process of naturalization. *See Matter of the Extradition of Garcia*, 615 F. Supp. 2d 162, 173 (S.D.N.Y.

2   2009) ("Garcia is not entitled to special consideration based on his status as a United States citizen.

3   Citizens and non-citizens alike must demonstrate special circumstances to overcome the presumption

4   against bail.  [citations omitted.]"  *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz.

5   2003) (the absence of defendant being a flight risk, defendant's desire to take a dental board

6   examination, that defendant may have naturalization proceedings pending, and that the criminal charge

7   in Mexico is a bailable offense, do not individually or collectively constitute special circumstances

8   warranting defendant's release from custody.)

9         Political or professional status

10        Likewise, a political or professional status does not create a special circumstance.  *See Borodin v.*

11  *Ashcroft*, 136 F. Supp. 2d 125, 131 (E.D. N.Y. 2001) (standing as member of Russian-Belarus Union is

12  not a special circumstance); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich.

13  1991) ("mere fact that a respondent is a doctor - even a highly trained one - cannot be a 'special

14  circumstance' within the meaning of *Wright*, unless we are prepared to say that the normal rules of

15  extradition are not going to apply to doctors by virtue of who they are").

16        Availability of electronic monitoring

17        Similarly, the availability of electronic monitoring is not a special circumstance.  *See Matter of*

18  *Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997); *Hills*, 765 F. Supp. at 389.

19        Fugitive's character, past conduct, and ties to community

20        A fugitive's character, including past conduct, lack of a prior criminal record, and ties to the

21  community, should not be considered a special circumstance.  Instead, and as most district courts have

22  recognized, a defendant's character is more appropriately considered when conducting the independent

23  flight risk analysis.  In *Nacif-Borge*, the court explained that "[m]ore often, the character and

24  background of a person subject to extradition are considered in regard to risk of flight and danger to the

25  community rather than as a special circumstance."  829 F. Supp. at 1220.  *See also Matter of Extradition*

26  *of Sidali*, 868 F. Supp. 656 (D. N.J. 1994) (rejecting "extraordinary character" based on employment,

27  family ties, no prior record, and community respect as a special circumstance); *In re Extradition of*

28  *Valles*, 36 F. Supp. 2d 1228, 1231 (S.D. Cal. 1998) (fugitive's past conduct and community ties used to

1   assess flight risk.)

2        Although some courts have included character, past conduct, and ties to the community in their

3   assessment of special circumstances, these decisions are generally distinguishable on their facts and rely

4   on the presence of other circumstances.  *See, e.g., Taitz*, 130 F.R.D. at 445-46 (acknowledging character

5   as a special circumstance in addition to religious needs, likelihood of delay, health risks, and availability

6   of bail in foreign country).

7        <u>Delay between the commission of the crime and the submission of the formal extradition request</u>

8        The delay between the commission of the crime and the submission of the formal extradition

9   request is not a special circumstance.  *See, e.g., Matter of Extradition of Drumm*, 150 F. Supp.3d 92, 98-

10   99 (D. Mass. 2015) (seven-year delay in seeking extradition not a special circumstance warranting bail);

11   *In re Johnson*, 2012 WL 3929811, at *4-5 (W.D. Pa. 2012) ("Similarly, the fact that there has been a

12   long delay between the commission of the crime and the Formal Request for Extradition does not

13   constitute a 'special circumstance,' but is a factor to be considered with the nature of the underlying

14   crime, the risk of flight, and the interests of the countries in extradition to determine the propriety of

15   continued detention.") (Mexican arrest warrant issued in 2003 and extradition bail hearing conducted in

16   2012); *United States v. De Lorea*, 2006 WL 1518981, at *3-4 (N.D. Ind. 2006) (10 to 12 year delay by

17   Mexico in seeking extradition not a special circumstance justifying release even though the fugitive was

18   a family man who was employed, had lived a stable life in the United States, and had no prior criminal

19   history.)

20        <u>Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings</u>

21        Delays during the course of extradition proceedings do not qualify as special circumstances.  An

22   extradition proceeding is not a criminal case, and hence a fugitive has no Sixth Amendment right to a

23   speedy trial.  *See Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978);

24   *Jhirad*, 536 F.2d at 485 n. 9.

25        Courts considering whether delays, either actual or projected, can be a qualifying "special

26   circumstance" have issued such a wide and disparate range of answers that delay cannot be uniformly

27   claimed as a special circumstance.  A number of courts have found no special circumstance allowing for

28   bail to exist in cases where the delay has ranged from five months to over a year.  *See, e.g., Heilbronn,*

773 F. Supp. 1576 (rejecting fugitive's bail claim that five-month delay, lack of flight risk, and potential public benefit upon release based on status as a doctor were special circumstances); *Hababou*, 82 F. Supp. 2d 347 (delay of over one year for trial on domestic charges not a special circumstance).

While courts have not always been consistent when considering delays, based at least in part on the different factual situations involved in each case, there are some clear guidelines that can be drawn from these decisions.  First, like all special circumstances, the delay itself must be unusual and extraordinary.  *See Salerno*, 878 F.2d at 318 (lack of unusual delay considered in rejecting bail claim); *Kin-Hong*, 83 F.3d at 524 (recognizing delay as possible special circumstance, but finding no showing of unusual delay); *Klein*, 46 F.2d 85 (delay must be abnormal or unreasonable to constitute a special circumstance).

Additionally, a delay is not a special circumstance when it is caused by or attributed to the fugitive.  *Heilbronn*, 773 F. Supp. at 1581 (the court is unsympathetic to a defendant who himself requested several delays); *Kin Hong*, 83 F.3d at 525 (rejecting bail claim where "[t]o the extent that there has been some delay, [the fugitive] himself is partly responsible"); *United States ex rel. McNamara v. Henkel*, 46 F.2d 84 (S.D. N.Y. 1912) (delay justifies bail "only where the hearing date comes and the complainant is not ready to proceed").

<u>Substantial likelihood of success against extradition or against requesting country's charges</u>

Some courts have incorrectly held that the probability of a fugitive's success against extradition or against the foreign charges underlying the extradition requests qualify as a special circumstance.  *See, e.g., Bowey*, 147 F. Supp. 2d at 1368 (bail granted based on likelihood of success against criminal charges in France, need for participation in directly-related divorce proceeding, and absence of flight risk).  These decisions misconstrue the scope of a bail hearing and the court's limited role in the extradition process.

First, any assessment of extraditability is a substantive question that is to be decided at the extradition hearing itself and is not relevant to a fugitive's bail application.  *Sidali*, 868 F. Supp. at 658-59 (probability of success against extradition "relate[s] to whether [the fugitive] should be extradited not whether he should be released on bail).  Further, the court's role at an extradition hearing is limited to making a determination of the sufficiency of the extradition request and the existence of probable cause.

1   Considerations of whether the fugitive will ultimately prevail against the charges following extradition

2   is beyond the scope of the extradition proceedings.  *See Charlton v. Kelly*, 229 U.S. 447, 462 (1913);

3   *Collins v. Loisel*, 259 U.S. 309, 316-317 (1922); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978),

4   *cert. denied*, 439 U.S. 932 (1978); *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997), *cert.*

5   *denied*, 525 U.S. 810 (1998).

6         Still, courts that have considered this issue when applying the special circumstances test have

7   required the fugitive to establish a "high probability" of success to warrant bail.  *E.g., Nacif-Borge*, 829

8   F. Supp. at 1216 (no "high" probability of success); *Kin Hong*, 83 F.3d at 524-25 (record did not

9   establish probability of success one way or the other); *Mainero*, 950 F. Supp. 290, 294-95 (S.D. Cal.

10   1996) (bail denied where no likelihood of prevailing at extradition hearing.)  Even in *Salerno*, 878 F.2d

11   at 318, the leading case citing probability of success as a possible special circumstance, the court

12   ultimately declined the fugitive's claim for failure to demonstrate the likelihood of success.  *See also*

13   *Kin Hong*, 83 F.3d at 524 (burden not met), *Rouvier*, 839 F. Supp. 537 (same).  The limited purpose of

14   the bail proceeding, the limited scope of the court's inquiry at the extradition proceeding, and the high

15   burden that the fugitive needs to establish all weigh heavily against the granting of bail.

16         <u>Availability of bail in the requesting country</u>

17         The availability of bail for the charged offense in the requesting country is not a special

18   circumstance justifying bail.  In fact, the bail practices of the requesting country are entirely irrelevant.

19   By statute, 18 U.S.C. §§ 3184 et. seq., and through its mandatory treaty obligations, the United States is

20   obligated to deliver fugitives to the requesting country.  As a result, a court's role is limited to

21   determining the sufficiency of the extradition request and the existence of probable cause.  *Charlton*,

22   229 U.S. at 462; *Collins*, 259 U.S. at 316-317; *Hooker*, 573 F.2d at 1368; *DeSilva*, 125 F.3d at 1112.  If

23   the availability of bail in the foreign country were a special circumstance justifying bail in the United

24   States:

25         [C]ourts (would be forced) to make "searching reviews of foreign law to determine
          whether bail is appropriate for a given defendant in a given country for a given offense...
26         That would be an undesirable practice:  it might well be unworkable, and, if applied
          widely, it could eviscerate, at least with respect to requesting countries whose domestic
27         practice, like our own, strongly favors bail, the doctrine set by the Supreme Court that
          bail is the exception, not the rule, in international extradition cases.
28
          Finally, we note that an extradition treaty between sovereign nations is essentially a

11

contract, and the concern in an international extradition case is not to mirror the internal bail practices of the requesting country, but, rather, to deliver the extraditee to that country if the conditions precedent to extradition, as set forth in the treaty, are satisfied. To say that the extraditee would have been granted bail in the requesting country, had he been arrested there, or that he will be granted bail once returned there, thus misses the point.

*In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386-87 (D. Nev. 1995) (internal citations and quotes omitted).

Based on this reasoning, courts have rejected claims that bail availability in the foreign country bears on the determination of whether special circumstances exist. *See Rouvier*, 839 F. Supp. at 540 (bail availability is not a special circumstance); *Sutton*, 898 F. Supp. at 695 (same); *Orozco*, 268 F. Supp. 2d at 1117.

## II. THE FUGITIVE POSES A RISK OF FLIGHT AND HAS FAILED TO ESTABLISH SPECIAL CIRCUMSTANCES

The fugitive in this case has not met his burden, and the Court should deny his request for bail. "[A] fugitive charged with crimes in another country is by definition in flight or is deliberately absent from that jurisdiction, and the fact that the fugitive has evaded prosecution in [another] country is indicative of his risk of flight were he to be released on bond here." *Matter of Extradition of Noeller*, No. 17-CR-664, 2017 WL 6462358, at *3 (N.D. Ill.  Dec. 19, 2017), *citing Jhirad*, 536 F.2d at 483 and *United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985).

Here, Kollmar cannot meet his burden to establish that he is not a flight risk:

- First, Kollmar, a 67-year-old man, is wanted by Canada on charges of indecent assault and rape of a child while serving as her spiritual advisor over a multi-year period.  According to information provided by the government of Canada, convictions on those offenses carry the possibility of a lengthy term of confinement.  The combination of his age and the substantial amount of time he faces if convicted "naturally bears upon and increases the risk of flight." *United States v. Madoff*, 316 Fed. App'x 58, 59 (2nd Cir. 2009).

- Second, Kollmar left Canada after the victim reported his long-term sexual assaults to her parents, and after they, in turn, told other officials belonging to the religious group.

- Third, Kollmar currently identifies his residence as in the Netherlands and uses an Amsterdam phone number on his professional website.  He was arrested pursuant to the extradition warrant in this case at the San Francisco airport where he had a ticketed return flight to the Netherlands. *See Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1304-05 (S.D. Fla. 2017) ("Courts have held that significant contacts

with foreign countries are an important factor in determining one's risk of flight.") (collecting cases in the criminal and extradition contexts).

Because Kollmar cannot demonstrate his lack of flight risk, the court need go no further in order to deny his application for bail. Kollmar has been unable to meet this necessary independent basis to obtain bail, and the court therefore need not even consider any arguments regarding special circumstances.

However, were the Court satisfied that Kollmar is not a flight risk and poses no danger to the community here or abroad, Kollmar cannot demonstrate to the court that special circumstances exist that would justify bail in this case. Kollmar has a heavy burden to meet in proving the exceptional circumstances that would vitiate the strong presumption against bail. Allowance of bail in any amount would not guarantee Kollmar' presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs. While forfeiture of bail in domestic criminal cases is designed, at least in part, to compensate the court that is seeking the accused's presence for trial, forfeiture of bail in international extradition cases due to the failure of the fugitive to appear would leave the requesting country, here Canada, without either remedy or compensation.

Should, however, the court be inclined to grant bail in this case, counsel for the government respectfully requests that the court submit special written findings as to those specific matters that are found to constitute special circumstances. Further, in order to protect the ability of the United States to meet its treaty obligations to Canada, counsel requests that the court notify the parties a reasonable period of time in advance of any contemplated release order so that the United States can consider the matter of whether, under the circumstances, to seek a stay pending possible appeal on the bail issue.

## III.   CONCLUSION

In sum, Kollmar is a flight risk because of the seriousness of the pending criminal charges in Canada, his departure from Canada after sexually assaulting the victim, and his significant contacts with third countries. Moreover, he has not demonstrated that special circumstances exist that would justify bond in his case. Kollmar's release on bail would have negative reciprocal implications for U.S. foreign policy in cases where the United States seeks extradition of fugitives from Canada. Based on the

1  foregoing, the United States requests that the Court deny Kollmar's anticipated request for bail.

2

3  Dated:  May 6, 2019                                    Respectfully submitted,

4                                                          DAVID L. ANDERSON
                                                          United States Attorney
5

6                                                          MAUREEN C. BESSETTE
                                                          Assistant United States Attorney
7                                                          Northern District of California

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28