DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MAUREEN C. BESSETTE (CABN 165775)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94608
   Telephone: (510) 637-3691
   Fax: (510) 637-3724
   E-mail: Maureen.Bessette@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DON KOLLMAR AKA DONALD KOLLMAR | CR 4:19-MJ-70677<br><br>SUPPLEMENTAL MEMO IN OPPOSITION TO BAIL |

TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................1
II.  ARGUMENT..............................................................................................................2
     A.  US has shown probable cause for arrest and provided sufficient evidence of charges……..2
     B.  Dual criminality is viewed at the time of the extradition not at the time of the offense…….3
     C.  There are no special circumstances……………………………………………………….6
     D.  Bond will not alleviate flight risk……………………………………………………….14
III. CONCLUSION..........................................................................................................9

TABLE OF AUTHORITIES

Federal Cases

*Charlton v. Kelly*, 229 U.S. 447 (1913) .......................................................................................... 6, 8

*Clarey v. Gregg*, 138 F.3d 764 (9th Cir. 1998)………………………………………………….3

*Collins v. Loisel*, 259 U.S. 309 (1922) ........................................................................................... 6, 8

*Cucuzzella v. Keliikoa,* 638 F.2d 105 (9th Cir. 1981)……………………………………………..5

*DeSilva v. DiLeonardi*, 125 F.3d 1110 (7th Cir. 1997) ................................................................. 6, 8

*Extradition of Mainero*, 950 F. Supp. 290 (S.D. Cal. 1996) ............................................................. 6

*Factor v. Laubenheimer,* 290 U.S. 276 (1033)……………………………………………………..5

*Glucksman v. Henkel*, 221 U.S. 508 (1911)………………………………………………………..4

*Hilario v. United States*, 854 F. Supp. 165 (E.D.N.Y. 1994)………………………………………4

*Hooker v. Klein*, 573 F.2d 1360 (9th Cir. 1978) .......................................................................... 6, 8

In Matter of Extradition of Murphy, 1998 WL 1179109 (N.D.N.Y. Jun. 30, 1998)……………………..4

*In re Extradition of Bowey*, 147 F. Supp.2d 1365 (N.D. Ga. 2001) ................................................. 6

*In re Extradition of Nacif-Borge*, 829 F. Supp. 1210 (D. Nev. 1993) ........................................ 6, 7

*In re Extradition of Orozco*, 268 F. Supp.2d 1115 (D. Ariz. 2003) ................................................ 8

*In re Extradition of Siegmund*, 887 F. Supp. 1383 (D. Nev. 1995) ................................................ 8

*In re Extradition of Valles*, 36 F. Supp.2d 1228 (S.D. Cal. 1998) .................................................. 8

*In re Johnson*, 2012 WL 3929811 (W.D. Pa. 2012) ........................................................................ 7

*In re Klein*, 46 F.2d 85 (S.D. N.Y. 1930) ........................................................................................ 6

*Matter of Extradition of Drumm*, 150 F. Supp. 3d 92 (D. Mass. 2015) .......................................... 7

*Matter of Extradition of Rouvier*, 839 F. Supp. 537 (N.D. Ill. 1993) ......................................... 7, 8

*Matter of Extradition of Sidali*, 868 F. Supp. 656 (D.N.J. 1994) ............................................... 6, 7

*Matter of Extradition of Sutton*, 898 F. Supp. 691 (E.D. Mo. 1995) ............................................. 8

*Michael M. v. Superior Court of Sonoma County,* 25 Cal.3d 608, (S. Ct. Cal. 1979)………………5

*Parretti v. United States, 122 F.3d 758 (9th Cir. 1997)*……………………………………….2, 3

*Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) ................................................................ 5, 6

*Shapiro v. Ferrandina*, 478 F.2d 894, 908 (2nd Cir. 1973)……………………………………...3

1   *Theron v. United States,* 832 F.2d 492, 497-98 (9th Cir 1987)…………………………………..…3, 5

2   *United States ex rel. McNamara v. Henkel*, 46 F.2d 84 (S.D.N.Y. 1912) ............................................ 3, 4

3   *United States v. De Lorea*, 2006 WL 1518981 (N.D. Ind. 2006) ............................................................... 7

4   *United States v. Kin Hong*, 83 F.3d 523 (1st Cir. 1996) ........................................................................ 6, 7

5   *United States v. Leitner*, 784 F.2d 159 (2d Cir. 1986) ................................................................................ 5

6   *United States v. Wathne,* 2008 WL 4344112 (N.D. Cal. Sept. 22, 2008)……………………………….4, 5

7   *Wright v. Henkel*, 190 U.S. 40 (1903) ......................................................................................................... 5

8   <u>Federal Statutes</u>

9   18 U.S.C. § 2243 ........................................................................................................................................ 5

10   <u>State Statutes</u>

11   California Penal Code § 261.5………………………………………………………………………….5

12   <u>Law Review Articles</u>

13   UCLA Women's Law Journal, 5(1) Miller, Susannah (1994)……………………………………………5

**I.     INTRODUCTION**

The matter is on before the Honorable Magistrate Judge Kandis Westmore for detention of international fugitive Don Kollmar.  The United States opposes bail.  Fugitive Kollmar argues for release asserting:

(1) The United States failed to show:

    a.  probable cause for his arrest as required by the Fourth Amendment; and

    b.  necessary elements that Kollmar acted with false and fraudulent representations for Counts One and Two, and that the victim was chaste for Count Three (Fugitive brief at p.6-9);

(2) Dual criminality at the time of the offenses versus at time of extradition (Fug. Brief at p.9-11); and

(3) Special circumstances:

    a.  Likelihood of prevailing in extradition litigation;

    b.  Extradition litigation will be lengthy;

    c.  Failure of United States to present probable cause for arrest;

    d.  Length of delay from the offense to charges;

    e.  Fugitive's moral character and lack of criminal history;

    f.  Availability of bail in Canada;

Fug. Brief at p.12-15.

As discussed below, this Court should deny bail because:

(1) The United States has shown probable cause in the complaint signed by the Honorable Magistrate Judge Westmore, supporting the request for a provisional arrest warrant, and evidence to prove that Kollmar used false and fraudulent representations to obtain sex from the minor victim, with his use of his power and authority as her spiritual advisor, under the cloak of God; and the underlying facts create reason to believe that the 12-year-old victim was chaste until Kollmar began grooming and molesting her.

(2) Dual criminality is determined at the time of extradition, and the charged offenses are crimes under current federal and historic California state law.

1 (3) There are no special circumstances.

## II. ARGUMENT

A. <u>US has shown probable cause for arrest and provided sufficient evidence of charges.</u>

Fugitive's counsel asserts that the United States has failed to provide probable cause for the charged offenses and evidence of the underlying elements.  However, in addition to a Canadian judge finding probable cause that the fugitive committed the charges, the Assistant United States Attorney (AUSA) in this case provided a Complaint, signed by the Honorable Kandis Westmore, establishing probable cause for Kollmar's arrest, and establishing the necessary elements.

Fugitive's counsel cites to the withdrawn case of *Parretti v. United States*, 122 F.3d 758 (9th Cir. 1997), *opinion withdraw and appeal  dismissed on other grounds*, 143 F.3d 508 (9th Cir.) (en banc), *cert. denied,* 525 U.S. 877 (1998), to support his argument.  *See* Fug. Brief at p.6-9.  Fugitive's counsel's reliance on the reasoning in *Paretti* fails.

First, even the underlying facts in *Paretti* are inapposite.  The Ninth Circuit panel in *Paretti*, held that the sole basis for allegations of wrongdoing made in the AUSA's Complaint was the French arrest warrant.  *Id.* at 761.  The AUSA simply alleged on information and belief that the French arrest warrant contained various allegations of wrongdoing.  *Id.*  The Ninth Circuit held that this violated the Fourth Amendment.

More importantly, after the panel decision was issued, the government petitioned for *en banc* review.  The Ninth Circuit granted the government's petition but, before deciding the matter, dismissed the appeal because Parretti fled the United States.  *Parretti,* 143 F.3d at 511.  The *en banc* court then ordered that panel opinion withdrawn.  *Id.*  Accordingly, the *Parretti* panel decision has no precedential value; indeed, no appellate court has followed the panel opinion in the 22 years since it was vacated.

In the matter before this Court, the AUSA provided a Complaint, which provided a summary of the victim's statement, providing detailed facts of Kollmar's underlying criminal acts, grooming and molesting the victim over a period of four years, using his position as her spiritual advisor to create the right atmosphere to manipulate her into believing that his actions were religious in nature.

Here the Provisional Arrest Warrant and Complaint are supported by probable cause and provide detailed facts that Kollmar acted as the minor victim's spiritual advisor, using his power and authority as

such, along with the fact he was 11 years older than the 11 to 12-year-old victim when he began grooming her to achieve his goal of obtaining sex, under the cloak of God, to deceive the victim into believing this was valid.  This is clearly different from *Paretti*, and sufficient to show that he used false and fraudulent representations to obtain sex from the victim minor as required in Counts One and Two.

Furthermore, it is hard-pressed to understand how the fugitive counsel's assertion that Canadian law places a burden on a minor victim in such circumstances to show that she was chaste prior to the adult fugitive's manipulation of her for sex.  Even assuming such a requirement, the Court here can take into account that the circumstances here provide sufficient evidence that the 11 to 12-year-old victim was of chaste character at the time Kollmar began his criminal acts.

B.  <u>Dual criminality is viewed at the time of extradition not at time of the offense</u>.

Counsel asserts that the government has failed to show dual criminality, incorrectly asserting it is viewed at the time of the offense.  Fug. Brief at 9-11.  Case law is clear, dual criminality is at the time of extradition and the crimes charged here are crimes under federal and California state law.

The Ninth Circuit has held that dual criminality is satisfied where the applicable criminal laws of the two countries are "substantially analogous" and appear to punish the same basic evil.  *Clarey v. Gregg,* 138 F.3d 764, 766 (9th Cir.), *cert. denied,* 525 U.S. 853 (1998), *citing Shapiro v. Ferrandina*, 478 F.2d 894, 908 (2nd Cir.), *cert. denied*, 414 U.S. 884 (1973).  The Ninth Circuit has analogized foreign charges to California state statutes.  *See* Theron, 832 F.2d 492, 497-98 (9th Cir 1987) (magistrate finding that dual criminality requirement satisfied by federal and California state statute), *cert. denied,* 486 U.S. 1059 (1988).

Courts look at the law in place at the time the extradition request was made and not the law in effect when the offenses took place. *See United States ex rel. Oppenheim v. Hecht,* 16 F.2d 955, 956-57 (2d Cir.), *cert. denied,* 273 U.S. 769 (1927).  In *Hecht*, the fugitive came to the United States from Scotland.  *Id.* at 955.  He argued that at the time he committed the underlying crime, making false entries in his ledger and cashbook in contemplation of bankruptcy, for which he was to be extradited, there was no statute in force in the United States rendering the act criminal.  *Id.*  The Second Circuit held

3

1 that the law pertinent to the question of extradition is the law in force *at the time of the extradition*
2 *demand*. *Id.* at 956.  The reason for this is that:
3     "Etradition proceedings are not in their nature criminal, even if the [fugitive] is a criminal;
4     extradition is not punishment for crime, though such punishment may follow extradition;
5     therefore all the talk of ex post facto legislation, or of the niceties of common law on the criminal
6     side, or of the niceties of common law on the criminal side, is quite beside the mark"
7 *Id., citing Glucksman v. Henkel*, 221 U.S. 508 (1911).
8     Similarly, in *Hilario v. United States,* the court held that the fugitives argument, challenging the
9 retrospective application of 18 U.S.C. § 3196 to himself, whose criminal conduct and conviction predate
10 the enactment of the statute, does not invoke the Ex Post Facto Clause of the U.S. Constitution or any
11 other constitutional protection, as extradition proceedings are not in their nature criminal.  854 F. Supp.
12 165, 176 (E.D.N.Y. 1994).
13     "Although the relator argues that the court must apply the law in force at the time of the incident
14 in determining whether there is an analogous law in the United States, it is clear that in determining dual
15 criminality, the court may apply the current American law.  *See In Matter of Extradition of Murphy*,
16 1998 WL 1179109, at *5 n.3 (N.D.N.Y. Jun. 30, 1998), *citing Oppenheim v. Hecht,* 16 F.2d at 955
17 (conduct was not crime in United States at time of incident).  *Hilario v. United States,* 854 F. Supp. at
18 176."
19     Counsel cites to *Wathne,* 2008 WL 4344112, at *11-13 (N.D. Cal. Sept. 22, 2008), in support of
20 his argument.  Fug. Brief at 11, n.7.  This case is not analogous.  Wathne was an Icelandic citizen, living
21 in Russia.  *Id.* at *1.  Pursuant to a Mutual Legal Assistant Treaty request, the United States asked
22 Russia to interview Wathne and one of his business associates, who then provided information that he
23 and Wathne had smuggled cash from New York to Moscow, and had committed other improprieties.  *Id.*
24 Afterwards, US authorities charged defendant Wathne with conspiracy to launder the profits from a LSD
25 operation.  *Id.*  Thereafter Wathne was arrested in India.  *Id.*  Wathne entered an agreement with the
26 United States in which he consented to extradition to the United States and the U.S. government agreed
27 to release him on bond upon his arrival in the United States.  *Id.*  The U.S. District Court held that
28

India's expert interpretation of its own countries' dual criminality requirement was that the crime must be an offense at the time the crime was committed in order to extradite the fugitive. *Id.*

Because of its unusual circumstances, *Wathne* does not stand for the proposition counsel desires. Since Wathne was not being extradited, the liberal rule of construction favoring extradition did not apply.

The Ninth Circuit in *Theron v. United States* stated that, "In assessing dual criminality, courts examine 'similar [criminal] provisions of federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of states.'" 832 F.2d at 496, *quoting Cucuzzella v. Keliikoa,* 638 F.2d 105, 107 (9th Cir. 1981). Dual criminality exists if the 'essential character' of the acts criminalized by the laws of each country are the same and if the laws are 'substanitally anoalogous." *Wirght v. Henkel,* 190 U.S. 40, 58 (1903); *Factor v. Laubenheimer,* 290 U.S. 276 (1033).

Here, the matter involves a Treaty between the United States and Canada and dual criminality is met because there is a current federal law prohibiting the Kollmar's criminal acts. *See* 18 U.S.C. § 2243. In addition to dual criminality under an analogous current federal statute, California state law also prohibits the fugitive's criminal acts now and at the time they were committed in the 1970's. *See* California Penal Code § 261.5; *Michael M. v. Superior Court of Sonoma County,* 25 Cal.3d 608, (S. Ct. Cal. 1979) (holding constitutional California statute prohibiting sex with female under the age of 18), *aff'd,* 450 U.S. 464 (1981). California enacted the California Penal Code § 261.5, Unlawful Sexual Intercourse With Female Under Age 18, the state's first statutory rape law, in 1859. *See* UCLA Women's Law Journal, 5(1), Miller, Susannah (1994) p. 289-90. Thus, dual criminality is met.

C. <u>There are no special circumstances</u>.

In light of the strong presumption against bail in extradition cases established in *Wright v. Henkel*, federal courts have uniformly held that bail shall not be granted except under "special circumstances." *See* 190 U.S. 40 (1903). Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the granting of bail. *See Salerno v. United States*, 878 F.2d 317, 317-18 (9th Cir. 1989)*; United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986).

Fugitive's counsel asserts a number of mostly frequently occurring circumstances, constitute special circumstances: high likelihood of success in extradition; speculation that litigation will be

lengthy; incorrect assertion that United States failed to provide probable cause for arrest; lengthy delay from the offense to the charge; fugitive's moral character and lack of criminal history; and availability of bail in Canada.  All of these assertions lack merit.

<u>High likelihood of success in extradition</u>

Some courts have incorrectly held that the probability of a fugitive's success against extradition or against the foreign charges underlying the extradition requests qualify as a special circumstance.  *See, e.g., Bowey*, 147 F. Supp. 2d at 1368 (bail granted based on likelihood of success against criminal charges in France, need for participation in directly-related divorce proceeding, and absence of flight risk).  These decisions misconstrue the scope of a bail hearing and the court's limited role in the extradition process.

First, any assessment of extraditability is a substantive question that is to be decided at the extradition hearing itself and is not relevant to a fugitive's bail application.  *Matter of Extradition of Sidali*, 868 F. Supp. 656, 658-59 (D. N.J. 1994) (probability of success against extradition "relate[s] to whether [the fugitive] should be extradited not whether he should be released on bail).  Further, the court's role at an extradition hearing is limited to making a determination of the sufficiency of the extradition request and the existence of probable cause.  Considerations of whether the fugitive will ultimately prevail against the charges following extradition is beyond the scope of the extradition proceedings.  *See Charlton v. Kelly*, 229 U.S. 447, 462 (1913); *Collins v. Loisel*, 259 U.S. 309, 316-317 (1922); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978), *cert. denied*, 439 U.S. 932 (1978); *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997), *cert. denied*, 525 U.S. 810 (1998).

Still, courts that have considered this issue when applying the special circumstances test have required the fugitive to establish a "high probability" of success to warrant bail.  *E.g., In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1216 (D. Nev. 1993) (no "high" probability of success); *United States v. Kin Hong*, 83 F.3d 523, 524-25 (1st Cir. 1996) (record did not establish probability of success one way or the other); *Mainero*, 950 F. Supp. 290, 294-95 (S.D. Cal. 1996) (bail denied where no likelihood of prevailing at extradition hearing.)  Even in *Salerno*, 878 F.2d at 318, the leading case citing probability of success as a possible special circumstance, the court ultimately declined the fugitive's claim for failure to demonstrate the likelihood of success.  *See also Kin Hong*, 83 F.3d at 524 (burden

not met), *Matter of Extradition of Rouvier*, 839 F. Supp. 537 (N.D. Ill. 1993) (same). The limited purpose of the bail proceeding, the limited scope of the court's inquiry at the extradition proceeding, and the high burden that the fugitive needs to establish all weigh heavily against the granting of bail.

### Litigation will be lengthy

Counsel asserts that litigation in this matter will be lengthy. However, this is mere speculation. It is not in the United States' interest. The government will be prepared to proceed as soon as the Canadians provide their formal extradition request.

### Assertion that United States failed to provide probable cause for arrest

As stated above in Section II.A., the United States has provided probable cause for the arrest.

### Lengthy delay from the offense to the charge

The delay between the commission of the crime and the submission of the formal extradition request is not a special circumstance. *See*, *e.g.*, *Matter of Extradition of Drumm*, 150 F. Supp.3d 92, 98-99 (D. Mass. 2015) (seven-year delay in seeking extradition not a special circumstance warranting bail); *In re Johnson*, 2012 WL 3929811, at *4-5 (W.D. Pa. 2012) (long delay between commission of crime and Formal Request for Extradition does not constitute special circumstances); *United States v. De Lorea*, 2006 WL 1518981, at *3-4 (N.D. Ind. 2006) (10-to-12-year delay by Mexico in seeking extradition not special circumstance; fugitive was employed family man who had lived stable life in United States with no prior criminal history.)

### Fugitive's moral character and lack of criminal history

A fugitive's character, including past conduct, lack of a prior criminal record, and ties to the community, should not be considered a special circumstance. Instead, and as most district courts have recognized, this is more appropriately considered when conducting the independent flight risk analysis. In *Nacif-Borge*, the court explained that "[m]ore often, the character and background of a person subject to extradition are considered in regard to risk of flight and danger to the community rather than as a special circumstance." 829 F. Supp. at 1220. *See also Sidali*, 868 F. Supp. 656 (rejecting "extraordinary character" based on employment, family ties, no prior record, and community respect as a special circumstance); *In re Extradition of Valles*, 36 F. Supp. 2d 1228, 1231 (S.D. Cal. 1998) (fugitive's past conduct and community ties used to assess flight risk).

Availability of bail in Canada

The availability of bail for the charged offense in the requesting country is not a special circumstance justifying bail. In fact, the bail practices of the requesting country are entirely irrelevant. By statute, 18 U.S.C. §§ 3184 et. seq., and through its mandatory treaty obligations, the United States is obligated to deliver fugitives to the requesting country. As a result, a court's role is limited to determining the sufficiency of the extradition request and the existence of probable cause. *Charlton*, 229 U.S. at 462; *Collins*, 259 U.S. at 316-317; *Hooker*, 573 F.2d at 1368; *DeSilva*, 125 F.3d at 1112. If the availability of bail in the foreign country were a special circumstance justifying bail in the United States:

> [C]ourts (would be forced) to make "searching reviews of foreign law to determine whether bail is appropriate for a given defendant in a given country for a given offense... That would be an undesirable practice: it might well be unworkable, and, if applied widely, it could eviscerate, at least with respect to requesting countries whose domestic practice, like our own, strongly favors bail, the doctrine set by the Supreme Court that bail is the exception, not the rule, in international extradition cases.
>
> Finally, we note that an extradition treaty between sovereign nations is essentially a contract, and the concern in an international extradition case is not to mirror the internal bail practices of the requesting country, but, rather, to deliver the extraditee to that country if the conditions precedent to extradition, as set forth in the treaty, are satisfied. To say that the extraditee would have been granted bail in the requesting country, had he been arrested there, or that he will be granted bail once returned there, thus misses the point.

*In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386-87 (D. Nev. 1995) (internal citations and quotes omitted).

Based on this reasoning, courts have rejected claims that bail availability in the foreign country bears on the determination of whether special circumstances exist. *See Rouvier*, 839 F. Supp. at 540 (bail availability is not a special circumstance); *Matter of Extradition of Sutton*, 898 F. Supp. 691, 695 (E.D. Mo. 1995) (same); *In re Extradition of Orozco*, 268 F. Supp.2d 1115, 1117 (D. Ariz. 2003).

D. Bond will not alleviate flight risk.

Finally, counsel proffer's the fugitives brother, who lives in Georgia, to post bond. This is insufficient to alleviate flight risk. Kollmar has no contacts in California, and his brother's offer to post bond from Atlanta, Georgia, without more, will not guarantee his future appearances.

### III. CONCLUSION

In sum, the Court should deny bail and set the extradition hearing. Kollmar has failed to show special circumstances and he is a flight risk because of the seriousness of the pending criminal charges in Canada, his departure from Canada after sexually assaulting the victim, and his significant contacts with third countries.

Dated: May 13, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/s/_____
MAUREEN C. BESSETTE
Assistant United States Attorney
Northern District of California