1 | COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
2 | 235 Montgomery Street, Suite 1070
3 | San Francisco, CA 94104
Telephone: 415.391.0440
4 | Facsimile: 415.373.3901
eab@colemanbalogh.com
5 |

6 | Attorneys for Arrestee
DONALD KOLLMAR

7 |

UNITED STATES DISTRICT COURT

8 |

NORTHERN DISTRICT OF CALIFORNIA

9 |

OAKLAND DIVISION

10 |

11 |             Case No. 4:19-70677 MAG

12 | IN THE MATTER OF THE EXTRADITION
OF DON KOLLMAR           ARRESTEE DON KOLLMAR'S

13 |             SUPPLEMENTAL BRIEF IN SUPPORT OF
RELEASE

14 |

15 |             DATE:  MAY 17, 2019
TIME:    9:30 AM

16 |

17 |             THE HONORABLE KANDIS WESTMORE
UNITED STATES MAGISTRATE JUDGE

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

As directed, *see* ECF 14, Arrestee Donald Kollmar, by and through counsel, hereby files this Supplemental Brief answering the Court's questions about the special circumstances of (1) the likely unusual delay in completing the extradition proceedings; (2) Canada's extraordinary delay in prosecution; and (3) the availability of bail in Canada.

**A.  Unusual Delay**

Based on the Ninth Circuit's recognition that "'unusual delay in the appeal process' can constitute a special circumstance that justifies bail[,]" *id.* (citing *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) & *In re Requested Extradition of Kirby*, 106 F.3d 855, 863 (9th Cir. 1986)), the Court requested additional briefing on the question about "how appeals in this case are likely to result in 'unusual delay,' in comparison to other cases." ECF 14 at 1 (citing, *e.g.*, *United States v. Taitz*, 130 F.R.D. 442, 445-46 (S.D. Cal. 1990); *see also In the Extradition of Santos*, 473 F.Supp.2d 1030 (C.D. Cal. 2006) (finding unusual delay based, in part, on anticipated appeals that "could be complex and time-consuming") (following *Taitz*).

Mr. Kollmar first notes the difficulty of the question based on the lack of information available. While the Government most likely possesses statistics reflecting (1) the number of provisional warrants sought annually over the last 20 years (or any other relevant statistical sample, *e.g.*, the 10 years, or the last 5 years); (2) the number of formal extradition requests presented annually of the same period; and (3) the length of time between the commencement of each case (application for provisional arrest) and its conclusion (either favorable to the United States (by way of extradition, voluntary return, waiver, or deportation) or favorable to the arrestee (by way of final decision by district court or appellate court, as applicable),[1] none of that

---

[1] It would be unthinkable that the Department of State does not document the requests it receives from Treaty Partners and the results then obtained in response to those requests. As the

1
2
3
4
5
6
7

information is available to Mr. Kollar (or at least he couldn't find it after a diligent search).

Clearly, that type of statistical analysis would be useful, and one would hope that government

counsel seeks, obtains, and produces those statistics by the time of the renewed bail hearing.  In

the absence of the production of such materials to the Court however, Mr. Kollmar respectfully

suggests that this factor should, on that basis alone, weigh in favor of his release, because one

would expect it to produce those materials if they favored the Government's position.[2]

8
9
10
11
12
13

That said, Mr. Kollmar contends that the expected length of a case is directly proportional

to the quality and quantity of colorable and/or meritorious legal issues.  Put another way, cases

with overwhelming evidence and/or a lack of defenses or legal challenges are disposed of more

quickly that cases with disputed evidence and/or several defenses and/or legal challenges.  This

case falls into the latter camp.

14
15
16

First, Mr. Kollmar denies the allegations in full, and denies engaging in any sexual

activity with the complainant.  In sum, he is innocent of the charges.

17
18
19
20

And second, this case already presents a host of complex challenges that raise genuine

questions about the propriety of extradition here, including (1) whether dual criminality can be

established at all, because none of the three charges constituted federal crimes at the time they

21
22
23
24

Justice Manual ("JM") (formerly United States Attorney's Manual ("USAM") makes clear, the
Criminal Division's Office of International Affairs ("OIA") manages extradition requests in
conjunction with the Department of State.  *See* Ex. C at 9:15-210, 15-700 (for clarity of the
record, we continue sequential lettering of exhibits in this release proceeding from the exhibits
presented with ECF 9).

25
26
27
28

[2] Mr. Kollmar likewise makes a due process clause demand for all information in the
possession of the United States, including Department of State and OIA, that would be
favorable to him on the question of bail and the existence of facts that could support a finding of
a special circumstance.  This favorable information must be turned over at the motion stage,
where it could be useful, and this obligation extends to all agencies working with the United
States.  *See United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000); *United States v.
Price*, 566 F.3d 900 (9th Cir. 2009); *Kyles v. Whitley*, 514 U.S. 419 (1995).

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

allegedly occurred, *see* ECF 9 at 10:8-11:22, and two of the three still do not, *see id.*, at 11:1-7;

(2) whether the dual criminality provision of the applicable Treaty, which bases dual criminality

on "the laws of both Contracting Parties[,]" supports a bar to extradition based on the Treaty's

language and applicable federal law, *see Theron v. United States*, 832 F.2d 492, 496 (9th Cir.

1987), *cert. denied*, 486 U.S. 1059 (1988), *abrogated on other grounds*, *United States v. Wells*,

519 U.S. 482, 486 n.3 (1997) (a Treaty's reference to the laws of the "Contracting Part[ies]"

directs courts to apply federal, not state law, as the rule of decision), (3) whether, under the

express provisions of the Treaty (*see* Ex. A, Article 10), ex post facto and dual criminality

principals bar extradition based on conduct that preceded federal proscription, *viz.*, "[e]xtradition

shall be granted only if the evidence be found sufficient …. [t]o justify his committal for trial if

the offense of which he accused had been committed in its territory[;]" and (for now), *see United*

*States v. Wathne*, 2008 WL 4344112 (N.D. Cal. Sept. 22, 2008); and (4) whether the due process

clause provides protection against extradition a one of the "remedies and resources provided" by

the laws of "the requested State[,]" *see* Ex. A (Article 8), where the allegations were formalized

more than 40 years after the alleged conduct.

While the parties dispute one another's contentions on these issues, it is appropriate to

observe that each of these issues is colorable, and no binding authority has yet resolved any of

them.  As a result, the likelihood of an appeal on the bail decision, as well as an appeal on the

merits decision, is high.

Thus, even assuming that the extradition decision from this Court issues in July 2019, it's

reasonable to estimate that the decision on appeal by the assigned United States District Judge

and then by the Ninth Circuit will almost certainly take in excess of one year, and even up to two

or more.  *See Taitz*, 130 F.R.D. at 446 (finding "unusual delay" special circumstance because

3

even it "[i]f th[e] court were to decide the extradition request today, the various district and

circuit court proceedings would likely last for as long as two years.  Taitz would have to be

incarcerated during this lengthy period");[3] *Kirby*, 106 F.3d at 857 (fugitives arrested in 1992,

1993, and 1994; extradition appeal decided by Ninth Circuit in February 1997).  Mr. Kollmar

respectfully contends that the legal issues presented above alone, even without being able to

assess the extradition package Canada is preparing, support deeming *Taitz*'s prognostication

persuasive in this case.

In sum, Mr. Kollmar respectfully contends the appeals in this case will likely result in

unusual delay, and thus supports the finding of a special circumstance.

## B.  Delay in Prosecution

In *United States v. Castaneda-Castillo*, 739 F.Supp.2d 49, 57-58 (2010), the requesting

country (Peru), did not pursue its case against the alleged fugitive for 25 years.  The court

assessed this "very lengthy delay[,]" and noted the turmoil in Peru during the preceding 25 years

"may [make it] appropriate to ignore the [seven] years under President Fujimori[,]" *id*. at 52, 58,

and then reasoned as follows:

> However, there is no explanation for the *three year* delay between
> the issuance of the Order Commencing the Investigation of a Case
> on May 31, 2005 and Peru's Formal Extradition Request on
> September 3, 2008.  Nor is there any explanation for the additional
> *two years* it took for the United States, on behalf of Peru, to
> actually seek Castaneda–Castillo's provisional arrest on March 9,
> 2010.  For these five years, Castaneda–Castillo was actively
> pursuing his amnesty petition, and was incarcerated.  If Peru
> wanted to locate him, he was easily found.  Even ignoring the fact
> that charges were not brought against Castaneda-Castillo until a 20
> year statute of limitations was about to expire, the only conclusion

---

[3] Judge Moskowitz's prescience is established by the record.  Nearly a year later, the case had not come to a decision even in the district court. *United States v. Taitz*, 134 F.R.D. 288 (S.D. Cal. 1991).

> which this court can reach is that Peru has 'not made prosecution
> of this offense a priority.' *Chapman,* 459 F.Supp.2d at 1027.[4]

*Id.* at 58 (emphasis added).  It thus found that "[t]his factor[—a five year

delay—]weighs very heavily in favor of release."

As noted, *Chapman* held similarly.  There, the court found as a special circumstance the

"lack of any diplomatic necessity for denying bail [because] Mexico has not made prosecution of

this offense a priority."  4.Supp.2d at 1027.  Rather, "Mexico waited *three years* before bringing

extradition proceedings against the Respondents, during which Respondents were living openly

and notoriously, aware of the charges against them in Mexico."  *Id.* (emphasis added).

Similarly, in *Wroclawski v. United States*, 634 F.Supp.2d 1003, 1008 (D. Ariz. 2009),

then-District Judge Murguia found the unexplained 12-year delay between the time Poland

charged the petitioner with extraditable crimes and Poland's pursuit "constitute[d] a special

circumstance" in favor of release.

The facts in this case are far more compelling than the three presented.  First, there is the

20-year delay between the alleged conduct and the complainant's report to the authorities, *see*

ECF 1 (Complaint) ¶¶ 7(d), 7(e) & 7(e[*]).[5]  Even if we put that first 20-year delay aside, there

was then a second 20-year delay, until 2017, before the "Canadian authorities observed a

photograph of a man named Don Kollmar on a spiritual website advertising 'Complete Self

---

[4] *In re Extradition of Chapman*, 459 F.Supp.2d 1024 (D. Haw. 2006).

[5] As noted in ECF 9, *see* n.2, it appears that the Complaint intended to label this second subparagraph 7(e) as subparagraph as 7(g), because following subparagraphs 7(e) and 7(f), the Complaint then labels the next two subparagraphs 7(e) and 7(f) for the second time.  Mr. Kollmar follows the convention of ECF 9, and marks the second iterations of subparagraphs 7(e) and 7(f) with a superscript asterisk ([*]) to identify them as the second of the two identically-labeled subparagraphs.

Attunement.'" *Id.* ¶ 7(f[*]).[6]  But even then, Canada did not make this case a priority, and the

Complaint establishes no further activity for the next 16 months, when, on November 28 2018, a

justice of the peace issued an Information raising the allegations at bar. *Id.* ¶ 6.  One month later,

on December 24, 2018, Canada then issued a warrant for his arrest. *Id.* ¶ 7.

All told, Canada did not pursue Mr. Kollmar in any manner for more than 21 years.

Under the persuasive authority presented by *Casteneda-Castillo*, *Chapman*, and *Wroclawski*, this

extraordinary, unexplained delay establishes Canada's inattention and lack of priority with

respect to this case.  This delay, and the lack for diplomatic necessity this inaction proves,

provides a special circumstance in favor of release.[7]

### C.  Availability of Bail in Extradition Cases

The availability of bail in Canada, and Canadian practices, also establish a special

circumstance that supports release on bail.  The persuasive authority in *Taitz* does not stand

alone.  *See Wroclawski*, (availability of bail in Poland constituted special circumstance); *In the*

---

[6] Importantly, using the search terms "Don Kollmar Complete Self Attunement" leads, as its first hit, to the following webpage: http://www.csaprocess.com/who.html.  That page discussed Don Kollmar.  But searching the internet archives (web.archive.org) reflects that this website, including naming Don Kollar within it, was available on the worldwide web since at least July 11, 2009, *viz.*, nearly 10 years ago.  *See* https://web.archive.org/web/20090711183633/http://csaprocess.com/resources_cds.html Apparently, Canada hasn't been looking for Don Kollmar at all.

Mr. Kollmar respectfully contends that his daily presence on the internet for the past decade further establishes that he has been living openly, and has "made no effort to hide his whereabouts." *Wroclawski*, 634 F.Supp.2d at 1008.  Certainly, the Government has presented zero evidence to suggest that Mr. Kollmar ever knew about these allegations, much less that he knew about them when he left Canada (which, likewise, the Complaint is silent upon), much less that he has ever attempted to shield his whereabouts in any manner whatsoever.  In fact, the Complaint establishes the opposite: that his location was available by searching the internet.

[7] The Complaint is silent as to any efforts to seek Mr. Kollmar's extradition from the Netherlands, a member of the European Union, which maintains an extradition treaty with the United States.  *See* Ex. D.

*Matter of the Extradition of Kamel Nacif-Borge*, 829 F.Supp. 1210 (D. Nev. 1993 (availability of bail in Mexico on the underlying offense constitutes a "special circumstance"); *see also In re Gannon,* 27 F.2d 362 (E.D.Pa.1928) (granting bail to an extraditee from Canada where bail available for the underlying offense in both Pennsylvania and Canada).[8]

And Canada grants bail liberally in extradition cases. As Seth P. Weinstein, an impressive Canadian attorney and expert on extradition—he literally co-authored the book, *i.e.*, Prosecuting and Defending Extradition Cases: A Practitioner's Handbook" (2017, Emond)—declares:

> bail is routinely granted to Canadian citizens in extradition cases,
> and as well on appeal when the person sought had bail pending
> their committal hearing and there are arguable issues to advance.
> In fact, bail in extradition cases is often granted on consent, *i.e.*,
> with the agreement of the prosecutor; as a result, those cases do not
> result in judgments available for citation.

Declaration of Seth P. Weinstein ("Weinstein Decl.") ¶ 9.[9]

Even non-residents may obtain bail in extradition cases. For example, in *United States v. Meng*, 2018 BCSC 2255, a case where a non-resident was released following a contested bail hearing. In support of her detention, the requesting state had argued in that case that the person sought in that case had an incentive to flee due to the potentially lengthy incarceration she would face in the United States if she were extradited and convicted there. Further, that the person sought did not have a significant connection with the jurisdiction, and that she has

---

[8] As the Court in *In the Matter of the Extradition of Kamel Nacif-Borge* held, *Gannon* ruled that the availability of bail in Canada "constituted a special circumstance worthy of bail[.]" 829 F.Supp. at 1221. This is true even though "*Gannon* does not use the phrase 'special circumstances,' because it cited to *Wright,* which establishes this standard." *Id.* Thus "*Gannon* granted bail because of the availability of foreign bail." *Id.*

[9] Mr. Weinstein also establishes the accuracy of Mr. Kollmar's prior recitation with respect to the availability of bail in extradition cases in Canada. *Id.* (addressing ECF 9 at 14).

substantial financial resources that make the imposition of bail conditions, including substantial sureties, ineffective in ensuring her court attendance.

In *United States of America v. Hillis*, 2018 ONSC 5360, the person sought, a Canadian citizen, was released pending his extradition hearing for allegations involving the sexual assault of three young girls in Minnesota.

The Court should also examine the other cases attached to Mr. Weinstein's declaration. *See also* Weinstein Decl. ¶¶ 12-20 (discussing cases). Those cases establish the regularity of bail in Canadian extradition case, even in serious cases. *See United States of America v. Ruggeberg*, 2005 BCSC 113 (CanLII) **(**person sought for extradition on allegations of rape by gunpoint 25 years earlier; bail initially denied, but then permitted upon presentation of better release plan); *United States of America v. Rockwell*, 2013 ABCA 444 (person sought was wanted in the U.S. for child pornography offences; he was a dual citizen who was released on bail as he appealed his committal order); *Republic of France v. Diab*, 2009 CanLII 26600 (the accused's extradition arose from allegations of murder (four counts) and attempted murder (40 counts) arising from allegations that he was responsible for the bombing of a synagogue in Paris in 1980; he was a Canadian citizen, who lived a transient lifestyle with roots in many countries; released him on bail pending his extradition hearing, released again pending appeal); *Republic of France v. Wang*, 2014 BCSC 2689 (person sought wanted in France on charges of money laundering and conspiracy to launder the proceeds of crime; he was not ordinarily a resident of Canada, and released on bail despite strong case in support of extradition); *United States of America v. Ellington* 2018 BCSC 1962 (person's extradition sought for allegations of trafficking drugs and where he faced a mandatory minimum ten year sentence); *United States of America v. Virdi* 2016 BCCA 315 (person sought for the imposition of sentence; he had

8

signed a plea agreement in Washington State, then fled prior to sentencing; bail granted

pending his application to seek leave to appeal committal order); *United States of America v.*

*McGowan* 2017 CanLII 94952 (Ont. C.A.) (person sought released on bail pending his appeal

and pending his extradition hearing where he was charged in Illinois for drug trafficking);

*United States of America v. Deland and Singh*, 2017 QCCS 3379 (CanLII) (accused were

charged in New York with weapons trafficking and firearm exportation offenses; released on

bail pending their extradition).[10]

## CONCLUSION

For these reasons, the reasons previously presented, *see* ECF 9, and the additional

declarations of Marie Louise Kollmar-Stienen, Christopher Kirkham, Samantha Good, Peter

Capuciati, and Harvey Sternberg, the Court should either release Mr. Kollmar on his own

recognizance based on the lack of probable cause, or should admit him to bail based on the

unlikelihood of flight, and the special circumstances presented.

Respectfully submitted,

DATED: May 16, 2019                    COLEMAN & BALOGH LLP

*/s/ E A Balogh*
ETHAN A. BALOGH
235 Montgomery Street, Suite 1070
San Francisco, CA 94104

Attorneys for Arrestee
DONALD KOLLMAR

---

[10] In *Deland*, the judge rejected the prosecutor's argument that the accused were flight risks because they were facing serious sentences: "the Court cannot agree that the risk of flight is serious....that reasoning would render bail exceptional in the extradition process[.]" Put another way, the Court did not find bail as exceptional in these circumstances.