# EXHIBIT C

# 9-15.000 - INTERNATIONAL EXTRADITION AND RELATED MATTERS

| | |
|---|---|
| 9-15.100 | General Principles Related to Obtaining Fugitives from Abroad |
| 9-15.200 | Procedures For Requesting Extradition From Abroad |
| 9-15.210 | Role of the Office of International Affairs in Extraditon Matters |
| 9-15.220 | Determination of Extraditability |
| 9-15.230 | Request for Provisional Arrest |
| 9-15.240 | Documents Required in Support of Request for Extradition |
| 9-15.250 | Procedure After Assembling Documents |
| 9-15.300 | Procedure in the Foreign Country |
| 9-15.400 | Return of the Fugitive |
| 9-15.500 | Post Extradition Considerations—Limitations on Further Prosecution |
| 9-15.600 | Alternatives To Extradition |
| 9-15.610 | Deportations, Expulsions, or Other Lawful Methods of Return |
| 9-15.630 | Lures |
| 9-15.635 | Interpol Red Notices |
| 9-15.640 | Revocation of U.S. Passports |
| 9-15.650 | Foreign Prosecution |
| 9-15.700 | Foreign Extradition and Provisional Arrest Requests |
| 9-15.800 | Plea Agreements and Related Matters—Prohibition |
| 9-15.900 | Costs Relating to Extraditions |

## 9-15.100 - GENERAL PRINCIPLES RELATED TO OBTAINING FUGITIVES FROM ABROAD

International extradition is the formal process by which a person found in one country is surrendered to another country for trial or punishment. The process is regulated by treaty and conducted between the Federal Government of the United States and the government of a foreign country. It differs considerably from interstate rendition, commonly referred to as interstate extradition, mandated by the Constitution, Art. 4, Sec. 2.

Generally under U. S. law (18 U.S.C. § 3184), extradition may be granted only pursuant to a treaty. However, some countries grant extradition without a treaty, and of those that do, most require an offer of reciprocity. Further, 18 U.S.C. 3181 and 3184 permit the United States to extradite, without regard to the existence of a treaty, persons (other than citizens, nationals or permanent residents of the United States), who have committed crimes of violence against nationals of the United States in foreign countries. A list of countries with which the United States has an extradition treaty relationship can be found in the Federal Criminal Code and Rules, following 18 U.S.C. § 3181, but consult the Criminal Division's Office of International Affairs (OIA) to verify the accuracy of the information.

Because the law of extradition varies from country to country and is subject to foreign policy considerations, prosecutors must consult OIA on any matter relating to extradition before taking any action in such a case, especially before contacting any foreign official.

If the fugitive is not subject to extradition, other steps may be available to return him or her to the United States or to restrict his or her ability to live and travel overseas. *See* JM 9-15.600 *et seq.*

If a fugitive is apprehended only after a long delay, a prosecutor may have to litigate a motion alleging a constitutional speedy trial violation if extradition has not been sought or the Government has not been actively pursuing other steps to return the fugitive to the United States. All decisions to pursue or not to pursue extradition or other measures to obtain custody of the fugitive should be documented to prepare for any eventual speedy trial motion.

[updated April 2018]

## 9-15.200 - PROCEDURES FOR REQUESTING EXTRADITION FROM ABROAD

Prosecutors who intend to seek the extradition from abroad of an individual to stand trial, to be sentenced, or to serve a sentence in the United States must contact the Criminal Division's Office of International Affairs at (202) 514-0000.

[updated April 2018]

## 9-15.210 - ROLE OF THE OFFICE OF INTERNATIONAL AFFAIRS IN EXTRADITION MATTERS

The Criminal Division's Office of International Affairs (OIA) provides information and advice to Federal and State prosecutors about the procedure for requesting extradition from abroad. OIA also advises and provides support to Federal prosecutors handling foreign extradition requests for fugitives found in the United States.

Every formal request for international extradition based on Federal criminal charges must be reviewed and approved by OIA. At the request of the Department of State, formal requests based on State charges are also reviewed and approved by OIA before submission to the Department of State.

Acting either directly or through the Department of State, OIA initiates all requests for provisional arrest of fugitives pursuant to extradition treaties. Neither prosecutors nor agents are permitted to contact their foreign counterparts to request the arrest of a fugitive for extradition. Unauthorized requests cause serious diplomatic difficulties and may subject the requester to financial liability or other sanctions.

Every extradition treaty is negotiated separately, and each contains different provisions. Experience with one treaty is not a guide to all others. Therefore, after reviewing this section of the Justice Manual, the first step in any extradition case should be to contact OIA. Attorneys in OIA will advise prosecutors about the potential for extradition in a given case and the steps to be followed.

OIA attorneys are subject-matter experts on extradition, and OIA is responsible for ensuring that the government's position in such cases remains consistent.  Federal prosecutors must consult with OIA regarding issues raised by a fugitive after return to the United States regarding his or her extradition.

[updated April 2018]

## 9-15.220 - DETERMINATION OF EXTRADITABILITY

When speaking with the OIA attorney, prosecutors must be prepared to discuss, among other issues, the following factors:

A) Location: The country in which the fugitive is believed to be located.

B) Citizenship: The fugitive's citizenship.

C) Offense(s) and salient facts: The offense(s) with which the fugitive has been charged or of which he or she has been convicted, along with the facts of the case in brief.

D) Costs:  OIA will advise prosecutors regarding the costs associated with seeking extradition, including translation, express mail services, transportation and, if necessary, the costs of legal representation abroad.  *See* JM 9-15.900.

[updated April 2018]

## 9-15.230 - Request for Provisional Arrest

Every extradition treaty to which the United States is a party requires a formal request for extradition, supported by appropriate documents. Because the time involved in preparing a formal request can be lengthy, most treaties allow for the provisional arrest of fugitives in urgent cases. Once the United States requests provisional arrest pursuant to the treaty, the fugitive may be arrested and detained (or, in some countries, released on bail) following the issuance of an order of arrest by the foreign authorities. Thereafter, the United States must submit a formal request for extradition, supported by all necessary documents, duly certified, authenticated and, if necessary, translated into the language of the country where the fugitive was arrested, within a specified time (from 30 days to three months, depending on the treaty). See JM 9-15.240. Failure to follow through on an extradition request by submitting the requisite documents after a provisional arrest has been made will result in release of the fugitive, strains on diplomatic relations, and possible liability for the prosecutor.

The Criminal Division's Office of International Affairs (OIA) determines whether the facts of the case meet the requirement of urgency under the terms of the applicable treaty. If they do, OIA requests provisional arrest; if not, the prosecutor assembles the documents for a formal request for extradition. The latter method is favored when the defendant is unlikely to flee because the time pressures generated by a request for provisional arrest may result in errors that can damage the case. If provisional arrest is necessary because of the risk of flight, the prosecutor should complete the form for requesting provisional arrest and forward it, along with a copy of the charging document and arrest warrant, to OIA by email. State prosecutors who request provisional arrest must also certify that they will submit the necessary documents on time and will cover all expenses, including the costs of translation and transportation by U. S. Marshals.

Prosecutors should complete a form requesting provisional arrest (available from OIA) in any case in which it appears that provisional arrest may be necessary. Once it is completed, it may be emailed directly to the OIA attorney or team responsible for the country in which the fugitive has been found or is believed to be located. A copy of the charging document, arrest warrant, and any other necessary documents to support the provisional arrest request to that country should be forwarded to OIA.

The form was created with both federal and state cases in mind. Thus, Assistant United States Attorneys are free to share the form with state and local prosecutors working on extradition cases. State prosecutors should email it to the OIA attorney who covers the relevant country.

[cited in JM 9-15.700]

[updated April 2018]

### 9-15.240 - DOCUMENTS REQUIRED IN SUPPORT OF REQUEST FOR EXTRADITION

The request for extradition is made by diplomatic note prepared by the Department of State and transmitted to the foreign government through diplomatic channels. The documents specified in the treaty must accompany the

extradition request. The Office of International Affairs (OIA) attorney will advise the prosecutor of the documentary requirements and provide exemplars, but it is the responsibility of the prosecutor to prepare and assemble the documents.  The OIA attorney will review and approve the draft documents.  Once the documents are finalized, following consultation with OIA, the prosecutor forwards the original and an OIA-specified number of copies to OIA in time for the documents to be translated, assembled, authenticated, and sent through the Department of State to the foreign government within any specified deadline.

Although variations exist, extradition requests generally are composed of:

- An affidavit from the prosecutor explaining the facts of the case and the charged offenses.

- Copies of the statutes alleged to have been violated and the statute of limitations.

- If the fugitive has not been prosecuted, certified copies of the arrest warrant and complaint or indictment.

- Evidence, which may need to be in the form of witness affidavits, reports or documentary evidence, or summaries thereof, establishing that the crime was committed, including sufficient evidence (i.e., photograph, fingerprints, and affidavit of identifying witness) to establish the defendant's identity.

- If the fugitive has been convicted, a certified copy of the order of judgment and committal establishing the conviction, and an affidavit (i) stating that the sentence was not served or was only partially served, (ii) specifying the amount of time remaining to be served, and (iii) providing evidence concerning identity.

Prosecutors should be aware that while there are few workable defenses to extradition, appeals and delays are common. Fugitives may be able to contest extradition on the basis of minor inconsistencies resulting from clerical or typographical errors. Although it may be possible to remedy these alleged defects, that process takes time. Therefore, pay careful attention to detail in preparing the documents.

[cited in JM 9-15.230]

[updated April 2018]


9-15.250 - PROCEDURE AFTER ASSEMBLING DOCUMENTS

After assembling the documents required in support of extradition, the prosecutor should review them carefully to ensure that all names, dates, and charges mentioned in the affidavit and accompanying exhibits are consistent, and then forward the documents to OIA for review.  Prosecutors should not execute affidavits, nor have witnesses do so, until the OIA attorney who covers the country approves the drafts.

Once the drafts have been approved by OIA, the prosecutor should forward the original(s) and an OIA-specified number of copies of the entire package to OIA.  OIA can submit the package for translation on behalf of the prosecutor.  Translations can take three weeks to complete, even for common languages. The cost of translating the extradition package will be billed to the U.S. Attorney's Office or State prosecutor's office requesting extradition. See JM 9-15.900.  OIA secures the required certifications on the original extradition documents and transmits it to the Department of State.

[updated April 2018]


9-15.300 - PROCEDURE IN THE FOREIGN COUNTRY

The Department of State will send the extradition documents and the translation, if any, to the U.S. Embassy in the foreign country, which will present them under cover of a diplomatic note formally requesting extradition to the appropriate agency of the foreign government, usually the foreign ministry. The request and supporting documents are then forwarded to the foreign court or other body responsible for determining whether the requirements of the

treaty and the country's domestic law have been met.

In general, the foreign government's decision on the extradition request is based on the request itself and any evidence presented by the fugitive. Because the U.S. prosecutor will not have the opportunity to appear before the foreign court, the written submission, particularly the prosecutor's affidavit, must be as persuasive as possible. This is essential when the charges are based on statutes unique to U. S. law, such as RICO or CCE.

Though factual defenses to extradition are limited, the fugitive may delay a decision through procedural challenges. The determination of extraditability is often subject to review or appeal. Prediction of the time required to return an individual to the United States is difficult and depends on the circumstances of the individual case and the practice of the foreign country involved.

[updated April 2018]

### 9-15.400 - RETURN OF THE FUGITIVE

Once the foreign authorities notify the Criminal Division's Office of International Affairs (OIA) or the U.S. Embassy that the fugitive is ready to be surrendered, OIA will inform the prosecutor and arrange with the appropriate law enforcement agency, most often the U. S. Marshals Service, for agents to escort the fugitive to the United States. U. S. Marshals provide the escort even in a State case. However, in some cases arrangements are made for State or other federal law enforcement agents to accompany the U.S. Marshals or conduct the escort themselves. If the fugitive is a foreign national, OIA will ask the DHS to authorize Significant Public Benefit Parole to permit the foreign national to enter the country.  If the fugitive is a U.S. citizen, a valid U.S. travel document will be required for the fugitive's travel to the United States.  The State Department is responsible for issuing U.S. travel documents, including passports for U.S. citizens.  OIA can provide AUSAs with the appropriate points of contact at the State Department.

[updated April 2018]

### 9-15.500 - POST EXTRADITION CONSIDERATIONS—LIMITATIONS ON FURTHER PROSECUTION

Every extradition treaty limits extradition to certain offenses. As a corollary, all extradition treaties restrict prosecution or punishment of the fugitive to the offense for which extradition was granted unless (1) an offense was committed after the fugitive's extradition or (2) the fugitive remains in the jurisdiction that requested extradition after expiration of a reasonable time (generally specified in the extradition treaty itself) following acquittal or completion of his or her punishment. This limitation is referred to as the Rule of Specialty. Federal prosecutors who wish to proceed against an extradited person on charges other than those for which extradition was granted must contact the Office of International Affairs (OIA) for guidance regarding the availability of a waiver of the Rule by the sending State.

Frequently, defendants who have been extradited to the United States attempt to dismiss or limit the government's case against them by invoking the Rule of Specialty. There is a split in the courts on whether the defendant has standing to raise specialty: some courts hold that only a party to the Treaty (i.e., the sending State) may complain about an alleged violation of the specialty provision, other courts allow the defendant to raise the issue on his or her own behalf, and still other courts take a middle position and allow the defendant to raise the issue if it is likely that the sending State would complain as well. Whenever a defendant raises a specialty claim, the prosecutor should contact OIA for assistance in responding.

OIA attorneys are subject-matter experts on extradition, and OIA is responsible for ensuring that the government's position in such cases remains consistent.  Federal prosecutors should consult with OIA regarding issues raised by a fugitive after return to the United States regarding his or her extradition.

[updated April 2018]

### 9-15.600 - ALTERNATIVES TO EXTRADITION

A fugitive may not be subject to extradition for any number of reasons, if he or she is a national of the country of refuge and that country does not extradite its nationals, the crime is not an extraditable offense, the statute of limitations has run in the foreign country, or the fugitive has been prosecuted in the country of refuge or in another country for the same conduct for which extradition is requested.

There may be alternative methods available to secure the return of the fugitive or to limit his or her ability to live or travel overseas. OIA will advise the prosecutor concerning the availability of these methods. These alternative methods are discussed in JM 9-15.610- 650.

[cited in JM 9-15.225]

[updated April 2018]

### 9-15.610 - DEPORTATIONS, EXPULSIONS, OR OTHER LAWFUL METHODS OF RETURN

If the fugitive is not a national or lawful resident of the country in which he or she is located, the Criminal Division's Office of International Affairs (OIA), through the Department of State or other channels, may ask that country to deport, expel, or otherwise effectuate the lawful return of the fugitive to the United States.

In *United States v. Alvarez-Machain*, 504 U.S. 655 (1992), the Supreme Court held that a court has jurisdiction to try a criminal defendant even if the defendant was abducted from a foreign country against his or her will by United States agents. Though this decision reaffirmed the long-standing proposition that personal jurisdiction is not affected by claims of abuse in the process by which the defendant is brought before the court, see *Ker v. Illinois*, 119 U.S. 436 (1886); *Frisbie v. Collins*, 342 U.S. 519 (1952), it sparked concerns about potential violations of foreign sovereignty, territorial integrity, and criminal law.

Due to the sensitivity of abducting defendants from a foreign country, prosecutors may not take steps to secure custody over persons outside the United States (by government agents or the use of private persons, like bounty hunters or private investigators) by means of *Alvarez-Machain* type returns without advance approval by the Department of Justice. Prosecutors must consult with OIA before they undertake any such operation. If a prosecutor anticipates that a defendant may raise a claim that his return was illegal, the prosecutor must consult with OIA before such return.

Fugitives deported to the United States or otherwise legally returned without a formal order of extradition may claim that they were returned illegally to the United States.  The courts generally dispose of those arguments under the Ker-Frisbie doctrine.

[cited in JM 9-15.600]

[updated April 2018]

### 9-15.630 - LURES

A lure involves using a subterfuge to entice a criminal defendant to leave a foreign country so that he or she can be arrested in the United States, in international waters or airspace, or in a third country for subsequent extradition, expulsion, or deportation to the United States. Lures can be complicated schemes or they can be as simple as inviting a fugitive by telephone to a party in the United States.

Some countries will not extradite a person to the United States if the person's presence in that country was obtained through the use of a lure or other ruse. In addition, some countries may view a lure of a person from its territory as an infringement on its sovereignty or criminal law. Consequently, a prosecutor must consult with the Office of

International Affairs (OIA) and secure approval from the Criminal Division before undertaking a lure. Prosecutors contemplating a lure should consult with OIA as early as possible. If OIA concurs with the lure proposal, OIA will recommend that a Deputy Assistant Attorney General (DAAG) in the Criminal Division approve the lure. Lure approval authority resides with the DAAG.

[updated April 2018]

### 9-15.635 - INTERPOL RED NOTICES

An Interpol Red Notice is an international "lookout" and is the closest instrument to an international arrest warrant in use today. Please be aware that if a fugitive is arrested pursuant to a Red Notice, the prosecutor's office is obligated to do whatever work is required to produce the necessary extradition documents within the time limits prescribed by the controlling extradition treaty or, in the absence of a treaty, the arresting country's domestic law, whenever and wherever the fugitive is arrested. Further, the prosecutor's office is obliged to pay the expenses pursuant to the controlling treaty.

Interpol Red Notices are useful when the fugitive's location or countries to which he or she may travel, are unknown. Red Notices may be broadly distributed or tailored specifically to countries to which it is believed the fugitive will travel. For additional information about Interpol Red Notices, see www.interpol.int//INTERPOL-expertise/Notices   .

Because many countries will arrest a fugitive based solely on a Red Notice, it is the responsibility of the prosecutor to inform Interpol if a Red Notice should be withdrawn.

[updated April 2018]

### 9-15.640 - REVOCATION OF U.S. PASSPORTS

The Department of State may revoke the passport of a U.S. citizen who is the subject of an outstanding Federal or State warrant. Revocation of a U.S. passport can result in loss of the fugitive's lawful residence status in a foreign country, which may lead to his or her deportation.

[updated April 2018]

### 9-15.650 - FOREIGN PROSECUTION

If the fugitive has taken refuge in the country of which he or she is a national, and is thereby not extraditable, it may be possible to ask that country to prosecute the individual for the crime that was committed in the United States. This can be an expensive and time consuming process and in some countries domestic prosecution is limited to certain specified offenses. In addition, a request for domestic prosecution in a particular case may conflict with U.S. law enforcement efforts to change the "non-extradition of nationals" law or policy in the foreign country. Whether this option is available or appropriate should be discussed with OIA.

[cited in JM 9-15.600]

### 9-15.700 - FOREIGN EXTRADITION AND PROVISIONAL ARREST REQUESTS

Foreign requests for extradition of fugitives located in the United States are ordinarily submitted by the embassy of the country making the request to the Department of State, which reviews and forwards them to the Criminal Division's Office of International Affairs (OIA). Such requests may seek the fugitive's provisional arrest for purposes of extradition or may seek extradition and be fully supported by all documents required under the applicable treaty. (Under more contemporary extradition treaties, requests for provisional arrest may be transmitted directly to the Department of Justice if the treaty permits. See JM 9-15.230 for an explanation of provisional arrest.)

The Department of State works with OIA to determine compliance with the treaty requirements.  The Department of State will separately verify in a transmission to OIA that there is a treaty in force between the United States and the country making the request, that the crime or crimes are extraditable offenses under the terms of the treaty, and that the supporting documents are properly certified.

When OIA receives a foreign extradition request, in summary, the following occurs:

1. OIA reviews the request, and, if it is sufficient and appropriate, forwards it to the U.S. Attorney's Office in the district where the fugitive is located.
2. An Assistant United States Attorney will be assigned to the case and will seek a warrant for the fugitive's arrest.  Once arrested, the fugitive is brought before the magistrate judge or the district judge, who informs the fugitive of the reasons for the arrest and the nature of the proceedings.  The prosecutor, when appearing in court in support of the request for extradition, is representing the United States in fulfilling its obligations under the extradition treaty.
3. The government opposes bond in extradition cases.
4. Neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure apply.  Fed. R. Evid. 1101(d)(3), Fed. R. Crim. P. 1(a)(5)(A).  Both the extradition statute, 18 U.S.C.§ 3184, and the local rules of most federal courts provide that a magistrate judge may conduct extradition proceedings.
5. A hearing under 18 U.S.C. § 3184 is scheduled to determine whether the fugitive is extraditable. When scheduling the extradition hearing in cases of provisional arrest, prosecutors should ensure that courts are cognizant of the time allotted in the treaty for submission of the documents in support of the request. Prosecutors should also take into account the transmission of the documents from the Department of State to the court and counsel.  If the court finds the fugitive to be extraditable, it certifies the extradition and sends the record to the Secretary of State, who decides whether to surrender the fugitive. In some cases a fugitive may waive the extradition process or consent to extradition.
6. Although the certification of extradition following the hearing is not appealable (by either the fugitive or the government), the fugitive may petition for a writ of habeas corpus under 28 U.S.C. § 2241 as soon as the certification is issued. The district court's decision on the writ of habeas corpus is subject to appeal, and the extradition may be stayed if the court so orders.
7. Prosecutors must notify OIA immediately if a habeas petition is filed.
8. Following the decision of the Secretary of State (or his or her designees) to issue the surrender warrant, OIA notifies the foreign government and arranges for the transfer of the fugitive to the custody of the agents of the country requesting extradition.

OIA attorneys are subject-matter experts on extradition, and OIA is responsible for ensuring that the government's position in such cases remains consistent.  Therefore, prosecutors must consult with OIA regarding both pleadings and significant legal issues arising in extradition litigation.

[updated June 2018]


9-15.800 - PLEA AGREEMENTS AND RELATED MATTERS—PROHIBITION

Persons who are cooperating with a prosecutor may try to include a "no extradition" clause in their plea agreements. Such agreements, whether formal or informal, may be given effect by the courts. If a foreign country subsequently requests the person's extradition, the United States faces the unpleasant dilemma of breaching its solemn word either to the person involved or to its treaty partner. *Petition of Geisser*, 627 F.2d 745 (5th Cir. 1980), describes the enormous practical problems of resolving such a dilemma. Related matters involve agreements with potential witnesses to prevent or delay their removal.

Prosecutors may not agree either formally or informally to prevent or delay extradition or removal unless they submit a written request for authorization, and receive an express written approval from the Assistant Attorney General, Criminal Division. Requests should be submitted to the Office of International Affairs (OIA) after endorsement by the

head of the section or office responsible for supervising the case.

Similarly, prosecutors may not agree, either formally or informally, absolutely not to share with a foreign government evidence provided by an individual or entity without prior approval from OIA.  (Prosecutors may, however, without seeking OIA approval, agree with individuals or entities that they will share such evidence only under the same conditions that bind U.S. prosecutors, as long as any such agreement does not discriminate against foreign authorities.) OIA will work with prosecutors to ensure that production of evidence and information developed in U.S. cases is consistent with U.S. law enforcement interests as well as treaty obligations.  In appropriate cases, OIA can invoke provisions of the treaty to ensure that foreign authorities use the evidence produced consistent with any conditions or limitations that may apply to disclosure or use of the evidence.

[cited in JM 9-16.020; JM 9-73.510][updated June 2018]

### 9-15.900 - COSTS RELATING TO EXTRADITIONS

In general, translation costs associated with the extradition of fugitives from abroad are borne by the requesting USAO or state prosecutor's office. In extraditions in federal cases, the U.S. Marshals Service generally pays the transportation and lodging costs associated with transporting a prisoner back to the United States. Translation costs associated with a foreign government's request for extradition are generally borne by the foreign government. Prosecutors should contact OIA for additional information in specific cases.

[updated June 2018]

‹ 9-14.000 - Transfers And Obtaining Prisoners For Prosecution                    up                    9-16.000 - Pleas - Federal Rule Of Criminal Procedure 11 ›

# EXHIBIT D

| 109TH CONGRESS 2d Session | SENATE | TREATY DOC. 109–14 |
| --- | --- | --- |

# EXTRADITION AGREEMENT WITH THE EUROPEAN UNION

---

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

AGREEMENT ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND THE EUROPEAN UNION (EU), SIGNED ON JUNE 25, 2003 AT WASHINGTON, TOGETHER WITH TWENTY-TWO BILATERAL INSTRUMENTS WHICH SUBSEQUENTLY WERE SIGNED BETWEEN THE UNITED STATES AND EACH EUROPEAN UNION MEMBER STATE IN ORDER TO IMPLEMENT THE AGREEMENT WITH THE EU. THE AGREEMENT INCLUDES AN EXPLANATORY NOTE WHICH IS AN INTEGRAL PART OF THE AGREEMENT



SEPTEMBER 28, 2006.—Agreement was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

49–118 ★ (STAR PRINT)          WASHINGTON : 2006

# LETTER OF TRANSMITTAL

––––––––––

THE WHITE HOUSE, *September 28, 2006.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Agreement on Extradition between the United States of America and the European Union (EU), signed on June 25, 2003, at Washington, together with 22 bilateral instruments that subsequently were signed between the United States and European Union Member States in order to implement the Agreement with the EU, and an explanatory note that is an integral part of the Agreement. I also transmit, for the information of the Senate, the report of the Department of State with respect to the Agreement and bilateral instruments. The bilateral instruments with three EU Member States, Estonia, Latvia, and Malta, take the form of comprehensive new extradition treaties, and therefore will be submitted individually.

A parallel agreement with the European Union on mutual legal assistance, together with bilateral instruments will be transmitted to the Senate separately. These two agreements are the first law enforcement agreements concluded between the United States and the European Union. Together they serve to modernize and expand in important respects the law enforcement relationships between the United States and the 25 EU Member States, as well as formalize and strengthen the institutional framework for law enforcement relations between the United States and the European Union itself.

The U.S.-EU Extradition Agreement contains several provisions that should improve the scope and operation of bilateral extradition treaties in force between the United States and each EU Member State. For example, it requires replacing outdated lists of extraditable offenses included in 10 older bilateral treaties with the modern "dual criminality" approach, thereby enabling coverage of such newer offenses as money laundering. Another important provision ensures that a U.S. extradition request is not disfavored by an EU Member State that receives a competing request for the person from another Member State pursuant to the newly created European Arrest Warrant. Finally, the Extradition Agreement simplifies procedural requirements for preparing and transmitting extradition documents, easing and speeding the current process.

I recommend that the Senate give early and favorable consideration to the Agreement and bilateral instruments.

GEORGE W. BUSH.

(III)

# LETTER OF SUBMITTAL

----------

DEPARTMENT OF STATE,
*Washington, August 2, 2006.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmittal to the Senate for advice and consent to ratification, the Agreement on Extradition between the United States and the European Union (EU) ("U.S.-EU Extradition Agreement"), signed on June 25, 2003. Also being submitted together with the U.S.-EU Extradition Agreement are 22 bilateral instruments that were signed by the United States and EU Member States during 2004–2006. The bilateral instruments with three EU Member States, Estonia, Latvia, and Malta, take the form of comprehensive new extradition treaties, and therefore are being submitted individually. I recommend that the U.S.-EU Extradition Agreement, including an explanatory note which is an integral part of the Agreement, and the related bilateral instruments be transmitted to the Senate for its advice and consent to ratification. The Department of Justice joins me in this recommendation.

Respectfully submitted.

CONDOLEEZZA RICE.

Attachments:
1. Overview and analysis of the provisions of the Agreement.
2. Draft message to the Senate.

## U.S.-EU EXTRADITION AGREEMENT

### OVERVIEW

The U.S.-EU Extradition Agreement selectively amends and supplements existing United States bilateral extradition treaties with all Member States of the EU. A counterpart Agreement on Mutual Legal Assistance between the United States and the European Union is being submitted separately.

Both U.S.-EU Agreements have their origin in a period of intensive consultation between the United States and officials of the European Union and its then-Belgian and Spanish Presidencies, in the aftermath of the September 11, 2001, terrorist attacks, on ways of improving trans-Atlantic cooperation against terrorism. These discussions led to the conclusion that modernization of existing bilateral extradition treaties between the United States and EU Member States would be a valuable step, because a number of such treaties were concluded in the early 20th century and do not reflect more recent improvements in extradition practice. By concluding

(V)

VI

agreements with the European Union, the United States could achieve uniform improvements and expansions in coverage across much of Europe. In addition, the U.S.-EU Agreements would enable the strengthening of an emerging institutional relationship on law enforcement matters between the United States and the European Union, during a period when the EU is actively harmonizing national criminal law procedures and methods of international cooperation.

Negotiation of the U.S.-EU Agreements were conducted during 2002 and 2003. The European Union's delegation was led by officials from Denmark and Greece, which held the EU's rotating Presidency at that time, and also included officials from the Council and Commission. After the U.S.-EU Agreements were signed on June 25, 2003, the United States pursued negotiation with each Member State of implementing bilateral extradition instruments. Initial efforts focused on the fifteen states which were members of the European Union at the time the U.S.-EU Agreements were signed, and then expanded to the additional ten states that joined the EU in 2004. The last of the bilateral instruments were signed on June 9, 2006.

The U.S.-EU Extradition Agreement and bilateral instruments are regarded as self-executing treaties under U.S. law, and thus will not require implementing legislation for the United States. With respect to implementation within the European Union, there is greater complexity. The EU, as a Contracting Party, is responsible for implementation of the obligations contained in the U.S.-EU Extradition Agreement, even though practical application of those obligations would occur at the Member State level. The EU Council would monitor implementation, and empower the Presidency as necessary to ensure that Member States comply in all respects. EU Member States, while formally not Contracting Parties to the U.S.-EU Extradition Agreement, are bound to its provisions under internal EU law. The Member States also would have international obligations to the United States under the bilateral instruments. Most Member States, in order to comply with the requirements of their domestic constitutional order, are, like the United States, pursuing domestic processes in order to ratify both the U.S.-EU Extradition Agreement and the bilateral instrument. A number of Member States also secured domestic parliamentary endorsement of the U.S.-EU Extradition Agreement prior to its signature.

The following is an article-by-article description of the provisions of the U.S.-EU Extradition Agreement.

The Preamble underscores that cooperation between the United States and European Union Member States serves to protect democratic society and our common values, including the rights of individuals and the rule of law.

Article 1 ("Object and Purpose") states that the United States and the EU undertake to provide enhancements to cooperation in the context of applicable extradition relations between the United States and individual EU Member States, in the manner provided in the U.S.-EU Extradition Agreement. Since extradition between the United States and EU Member States is carried out pursuant to bilateral extradition treaties, this phrasing underscores the obli-

VII

gation to supplement and, where necessary, modify these existing bilateral treaties to effectuate the terms of the U.S.-EU Extradition Agreement.

Article 2 ("Definitions") defines three terms used frequently in the U.S.-EU Extradition Agreement: "Contracting Parties," "Member States," and "Ministry of Justice."

Article 2(1) provides that the Contracting Parties to the U.S.-EU Extradition Agreement are the United States and the European Union. Under Articles 24 and 38 of the Treaty of European Union, the European Union may enter into international agreements in the area of criminal judicial cooperation. The Member State then holding the rotating Presidency (Denmark, followed by Greece) led negotiations for the European Union. At the conclusion of negotiations, Greece was authorized unanimously by the European Council to sign the U.S.-EU Extradition Agreement on behalf of the European Union.

Article 3 ("Scope of application") (1) provides that the Contracting Parties shall ensure that the provisions of the U.S.-EU Extradition Agreement are applied in relation to existing bilateral extradition treaties between the United States and EU Member States. Thus the EU is responsible as the Party to the Agreement for ensuring that Member States make the necessary changes in their bilateral extradition relationships with the United States.

The remainder of Article 3(1) specifies the manner in which existing bilateral extradition treaties between the United States and EU Member States are affected by Articles 4–14 of the U.S.-EU Extradition Agreement. Some of these articles serve to supplement or modify the existing provisions in all bilateral extradition treaties between the United States and EU Member States, while others only affect certain bilateral treaties. There were two main reasons for this approach. One was to update a significant number of outmoded extradition treaties in force between the United States and EU Member States that were 35 to 100 years old, but not to affect more modern treaties that already had similar or identical provisions to those contained in the U.S.-EU Extradition Agreement. The other reason was that certain provisions contained in the U.S.-EU Extradition Agreement facilitated cooperation to a greater extent than some existing bilateral treaties. Article 3 therefore ensures that the U.S.-EU Extradition Agreement's provisions affect only those bilateral treaties that would be enhanced thereby.

Accordingly, paragraph 1(a) provides that Article 4 (applying a "dual criminality" approach to extraditable offenses) replaces the extraditable offense provisions of older treaties in which extradition is available only with respect to a list of specified offenses. Paragraph 1(b) provides that Article 5 (streamlining the formal process of authenticating and transmitting extradition requests) replaces the existing corresponding provisions of all existing treaties. Paragraph 1(c) provides that Article 6 (authorizing direct transmission of provisional arrest requests between justice ministries) applies only where the existing treaty does not already have such a provision. Paragraph 1(d) provides that Article 7 (authorizing delivery of the formal extradition request to the embassy of the requested State in the requesting State in order to satisfy the time restrictions for detaining a person provisionally arrested) supplements ex-

VIII

isting bilateral treaty provisions. Paragraph 1(e) provides that Article 8 (setting forth the procedure for the request and submission of supplemental information) applies to the extent the existing treaty does not already have such a procedure. Paragraph 1(f) provides that Article 9 (authorizing temporary surrender of persons) applies only where the existing treaty does not already have such a provision. Paragraph 1(g) provides that Article 10 (setting forth the procedure for deciding among competing extradition requests, including requests for surrender among European Union Member States under the European Arrest Warrant) both replaces the competing request provision of all existing treaties, and supplements any existing treaty that does not already have such a provision. Paragraph 1(h) provides that Article 11 (authorizing simplified extradition or waiver of extradition) applies only where the existing treaty does not already have such a provision. Paragraph 1(i) provides that Article 12 (setting forth the procedure for transit) applies only to the extent that the existing treaty does not already have such a procedure. Paragraph 1(j) provides that Article 13 (governing capital punishment) may be applied in place of the corresponding provision of the existing treaty. Finally, paragraph 1(k) provides that Article 14 (setting forth the procedure governing the treatment of sensitive information in a request) applies where the existing treaty does not already have such a provision.

The extent to which current individual extradition treaties with EU Member States are modified or supplemented by application of these substantive provisions is described later in this analysis, on a country-by-country basis.

Article 3(2) elaborates on the EU's obligation to ensure the application of the provisions of the U.S.-EU Extradition Agreement by its Member States. Specifically, the EU shall ensure that each Member State acknowledges the consequential changes to its existing bilateral extradition treaty by entering into a written "instrument" with the United States, that is, a free-standing international agreement binding under international law. The EU also must ensure that countries acceding to the European Union after the entry into force of the U.S.-EU Extradition Agreement and having extradition treaties with the United States conclude bilateral instruments with the United States after accession or preferably prior thereto.

Paragraph 3 states that the U.S.-EU Extradition Agreement shall apply in extradition relations between the United States and a new Member State from the date of notification that internal procedures for the bilateral instrument have been completed.

There are both legal and practical reasons for the requirement of a bilateral instrument between the United States and each EU Member State. As a matter of international law, the conclusion of a bilateral instrument conveys to the United States the sovereign consent of the Member State to the changes required in treaties concluded and applied at the bilateral level, rather than relying entirely on the effect of EU internal law to ensure application of changes in bilateral treaties to which the European Union itself is not party.

In addition, as a practical matter, since extradition treaties are litigated and interpreted extensively in national courts, it was seen

as important to delineate in instruments concluded at the bilateral level the changes made by the U.S.-EU Extradition Agreement in these bilateral treaties. The consequential changes are set out either in a revised integrated text of the particular treaty (included as an Annex to the instrument) or in provisions placed in the instrument itself specifically delineating the new operative language. Conclusion of bilateral instruments thus serves to ease application of the revised treaties for practitioners and the judiciary.

Article 4 ("Extraditable offenses") updates the provisions of ten older extradition treaties currently in force that use the outmoded approach of permitting extradition only with respect to a list of offenses set forth in the treaty. As discussed above concerning Article 3(1)(a), Article 4 replaces the extraditable offense provisions only in such older treaties. The replacement provision corresponds to that of many other modern U.S. extradition treaties.

Paragraph 1 defines an offense as extraditable if the conduct on which the offense is based is punishable under the laws in both States for a period exceeding one year or more severe penalty, thus obviating the need to renegotiate the treaty as additional offenses become punishable under the laws in both States; it provides for attempt, conspiracy and participation offenses to be considered extraditable; and it provides a minimum sentence remaining to be served if extradition is sought for the enforcement of a sentence already imposed. The Parties intended to include the offenses of aiding, abetting, counseling or procuring the commission of an offense, as well as being an accessory to an offense, under the broad description of participation.

Paragraph 2 provides that if extradition is granted for an extraditable offense, it shall also be granted for any other offense specified in the request that is punishable by one year's imprisonment or less, provided that all other requirements for extradition are met.

Paragraph 3 provides flexibility so that a dual-criminality determination is not impeded by the fact that (a) each country may place the offense in a different category of offenses, or describe the offense by different terminology; (b) use of interstate transportation, use of the mails or other facilities affecting interstate or foreign commerce is a jurisdictional element of a U.S. federal offense for which tradition is sought; or (3) in tax, customs duties, currency control or import or export control cases, both States do not provide for the same kind of tax, duty or control.

Finally, paragraph 4 provides that extradition shall be granted with regard to offenses committed outside the territory of the requesting State if the requested State provides for punishment of the conduct in such circumstances, and where it does not, the executive authority of the requested State, in its discretion, may grant extradition if all other applicable requirements for extradition are met.

Article 5 ("Transmission and authentication of documents") addresses two separate issues. Paragraph 1 provides that transmission of requests for extradition and their supporting documents shall be through the diplomatic channel, including in the manner provided for in Article 7 (which addresses a special circumstance in which a state's Embassy may receive an extradition request).

x

Paragraph 2 provides that extradition documents bearing the seal or certificate of the Ministry of Justice (as defined in Article 2) or Foreign Ministry of the requesting State are admissible as evidence in extradition proceedings. Under the terms of Article 3(1)(b), this provision replaces the certification and authentication provisions of existing bilateral treaties. With respect to extradition documents intended for use in extradition proceedings in the United States, this procedure simplifies the often burdensome authentication procedure contained in older treaties, in a manner consistent with U.S. law, 18 U.S.C. 3190, and at the same time provides sufficient indicia of authenticity.

Article 6 ("Transmission of requests for provisional arrest") is intended, pursuant to Article 3(1)(c), to supplement the terms of some old extradition treaties in which there is currently no provision for provisional arrest requests to be sent directly between the U.S. Department of Justice and the foreign Ministry of Justice. Article 6 also permits the use of Interpol as an alternative channel for submission of provisional arrest requests. These channels typically are more rapid than the diplomatic channel and, therefore, are particularly useful for making provisional arrest requests when time is of the essence.

Article 7 ("Transmission of documents following provisional arrest") supplements the terms of existing bilateral extradition treaties between the United States and EU Member State (see Article 3(1)(d)). It provides that the requesting State may satisfy its obligation to transmit its extradition request and supporting documents within the time limit specified following the provisional arrest of the fugitive, by submitting them to the embassy of the requested State in the requesting State. This approach, already provided for in several recent U.S. extradition treaties, *e.g.* the 2001 treaty with Lithuania, codifies existing jurisprudence (*see, e.g.*, *United States* v. *Wiebe*, 733 F.2d 549 (8th Cir. 1984), and *Bozilov* v. *Seiffert*, 983 F.2d 140 (9th Cir., 1993)).

For those bilateral treaties lacking such a procedure, Article 8 ("Supplemental information") authorizes a State making an extradition request to furnish supplemental information within a time period specified by the requested State, if the request for extradition otherwise would be insufficient to fulfill the treaty's requirements. Article 8 also specifies that such supplementary information may be requested and furnished directly between the ministries of justice concerned and need not be transmitted through the diplomatic channel.

Similarly, where the current bilateral treaty does not already do so (see Article 3(1)(f)), Article 9 ("Temporary Surrender") provides a procedure for temporarily extraditing a person being proceeded against or serving a sentence in the requested State. The requesting State shall keep the person so surrendered in custody and return him to the requested State after the conclusion of the proceedings, in accordance with conditions determined by mutual agreement of the States.

Article 10 ("Request for extradition or surrender made by several States") replaces existing provisions of bilateral extradition treaties concerning competing requests for extradition and supplements existing treaties that contain no such provision (see Article 3(1)(g).

XI

Paragraph 1 provides that the executive authority of the requested State shall determine to which State to surrender a person whose extradition is sought by more than one State. Paragraph 2 provides that if an EU Member State receives a request for surrender pursuant to the European Arrest Warrant ("EAW") and a request for extradition from the United States, the designated competent authority of the EU Member State shall determine to which State to surrender the person. Paragraph 3 contains a non-exhaustive list of factors to be considered in making a determination under either of these scenarios. As a result, this provision makes clear, as a matter of treaty law, that a EAW request to one EU Member State from another does not take precedence over a competing U.S. extradition request. Since the merits of both requests are judged by the paragraph 3 criteria, the provision bestows the same status upon a U.S. request for extradition as upon a request for surrender under the EAW, for purposes of determining which request shall be given priority.

In connection with Article 10, the Explanatory Note to the U.S.-EU Extradition Agreement states that the Contracting Parties agree that this provision is not intended to affect the obligations of States Parties to the International Criminal Court (ICC) or the rights of the United States as a non-Party to the ICC. This reflects that the U.S.-EU Extradition Agreement does not provide a legal basis for the ICC to take jurisdiction over U.S. persons, or for an EU Member State to extradite U.S. persons to the ICC.

Under Article 11 ("Simplified extradition procedures"), for those bilateral treaties that do not already contain such a provision (see Article 3(1)(h)), a procedure is established for surrendering the person sought as expeditiously as possible if he agrees to be surrendered to the requesting State without further proceedings.

Similarly, where the current bilateral treaty does not already do so (see Article 3(1)(i)), Article 12 ("Transit"), paragraphs 1 through 3, provides a procedure for transit through the territory of one State of a person being surrendered to the other State by a third State or from the other State to a third State. If the current bilateral extradition treaty contains a transit provision that does not specify a procedure for cases of unscheduled landings in the transit State, only paragraph 3 is to be applied. Paragraph 2 also authorizes the detention of the person during the period of transit.

Article 13 ("Capital punishment") provides that when an offense for which extradition is sought is punishable by death under the laws in the requesting State but not under the laws in the requested State, the requested State may grant extradition on condition that the death penalty shall not be imposed or, if for procedural reasons such condition cannot be complied with by the requesting State, on condition that if imposed the death penalty shall not be carried out. This formulation is analogous to those of other modern U.S. extradition treaties and corresponds to the practice that has developed in death penalty cases. In essence, where prosecuting authorities have discretion to not seek the death penalty, the requested State may subject extradition to the condition that the death penalty not be imposed. However, where, under the procedures applicable in the jurisdiction seeking extradition, this discretion is not absolute, an assurance of non-imposition of the death

XII

penalty cannot be made. In this case, extradition may be subjected only to the condition that if the death penalty is imposed, it shall not be carried out. Under Article 3(1)(j), this provision may be applied to replace existing provisions on capital punishment or where the existing treaty contains no such provision.

Under Article 14 ("Sensitive information in a request"), where a current bilateral treaty does not already do so (see Article 3(1)(k)), a procedure is established whereby a requesting State that is considering the submission of particularly sensitive information in its extradition request may consult the requested State to determine the extent to which such information can be protected. The requesting State can thereupon determine whether or not it should include the information in the request.

Under Article 15 ("Consultations"), the United States and the European Union, as the Contracting Parties, shall consult for purposes of enabling the most effective use of the U.S.-EU Extradition Agreement, including to facilitate resolution of disputes regarding its application or interpretation.

Article 16 ("Temporal application") provides that the U.S.-EU Extradition Agreement applies to offenses committed before as well as after it enters into force. Articles 4 (extraditable offenses) and 9 (temporary surrender) apply to requests pending in a requested State at the time of the U.S.-EU Extradition Agreement's entry into force; otherwise the Agreement applies only to requests for extradition made after its entry into force.

Article 17 ("Non-derogation"), paragraph 1, makes clear that the U.S.-EU Extradition Agreement's provisions do not preclude the assertion of a ground for refusal set forth in the applicable extradition treaty in respect of a matter not governed by the U.S.-EU Extradition Agreement. Under paragraph 2, consultations are to take place between the requesting and requested States should a constitutional principle or judicial decision binding upon the requested State pose an impediment to the fulfillment of the obligation to extradite, and resolution of the matter is not provided for in the U.S.-EU Extradition Agreement or the applicable bilateral extradition treaty. Such situations occasionally arise in extradition relations as constitutional jurisprudence evolves in national courts.

Article 18 ("Future bilateral extradition treaties with Member States") provides that the United States and EU Member States may conclude future bilateral extradition agreements consistent with the U.S.-EU Extradition Agreement. In the Explanatory Note, it is clarified that should measures set forth in the U.S.-EU Extradition Agreement create operational difficulties for the United States or a Member State, and consultations alone cannot remedy the difficulty, a future bilateral agreement with that Member State could contain an operationally feasible alternative mechanism that satisfies the objectives of the provision in question.

Article 19 ("Designation and notification") provides that the EU shall notify the United States of designations pursuant to Article 2(3) (the authority designated as "Ministry of Justice" for purposes of the functions specified in the U.S.-EU Extradition Agreement) or 10(2) (the authority competent to determine priority between a U.S. extradition request and a European Arrest Warrant request),

prior to the exchange of bilateral written instruments between the United States and Member States under Article 3(2).

Under Article 20 ("Territorial application"), paragraph 1, the U.S.-EU Extradition Agreement applies to the United States of America, to EU Member States, to territories for whose external relations a Member State is responsible, and to countries for whom the member has other duties pertaining to their external relations, where agreed upon by exchange of diplomatic note between the EU and United States, duly confirmed by the relevant Member State. Several EU Member States have such responsibilities; hence, this enables the United States and the EU to agree to include such territories or countries within the ambit of the U.S.-EU Extradition Agreement. Under paragraph 2, application of the U.S.-EU Extradition Agreement to such territories or countries may be terminated upon a six-month prior written notice through the diplomatic channel, again where confirmed between the United States and the Member State concerned.

Article 21 ("Review") provides that the United States and the EU will carry out a common review of the U.S.-EU Extradition Agreement no later than five years after its entry into force, in particular for purposes of addressing its practical implementation and the consequences of the further development of the European Union in relation to the subject matter of the U.S.-EU Extradition Agreement, including Article 10.

Article 22 ("Entry into force and termination"), paragraph 1, provides that the U.S.-EU Extradition Agreement shall enter into force on the first day following the third month after the date on which the United States and the EU have indicated that they have completed their internal procedures for this purpose. The exchange of instruments of ratification between the United States and the European Union shall also indicate that the bilateral instruments between the United States and all EU Member States have been completed. Paragraph 2 provides that either the United States or the EU may terminate the U.S.-EU Extradition Agreement by giving written notice to the other, with such termination effective six months after the date of such notice.

*Bilateral Instruments between the United States and EU Member States implementing the U.S.-EU Extradition Agreement*

As noted above, Article 3(2) of the U.S.-EU Extradition Agreement requires the conclusion of a written instrument between the United States and each Member State, indicating the application of the Agreement's provisions in the bilateral extradition relationship. The following discussion delineates the content and character of each of these instruments (except for the three that take the form of full treaties), and any understandings reached between the United States and individual Member States in the course of negotiations.

The title chosen for the "written instrument" required by Article 3(2) of the U.S.-EU Extradition Agreement varies among the Member States. Most Member States preferred to retain the general term "Instrument" as used in the U.S.-EU Agreement, but others preferred more specific descriptions utilized under their national law that also are consistent with the binding character of the in-

XIV

strument under international law. Thus, instruments with several Member States (e.g. Germany, Czech Republic) are termed supplementary treaties, while other Member States (e.g. Austria and Greece) preferred the similar term "protocol." Still others chose the more general "Agreement" (e.g. Netherlands, Poland).

Each instrument first expresses the agreement of the Parties to apply the provisions of the U.S.-EU Extradition Agreement under the terms laid out in Article 3 of that Agreement. The new textual provisions to be applied are either specified verbatim in the instrument or set out in an annex containing a revised consolidated text. The United States regarded the annex form as preferable from the perspective of U.S. courts and practitioners called upon to interpret a particular extradition treaty with a Member State. A majority of Member States agreed. This approach will ease application of a number of treaties, such as the extradition treaty with Spain, which previously had been amended piecemeal through three protocols and only now will be available in integrated form.

Other Member States, however, opted for non-integrated texts, in which only the newly operative supplemental or replacement language is set forth and is located in the instrument itself rather than in a separate annex. These Member States regarded inclusion of a consolidated text as not permitted by their domestic law. The consequence of the non-integrated approach is only that reference to both the instrument and the pre-existing treaty is necessary in order to apply the entire set of obligations between the United States and the Member State.

Each instrument, for reasons of clarity, also recites the provision on temporal application from the U.S.-EU Extradition Agreement, stating that the instrument applies to offenses committed before as well as after it enters into force, but, in general, does not apply to requests made prior to its entry into force.

Instruments with several Member States required specification as to their geographic scope. These states—Denmark, the Netherlands and the United Kingdom—exercise foreign relations responsibilities for territories or independent countries, including applying the European state's law enforcement treaties on their behalf. However, since the geographic scope of the European Union for purposes of criminal justice cooperation does not necessarily extend to all these territories and countries, the provisions of the U.S.-EU Extradition Agreement would not apply to them unless specifically stipulated. Consequently, the relevant bilateral instruments spell out whether extradition relations with the United States in respect of these territories and countries would continue to be governed by the pre-existing treaties in unmodified form.

Each bilateral instrument also contains a provision on entry into force and termination. Entry into force of each instrument occurs on the date of entry into force of the U.S.-EU Extradition Agreement, after exchange of notifications. Eighteen Member States will ratify both the U.S.-EU Extradition Agreement and the bilateral instrument, since they serve to amend bilateral treaties which previously also were ratified. Four Member States regard formal ratification of the U.S.-EU Extradition Agreement as unnecessary under their domestic constitutional order, however, as authority in this respect has been deemed to have been granted to the EU, but will

ratify the implementing bilateral instrument. Three Member States viewed it as unnecessary to ratify even the bilateral instrument.

Finally, in the event of termination of the U.S.-EU Extradition Agreement—a step that would, of course, take place between the Parties to this Agreement—the bilateral instrument also shall terminate. Thereupon application of the pre-existing bilateral treaties, which are regarded as suspended while the bilateral instruments are in force, would resume. The United States and the Member States could, however, agree bilaterally to continue to apply some or all of the provisions in the bilateral instrument derived from the U.S.-EU Extradition Agreement.

*Austria*

The bilateral extradition instrument with Austria was signed on July 20, 2005, and is entitled a protocol of the 1998 U.S.-Austria Extradition Treaty. Articles 1–6 of the bilateral protocol incorporate six provisions of the U.S.-EU Extradition Agreement into the 1998 treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 10(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 10(5); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article 10(6); Article 8(2) of the U.S.-EU Extradition Agreement (channel for transmission of supplementary information) is added as Article 11(4); Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several states) replaces Article 17; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 11 bis.

With respect to final provisions, Articles 7 and 8 of the bilateral protocol reflect the provisions of Articles 16 (temporal application) and 22 (entry into force and termination) of the U.S.-EU Extradition Agreement.

*Belgium*

The bilateral extradition instrument with Belgium was signed on December 16, 2004. Paragraph 1 of the bilateral instrument specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Belgium. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply between the United States and Belgium. Paragraphs 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 1987 U.S.-Belgium Extradition Treaty. Seven substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 1987 Treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 7(1) of the 1987 Treaty; Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 8; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests

following provisional arrest) is added as Article 7(5); Article 8 of the U.S.-EU Extradition Agreement (supplementary information) is added as Article 7 bis; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 13; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 6(1); and Article 14 (sensitive information in a request) is added as Article 8 bis.

*Cyprus*

The bilateral extradition instrument with Cyprus was signed on January 20, 2006. Paragraph 1 of the bilateral instrument specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Cyprus. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply between the United States and Cyprus. Paragraphs 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex to the instrument integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 1996 U.S.-Cyprus Extradition Treaty. Seven substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 1996 Treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) is the same text as the first sentence of Article 8(1) of the 1996 Treaty; Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 9; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added to the end of Article 8(1); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article 8(5)(b); Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 14; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 6; and Article 14 (sensitive information in a request) is added as Article 8(8).

*Czech Republic*

The bilateral extradition instrument with the Czech Republic was signed on May 16, 2006, and is entitled a second supplementary treaty to the 1925 U.S.-Czechoslovak Extradition Treaty and the 1935 Supplementary Extradition Treaty. Articles 1–5 and 7–14 of the supplementary treaty incorporate twelve provisions of the U.S.-EU Extradition Agreement as follows: Article 4 of the U.S.-EU Extradition Agreement (extraditable offenses) is reflected in new formulations replacing Articles I and II of the 1925 Treaty; Articles 5(1) (mode of transmission of requests), 6 (channel of transmission of requests for provisional arrest) and 7(1) (transmission of requests following provisional arrest) of the U.S.-EU Extradition Agreement are combined into a new formulation which replaces Article XI(2)–(4); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) is added as Article XI(6); Article 8 of the U.S.-EU Extra-

dition Agreement (supplementary information) is added as Article XIa; Article 9 of the U.S.-EU Extradition Agreement (temporary surrender) is incorporated through a new formulation of Article VI(1), and the addition of Article VIa; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article VII; Article 11 of the U.S.-EU Extradition Agreement (simplified extradition procedures) is added as Article XIc; Article 12 of the U.S.-EU Extradition Agreement (transit) is added as Article XIIa; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) is added as Article XIIb; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article XIb.

With respect to final provisions, Articles 14, 16 and 17 of the bilateral supplementary treaty contain provisions on temporal application, entry into force and termination, based on those set forth in Articles 16 and 22 of the U.S.-EU Extradition Agreement.

Although not required by the U.S.-EU Extradition Agreement, the United States and the Czech Republic also agreed to replace Article IX of the 1925 Treaty (costs) with a more modern provision, which is set forth in Article 6 of the bilateral supplementary treaty. Similarly, in Article 15 of the supplementary treaty, the United States and the Czech Republic agreed to a provision on periodic consultations between the Parties.

*Denmark*

The bilateral extradition instrument with Denmark was signed on June 23, 2005, and is entitled an agreement. The bilateral agreement, in paragraph 1, specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Denmark. Paragraph 2 provides that the Annex to the agreement reflects the integrated text that shall apply between the United States and Denmark. Paragraph 3, in accordance with Article 20 of the U.S.-EU Extradition Agreement, provides that the instrument shall not apply to Greenland or the Faroe Islands unless the United States and the EU, by exchange of diplomatic notes duly confirmed by Denmark, subsequently agree otherwise. Paragraph 4 contains rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 1972 U.S.-Denmark Extradition Treaty. Eleven substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 1972 Treaty as follows: Article 4 of the U.S.-EU Extradition Agreement (extraditable offenses) replaces Articles 2, 3 and 4(2); Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 11(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 11(5); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article 11(7); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article 13(3); Article 9 of the U.S.-EU Extradition Agreement (temporary

surrender) is added as Article 13 bis; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 15; Article 11 of the U.S.-EU Extradition Agreement (simplified extradition procedures) is added as Article 13 ter; Article 12(3) of the U.S.-EU Extradition Agreement (transit) is added as Article 18(3); Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 8; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 11(8).

### Estonia

On February 8, 2006, the United States and Estonia signed a new bilateral extradition treaty incorporating all of the requirements set forth in Articles 4–14 of the U.S.-EU Extradition Agreement. This new treaty, which is being separately transmitted to the Senate for advice and consent to ratification, serves as the instrument called for in Article 3 of the U.S.-EU Extradition Agreement.

### Finland

The bilateral extradition instrument with Finland was signed on December 16, 2004, and is entitled a protocol to the 1976 U.S.-Finland Extradition Treaty. Paragraph 1 of the bilateral protocol specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Finland. Paragraph 2 provides that the Annex to the protocol reflects the provisions that shall be applied between the United States and Finland, together with the unaffected provisions of the 1976 Treaty. Paragraphs 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex sets forth the texts of provisions derived from the U.S.-EU Extradition Agreement that are to be applied to the 1976 Treaty. Eleven substantive provisions of the U.S.-EU Extradition Agreement are incorporated therein, as follows: Article 4 of the U.S.-EU Extradition Agreement (extraditable offenses) replaces Articles 2 and 3(3); Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 13(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 13(5); Article 6(2) of the U.S.-EU Extradition Agreement (channel for transmission of requests for provisional arrest) is added as Article 14(4); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article 13(7); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article 15(3); Article 9 of the U.S.-EU Extradition Agreement (temporary surrender) is added as Article 16 bis; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 18; Article 11 of the U.S.-EU Extradition Agreement (simplified extradition) is added as Article 15 bis; Article 12(3) of the U.S.-EU Extradition Agreement (transit procedure in the event of unscheduled landing of aircraft) is added as

XIX

Article 20(3); and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 20 bis.

*France*

The bilateral extradition instrument with France was signed on September 30, 2004. Paragraph A of Articles I–VII sets forth the text of the articles of the U.S.-EU Extradition Agreement applicable between the United States and France. Paragraph B of Articles I–VII specifies the extent to which these provisions supplement or replace provisions of the 1996 U.S.-France Extradition Treaty, and provides other necessary explanations regarding the manner in which the U.S.-EU Extradition Agreement is to operate. Article VIII and IX contain rules of temporal application, entry into force and termination based on those set forth in Articles 16 and 22 of the U.S.-EU Extradition Agreement.

Seven provisions of the U.S.-EU Extradition Agreement are incorporated into the 1996 Treaty as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 10(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 11; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) supplements the terms of Articles 10 and 13; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several states) replaces Article 17; Article 11 of the U.S.-EU Extradition Agreement (simplified extradition procedures) supplements the terms of the 1996 Treaty; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 7, and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) supplements the provisions of the 1996 Treaty.

With respect to declarations under Article 19 of the U.S.-EU Extradition Agreement, France has designated the Chambre d'instruction de la Cour d'Appel as the competent authority that will decide under Article 10(2) between a U.S. request for extradition and a request for surrender pursuant to the European Arrest Warrant for the same individual.

*Germany*

The bilateral extradition instrument with Germany was signed on April 18, 2006, and is entitled a second supplementary treaty to the 1978 U.S.-Germany Extradition Treaty and the 1986 Supplementary Extradition Treaty. Articles 1–6 of the second supplementary treaty incorporate six U.S.-EU Extradition Agreement provisions into the existing bilateral extradition treaties as follows: Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 29; Article 6 of the U.S.-EU Extradition Agreement (channel for transmission of requests for provisional arrest) is added as the final sentence of Article 16(1); Article 7 of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article 16(5), with the existing Article 16(5) being renumbered as 16(6); Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several states) re-

xx

places Article 17; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 12; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 15 bis.

With respect to final provisions, Articles 7 and 8 of the second supplementary treaty reflect the provisions of Articles 16 (temporal application) and 22 (entry into force and termination) of the U.S.-EU Extradition Agreement.

*Greece*

The bilateral extradition instrument with Greece was signed on January 18, 2006, and is entitled a protocol to the 1931 U.S.-Greece Extradition Treaty and its 1937 protocol. Articles 1 through 12 of the second protocol incorporate twelve provisions of the U.S.-EU Extradition Agreement into the existing extradition treaties, as follows: Article 4 of the U.S.-EU Extradition Agreement (extraditable offenses) modifies Article I and replaces Article II; Article 5 of the U.S.-EU Extradition Agreement (mode of transmission of requests and certification, authentication or legalization requirements) is incorporated into a formulation that replaces Article XI(2); Article 6 of the U.S.-EU Extradition Agreement (channel for transmission of request for provisional arrest) supplements the provisions of Article XI; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) supplements the provisions of Article XI; Articles 8 (supplemental information), 9 (temporary surrender), 11 (simplified extradition procedures), 12 (transit), 13 (capital punishment) and 14 (sensitive information in a request) of the U.S.-EU Extradition Agreement generally supplement the provisions of the existing extradition treaties. Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article VII; and Article 12 of the second protocol confirms that other provisions of the existing treaties remain in force, and that the second protocol shall be interpreted consistent with the U.S.-EU Extradition Agreement.

With respect to final provisions, Articles 13 and 14 of the bilateral protocol reflect the provisions of Article 16 (temporal application) and 22 (entry into force and termination) of the U.S.-EU Extradition Agreement.

*Hungary*

The bilateral extradition instrument with Hungary was signed on November 15, 2005, and is entitled a protocol to the 1994 U.S.-Hungary Extradition Treaty. Articles 1 through 5 of the bilateral protocol incorporate five articles of the U.S.-EU Extradition Agreement into the 1994 Treaty, as follows: Article 5(1) and 7(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) are incorporated into a formulation that replaces Article 8(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 9; Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article 12(1A); Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 15; and Arti-

XXI

cle 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 9A.

With respect to final provisions, Articles 6 and 7 of the bilateral protocol reflect the provisions of Article 16 (temporal application) and 22 (entry into force and termination) of the U.S.-EU Extradition Agreement.

*Ireland*

The bilateral extradition instrument with Ireland was signed on July 14, 2005. Paragraph 1 of the bilateral instrument specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Ireland. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply between the United States and Ireland. Paragraph 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 1983 U.S.-Ireland Extradition Treaty. Ten substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 1983 Treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article VIII(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) is added as Article VIII(7); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article VIII(8); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article IX(3); Article 9 of the U.S.-EU Extradition Agreement (temporary surrender) is added as Article VII bis; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article XII; Article 11 of the U.S.-EU Extradition Agreement (simplified extradition procedures) is added as Article XII bis; Article 12(3) of the U.S.-EU Extradition Agreement (transit procedure in event of unscheduled landing of aircraft) is added as Article XV(2); Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article VI; and Article 14 of the U.S.-EU Extradition Agreement) sensitive information is a request) is added as Article VIII bis.

With respect to declarations under Article 19 of the U.S.-EU Extradition Agreement, Ireland has designated the High Court, or such other authority as it may designate, as the competent authority that will decide under Article 10(2) between a U.S. request for extradition and a request for surrender pursuant to the European Arrest Warrant for the same individual.

*Italy*

The bilateral extradition instrument will Italy was signed on May 3, 2006. Paragraph 1 of the bilateral instrument specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Italy. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply be-

XXII

tween the United States and Italy. Paragraphs 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 1983 U.S.-Italy Extradition Treaty. Seven substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 1983 Treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article X(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article X(7); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article X(8); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article XI(3); Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article XV; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article IX; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article XI bis.

*Latvia*

On December 7, 2005, the United States and Latvia signed a new bilateral extradition treaty incorporating all of the requirements set forth in Articles 4–14 of the U.S.-EU Extradition Agreement. This new treaty, which is being separately transmitted to the Senate for advice and consent to ratification, serves as the instrument called for in Article 3 of the U.S.-EU Extradition Agreement.

*Lituania*

The bilateral extradition instrument with Lithuania was signed on June 15, 2005, and is entitled a protocol to the 2001 U.S.-Lithuania Extradition Treaty. The bilateral protocol, in paragraph 1, specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Lithuania. Paragraph 2 provides that the Annex to the protocol reflects the integrated text that shall apply between the United States and Lithuania. Paragraphs 3–5 contain rules of temporal application, entry into force and termination, based on those set forth in Articles 16 and 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 2001 Treaty. Seven substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 2001 Treaty as follow; Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 8(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 9; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisionals arrest) is already reflected in existing Article 11(4); Article 8 of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article 8 bis; Article 10 of the U.S.-EU Extradition Agreement (re-

XXIII

quests for extradition or surrender made by several States) re-places Article 14; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 7; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 8 ter.

*Luxembourg*

The bilateral extradition instrument with Luxembourg was signed on February 1, 2005. Paragraph A of Articles I–VII sets forth the text of the articles of the U.S.-EU Extradition Agreement applicable between the United States and Luxembourg. Paragraph B of Articles I–VII specifies the extent to which these provisions supplement or replace provisions of the 1996 U.S.-Luxembourg Extradition Treaty, and provides other necessary explanations regarding the manner in which the U.S.-EU Extradition Agreement is to operate. Articles VIII–IX contain rules of temporal application, entry into force and termination based on those set forth in Articles 16 and 22 of the U.S.-EU Extradition Agreement.

Seven provisions of the U.S.-EU Extradition Agreement are incorporated into the 1996 Treaty as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 8(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication of legalization requirements) replaces Article 10; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) supplements the terms of Article 8; Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) supplements the terms of Article 9; Article 10(2) of the U.S.-EU Extradition Agreement (decision on competing request for extradition by United States and request for surrender under the European Arrest Warrant) supplements Article 15; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 7; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) supplements the provisions of the 1996 Treaty.

*Malta*

On May 18, 2006, the United States and Malta signed a new bilateral extradition treaty incorporating all of the requirements set forth in Articles 4–14 of the U.S.-EU Extradition Agreement. This new treaty, which is being separately transmitted to the Senate for advice and consent to ratification, serves as the instrument called for in Article 3 of the U.S.-EU Extradition Agreement.

*The Netherlands*

The bilateral extradition instrument with the Netherlands was signed on September 29, 2004, and is entitled an agreement. Article 1 of the bilateral agreement specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and the Netherlands. Article 2 provides that the Annex to the agreement reflects the integrated text that shall apply between the United States and the Netherlands. Article 3, in accordance with Article 20 of the U.S.-EU Extradition Agreement, provides that the instrument shall not apply to the Netherlands Antilles or Aruba

unless the United States and the EU, by exchange of diplomatic notes duly confirmed by the Netherlands, subsequently agree to extend it application to them. Articles 4 and 5 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Article 6 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 1980 U.S.-Netherlands Extradition Treaty. Seven substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 1980 Treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article 9(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 9(6); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article 9(7); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article 10(3); Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 14; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 7(1); and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 10 bis.

In addition, by exchange of diplomatic notes contemporaneous with signature of the agreement, the United States and the Netherlands agreed that the prior exchange of diplomatic notes on July 11, 1991, with respect to the application of Article 8 of the 1980 Treaty, shall continue to apply to Article 8 of the Annex. The exchange of diplomatic notes in conjunction with signing the Agreement also confirms that the prior exchange of notes of December 31, 1985, apply the 1980 Treaty to the Netherlands Antilles and Aruba, remains unaffected by the U.S.-EU Extradition Agreement, and that the explanatory note to the U.S.-EU Extradition Agreement also applies to the corresponding provisions of the Annex.

*Poland*

The bilateral extradition instrument with Poland was signed on June 9, 2006, and is entitled an agreement. Article 1 of the bilateral agreement specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Poland. Article 2 provides that the Annex to the agreement reflects the integrated text that shall apply between the United States and Poland. Articles 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Article 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement and the 1996 U.S.-Poland Extradition Treaty. Six substantive provisions of the U.S.-EU Extradition Agreement are incorporated into the 1996 Treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) is set forth in a new formulation replacing Article 9(1); Ar-

xxv

ticle 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 10; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as a new Article 12(4) (prior Articles 12(4) and (5) are renumbered as Articles 12(5) and (6)); Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 17; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article 6; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 9 bis.

*Portugal*

The bilateral extradition instrument with Portugal was signed on July 14, 2005. Paragraph 1 of the bilateral instrument specifies the articles of the U.S.-EU Extradition Agreement applicable between United States and Portugal. Paragraph 2 provides that, in accordance with Article 2(3) of the U.S.-EU Extradition Agreement, functions allocated to Portugal's Justice Ministry shall be carried out by its Prosecutor General's Office (Procuradoria Geral da República). Paragraph 3 provides that the Annex to the instrument reflects the provisions that shall be applied between the United States and Portugal, without prejudice to provisions of the U.S.-EU Extradition Agreement directly applicable. Paragraph 4 provides, in accordance with Article 17(2) of the U.S.-EU Extradition Agreement, that where the constitutional principles of, or final judicial decisions binding upon, the requested State may pose an impediment to fulfillment of its obligation to extradite, and neither the Annex nor the 1908 U.S.-Portugal Convention on Extradition resolve the matter, consultations shall take place. At the time of signature of the instrument, Portugal made a unilateral declaration stating that under Portuguese constitutional law impediments exist to extradition with respect to offenses punishable by death or by imprisonment for life or for an unlimited duration, and that in the event that extradition could accordingly only be granted in accordance with specific conditions considered consistent with its Constitution, Portugal would invoke Paragraph 4 of the bilateral instrument. Paragraphs 5 and 6 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 7 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex sets forth the texts of provisions derived from the U.S.-EU Extradition Agreement that are to be applied to the 1908 Treaty. Eleven substantive provisions of the U.S.-EU Extradition Agreement are incorporated therein, as follows: Article 4 of the U.S.-EU Extradition Agreement (extraditable offenses) modifies Article I and replaces Article II; Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) and Article 7(1) (transmission of requests following provisional arrest) replace Article XI(2); Articles 5(2) (certification, authentication or legalization requirements), 6 (channel for transmission of requests for provisional arrest), 8 (supplementary information), and 9 (temporary surrender) supplement the provisions of the 1908 Treaty; Article 10

of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article VII; and Articles 11 (simplified extradition), 12 (transit), and 14 (sensitive information in a request) of the U.S.-EU Extradition Agreement supplement the provisions of the 1908 Treaty.

With respect to declarations under Article 19 of the U.S.-EU Extradition Agreement, Portugal has designated its competent judicial authority as the authority that will decide under Article 10(2) of the U.S.-EU Extradition Agreement between a U.S. request for extradition and a request for surrender pursuant to the European Arrest Warrant for the same individual.

### Slovak Republic

The bilateral extradition instrument with the Slovak Republic was signed on February 6, 2006. Paragraph 1 of the bilateral instrument specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and the Slovak Republic. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply between the United States and the Slovak Republic. Paragraphs 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Article 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement with the 1925 U.S.-Czechoslovakia Extradition Treaty and the 1935 Supplementary Extradition Treaty. Twelve substantive provisions of the U.S.-EU Extradition Agreement are incorporated, as follows: Article 4 of the U.S.-EU Extradition Agreement (extraditable offenses) is reflected through the modification of Article I and replacement of Article II; Articles 5(1) (mode of transmission of requests) and 7(1) (transmission of requests following provisional arrest) of the U.S.-EU Extradition Agreement are combined into a new formulation which replaces former Article XI (numbered in the Annex as Article XII(2)); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) is added as Article XII(6); Article 6 of the U.S.-EU Extradition Agreement (channel of transmission of requests for provisional arrest) is added as Article XII(3); Article 8 of the U.S.-EU Extradition Agreement (supplementary information) is added as Article XIII; Article 9 of the U.S.-EU Extradition Agreement (temporary surrender) is reflected in the modification of Article VI and the addition of Article VII: Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces former Article VII of the existing treaty (numbered in the Annex as Article VIII); Article 11 of the U.S.-EU Extradition Agreement (simplified extradition procedures) is added as Article XV; Article 12 of the U.S.-EU Extradition Agreement (transit) is added as Article XVII; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) is added as Article XVIII; and Article 14 of U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article XIV.

Although not required by the U.S.-EU Extradition Agreement, the United States and the Slovak Republic also agreed to revise Articles IV (rule of specialty), X (costs), and XII (4) (provisional arrest) of the 1925 Treaty to provide for more modern formulae, and to make minor numbering and terminological modifications in the Annex.

*Slovenia*

The bilateral extradition instrument with Slovenia was signed on October 17, 2005, and is entitled an agreement. Paragraph 1 of the bilateral agreement specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Slovenia. Paragraph 2 provides that the Annex to the agreement reflects the provisions that shall be applied between the United States and Slovenia. Paragraphs 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex sets forth the texts of provisions derived from the U.S.-EU Extradition Agreement that are to be applied to the 1901 U.S.-Serbia Extradition Treaty currently in force between the United States and Slovenia. Twelve substantive provisions of the U.S.-EU Extradition Agreement are incorporated therein, as follows: Article 4 of the U.S.-EU Extradition Agreement (extraditable offenses) modifies Article 1 and replaces Article 2; Articles 5(1) (mode of transmission of requests) and 7(1) (transmission of requests following provisional arrest) of the U.S.-EU Extradition Agreement replace Article 3(1); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 3(3); Article 6 of the U.S.-EU Extradition Agreement (channel for transmission of requests for provisional arrest) replaces Article 4(1); Article 8 of the U.S.-EU Extradition Agreement (supplementary information) is added as Article 3 bis; Article 9 of the U.S.-EU Extradition Agreement (temporary surrender) is added as Article 10 bis; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article 10; Article 11 of the U.S.-EU Extradition Agreement (simplified extradition) is added as Article 10 ter; Article 12 of the U.S.-EU Extradition Agreement (transit) is added as Article 11 bis; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) is added as Article 8 bis; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 3 ter.

With respect to declarations under Article 19 of the U.S.-EU Extradition Agreement, Slovenia has designated the Supreme Court of the Republic of Slovenia, or such other authority as the Republic of Slovenia may subsequently designate, as the competent authority that will decide under Article 10(2) of the U.S.-EU Extradition Agreement between a U.S. request for extradition and a request for surrender pursuant to the European Arrest Warrant for the same individual.

XXVIII

*Spain*

The bilateral extradition instrument with Spain was signed on December 17, 2004. The bilateral instrument, in paragraph 1, specifies the articles of the U.S.-EU Extradition Agreement applicable between the U.S. and Spain. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply between the U.S. and Spain, and paragraphs 3–5 contain rules of temporal application, entry into force and termination based on those set forth in Articles 16 and 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement, and the U.S.-Spain Extradition Treaty signed May 29, 1970, the Supplementary Treaty signed January 25, 1975, the Second Supplementary Treaty signed February 9, 1988, and the Third Supplementary Treaty signed March 12, 1996. Eight substantive provisions of the U.S.-EU Extradition Agreement are incorporated therein as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of request) replaces Article X(A); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article X(F); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article X(H); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article XII, third paragraph; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) replaces Article XIV; Article 12 of the U.S.-EU Extradition Agreement (transit) is added as Article XV bis; Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article VII; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article X bis.

In addition, at the time of signature of the instrument, Spain declared that if the requesting State does not accept the conditions set forth in Article 13 (capital punishment) of the U.S.-EU Agreement, extradition shall not be granted.

*Sweden*

The bilateral extradition instrument with Sweden was signed on December 16, 2004. Paragraph 1 of the bilateral instrument specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and Sweden. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply between the United States and Sweden. Paragraphs 3 and 4 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 5 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates the applicable provisions of the U.S.-EU Extradition Agreement, the 1961 U.S.-Sweden Extradition Convention and the 1983 U.S.-Sweden Supplementary Convention. Ten substantive provisions of the U.S.-EU Extradition Agreement are incorporated therein, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) replaces Article X(1); Article 5(2) of the U.S.-EU Extradition Agreement (certifi-

XXIX

cation, authentication or legalization requirements) replaces Articles X(5); Article 6 of the U.S.-EU Extradition Agreement (alternative channel for transmission of requests for provisional arrest) is added to Article XIII(1); Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is added as Article X(7); Article 8 of the U.S.-EU Extradition Agreement (submission of supplementary information) is added as Article XII; Article 10 of the U.S.-EU Extradition Agreement (requests for extradition or surrender made by several States) is added as Article XVI; Article 11 of the U.S.-EU Extradition Agreement (simplified extradition procedures) is added as Article XVII; Article 12(3) of the U.S.-EU Extradition Agreement (procedures for transit in the event of unscheduled landing of aircraft) is added as Article XV(3); Article 13 of the U.S.-EU Extradition Agreement (capital punishment) replaces Article VII; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) ia added as Article XI.

*United Kingdom*

The bilateral extradition instrument with the United Kingdom was signed on December 16, 2004. The instrument foresees the entry into force of the 2003 U.S.-U.K. Extradition Treaty prior to, or contemporaneous with, the entry into force of the instrument.

The bilateral instrument, in paragraph 1, specifies the articles of the U.S.-EU Extradition Agreement applicable between the United States and the United Kingdom. Paragraph 2 provides that the Annex to the instrument reflects the integrated text that shall apply between the United States and the United Kingdom. Paragraph 3, in accordance with Article 20 of the U.S.-EU Extradition Agreement, provides that the instrument applies to Great Britain and Northern Ireland, but not to the Channel Islands, the Isle of Man or other territories to which the 2003 Treaty applies. Paragraphs 4 and 5 contain rules of temporal application, based on those set forth in Article 16 of the U.S.-EU Extradition Agreement. Paragraph 6 contains the provisions on entry into force and termination, based on those set forth in Article 22 of the U.S.-EU Extradition Agreement.

The Annex integrates six provisions of the U.S.-EU Extradition Agreement into the 2003 Treaty, as follows: Article 5(1) of the U.S.-EU Extradition Agreement (mode of transmission of requests) is incorporated through Articles 8(1) and 12(4); Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) replaces Article 9; Article 7(1) of the U.S.-EU Extradition Agreement (transmission of requests following provisional arrest) is incorporated through Article 12(4); Article 8(2) of the U.S.-EU Extradition Agreement (channel for submission of supplementary information) is added as Article 10(2); Article 10 of the U.S.-EU Extradition Agreement (decision on competing request for extradition by United States and request for surrender under the European Arrest Warrant) replaces Article 15; and Article 14 of the U.S.-EU Extradition Agreement (sensitive information in a request) is added as Article 8 bis.

In addition, upon signature of the bilateral instrument, the United States and United Kingdom exchanged diplomatic notes

xxx

stating that Article 5(2) of the U.S.-EU Extradition Agreement (certification, authentication or legalization requirements) will not be applied until such time as the United Kingdom enacts enabling legislation for that purpose. Until then, the Parties shall apply Article 9 of the 2003 Treaty.



AGREEMENT

ON EXTRADITION

BETWEEN THE UNITED STATES OF AMERICA

AND THE EUROPEAN UNION

USA/EU/EXTR/en 1

2

## CONTENTS

Preamble

Article 1 ............................................................................................ Object and Purpose

Article 2 ........................................................................................ Definitions

Article 3 ........................................... Scope of application of this Agreement in relation to
bilateral extradition treaties with Member States

Article 4 ............................................................................. Extraditable offences

Article 5 ...................................................... Transmission and authentication of documents

Article 6 ........................................... Transmission of requests for provisional arrest

Article 7 ........................................ Transmission of documents following provisional arrest

Article 8 ............................................................ Supplemental information

Article 9 .......................................................... Temporary surrender

Article 10 ............................................ Requests for extradition or surrender made by several States

3

Article 11 ................................................................................Simplified extradition procedures

Article 12 .............................................................................................................. Transit

Article 13 ...........................................................................................Capital Punishment

Article 14 ...............................................................................Sensitive information in a request

Article 15 .......................................................................................................... Consultations

Article 16 ...............................................................................................Temporal Application

Article 17 ...............................................................................................Non-derogation

Article 18 ................................................Future bilateral extradition treaties with Member States

Article 19 ...............................................................................Designation and notification

Article 20 ...............................................................................Territorial application

Article 21 .......................................................................................................Review

Article 22 ...............................................................................Entry into force and termination

Explanatory Note

4

THE UNITED STATES OF AMERICA AND THE EUROPEAN UNION,

DESIRING further to facilitate cooperation between the United States of America and the European Union Member States,

DESIRING to combat crime in a more effective way as a means of protecting their respective democratic societies and common values,

HAVING DUE REGARD for rights of individuals and the rule of law,

MINDFUL of the guarantees under their respective legal systems which provide for the right to a fair trial to an extradited person, including the right to adjudication by an impartial tribunal established pursuant to law,

DESIRING to conclude an Agreement relating to the extradition of offenders,

HAVE AGREED AS FOLLOWS:

USA/EU/EXTR/en 4

5

### ARTICLE 1
#### Object and Purpose

The Contracting Parties undertake, in accordance with the provisions of this Agreement, to provide for enhancements to cooperation in the context of applicable extradition relations between the United States of America and the Member States governing extradition of offenders.


### ARTICLE 2
#### Definitions

1.   "Contracting Parties" shall mean the United States of America and the European Union.

2.   "Member State" shall mean a Member State of the European Union.

3.   "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and for a Member State, its Ministry of Justice, except that with respect to a Member State in which functions described in Articles 3, 5, 6, 8 or 12 are carried out by its Prosecutor General, that body may be designated to carry out such function in lieu of the Ministry of Justice in accordance with Article 19, unless the United States and the Member State concerned agree to designate another body.

6

ARTICLE 3

Scope of application of this Agreement in relation

to bilateral extradition treaties with Member States

1.   The United States of America and the European Union, pursuant to the Treaty on European Union, shall ensure that the provisions of this Agreement are applied in relation to bilateral extradition treaties between the United States of America and the Member States, in force at the time of the entry into force of this Agreement, under the following terms:

(a)   Article 4 shall be applied in place of bilateral treaty provisions that authorize extradition exclusively with respect to a list of specified criminal offences;

(b)   Article 5 shall be applied in place of bilateral treaty provisions governing transmission, certification, authentication or legalization of an extradition request and supporting documents transmitted by the requesting State;

(c)   Article 6 shall be applied in the absence of bilateral treaty provisions authorizing direct transmission of provisional arrest requests between the United States Department of Justice and the Ministry of Justice of the Member State concerned;

(d)   Article 7 shall be applied in addition to bilateral treaty provisions governing transmission of extradition requests;

7

(e)  Article 8 shall be applied in the absence of bilateral treaty provisions governing the submission of supplementary information; where bilateral treaty provisions do not specify the channel to be used, paragraph 2 of that Article shall also be applied;

(f)  Article 9 shall be applied in the absence of bilateral treaty provisions authorizing temporary surrender of persons being proceeded against or serving a sentence in the requested State;

(g)  Article 10 shall be applied, except as otherwise specified therein, in place of, or in the absence of, bilateral treaty provisions pertaining to decision on several requests for extradition of the same person;

(h)  Article 11 shall be applied in the absence of bilateral treaty provisions authorizing waiver of extradition or simplified extradition procedures;

(i)  Article 12 shall be applied in the absence of bilateral treaty provisions governing transit; where bilateral treaty provisions do not specify the procedure governing unscheduled landing of aircraft, paragraph 3 of that Article shall also be applied;

(j)  Article 13 may be applied by the requested State in place of, or in the absence of, bilateral treaty provisions governing capital punishment;

(k)  Article 14 shall be applied in the absence of bilateral treaty provisions governing treatment of sensitive information in a request.

8

2.   (a)   The European Union, pursuant to the Treaty on European Union, shall ensure that each Member State acknowledges, in a written instrument between such Member State and the United States of America, the application, in the manner set forth in this Article, of its bilateral extradition treaty in force with the United States of America;

     (b)   The European Union, pursuant to the Treaty on European Union, shall ensure that new Member States acceding to the European Union after the entry into force of this Agreement and having bilateral extradition treaties with the United States of America, take the measures referred to in subparagraph (a);

     (c)   The Contracting Parties shall endeavour to complete the process described in subparagraph (b) prior to the scheduled accession of a new Member State, or as soon as possible thereafter.  The European Union shall notify the United States of America of the date of accession of new Member States.

3.   If the process described in paragraph 2(b) is not completed by the date of accession, the provisions of this Agreement shall apply in the relations between the United States of America and that new Member State as from the date on which they have notified each other and the European Union of the completion of their internal procedures for that purpose.

9

ARTICLE 4

Extraditable offences

1.    An offence shall be an extraditable offence if it is punishable under the laws of the requesting and requested States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.  An offence shall also be an extraditable offence if it consists of an attempt or conspiracy to commit, or participation in the commission of, an extraditable offence.  Where the request is for enforcement of the sentence of a person convicted of an extraditable offence, the deprivation of liberty remaining to be served must be at least four months.

2.    If extradition is granted for an extraditable offence, it shall also be granted for any other offence specified in the request if the latter offence is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

3.    For purposes of this Article, an offence shall be considered an extraditable offence:

(a)    regardless of whether the laws in the requesting and requested States place the offence within the same category of offences or describe the offence by the same terminology;

(b)    regardless of whether the offence is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court; and

USA/EU/EXTR/en 9

10

(c)   in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the requesting and requested States provide for the same kinds of taxes, customs duties, or controls on currency or on the import or export of the same kinds of commodities.

4.   If the offence has been committed outside the territory of the requesting State, extradition shall be granted, subject to the other applicable requirements for extradition, if the laws of the requested State provide for the punishment of an offence committed outside its territory in similar circumstances.  If the laws of the requested State do not provide for the punishment of an offence committed outside its territory in similar circumstances, the executive authority of the requested State, at its discretion, may grant extradition provided that all other applicable requirements for extradition are met.

ARTICLE 5
Transmission and authentication of documents

1.   Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in Article 7.

2.   Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalization.

USA/EU/EXTR/en 10

11

ARTICLE 6

Transmission of requests for provisional arrest

Requests for provisional arrest may be made directly between the Ministries of Justice of the requesting and requested States, as an alternative to the diplomatic channel.  The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request.

ARTICLE 7

Transmission of documents following provisional arrest

1.    If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 5(1), by submitting the request and documents to the Embassy of the requested State located in the requesting State.  In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under the applicable extradition treaty to enable the person's continued detention.

2.    Where a Member State on the date of signature of this Agreement, due to the established jurisprudence of its domestic legal system applicable at such date, cannot apply the measures referred to in paragraph 1, this Article shall not apply to it, until such time as that Member State and the United States of America, by exchange of diplomatic note, agree otherwise.

USA/EU/EXTR/en 11

12

ARTICLE 8

Supplemental information

1.    The requested State may require the requesting State to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfil the requirements of the applicable extradition treaty.

2.    Such supplementary information may be requested and furnished directly between the Ministries of Justice of the States concerned.

ARTICLE 9

Temporary surrender

1.    If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the requested State, the requested State may temporarily surrender the person sought to the requesting State for the purpose of prosecution.

2.    The person so surrendered shall be kept in custody in the requesting State and shall be returned to the requested State at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the requesting and requested States.  The time spent in custody in the territory of the requesting State pending prosecution in that State may be deducted from the time remaining to be served in the requested State.

13

ARTICLE 10

Requests for extradition or surrender made by several States

1.    If the requested State receives requests from the requesting State and from any other State or States for the extradition of the same person, either for the same offence or for different offences, the executive authority of the requested State shall determine to which State, if any, it will surrender the person.

2.    If a requested Member State receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offence or for different offences, the competent authority of the requested Member State shall determine to which State, if any, it will surrender the person.  For this purpose, the competent authority shall be the requested Member State's executive authority if, under the bilateral extradition treaty in force between the United States and the Member State, decisions on competing requests are made by that authority; if not so provided in the bilateral extradition treaty, the competent authority shall be designated by the Member State concerned pursuant to Article 19.

3.    In making its decision under paragraphs 1 and 2, the requested State shall consider all of the relevant factors, including, but not limited to, factors already set forth in the applicable extradition treaty, and, where not already so set forth, the following:

(a)    whether the requests were made pursuant to a treaty;

14

(b)   the places where each of the offences was committed;

(c)   the respective interests of the requesting States;

(d)   the seriousness of the offences;

(e)   the nationality of the victim;

(f)   the possibility of any subsequent extradition between the requesting States; and

(g)   the chronological order in which the requests were received from the requesting States.


ARTICLE 11

Simplified extradition procedures


If the person sought consents to be surrendered to the requesting State, the requested State may, in
accordance with the principles and procedures provided for under its legal system, surrender the
person as expeditiously as possible without further proceedings.  The consent of the person sought
may include agreement to waiver of protection of the rule of specialty.

15

ARTICLE 12
Transit

1.    The United States of America may authorize transportation through its territory of a person surrendered to a Member State by a third State, or by a Member State to a third State. A Member State may authorize transportation through its territory of a person surrendered to the United States of America by a third State, or by the United States of America to a third State.

2.    A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Member State concerned. The facilities of Interpol may also be used to transmit such a request.  The request shall contain a description of the person being transported and a brief statement of the facts of the case.  A person in transit shall be detained in custody during the period of transit.

3.    Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit State.  If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 2.  All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing.

16

ARTICLE 13

Capital Punishment

Where the offence for which extradition is sought is punishable by death under the laws in the requesting State and not punishable by death under the laws in the requested State, the requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting State, on condition that the death penalty if imposed shall not be carried out.  If the requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions.  If the requesting State does not accept the conditions, the request for extradition may be denied.

ARTICLE 14

Sensitive information in a request

Where the requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested State to determine the extent to which the information can be protected by the requested State.  If the requested State cannot protect the information in the manner sought by the requesting State, the requesting State shall determine whether the information shall nonetheless be submitted.

USA/EU/EXTR/en 16

17

### ARTICLE 15
#### Consultations

The Contracting Parties shall, as appropriate, consult to enable the most effective use to be made of this Agreement, including to facilitate the resolution of any dispute regarding the interpretation or application of this Agreement.

### ARTICLE 16
#### Temporal Application

1. This Agreement shall apply to offences committed before as well as after it enters into force.

2. This Agreement shall apply to requests for extradition made after its entry into force. Nevertheless, Articles 4 and 9 shall apply to requests pending in a requested State at the time this Agreement enters into force.

### ARTICLE 17
#### Non-derogation

1. This Agreement is without prejudice to the invocation by the requested State of grounds for refusal relating to a matter not governed by this Agreement that is available pursuant to a bilateral extradition treaty in force between the United States of America and a Member State.

18

2.     Where the constitutional principles of, or final judicial decisions binding upon, the requested State may pose an impediment to fulfilment of its obligation to extradite, and resolution of the matter is not provided for in this Agreement or the applicable bilateral treaty, consultations shall take place between the requested and requesting States.

### ARTICLE 18
#### Future bilateral extradition treaties with Member States

This Agreement shall not preclude the conclusion, after its entry into force, of bilateral Agreements between the United States of America and a Member State consistent with this Agreement.

### ARTICLE 19
#### Designation and notification

The European Union shall notify the United States of America of any designation pursuant to Article 2(3) and Article 10(2), prior to the exchange of written instruments described in Article 3(2) between the United States of America and the Member States.

19

ARTICLE 20

Territorial application

1.    This Agreement shall apply:

(a)    to the United States of America;

(b)    in relation to the European Union to:

– Member States;

– territories for whose external relations a Member State has responsibility, or countries that are not Member States for whom a Member State has other duties with respect to external relations, where agreed upon by exchange of diplomatic note between the Contracting Parties, duly confirmed by the relevant Member State.

2    The application of this Agreement to any territory or country in respect of which extension has been made in accordance with subparagraph (b) of paragraph 1 may be terminated by either Contracting Party giving six months' written notice to the other Contracting Party through the diplomatic channel, where duly confirmed between the United States of America and the relevant Member State.

ARTICLE 21

Review

The Contracting Parties agree to carry out a common review of this Agreement as necessary, and in any event no later than five years after its entry into force.  The review shall address in particular the practical implementation of the Agreement and may also include issues such as the consequences of  further development of the European Union relating to the subject matter of this Agreement, including Article 10.

ARTICLE 22

Entry into force and termination

1.     This Agreement shall enter into force on the first day following the third month after the date on which the Contracting Parties have exchanged instruments indicating that they have completed their internal procedures for this purpose.  These instruments shall also indicate that the steps specified in Article 3(2) have been completed.

USA/EU/EXTR/en 20

21

2.   Either Contracting Party may terminate this Agreement at any time by giving written notice to the other Party, and such termination shall be effective six months after the date of such notice.

In witness whereof the undersigned Plenipotentiaries have signed this Agreement

Done at Washington D.C. on the twenty-fifth day of June in the year two thousand and three, in duplicate in the Danish, Dutch, English, Finnish, French, German, Greek, Italian, Portuguese, Spanish and Swedish languages, each text being equally authentic.

USA/EU/EXTR/en 21

22

For the United States of America
Por los Estados Unidos de América
For Amerikas Forenede Stater
2.  Für die Vereinigten Staaten von Amerika
Για τις Ηνωμένες Πολιτείες της Αμερικής
Pour les Etats-Unis d'Amérique
Per gli Stati Uniti d'America
Voor de Verenigde Staten van Amerika
Pelos Estados Unidos da América
Amerikan yhdysvaltojen puolesta
På Amerikas förenta staters vägnar

3.  For the European Union
Por la Unión Europea
For Den Europæiske Union
Für die Europäische Union
Για την Ευρωπαϊκή Ένωση
Pour l'Union européenne
Per l'Unione europea
Voor de Europese Unie
Pela União Europeia
Euroopan unionin puolesta
På Europeiska unionens vägnar

USA/EU/EXTR/X 3

23

Explanatory Note on the Agreement on Extradition between
the United States of America and the European Union

This Explanatory Note reflects understandings regarding the application of certain provisions of the
Agreement on Extradition between the United States of America and the European Union
(hereinafter "the Agreement") agreed between the Contracting Parties.

On ARTICLE 10

Article 10 is not intended to affect the obligations of States Parties to the Rome Statute of the
International Criminal Court, nor to affect the rights of the United States of America as a non-Party
with regard to the International Criminal Court.

On ARTICLE 18

Article 18 provides that the Agreement shall not preclude the conclusion, after its entry into force,
of bilateral agreements on extradition between the United States of America and a Member State
consistent with the Agreement.

24

Should any measures set forth in the Agreement create an operational difficulty for the United States of America or either one or more Member States, such difficulty should in the first place be resolved, if possible, through consultations between the United States of America and the Member State or Member States concerned, or, if appropriate, through the consultation procedures set out in this Agreement.  Where it is not possible to address such operational difficulty through consultations alone, it would be consistent with the Agreement for future bilateral agreements between the United States of America and the Member State or Member States to provide an operationally feasible alternative mechanism that would satisfy the objectives of the specific provision with respect to which the difficulty has arisen.

25



**COUNCIL OF THE EUROPEAN UNION**
**THE PRESIDENCY**

Washington D.C., 25th June 2003

**NOTE VERBALE**

The Presidency of the Council of the European Union presents its compliments to the United States of America and on the occasion of the signing of the Agreements on extradition and on mutual legal assistance between the European Union and the United States of America, has the honour to make the following declaration, on behalf of the European Union :-

"The European Union states that it is in a process of development of an Area of Freedom, Security and Justice, which may have consequences that affect the Agreements with the United States. These developments will be considered carefully by the Union in particular as regards Article 10, paragraph 2 of the Extradition Agreement. The Union will wish to consult with the United States in order to find solutions to any developments affecting the Agreements, including, if needed, through revision of the Agreements. The Union states that Article 10 does not constitute a precedent for negotiations with third states".

The Presidency of the Council of the European Union avails itself of this opportunity to renew to the United States of America the expression of its highest consideration.

175 Rue de la Loi,
1048 Brussels, Belgium

26

**Protocol to the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Austria signed 8 January 1998, as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003**

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Republic of Austria acknowledge that, in accordance with the provisions of this Protocol, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the Government of the United States of America and the Government of the Republic of Austria signed 8 January 1998 (hereafter "the 1998 Extradition Treaty") under the following terms:

<u>Article 1: Transmission of documents</u>

Pursuant to Article 5(1) of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article 10(1) of the 1998 Extradition Treaty:

"1. Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 6 of this Article."

<u>Article 2: Authentication of documents</u>

Pursuant to Article 5(2) of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article 10(5) of the 1998 Extradition Treaty:

"5. Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Republic of Austria, the Austrian Ministry of Justice."

<u>Article 3: Transmission of documents following provisional arrest</u>

Pursuant to Article 7(1) of the U.S.-EU Extradition Agreement, the following shall be applied as Article 10(6) of the 1998 Extradition Treaty:

"6. If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit

27

2

its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under Article 13(4) of this Treaty to enable the person's continued detention."

### Article 4: Supplemental information

Pursuant to Article 8(2) of the U.S.-EU Extradition Agreement, the following shall be applied as Article 11(4) of the 1998 Extradition Treaty:

"4. Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Austrian Ministry of Justice."

### Article 5: Sensitive information in a request

Pursuant to Article 14 of the U.S.-EU Extradition Agreement, the following shall be applied as Article 11 *bis* of the 1998 Extradition Treaty:

"Article 11 *bis*
SENSITIVE INFORMATION IN A REQUEST

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted."

### Article 6: Requests for extradition or surrender made by several states

Pursuant to Article 10 of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article 17 of the 1998 Extradition Treaty:

"Article 17
REQUESTS FOR EXTRADITION OR SURRENDER MADE BY SEVERAL STATES

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

28

3

2. If the Republic of Austria receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

    (a)   whether the requests were made pursuant to a treaty;
    (b)   the places where each of the offenses was committed;
    (c)   the respective interests of the requesting States;
    (d)   the seriousness of the offenses;
    (e)   the nationality of the victim;
    (f)   the possibility of any subsequent extradition between the requesting States; and
    (g)   the chronological order in which the requests were received from the requesting States."

### Article 7: Temporal application

This Protocol shall apply to offenses committed before as well as after it enters into force.

This Protocol shall not apply to requests for extradition made prior to its entry into force.

### Article 8: Entry into force and termination

1.   This Protocol shall be subject to completion by the Parties of their respective applicable internal procedures for entry into force.  The Parties shall thereupon exchange instruments indicating that such measures have been completed.  This Protocol shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

2.   In the event of termination of the U.S.-EU Extradition Agreement, this Protocol shall be terminated and the 1998 Treaty on Extradition shall be applied.  The Parties nevertheless may agree to continue to apply some or all of the provisions of this Protocol.

29

4

IN WITNESS WHEREOF, the undersigned, being duly authorized by their
respective Governments, have signed this Instrument.

DONE at Vienna, in duplicate, this 20th day of July 2005, in the English and
German languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE          FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA :         REPUBLIC OF AUSTRIA :

Instrument as contemplated by Article 3(2) of the Agreement on Extradition
between the United States of America and the European Union signed 25 June 2003,
as to the application of the Extradition Treaty between
the United States of America and the Kingdom of Belgium signed 27 April 1987

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Kingdom of Belgium acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the United States of America and the Kingdom of Belgium signed 27 April 1987 (hereafter "the 1987 U.S.-Belgium Extradition Treaty") under the following terms:

(a)     Article 5 of the U.S.-EU Extradition Agreement as set forth in Articles 7(1) and 8 of the Annex to this Instrument shall govern the mode of transmission, and requirements concerning certification, authentication or legalization, of the extradition request and supporting documents;

(b)     Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article 7(5) of the Annex to this Instrument shall provide an alternative means for transmission of the request for extradition and supporting documents following provisional arrest;

(c)     Article 8 of the U.S.-EU Extradition Agreement as set forth in Article 7 bis of the Annex to this Instrument shall govern the channel to be used for submitting supplementary information;

(d)     Article 10 of the U.S.-EU Extradition Agreement as set forth in Article 13 of the Annex to this Instrument shall govern the decision on requests made by several States for the extradition or surrender of the same person;

(e)     Article 13 of the U.S.-EU Extradition Agreement as set forth in Article 6(1) of the Annex to this Instrument shall govern extradition with respect to conduct punishable by death in the Requesting State; and

(f)     Article 14 of the U.S.-EU Extradition Agreement as set forth in Article 8 bis of the Annex to this Instrument shall govern consultations where the Requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.      The Annex reflects the integrated text of the provisions of the 1987 U.S.-Belgium Extradition Treaty and the U.S.-EU Extradition Agreement that shall apply upon entry into force of this Instrument.

3.      In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.      This Instrument shall not apply to requests made prior to its entry into force.

1

31

5.    (a)    This Instrument shall be subject to the completion by the United States of
America and the Kingdom of Belgium of their respective applicable internal
procedures for entry into force.  The Governments of the United States of
America and the Kingdom of Belgium shall thereupon exchange instruments
indicating that such measures have been completed.  This Instrument shall enter
into force on the date of entry into force of the U.S.-EU Extradition Agreement.

(b)    In the event of the termination of the U.S.-EU Extradition Agreement,
this Instrument shall be terminated and the 1987 U.S.-Belgium Extradition
Treaty shall be applied.  The Governments of the United States of America and
the Kingdom of Belgium nevertheless may agree to continue to apply some or
all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective
Governments, have signed this Instrument.

DONE at Brussels, in triplicate, this 16th day of December 2004, in the English, French
and Dutch languages, all three texts being equally authentic.

FOR THE GOVERNMENT OF              FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA:      THE KINGDOM OF BELGIUM:

2

32

ANNEX

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA

AND THE KINGDOM OF BELGIUM

Article 1

Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons who have been charged with or found guilty of an extraditable offense within the jurisdiction of one of the Contracting States.

Article 2

Extraditable Offenses

1.      An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2.      If extradition is requested for the execution of a sentence, the sentence originally imposed must have been deprivation of liberty for a period of at least one year or a more severe penalty.

3.      The following shall also be an extraditable offense:

   (a) an attempt to commit one of the offenses described in paragraph 1 or the participation as co-author or accomplice of a person who commits or attempts to commit such an offense; or

   (b) an "association of wrongdoers" formed to commit any of the offensesdescribed in paragraph 1 under the laws of Belgium, or a conspiracy to commit any such offenses as provided by the laws in the United States.

4.      In determining whether an offense is an extraditable offense, the Contracting States:

   (a) shall consider only the essential elements of the offense punishable under the laws of both states; and

   (b) shall not consider as an essential element of an offense punishable in the United States an element such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, since such an element is for the purpose of establishing jurisdiction in a United States federal court; and

   (c) shall disregard that the respective laws do not place the offense within the same category of offenses or describe the offense by the same terminology.

3

33

5.    If extradition has been granted for an extraditable offense or for the execution of a sentence, it shall also be granted for:

(a) any other offense specified in the request even if the latter offense is punishable by less than one year's deprivation of liberty, and

(b) the execution of any other penalty, including a fine, specified in the request for extradition even if the severity of the penalty does not fulfill the requirement of the minimum punishment imposed by paragraph 2, provided that all other requirements for extradition are met.

6.    Extradition shall not be granted if prosecution of the offense or execution of the penalty has been barred by lapse of time under the laws of the Requested State. However, acts constituting an interruption or a suspension of the time-bar in the Requesting State shall be taken into consideration insofar as possible.

Article 3

Nationality

1.    Neither Contracting State shall be bound to extradite its own nationals, but the Executive Authority of the United States shall have the power to extradite such persons if, in its discretion, it be deemed proper to do so.

2.    If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its authorities for prosecution.

Article 4

Political and Military Offenses

1.    Extradition shall not be granted if the offense for which extradition is requested is a political offense.

2.    For the purposes of this Treaty, the following offenses shall not be considered to be political offenses:

(a) a murder or other criminal act directed against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b) the attempt to commit one of the above-mentioned offenses or the participation as co-author or accomplice of a person who commits or attempts to commit such an offense;

(c) an "association of wrongdoers" formed to commit any of the foregoing offenses under the laws of Belgium, or a conspiracy to commit any such offenses as provided by the laws in the United States.

4

34

3.      Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4.      The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

5.      In the event of a conflict between the provisions of paragraphs 1 through 4 of this article and articles 2 and 3 of the Supplementary Treaty on Extradition between the United States of America and the Kingdom of Belgium to Promote the Repression of Terrorism, signed at Washington on March 17, 1987, the latter provisions shall apply when that treaty is in force.


Article 5

Prior Prosecution

1.      Extradition shall not be granted when the person sought has been found guilty, convicted or acquitted in the Requested State for the offense for which extradition is requested.

2.      Extradition shall not be precluded by the fact that the authorities in the Requested State have decided not to prosecute the person sought for the acts for which extradition is requested, or to discontinue any criminal proceedings which have been instituted against the person sought for those acts.


Article 6

Humanitarian Considerations

1.      Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out.  If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions.  If the Requesting State does not accept the conditions, the request for extradition may be denied.

2.      Notwithstanding the provisions of the present Treaty, the executive authority of the Requested State may refuse extradition for humanitarian reasons pursuant to its domestic law.

5

35

## Article 7

### Extradition Procedures and Required Documents

1.    Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 5 of this Article.

2.    Each request shall be supported by:

    (a)  documents, statements, or other types of information which describe the identity, nationality, and probable location of the person sought;

    (b)  information describing the facts of the offense and the procedural history of the case;

    (c)  the text of the law describing the essential elements of the offense for which extradition is requested;

    (d)  the text of the law describing the punishment for the offense;

    (e)  the text or a statement of the provisions of law describing any time limit on the prosecution or the service of the sentence; and

    (f)  the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

3.    A request for extradition of a person who is sought for prosecution shall also be supported by:

    (a)  a copy of the warrant or order of arrest issued by a judge or other competent authority;

    (b)  a copy of the charging document or, if that does not exist, a report issued by the prosecuting authority setting forth the charges against the person sought; and

    (c)  such information as would justify the committal for trial of the person if the offense had been committed in the Requested State.

4.    A request for extradition relating to a person who has been found guilty of the offense for which extradition is sought shall also be supported by:

    (a)  a copy of the judgment of conviction or, if such copy is not available, a statement by a judicial authority that the person has been found guilty;

    (b)  information establishing that the person sought is the person to whom the finding of guilt refers; and

    (c)  a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; or

    (d)  if the person has been found guilty of an offense but no sentence has been imposed, a statement affirming that the Requesting State intends to impose a sentence and a copy of the warrant for the arrest of the person; and

6

36

(e)  in the case of a person who has been found guilty in absentia, the documents required by paragraph 3.

5.      If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State.  In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under Article 10 of this Treaty to enable the person's continued detention.


Article 7 bis

Supplemental Information

1.      The Requested State may require the Requesting State to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Treaty.

2.      Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Belgium.


Article 8

Admissibility of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization.  "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for Belgium, the Ministry of Justice of Belgium.


Article 8 bis

Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State.  If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

7

Article 9

Translation

All documents submitted by the Requesting State shall be translated into the language, or one of the official languages, of the Requested State.


Article 10

Provisional Arrest

1.     In case of urgency, a Contracting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of Belgium. The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request.

2.     The application for provisional arrest shall contain:

   (a)  a description of the person sought;

   (b)  the location of the person sought, if known;

   (c)  a brief statement of the facts of the case, including, if possible, the time and location of the offense;

   (d)  a description of the laws violated;

   (e)  a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

   (f)  a statement that a request for extradition of the person sought will follow.


3.     The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4.     A person who is provisionally arrested may be discharged from custody upon the expiration of 75 days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 7.

5.     The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

8

38

### Article 11

#### Decision and Surrender

1.     The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2.     If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3.     If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4.     If the person sought is not removed from the territory of the Requested State within such time as may be prescribed by the law of that State, he may be discharged from custody, and the Requested State may subsequently refuse extradition for the same offense.

5.     The period of time spent in detention in the Requested State pursuant to the extradition request of the Requesting State shall be subtracted from the period of detention to be served in the Requesting State. The Contracting States agree to communicate to one another such information relating to the period of detention.

### Article 12

#### Temporary and Deferred Surrender

1.  If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States. The time spent in custody in the territory of the Requesting State will be deducted from the time remaining to be served in the Requested State.

2.  The Requested State may postpone the surrender of a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded and any sentence has been served.

### Article 13

#### Requests for Extradition or Surrender Made by Several States

1.     If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense

9

39

or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.      If Belgium receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3.      In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)     whether the requests were made pursuant to a treaty;
(b)     the places where each of the offenses was committed;
(c)     the respective interests of the requesting States;
(d)     the seriousness of the offenses;
(e)     the nationality of the victim;
(f)     the possibility of any subsequent extradition between the requesting States; and
(g)     the chronological order in which the requests were received from the requesting States.

Article 14

Seizure and Surrender of Property

1.      To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all items, including articles, documents, and evidence, connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.      The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the items will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State.

3.      The rights of third parties to such items shall be duly respected.

Article 15

Rule of Speciality

1.      A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

(a) the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser included offense;

(b) an offense committed after the extradition of the person; or

10

40

(c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment. For the purpose of this subparagraph:

(i) the Requested State may require the submission of the documents called for in Article 7; and

(ii) notwithstanding the above, the person extradited may be detained by the Requesting State for 75 days, or for such longer period of time as the Requested State may authorize, while the request is being processed, in which case, the Requesting State shall transmit to the Requested State a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought.

2.     A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to his surrender unless the surrendering State consents.

3.     Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it;

(b) that person does not leave the territory of the Requesting State within 15 days of the day on which that person is free to leave; or

(c) if that person voluntarily consents.


Article 16

Waiver of Extradition

If the person sought consents to surrender to the Requesting State in accordance with the practice of the Requested State, the Requested State may surrender the person as expeditiously as possible without further proceedings and the rule of speciality shall not apply.


Article 17

Transit

1.     Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of Belgium. The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request. This request shall contain a description of the person being transported and a brief statement of the facts of the case as well as a confirmation of the existence of the documents referred to in Article 10(2)(e). A person in transit may be detained in custody for 24

11

41

hours. Transit may be refused for a national of the Requested State and for a person sought for prosecution or to serve a penalty of deprivation of liberty imposed by the authorities of that State.

2.      No authorization for transit is required when air transportation is used and no landing is scheduled on the territory of the State being transited. If an unscheduled landing occurs, that State may require the request for transit as provided in paragraph 1. That State shall detain the person to be transported until the request is received and the transit is effected, so long as the request is received within 24 hours of the unscheduled landing.

### Article 18

#### Representation and Expenses

1.      The Requested State shall advise, assist, appear in court on behalf of the Requesting State, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2.      The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3.      Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought or for representation and litigation expenses incurred under this treaty.

### Article 19

#### Consultation

The United States Department of Justice and the Ministry of Justice of Belgium may consult with each other directly (or through the facilities of Interpol) in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

### Article 20

#### Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State. This termination shall be effective six months after the date of such notice.

12

42

**Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Cyprus signed 17 June 1996**

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Republic of Cyprus acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the Government of the United States of America and the Government of the Republic of Cyprus signed 17 June 1996 (hereafter "the 1996 Extradition Treaty"), under the following terms:

(a)      Articles 5(1) and 7(1) of the U.S.-EU Extradition Agreement as set forth in Article 8(1) of the Annex to this Instrument shall govern the mode of transmission of the extradition request and supporting documents and shall provide for an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

(b)      Article 5(2) of the U.S.-EU Extradition Agreement as set forth in Article 9 of the Annex to this Instrument shall govern the requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

(c)      Article 8(2) of the U.S.-EU Extradition Agreement as set forth in Article 8(5)(b) of the Annex to this Instrument shall govern the channel to be used for submitting supplementary information;

(d)      Article 10 of the U.S.-EU Extradition Agreement as set forth in Article 14 of the Annex to this Instrument shall govern the decision on requests made by several States for the extradition or surrender of the same person;

(e)      Article 13 of the U.S.-EU Extradition Agreement as set forth in Article 6 of the Annex to this Instrument shall govern extradition with respect to conduct punishable by death in the Requesting State; and

(f)      Article 14 of the U.S.-EU Extradition Agreement as set forth in Article 8(8) of the Annex to this Instrument shall govern consultations where the Requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.      The Annex reflects the integrated text of the provisions of the 1996 Extradition Treaty and the U.S.-EU Extradition Agreement that shall apply upon entry into force of this Instrument.

1

43

3.      In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.      This Instrument shall not apply to requests for extradition made prior to its entry into force.

5.      (a)      This Instrument shall be subject to the completion by the United States of America and the Republic of Cyprus of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and the Republic of Cyprus shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

        (b)      In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be terminated and the 1996 Extradition Treaty shall be applied.  The Governments of the United States of America and the Republic of Cyprus nevertheless may agree to continue to apply some or all of the provisions of this Instrument.


IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Nicosia, in duplicate, this 20th day of January, 2006, in the English and Greek languages, both texts being equally authentic.  In case of divergence the English text shall prevail.


FOR THE GOVERNMENT OF THE        FOR THE GOVERNMENT OF  THE
UNITED STATES OF AMERICA:        REPUBLIC OF CYPRUS:

2

44

EXTRADITION TREATY BETWEEN
THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND
THE GOVERNMENT OF THE REPUBLIC OF CYPRUS

TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Obligation to Extradite |
| Article 2 | Extraditable Offenses |
| Article 3 | Treatment of Nationals |
| Article 4 | Political and Military Offenses |
| Article 5 | Prior Prosecution |
| Article 6 | Capital Punishment |
| Article 7 | Lapse of Time |
| Article 8 | Extradition Procedures and Required Documents |
| Article 9 | Admissibility of Documents |
| Article 10 | Translation |
| Article 11 | Provisional Arrest |
| Article 12 | Decision and Surrender |
| Article 13 | Temporary and Deferred Surrender |
| Article 14 | Requests for Extradition or Surrender Made by More than one State |
| Article 15 | Seizure and Surrender of Property |
| Article 16 | Rule of Speciality |
| Article 17 | Waiver of Extradition |
| Article 18 | Transit |
| Article 19 | Representation and Expenses |
| Article 20 | Consultation |
| Article 21 | Termination |

45

### Article 1
### Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons sought for prosecution for or convicted of an extraditable offense.

### Article 2
### Extraditable Offenses

1.  An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a period of more than one year or by a more severe penalty.

2.  Subject to paragraph 1 of this Article, an offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, aiding or abetting, counseling or procuring the commission of or being an accessory before or after the fact to, any offense described in paragraph 1.

3.  For the purposes of this Article, an offense shall be an extraditable offense:

    (a)  whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology; or

    (b)  whether or not the offense is one for which United States law requires the proof of such matters as interstate transportation, of use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States court.

4.  If the offense was committed outside the territory of the Requesting State, extradition shall be granted if the laws in the Requested State provide for the punishment of an offense committed outside its territory in similar circumstances. If the laws in the Requested State do not so provide, extradition will still be granted if the

4

executive authority of the Requested State, in its discretion, consents to the setting in motion of the extradition procedure.

5.  If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request, even if the latter offense is punishable by less than one year's deprivation of liberty, provided that all other requirements for extradition are met.

Article 3
Treatment of Nationals

1.  Neither Contracting State shall be obligated to extradite its own nationals, but the Requested State may extradite such persons unless otherwise provided by its laws and Constitution.

2.  If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its authorities for prosecution.

Article 4
Political and Military Offenses

1.  Extradition shall not be granted if the offense for which extradition is requested is a political offense.

2.  For the purposes of this Treaty, the following offenses shall not be considered to be political offenses:

    (a)  a murder or other willful crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

    (b)  an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution; and

    (c)  a conspiracy or attempt to commit any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses.

3.  Notwithstanding paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

5

47

4. The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

Article 5
Prior Prosecution

1. Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested.

2. Extradition shall not be precluded by the fact that the authorities in the Requested State have decided not to prosecute the person sought for the acts for which extradition is requested, or to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

Article 6
Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions   If the Requesting State does not accept the conditions, the request for extradition may be denied.

Article 7
Lapse of Time

Extradition shall not be barred because of the prescriptive laws of either the Requesting or the Requested State.

Article 8
Extradition Procedures and Required Documents

1. Requests for extradition and supporting documents shall be transmitted through the diplomatic channel.  If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel by submitting the request and documents to the Embassy of the Requested State located in the Requesting State.  In that case, the date of receipt of such

6

48

request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under Article 11 of this Treaty to enable the person's continued detention.

2.  All requests for extradition shall be supported by:

(a)  documents, statements, or other types of information which describe the identity and probable location of the person sought;

(b)  information describing the facts of the offense and the procedural history of the case;

(c)  a copy of the law or a statement of the provisions of the law describing the essential elements of the offense for which extradition is requested;

(d)  a copy of the law or a statement of the provisions of the law describing the punishment for the offense; and

(e)  the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

3.  A request for extradition of a person who is sought for prosecution shall also be supported by:

(a) a copy of the warrant or order of arrest;

(b) a copy of the charging document, if available; and

(c) a statement of the facts of the case summarizing the testimony of witnesses and describing physical and documentary evidence and disclosing reasonable grounds to believe that an offense was committed and the person sought committed it. For this purpose, the actual affidavits or testimony of witnesses need not be forwarded.

4.  A request for extradition relating to a person who has been convicted of the offense for which extradition is sought shall also be supported by:

(a)  a copy of the judgment of conviction or, a statement by a judicial authority that the person has been convicted;

(b)  a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

(c)  in the case of a person who has been convicted in absentia, the documents required in paragraph 3.

7

49

5.  (a)  If the information communicated by the Requesting State is considered to be insufficient to allow the Requested State to grant extradition, the latter State shall request the necessary supplementary information and may fix a time limit for the receipt thereof.

(b)  Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice and Public Order of the Republic of Cyprus.

6.  If the person sought has been found guilty in absentia, the executive authority of the Requested State may refuse extradition, unless the Requesting State provides the Requested State with information which demonstrates that the person was afforded an adequate opportunity to present a defense.

7.  Except when this Treaty provides otherwise the procedures with regard to extradition and provisional arrest shall be governed solely by the law of the Requested State.

8.  Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State.  If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

Article 9
Admissibility of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Republic of Cyprus, the Ministry of Justice and Public Order of the Republic of Cyprus.

Article 10
Translation

All documents submitted by the Requesting State shall be either in the language of the Requesting State or in the language of the Requested State but the latter State shall have the right to require a translation into its own language.

8

50

### Article 11
### Provisional Arrest

1. In case of urgency, a Contracting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice and Public Order of the Republic of Cyprus. The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request.

2. The application for provisional arrest shall contain:

    (a)  a description of the person sought;

    (b)  the location of the person sought, if known;

    (c)  a brief statement of the facts of the case, including, if possible, the time and location of the offense;

    (d)  a citation of the law and a description of the criminal conduct involved;

    (e)  a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

    (f)  a statement that a request for extradition for the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4. A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 8.

5. The fact that the person sought has been discharged from custody pursuant to paragraph (4) of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

### Article 12
### Decision and Surrender

1. The Requested State shall promptly notify the Requesting State through the diplomatic channel of its decision on the request for extradition.

9

51

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4. If the person sought is not removed from the territory of the Requested State within the time prescribed by the laws in that State, that person may be discharged from custody, and the Requested State may subsequently refuse extradition for the same offense.

Article 13
Temporary and Deferred Surrender

1. If the extradition request is granted in the case of a person who is being prosecuted or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement in writing between the Contracting States.

2. The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

Article 14
Requests for Extradition or Surrender Made by More than One State

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2. If the Republic of Cyprus receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense of for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

10

52

3.  In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)   whether the requests were made pursuant to a treaty;
(b)   the places where each of the offenses was committed;
(c)   the respective interests of the requesting States;
(d)   the seriousness of the offenses;
(e)   the nationality of the victim;
(f)   the possibility of any subsequent extradition between the requesting States; and
(g)   the chronological order in which the requests were received from the requesting States.

Article 15
Seizure and Surrender of Property

1.  To the extent permitted under its laws, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.  The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3.  The rights of third parties in such property shall be duly respected.

Article 16
Rule of Speciality

1.  A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

(a)  the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser included offense;

(b)  an offense committed after the extradition of the person; or

11

53

(c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment. For the purpose of this subparagraph:

(i) the Requested State may require the submission of the documents called for in Article 8; and

(ii) the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2. A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to his surrender unless the surrendering State contents.

3. Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b) that person does not leave the territory of the Requesting State within 10 days of the day on which that person is free to leave

Article 17
Waiver of Extradition

If the person sought formally consents, by way of affidavit or otherwise, to surrender to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

Article 18
Transit

1. Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice and Public Order of the Republic of Cyprus. The facilities of Interpol may be used to transmit such a request. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization is required where air transportation is used and no landing is scheduled on the territory of the Contracting State. If an unscheduled landing occurs on the territory of the other Contracting State, the other Contracting State may require the

12

54

request for transit as provided in paragraph 1. That Contracting State shall detain the person to be transported until the request for transit is received and the transit is effected, so long as the request is received within 96 hours of the unscheduled landing.

### Article 19
### Representation and Expenses

1. The Requested State shall advise, assist, appear in court on behalf of the Requesting State, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3. Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought under this Treaty.

### Article 20
### Consultation

The United States Department of Justice and the Ministry of Justice and Public Order of the Republic of Cyprus may consult with each other directly or through the facilities of Interpol in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

### Article 21
### Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State through the diplomatic channel, and the termination shall be effective six months after the date of such notice.

13

55

**Second Supplementary Treaty on Extradition between
the United States of America and the Czech Republic**

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed in Washington on 25 June 2003 (hereafter "the Agreement between the United States of America and the European Union"), the United States of America and the Czech Republic have agreed to amend the Treaty between the United States of America and the Czechoslovak Republic of 2 July 1925 concerning the mutual extradition of fugitive criminals, as amended by the Supplementary Treaty of 29 April 1935, (hereafter collectively "the Extradition Treaty") under the following terms:

Article 1

Article I of the Extradition Treaty shall be replaced by the following:

"Article I

It is agreed that the United States and the Czech Republic shall, upon requisition duly made as herein provided, deliver up to justice any person, who may be charged with, or may have been convicted of any of the crimes or offenses specified in Article II of the present Treaty, and who shall be found within their respective territories; provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed."

Article 2

Article II of the Extradition Treaty shall be replaced by the following:

56

"Article II

Extraditable offenses

A crime or offense shall be an extraditable crime or offense if it is punishable under the laws of the Requesting and Requested States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.  A crime or offense shall also be an extraditable crime or offense if it consists of an attempt or conspiracy to commit, or participation in the commission of, an extraditable crime or offense.  Where the request is for enforcement of the sentence of a person convicted of an extraditable crime or offense, the deprivation of liberty remaining to be served must be at least four months.

If extradition is granted for an extraditable crime or offense, it shall also be granted for any other crime or offense specified in the request if the latter crime or offense is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

For purposes of this Article, a crime or offense shall be considered an extraditable crime or offense:

(a)      regardless of whether the laws in the Requesting and Requested States place the crime or offense within the same category of crimes or offenses or describe the crime or offense by the same terminology;

(b)      regardless of whether the crime or offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court; and

(c)      in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the Requesting and Requested States provide for the same kinds of taxes, customs duties, or controls on currency or on the import or export of the same kinds of commodities.

57

If the crime or offense has been committed outside the territory of the Requesting State, extradition shall be granted, subject to the other applicable requirements for extradition, if the laws of the Requested State provide for the punishment of a crime or offense committed outside its territory in similar circumstances. If the laws of the Requested State do not provide for the punishment of a crime or offense committed outside its territory in similar circumstances, the executive authority of the Requested State, at its discretion, may grant extradition provided that all other applicable requirements for extradition are met."

Article 3

Article VI, paragraph 1, of the Extradition Treaty shall be replaced by the following:

"If the person claimed should be under examination or under punishment in the State applied to for other crime or offense, his extradition may be deferred until the conclusion of the trial, or in the case of his conviction, until the full execution of any punishment imposed upon him."

Article 4

A new article shall be introduced after Article VI of the Extradition Treaty. It shall read as follows:

"Article VIa
Temporary surrender

If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.

The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the Requesting and Requested States. The time spent in custody in the territory of the Requesting State pending prosecution in that State may be deducted from the time remaining to be served in the Requested State."

58

Article 5

Article VII of the Extradition Treaty shall be replaced by the following:

"Article VII

Requests for extradition or surrender made by several States

If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same crime or offense or for different crimes or offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

If the Czech Republic receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same crime or offense or for different crimes or offenses, the competent executive authority of the Czech Republic shall determine to which State, if any, it will surrender the person.

In making its decision under paragraphs 1 and 2, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)     whether the requests were made pursuant to a treaty;

(b)     the places where each of the crimes or offenses was committed;

(c)     the respective interests of the Requesting States;

(d)     the seriousness of the crimes or offenses;

(e)     the nationality of the victim;

(f)     the possibility of any subsequent extradition between the Requesting States; and

(g)     the chronological order in which the requests were received from the Requesting States."

59

Article 6

Article IX of the Extradition Treaty shall be replaced by the following:

"Article IX

"The Requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered.  The Requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings."

Article 7

Article XI, paragraphs 2 through 4 of the Extradition Treaty shall be replaced by the following:

"Requests for extradition and supporting documents shall be transmitted through the diplomatic channel. If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under paragraph 4 of this Article to enable the person's continued detention.

Requests for provisional arrest may be made directly between the United States Department of Justice and the Ministry of Justice of the Czech Republic, as an alternative to the diplomatic channel. The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request.

The person provisionally arrested shall be released, unless within two months from the date of commitment in the United States – or from the date of arrest in the Czech Republic, the formal requisition for surrender, with the documentary proofs hereinafter described, be made as aforesaid through the diplomatic channel."

60

### Article 8

A new paragraph shall be inserted after Article XI, paragraph 5, of the Extradition Treaty. It shall read as follows:

"Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice and, for the Czech Republic, the Ministry of Justice of the Czech Republic."

### Article 9

A new article shall be introduced after Article XI of the Extradition Treaty. It shall read as follows:

"Article XIa

Supplementary information

The Requested State may require the Requesting State to furnish supplementary information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Treaty.

Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Czech Republic."

### Article 10

A new article shall be introduced after new Article XIa of the Extradition Treaty. It shall read as follows:

61

"Article XIb

Sensitive information in a request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted."

Article 11

A new article shall be introduced after new Article XIb of the Extradition Treaty. It shall read as follows:

"Article XIc

Simplified extradition procedures

If the person sought consents to be surrendered to the Requesting State, the Requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty."

Article 12

A new article shall be introduced after Article XII of the Extradition Treaty. It shall read as follows:

62

"Article XIIa

Transit

The United States of America may authorize transportation through its territory of a person surrendered to the Czech Republic by a third State, or by the Czech Republic to a third State. The Czech Republic may authorize transportation through its territory of a person surrendered to the United States of America by a third State, or by the United States of America to a third State.

A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Czech Republic. The facilities of Interpol may also be used to transmit such a request. The request shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit shall be detained in custody during the period of transit.

Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit State. If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 2. All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing."

Article 13

A new article shall be introduced after new Article XIIa of the Extradition Treaty. It shall read as follows:

63

"Article XIIb

Capital Punishment

Where the crime or offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions.  If the Requesting State does not accept the conditions, the request for extradition may be denied."

Article 14

1.    This Supplementary Treaty shall apply to offenses committed before as well as after it enters into force.

2.    This Supplementary Treaty shall not apply to requests for extradition made prior to its entry into force; except that Articles 1 through 4 of this Supplementary Treaty shall be applicable to requests made prior to such entry into force.

Article 15

The United States Department of Justice and the Ministry of Justice of the Czech Republic may consult with each other, at times mutually agreed to by them, in connection with the processing of individual cases and in order to maintain and improve procedures for the implementation of the Extradition Treaty and this Supplementary Treaty.

Article 16

This Supplementary Treaty shall be interpreted consistent with the Agreement between the United States of America and the European Union.

64

Article 17

1.     This Supplementary Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged as soon as possible. This Supplementary Treaty shall enter into force on the date the Agreement between the United States of America and the European Union enters into force.

2.     This Supplementary Treaty shall terminate on the date of termination of the Agreement between the United States of America and the European Union and the Extradition Treaty shall be applied, unless the United States of America and the Czech Republic agree by exchange of diplomatic notes to continue to apply some or all of the provisions of this Supplementary Treaty.

3.     When giving or receiving notice terminating the Agreement between the United States of America and the European Union, the United States of America shall at the same time inform the Czech Republic of such notice.


IN WITNESS WHEREOF, the undersigned, being duly authorized for this purpose, have signed this Supplementary Treaty.

DONE at Prague, this sixteenth day of May, 2006 in duplicate, in the English and Czech languages, both texts being equally authentic.


FOR THE UNITED STATES OF AMERICA:              FOR THE CZECH REPUBLIC:

65

**Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty on Extradition between the United States of America and the Kingdom of Denmark signed 22 June 1972**

1.   As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Kingdom of Denmark acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Treaty on Extradition between the United States of America and the Kingdom of Denmark signed 22 June 1972 (hereafter "the 1972 Treaty on Extradition") under the following terms:

(a)   Article 4 of the U.S.-EU Extradition Agreement as set forth in Articles 3 and 4(2) of the Annex to this Instrument shall govern the scope of extraditable offenses;

(b)   Article 5 of the U.S.-EU Extradition Agreement as set forth in Article 11(1) and (5) of the Annex to this Instrument shall govern the mode of transmission, and requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

(c)   Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article 11(7) of the Annex to this Instrument shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

(d)   Article 8(2) of the U.S.-EU Extradition Agreement as set forth in Article 13(3) of the Annex to this Instrument shall govern the channel to be used for submitting supplementary information;

(e)   Article 9 of the U.S.-EU Extradition Agreement as set forth in Article 13 *bis* of the Annex to this Instrument shall govern the temporary surrender of a person being proceeded against or serving a sentence in the requested State;

(f)   Article 10 of the U.S.-EU Extradition Agreement as set forth in Article 15 of the Annex to this Instrument shall govern the decision on requests for extradition made by several States for the extradition or surrender of the same person;

(g)   Article 11 of the U.S.-EU Extradition Agreement as set forth in Article 13 *ter* of the Annex to this Instrument shall govern the use of simplified extradition procedures;

(h)   Article 12(3) of the U.S.-EU Extradition Agreement as set forth in Article 18(3) of the Annex to this Instrument shall govern the procedures governing transit in the event of unscheduled landing of aircraft;

(i)   Article 13 of the U.S.-EU Extradition Agreement as set forth in Article 8 of the Annex to this Instrument shall govern extradition with respect to conduct punishable by death in the requesting State; and

66

(j)     Article 14 of the U.S.-EU Extradition Agreement as set forth in Article 11(8) of the Annex to this Instrument shall govern consultations where the requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.      The Annex reflects the integrated text of the provisions of the 1972 Treaty on Extradition and the U.S.-EU Extradition Agreement that shall apply upon entry into force of this Instrument.

3.      This Instrument shall not apply to Greenland and the Faroe Islands unless the United States of America and the European Union, by exchange of diplomatic notes, duly confirmed by the Kingdom of Denmark in accordance with Article 20 (1) (b) of the U.S.-EU Extradition Agreement, agree otherwise.  The application of the 1972 Treaty on Extradition to Greenland and the Faroe Islands shall remain unaffected by the U.S.-EU Extradition Agreement.

4.      In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

5.      This Instrument shall apply to requests for extradition made after its entry into force; nevertheless, Articles 3, 4(2) and 13 *bis* of the Annex shall, in accordance with Article 16 of the U.S.-EU Extradition Agreement, apply to requests pending in the requested State at the time this Instrument enters into force.

6.      (a) This Instrument shall be subject to the completion by the United States of America and the Kingdom of Denmark of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Kingdom of Denmark shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

        (b) In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be terminated and the 1972 Treaty on Extradition shall be applied.  The Governments of the United States of America and the Kingdom of Denmark nevertheless may agree to continue to apply some or all of the provisions of this Instrument.


IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.


DONE at Copenhagen, in duplicate, this Thursday of 23 of June 2005, in the English and Danish languages, both texts being equally authentic.


FOR THE GOVERNMENT OF THE         FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:          KINGDOM OF DENMARK:

67

## ANNEX

### Article 1

Each Contracting State agrees to extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with or convicted of any of the offenses mentioned in Article 3 committed within the territory of the other or outside thereof under the conditions specified in Article 4.

### Article 2

[not applicable]

### Article 3

An offense shall be an extraditable offense if it is punishable under the laws of the requested and requesting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.  An offense shall also be an extraditable offense if it consists of an attempt or conspiracy to commit, or participation in the commission of, an extraditable offense. Where the request is for enforcement of the sentence of a person convicted of an extraditable offense, the deprivation of liberty remaining to be served must be at least four months.

If extradition is granted for an extraditable offense, it shall also be granted for any other offense specified in the request if the latter offense is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

For purposes of this Article, an offense shall be considered an extraditable offense:

(a)   regardless of whether the laws in the requesting and requested States place the offense within the same category of offenses or describe the offense by the same terminology;

(b)   regardless of whether the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court; and

(c)   in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the requesting and requested States provide for the same kinds of taxes, customs duties, or controls on currency or on the import or export of the same kinds of commodities.

68

### Article 4

A reference in this Treaty to the territory of a Contracting State is a reference to all the territory under the jurisdiction of that Contracting State, including airspace and territorial waters and vessels and aircraft registered in that Contracting State if any such aircraft is in flight or if any such vessel is on the high seas when the offense is committed. For the purposes of this Treaty an aircraft shall be considered to be in flight from the moment when power is applied for the purpose of take-off until the moment when the landing run ends.

If the offense has been committed outside the territory of the requesting State, extradition shall be granted, subject to the other applicable requirements for extradition, if the laws of the requested State provide for the punishment of an offense committed outside its territory in similar circumstances. If the laws of the requested State do not provide for the punishment of an offense committed outside its territory in similar circumstances, the executive authority of the requested State, at its discretion, may grant extradition provided that all other applicable requirements for extradition are met.

### Article 5

The United States shall not be bound to deliver up its own nationals and Denmark shall not be bound to deliver up nationals of Denmark, Finland, Iceland, Norway or Sweden, but the executive authority of the requested State shall, if not prevented by the laws of that State, extradite such nationals if, in its discretion, it be deemed proper to do so.
If extradition is not granted pursuant to this Article, the requested State shall submit the case to its competent authorities for the purpose of prosecution.

### Article 6

Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in that place or to prove that he is the identical person convicted by the courts of the requesting State.
In the case of a request made to the Government of Denmark, the Danish authorities, in accordance with Danish extradition law, shall have the right to request evidence to establish a presumption of guilt of a person previously convicted. Extradition may be refused if such additional evidence is found to be insufficient.

### Article 7

Extradition shall not be granted in any of the following circumstances:

1. When the person whose surrender is sought is being proceeded against or has been tried and discharged or punished in the territory of the requested State for the offense for which his

69

extradition is requested. If the charge against a person sought in Denmark has been waived, extradition may be granted only if the conditions of applicable Danish law permit.

2. When the person whose surrender is sought has been tried and acquitted or has undergone his punishment in a third State for the offense for which his extradition is requested.

3. When the prosecution or the enforcement of the penalty for the offense has become barred by lapse of time according to the laws of either of the Contracting States.

4. If the offense for which his extradition is requested is a political offense or an offense connected with a political offense, or if the requested State has reason to assume that the requisition for his surrender has, in fact, been made with a view to try or punish him for a political offense or an offense connected with a political offense. If any question arises as to whether a case comes within the provisions of this subparagraph, it shall be decided by the authorities of the requested State.

5. If in special circumstances, having particular regard to the age, health or other personal conditions of the person concerned, the requested State has reason to believe that extradition will be incompatible with humanitarian considerations.

6. In respect of a military offense.

Extradition may be refused on any other ground which is specified by the law of the requested State.

## Article 8

Where the offense for which extradition is sought is punishable by death under the laws in the requesting State and not punishable by death under the laws in the requested State, the requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting State, on condition that the death penalty if imposed shall not be carried out. If the requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the requesting State does not accept the conditions, the request for extradition may be denied.

## Article 9

When the person whose extradition is requested is being proceeded against or is lawfully detained in the territory of the requested State for an offense other than that for which extradition has been requested, the decision whether or not to extradite him may be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

70

### Article 10

The determination that extradition based upon the request therefore should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use such remedies and recourses as are provided by such law.

### Article 11

Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 7 of this Article.

The request shall be accompanied by a description of the person sought, information as to his nationality and residence if available, a statement of the facts of the case, the text of the applicable laws of the requesting State including the law defining the offense, the law prescribing the punishment for the offense, and a statement that the legal proceedings or the enforcement of the penalty for the offense have not been barred by lapse of time.

When the request relates to a person who has not yet been convicted or has been convicted and not yet sentenced, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers.

When the request relates to a person already convicted and sentenced, it must be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how much of the sentence has not been served, and by evidence proving that the person requested is the person to whom the sentence refers.

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States, mean the United States Department of Justice; and, for Denmark, the Danish Ministry of Justice.

The requested State may require that the documents in support of the request for extradition be translated into the language of the requested State.

If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the requested State located in the requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under Article 12 to enable the person's continued detention.

71

Where the requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested State to determine the extent to which the information can be protected by the requested State. If the requested State cannot protect the information in the manner sought by the requesting State, the requesting State shall determine whether the information shall nonetheless be submitted.

### Article 12

In case of urgency a Contracting State may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. This application may be made either through the diplomatic channel or directly between the United States Department of Justice and the Danish Ministry of Justice. The application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or, if convicted and sentenced, a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

A person arrested upon such an application may be set at liberty upon the expiration of thirty days from the date of his arrest if a request for his extradition accompanied by the documents specified in Article 11 shall not have been received. The requesting State may request, specifying the reasons therefore, an extension of the period of detention for a period not to exceed thirty days, and the appropriate judicial authority of the requested State shall have the authority to extend the period of detention. The release from custody pursuant to this provision shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

### Article 13

If the requested State requires additional evidence or information to enable it to decide on the request for extradition, such evidence or information shall be submitted to it within such time as that State shall require.

If the person sought is under arrest and the additional evidence or information submitted as aforesaid is not sufficient, or if such evidence or information is not received within the period specified by the requested State, he shall be discharged from custody. Such discharge shall not bar the requesting State from submitting another request in respect of the same offense.

Such additional evidence or information may be requested and furnished directly between the United States Department of Justice and the Danish Ministry of Justice.

72

### Article 13 *bis*

If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the requested State, the requested State may temporarily surrender the person sought to the requesting State for the purpose of prosecution.

The person so surrendered shall be kept in custody in the requesting State and shall be returned to the requested State at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the requesting and requested States. The time spent in custody in the territory of the requesting State pending prosecution in that State may be deducted from the time remaining to be served in the requested State.

### Article 13 *ter*

If the person sought consents to be surrendered to the requesting State, the requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty.

### Article 14

A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

1. He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

2. He has not left the territory of the requesting State within forty-five days after being free to do so; or

3. The requested State has consented to his detention, trial, punishment or to his extradition to a third State for an offense other than that for which extradition was granted.

A person who has been set at liberty shall be informed of the consequences to which his stay in the territory of the requesting State may subject him.

These stipulations shall not apply to offenses committed after the extradition.

### Article 15

If the requested State receives requests from the requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the requested State shall determine to which State, if any, it will surrender the person.

73

If Denmark receives an extradition request from the United States and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, the Danish Ministry of Justice shall determine to which State, if any, it will surrender the person.

In making its decision under paragraphs 1 and 2 of this Article, the requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)    whether the requests were made pursuant to a treaty;
(b)    the places where each of the offenses was committed;
(c)    the respective interests of the requesting States;
(d)    the seriousness of the offenses;
(e)    the nationality of the victim;
(f)    the nationality and residence of the person sought;
(g)    the possibility of any subsequent extradition between the requesting States; and
(h)    the chronological order in which the requests were received from the requesting States.

**Article 16**

The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition, and, if granted, the period the person sought has been under detention pursuant to the request for extradition.

If the extradition has been granted, the authorities of the requesting and the requested States shall agree upon the time and place of surrender of the person sought.

If the extradition has not been effected, the requested State may set the person sought at liberty within such time as required by the law of the requested State, and the requested State may subsequently refuse to extradite that person for the same offense.

**Article 17**

To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall, if found, be surrendered if extradition is granted.

Subject to the qualifications of the first paragraph, the above-mentioned articles shall be returned to the requesting State even if the extradition, having been agreed to, cannot be effected owing to the death or escape of the person sought.

74

### Article 18

The right to transport through the territory of one of the Contracting States a person surrendered to the other Contracting State by a third State shall be granted on request made through the diplomatic channel, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

The State to which the person has been extradited shall reimburse the State through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit State. If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit that contains a description of the person being transported and a brief statement of the facts of the case. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Danish Ministry of Justice.  The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request. All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing.

### Article 19

Expenses related to the translation of documents and to the transportation of the person sought shall be paid by the requesting State. The appropriate legal officers of the requested State shall, by all legal means within their power, assist the officers of the requesting State before the respective judges and magistrates. No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested State against the requesting State.

### Article 20

[not applicable]

### Article 21

[paragraph 1 and first sentence of paragraph 2 not applicable]

This Treaty may be terminated by either Contracting State giving notice of termination to the other Contracting State at any time and the termination shall be effective six months after the date of receipt of such notice.

75

Protocol to the Extradition Treaty between the United States of America
and Finland signed 11 June 1976

1. As contemplated by Article 3(2) of the Agreement on Extradition between the United
States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU
Extradition Agreement"), the Governments of the United States of America and the
Republic of Finland acknowledge that, in accordance with the provisions of this
Protocol, the U.S.-EU Extradition Agreement is applied in relation to the bilateral
Extradition Treaty between United States of America and Finland signed 11 June 1976
(hereafter "the 1976 Extradition Treaty") under the following terms:

(a) The aim of this Protocol is to facilitate extradition between the United States of
America and the Republic of Finland by supplementing the provisions of the
1976 Extradition Treaty as set forth hereafter;

(b) Article 4 of the U.S.-EU Extradition Agreement, as set forth in Article 1 of the
Annex to this Protocol, shall govern the scope of extraditable offenses, replacing
Articles 2 and 3(3) of the 1976 Extradition Treaty;

(c) Article 5 of the U.S.-EU Extradition Agreement, as set forth in Article 2 of the
Annex to this Protocol, shall govern the mode of transmission, and requirements
concerning certification, authentication or legalization of the extradition request and
supporting documents, replacing Article 13(1) and (5) of the 1976 Extradition Treaty;

(d) Article 6 of the U.S.-EU Extradition Agreement, as set forth in Article 3 of the
Annex to this Protocol, shall authorize an alternative channel of transmission of
requests for provisional arrest;

(e) Article 7(1) of the U.S.-EU Extradition Agreement, as set forth in Article 4 of the
Annex to this Protocol, shall provide a supplemental method for transmission of the
request for extradition and supporting documents following provisional arrest;

(f) Article 8 (2) of the U.S.-EU Extradition Agreement, as set forth in Article 5 of the
Annex to this Protocol, shall govern the channel to be used for submitting supplemental
information;

(g) Article 9 of the U.S.-EU Extradition Agreement, as set forth in Article 6 of the
Annex to this Protocol, shall govern the temporary surrender of a person being
proceeded against or serving a sentence in the requested State;

(h) Article 10 of the U.S.-EU Extradition Agreement, as set forth in Article 7 of the
Annex to this Protocol, shall govern the decision on requests made by several States for
the extradition or surrender of the same person, replacing Article 18 of the
1976 Extradition Treaty;

(i) Article 11 of the U.S.-EU Extradition Agreement, as set forth in Article 8 of the
Annex to this Protocol, shall govern the use of simplified extradition procedures;

(j) Article 12 (3) of the U.S.-EU Extradition Agreement, as set forth in Article 9 of the
Annex to this Protocol, shall govern the procedures governing transit in the event of
unscheduled landing of aircraft;

1

76

(k) Article 14 of the U.S.-EU Extradition Agreement, as set forth in Article 10 of the Annex to this Protocol, shall govern consultations where the requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2. The Annex reflects the provisions to be applied to the 1976 Extradition Treaty upon entry into force of this Protocol.  Other provisions of the 1976 Extradition Treaty remain unaffected by this Protocol.

3. In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Protocol shall apply to offenses committed before as well as after it enters into force.

4. This Protocol shall not apply to requests made prior to its entry into force except that, in accordance with Article 16 of the U.S.-EU Extradition Agreement, Articles 1 and 6 of the Annex to this Protocol shall be applicable to requests made prior to such entry into force.

5. (a) This Protocol shall be subject to the completion by the United States of America and the Republic of Finland of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Republic of Finland shall thereupon exchange notifications indicating that such measures have been completed. This Protocol shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

(b) In the event of termination of the U.S.-EU Extradition Agreement, this Protocol shall be terminated and the 1976 Extradition Treaty shall be applied.  The Governments of the United States of America and the Republic of Finland nevertheless may agree to continue to apply some or all of the provisions of this Protocol.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Protocol.

DONE at Brussels, in duplicate, this 16th day of December 2004, in the English and Finnish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF              FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA:      REPUBLIC OF FINLAND:

2

77

ANNEX

Article 1
Extraditable Offenses

A.      The following shall be applied in place of the text of Article 2 of the 1976
Extradition Treaty and the Schedule annexed thereto:

"1.  An offense shall be an extraditable offense if it is punishable under the laws of the
requested and requesting States by deprivation of liberty for a maximum period of more
than one year or by a more severe penalty.  An offense shall also be an extraditable
offense if it consists of an attempt or conspiracy to commit, or participation in the
commission of, an extraditable offense.  Where the request is for enforcement of the
sentence of a person convicted of an extraditable offense, the deprivation of liberty
remaining to be served must be at least four months.

2.  If extradition is granted for an extraditable offense, it shall also be granted for any
other offense specified in the request if the latter offense is punishable by one year's
deprivation of liberty or less, provided that all other requirements for extradition are
met.

3.  For purposes of this Article, an offense shall be considered an extraditable offense:

a.  regardless of whether the laws in the requesting and requested States place the
offense within the same category of offenses or describe the offense by the same
terminology;

b.  regardless of whether the offense is one for which the United States federal law
requires the showing of such matters as interstate transportation, or use of the mails or
of other facilities affecting interstate or foreign commerce, such matters being merely
for the purpose of establishing jurisdiction in a United States federal court; and

c.  in criminal cases relating to taxes, customs duties, currency control and the import or
export of commodities, regardless of whether the laws of the requesting and requested
States provide for the same kinds of taxes, customs duties, or controls on currency or on
the import or export of the same kinds of commodities."

B.      The following shall be applied in place of the text of Article 3(3) of the 1976
Extradition Treaty:

"3.  If the offense has been committed outside the territory of the requesting State,
extradition shall be granted, subject to the other applicable requirements for extradition,
if the laws of the requested State provide for the punishment of an offense committed
outside its territory in similar circumstances.  If the laws of the requested State do not
provide for the punishment of an offense committed outside its territory in similar
circumstances, the executive authority of the requested State, at its discretion, may grant
extradition provided that all other applicable requirements for extradition are met."

3

78

## Article 2
### Transmission and authentication of documents

A.      The following shall be applied in place of Article 13(1) of the 1976 Extradition Treaty:

"1.  Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 7 of this Article."

B.      The following shall be applied in place of Article 13(5) of the 1976 Extradition Treaty:

"5.  Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalization.  'Ministry of Justice' shall, for the United States of America, mean the United States Department of Justice; and, for Finland, the Finnish Ministry of Justice."

## Article 3
### Transmission of requests for provisional arrest

The following shall be applied as Article 14(4) of the 1976 Extradition Treaty:

"4.  Requests for provisional arrest may be made directly between the United States Department of Justice and the Finnish Ministry of Justice, as an alternative to the diplomatic channel.  The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request."

## Article 4
### Transmission of documents following provisional arrest

The following shall be applied as Article 13(7) of the 1976 Extradition Treaty:

"7.  If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the requested State located in the requesting State.  In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under Article 14 of this Treaty to enable the person's continued detention."

4

79

### Article 5
### Supplemental information

The following shall be applied as Article 15(3) of the 1976 Extradition Treaty:

"3.  Such additional evidence or information may be requested and furnished directly between the United States Department of Justice and the Finnish Ministry of Justice."

### Article 6
### Temporary Surrender

The following shall be applied as Article 16 bis of the 1976 Extradition Treaty:

"Article 16 bis

1.  If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the requested State, the requested State may temporarily surrender the person sought to the requesting State for the purpose of prosecution.

2.  The person so surrendered shall be kept in custody in the requesting State and shall be returned to the requested State at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the requesting and requested States.  The time spent in custody in the territory of the requesting State pending prosecution in that State may be deducted from the time remaining to be served in the requested State."

### Article 7
### Requests for extradition or surrender made by several States

The following shall be applied in place of the text of Article 18 of the 1976 Extradition Treaty:

"1.  If the requested State receives requests from the requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the requested State shall determine to which State, if any, it will surrender the person.

2.  If Finland receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, the Finnish Ministry of Justice shall determine to which State, if any, it will surrender the person.

3.  In making its decision under paragraphs 1 and 2 of this Article, the requested State shall consider all of the relevant factors, including, but not limited to, the following:

a.  whether the requests were made pursuant to a treaty;

b.  the places where each of the offenses was committed;

5

80

c. the respective interests of the requesting States;

d. the seriousness of the offenses;

e. the nationality of the victim;

f. the nationality of the person sought;

g. the possibility of any subsequent extradition between the requesting States; and

h. the chronological order in which the requests were received from the requesting States."

Article 8
Simplified extradition procedures

The following shall be applied as Article 15 bis of the 1976 Extradition Treaty:

"Article 15 bis

If the person sought consents to be surrendered to the requesting State, the requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty."

Article 9
Transit in case of unscheduled landing

The following shall be applied as Article 20(3) of the 1976 Extradition Treaty:

"3. Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit State. If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit that contains a description of the person being transported and a brief statement of the facts of the case. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Finnish Ministry of Justice. The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request. All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing."

6

81

Article 10
Sensitive information in a request

The following shall be applied as Article 20 *bis* of the 1976 Extradition Treaty:

"Article 20 bis
Sensitive information in a request

Where the requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested State to determine the extent to which the information can be protected by the requested State. If the requested State cannot protect the information in the manner sought by the requesting State, the requesting State shall determine whether the information shall nonetheless be submitted."

7

82

**Instrument as contemplated by Article 3, paragraph 2, of the Agreement on Extradition
between the United States of America and the European Union signed 25 June 2003,
as to the application of the Extradition Treaty between
the United States of America and France signed 23 April 1996**

As contemplated by Article 3, paragraph 2, of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the French Republic acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the United States of America and France signed 23 April 1996 (hereafter "the 1996 Treaty on Extradition") under the following terms:

I

A.   Article 5, paragraph 1, of the U.S.-EU Extradition Agreement provides:

   "Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in Article 7."

B.   Article 5, paragraph 1, of the U.S.-EU Extradition Agreement shall govern the mode of transmission of the extradition request and supporting documents and shall be applied in place of Article 10, paragraph 1, of the 1996 Treaty on Extradition. For purposes of applying its terms, the reference to "Article 7" refers to Part III of this Instrument.

II

A.   Article 5, paragraph 2, of the U.S.-EU Extradition Agreement provides:

   "Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalization."

B.   Article 5, paragraph 2, of the U.S.-EU Extradition Agreement shall govern the requirements concerning certification, authentication or legalization of the extradition request and supporting documents, and shall be applied in place of Article 11 of the 1996 Treaty on Extradition. For purposes of applying its terms, "Ministry of Justice" means, for France, the Ministry of Justice of France, and, for the United States of America, the United States Department of Justice; "Ministry or Department responsible for foreign affairs" means, for France, the Ministry of Foreign Affairs of France, and for the United States of America, the United States Department of State.

III

A.   Article 7, paragraph 1, of the U.S.-EU Extradition Agreement provides:

   "If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 5(1), by submitting the request and documents to the Embassy of the requested State located in the requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under the applicable extradition treaty to enable the person's continued detention."

B.   Article 7, paragraph 1, of the U.S.-EU Extradition Agreement shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest, and shall supplement the provisions of Articles 10 and 13 of the 1996 Treaty on Extradition. For purposes of applying its terms, the reference to "Article 5(1)" relates to Part I of this Instrument.

1

83

## IV

A.  Article 10 of the U.S.-EU Extradition Agreement provides:

"Requests for extradition or surrender made by several states

1.  If the requested State receives requests from the requesting State and from any other State or States for the extradition of the same person, either for the same offence or for different offences, the executive authority of the requested State shall determine to which State, if any, it will surrender the person.

2.  If a requested Member State receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offence or for different offences, the competent authority of the requested Member State shall determine to which State, if any, it will surrender the person. For this purpose, the competent authority shall be the requested Member State's executive authority if, under the bilateral extradition treaty in force between the United States and the Member State, decisions on competing requests are made by that authority; if not so provided in the bilateral extradition treaty, the competent authority shall be designated by the Member State concerned pursuant to Article 19.

3.  In making its decision under paragraphs 1 and 2, the requested State shall consider all of the relevant factors, including, but not limited to, factors already set forth in the applicable extradition treaty, and, where not already so set forth, the following:

    (a)  whether the requests were made pursuant to a treaty;

    (b)  the places where each of the offences was committed;

    (c)  the respective interests of the requesting States;

    (d)  the seriousness of the offences;

    (e)  the nationality of the victim;

    (f)  the possibility of any subsequent extradition between the requesting States; and

    (g)  the chronological order in which the requests were received from the requesting States."

B.  Article 10 of the U.S.-EU Extradition Agreement shall govern the decision on requests made by several States for the extradition or surrender of the same person and shall be applied in place of Article 17 of the 1996 Treaty on Extradition.  For purposes of Article 10, paragraph 2, and Article 19 of the U.S.-EU Extradition Agreement, if France receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, the "Chambre de l'instruction de la  Cour d'Appel" shall be the competent authority to determine to which State the person will be surrendered.

## V

A.  Article 11 of the U.S.-EU Extradition Agreement provides:

"Simplified extradition procedures

If the person sought consents to be surrendered to the requesting State, the requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings.  The consent of the person sought may include agreement to waiver of protection of the rule of specialty."

B.  Article 11 of the U.S.-EU Extradition Agreement shall govern the use of simplified extradition procedures and shall supplement the provisions of the 1996 Treaty on Extradition.

2

84

VI

A.  Article 13 of the U.S.-EU Extradition Agreement provides:

"Capital punishment

Where the offence for which extradition is sought is punishable by death under the laws in
the requesting State and not punishable by death under the laws in the requested State, the
requested State may grant extradition on the condition that the death penalty shall not be
imposed on the person sought, or if for procedural reasons such condition cannot be
complied with by the requesting State, on condition that the death penalty if imposed shall
not be carried out.  If the requesting State accepts extradition subject to conditions pursuant
to this Article, it shall comply with the conditions.  If the requesting State does not accept
the conditions, the request for extradition may be denied."

B.  Article 13 of the U.S.-EU Extradition Agreement shall govern extradition with respect to
conduct punishable by death in the Requesting State and shall be applied in place of Article
7 of the 1996 Treaty on Extradition.

VII

A.  Article 14 of the U.S.-EU Extradition Agreement provides:

"Sensitive information in a request

Where the requesting State contemplates the submission of particularly sensitive
information in support of its request for extradition, it may consult the requested
State to determine the extent to which the information can be protected by the requested
State.  If the requested State cannot protect the information in the manner sought by the
requesting State, the requesting State shall determine whether the information shall
nonetheless be submitted."

B.  Article 14 of the U.S.-EU Extradition Agreement shall govern consultations where the
Requesting State contemplates the submission of particularly sensitive information in
support of a request for extradition, and shall supplement the provisions of the 1996 Treaty
on Extradition.

VIII

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to
offenses committed before as well as after it enters into force.

This Instrument shall not apply to requests for extradition made prior to its entry into force.

IX

This Instrument shall be subject to the completion by the United States of America and France of
any necessary applicable internal procedures for entry into force.  The Governments of the United
States of America and the French Republic shall thereupon exchange instruments indicating that
any such measures have been completed.  This Instrument shall enter into force on the date of entry
into force of the U.S.-EU Extradition Agreement.

In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be
terminated and the 1996 Treaty on Extradition shall be applied.

85

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at The Hague, in duplicate, this 30 day of *September 2004*, in the English and French languages, both texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF
THE FRENCH REPUBLIC:

4

86

Second Supplementary Treaty

to

the Treaty between the United States of America

and

the Federal Republic of Germany

Concerning Extradition

87

2

The Government of the United States of America
and
the Government of the Federal Republic of Germany,

As contemplated by Article 3, paragraph (2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"),

Acknowledging that in accordance with the provisions of this Second Supplementary Treaty, the bilateral Treaty between the United States of America and the Federal Republic of Germany Concerning Extradition signed 20 June 1978 as amended by the Supplementary Treaty to the Treaty between the United States of America and the Federal Republic of Germany Concerning Extradition signed 21 October 1986 (hereafter referred to as "the bilateral extradition treaty") is applied in the manner set forth in Article 3 of the U.S.-EU Extradition Agreement,

Have agreed as follows:

Article 1

Pursuant to Article 13 of the U.S.- EU Extradition Agreement, Article 12 of the bilateral extradition treaty is amended to read as follows:

88

3

"Article 12

Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied."

Article 2

Pursuant to Article 14 of the U.S.- EU Extradition Agreement, the following text is inserted into the bilateral extradition treaty as Article 15 bis:

"Article 15 bis

Sensitive information in a request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted."

Article 3

Pursuant to Article 6 of the U.S.-EU Extradition Agreement, the following text is added to the bilateral extradition treaty as the final sentence of Article 16, paragraph (1):

89

4

"The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request."

Article 4

Pursuant to Article 7 of the U.S.- EU Extradition Agreement, the following text is inserted into the bilateral extradition treaty as Article 16, paragraph (5):

"(5) The Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 14, paragraph (1), by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under paragraph (4) of the present Article to enable the person's continued detention. "

The current paragraph (5) is renumbered to become paragraph (6).

Article 5

Pursuant to Article 10 of the U.S.- EU Extradition Agreement, Article 17 of the bilateral extradition treaty is amended to read as follows:

"Article 17
Requests for Extradition or Surrender Made by Several States

(1) If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person either for the same offense or for different offenses, or if the Federal Republic of Germany receives an extradition

5

request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, the competent authority of the executive branch of the Requested State shall determine to which State, if any, it will surrender the person.

(2) In making its decision under paragraph (1) of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

    a) whether the requests were made pursuant to a treaty;
    b) the places where each of the offenses was committed;
    c) the respective interests of the Requesting States;
    d) the seriousness of the offenses;
    e) the nationality of the victim;
    f) the nationality of the person sought;
    g) the possibility of any subsequent re-extradition between the Requesting States; and
    h) the chronological order in which the requests were received from the requesting States.

(3) If the Requested State reaches a decision at the same time upon extradition to one of the Requesting States and on re-extradition to another Requesting State, it shall communicate that decision on re-extradition to each of the Requesting States."

Article 6

Pursuant to Article 5, paragraph (2) of the U.S.- EU Extradition Agreement, Article 29 of the bilateral extradition treaty is amended to read as follows:

91

6

"Article 29
Certification

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or
Department responsible for foreign affairs, of the Requesting State shall be admissible
in extradition proceedings in the Requested State without further certification,
authentication, or other legalization. "Ministry of Justice" shall, for the United States of
America, mean the United States Department of Justice; and, for the Federal Republic
of Germany, the Federal Ministry of Justice."

Article 7

(1)  In accordance with Article 16 of the U.S.-EU Extradition Agreement, this
Supplementary Treaty shall apply to offenses committed before as well as after it enters
into force.

(2)  This Supplementary Treaty shall not apply to requests for extradition made prior to
its entry into force.

Article 8

(1)  This Supplementary Treaty shall form an integral part of the bilateral extradition
treaty.

(2)  This Supplementary Treaty shall be subject to the completion by the United States
of America and the Federal Republic of Germany of their respective applicable internal
procedures for entry into force. The Contracting Parties shall thereupon notify each
other that such internal procedures have been completed.

7

(3)  This Supplementary Treaty shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

(4)  In the event of termination of the U.S.-EU Extradition Agreement, this Supplementary Treaty shall be terminated.


DONE at Washington, this 18th day of April 2006, in duplicate, in the English and German languages, both texts being equally authentic.

For the Government of the                           For the Government of the
United States of America:                          Federal Republic of Germany:

93

**Protocol to the Treaty on Extradition between the United States of America and the Hellenic Republic, signed 6 May 1931, and the Protocol thereto signed 2 September 1937, as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union, signed 25 June 2003**

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Hellenic Republic acknowledge that, in accordance with the provisions of this Protocol, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Treaty of Extradition between the United States of America and the Hellenic Republic signed 6 May 1931 and the Protocol thereto signed 2 September 1937 (hereafter collectively "the Extradition Treaty") under the following terms:

Article 1

A.   Pursuant to Article 4 of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article II of the Extradition Treaty:

"Extraditable offenses

1.  A crime or offense shall be an extraditable crime or offense if it is punishable under the laws of the requesting and requested countries by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.  A crime or offense shall also be an extraditable crime or offense if it consists of an attempt or conspiracy to commit, or participation in the commission of, an extraditable crime or offense.  Where the request is for enforcement of the sentence of a person convicted of an extraditable crime or offense, the deprivation of liberty remaining to be served must be at least four months.

2.  If extradition is granted for an extraditable crime or offense, it shall also be granted for any other crime or offense specified in the request if the latter crime or offense is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

3.  For purposes of this Article, a crime or offense shall be considered an extraditable crime or offense:

(a)   regardless of whether the laws in the requesting and requested countries place the crime or offense within the same category of crimes or offenses or describe the crime or offense by the same terminology;

(b)   regardless of whether the crime or offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court; and

(c)   in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the requesting and requested countries provide for the same kind of taxes, customs duties, or controls on currency or on the import or export of the same kind of commodities.

1

94

4. If the crime or offense has been committed outside the territory of the requesting country, extradition shall be granted, subject to the other applicable requirements for extradition, if the laws of the requested country provide for the punishment of a crime or offense committed outside its territory in similar circumstances. If the laws of the requested country do not provide for the punishment of a crime or offense committed outside its territory in similar circumstances, the executive authority of the requested country, at its discretion, may grant extradition provided that all other applicable requirements for extradition are met."

B. In view of Article 4 of the U.S.-EU Extradition Agreement, the phrase "committed within the jurisdiction of one of the High Contracting Parties" in Article I of the Extradition Treaty is hereby deleted.

### Article 2

Pursuant to Article 5 of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article XI, paragraph 2 of the Extradition Treaty:

"Transmission and authentication of documents

Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in Article 4 of this Protocol.

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting country shall be admissible in extradition proceedings in the requested country without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States, mean the United States Department of Justice, and for the Hellenic Republic, the Ministry of Justice of the Hellenic Republic."

### Article 3

Pursuant to Article 6 of the U.S.-EU Extradition Agreement, the following shall be applied to supplement Article XI of the Extradition Treaty:

"Transmission of requests for provisional arrest

Requests for provisional arrest may be made directly between the Ministry of Justice of the Hellenic Republic and the United States Department of Justice, as an alternative to the diplomatic channel. The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request."

### Article 4

Pursuant to Article 7(1) of the U.S.-EU Extradition Agreement, the following shall be applied to supplement Article XI of the Extradition Treaty:

"Transmission of documents following provisional arrest

1. If the person whose extradition is sought is held under provisional arrest by the requested country, the requesting country may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 2 of this Protocol, by submitting the request and documents to the Embassy of the requested country located in the requesting country. In that case, the date of receipt of

95

such request by the Embassy shall be considered to be the date of receipt by the requested country for purposes of applying the time limit that must be met under the Extradition Treaty to enable the person's continued detention."

Article 5

Pursuant to Article 8 of the U.S.-EU Extradition Agreement, the following shall be applied to supplement the terms of the Extradition Treaty:

"Supplemental information

1. The requested country may require the requesting country to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfil the requirements of the Extradition Treaty.
2. Such supplementary information may be requested and furnished directly between the Ministry of Justice of the Hellenic Republic and the United States Department of Justice."

Article 6

Pursuant to Article 9 of the U.S.-EU Extradition Agreement, the following shall be applied to supplement the terms of the Extradition Treaty:

"Temporary surrender

1. If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the requested country, the requested country may temporarily surrender the person sought to the requesting country for the purpose of prosecution.

2. The person so surrendered shall be kept in custody in the requesting country and shall be returned to the requested country at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the requesting and requested countries.  The time spent in custody in the territory of the requesting country pending prosecution in that country may be deducted from the time remaining to be served in the requested country."

Article 7

Pursuant to Article 10 of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article VII of the Extradition Treaty:

"Requests for extradition or surrender made by several countries

1. If the requested country receives requests from the requesting country and from any other country or countries for the extradition of the same person, either for the same crime or offense or for different crimes or offenses, the executive authority of the requested country shall determine to which country, if any, it will surrender the person.

2. If the Hellenic Republic receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same crime or offense or for different crimes or offenses, the Minister of Justice of the Hellenic Republic shall determine to which country, if any, it will surrender the person.

3

96

3. In making its decision under paragraphs 1 and 2, the requested country shall consider all of the relevant factors, including, but not limited to, the following:

(a)    whether the requests were made pursuant to a treaty;
(b)    the places where each of the crimes or offenses was committed;
(c)    the respective interests of the requesting countries;
(d)    the seriousness of the crimes or offenses;
(e)    the nationality of the victim;
(f)    the possibility of any subsequent extradition between the requesting countries; and
(g)    the chronological order in which the requests were received from the requesting countries."

### Article 8

Pursuant to Article 11 of the U.S.-EU Extradition Agreement, the following shall be applied to supplement the terms of the Extradition Treaty:

"Simplified extradition procedures

If the person sought consents to be surrendered to the requesting country, the requested country may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty."

### Article 9

Pursuant to Article 12 of the U.S.-EU Extradition Agreement, the following shall be applied to supplement the terms of the Extradition Treaty:

"Transit

1. The United States of America may authorize transportation through its territory of a person surrendered to the Hellenic Republic by a third country, or by the Hellenic Republic to a third country. The Hellenic Republic may authorize transportation through its territory of a person surrendered to the United States of America by a third country, or by the United States of America to a third country.

2. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Hellenic Republic. The facilities of Interpol may also be used to transmit such a request. The request shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit shall be detained in custody during the period of transit.

3. Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit country. If an unscheduled landing does occur, the country in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 2. All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing."

4

### Article 10

Pursuant to Article 13 of the U.S.-EU Extradition Agreement, the following shall be applied to supplement the terms of the Extradition Treaty:

"Capital Punishment

Where the crime or offense for which extradition is sought is punishable by death under the laws in the requesting country and not punishable by death under the laws in the requested country, the requested country may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting country, on condition that the death penalty if imposed shall not be carried out. If the requesting country accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the requesting country does not accept the conditions, the request for extradition may be denied."

### Article 11

Pursuant to Article 14 of the U.S.-EU Extradition Agreement, the following shall be applied to supplement the terms of the Extradition Treaty:

"Sensitive information in a request

Where the requesting country contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested country to determine the extent to which the information can be protected by the requested country. If the requested country cannot protect the information in the manner sought by the requesting country, the requesting country shall determine whether the information shall nonetheless be submitted."

### Article 12

1. The provisions of the Extradition Treaty not addressed in this Protocol, including the grounds for refusal of extradition, are unaffected by this Protocol and shall remain in force.

2. This Protocol shall be interpreted consistent with the U.S.-EU Extradition Agreement.

### Article 13

This Protocol shall be subject to the completion by the Parties of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Hellenic Republic shall thereupon exchange instruments indicating that such procedures have been completed.

### Article 14

1. This Protocol shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement. Article 16 of the U.S.-EU Extradition Agreement concerning temporal application shall apply.

2. In the event of termination of the U.S.-EU Extradition Agreement, this Protocol shall be terminated, and the Extradition Treaty shall be applied. The Governments of the

98

United States of America and the Hellenic Republic nevertheless may agree to continue to apply some or all of the provisions of this Protocol.

IN WITNESS WHEREOF, the undersigned, duly authorized by their respective Governments, have signed this Protocol.

Done at Washington, in duplicate, this 18th day of January 2006 in the English and Greek languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE           FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:            HELLENIC REPUBLIC:

6

99

**Protocol to the Treaty between the Government of the United States of America
and the Government of the Republic of Hungary on Extradition signed
1 December 1994, as contemplated by Article 3(2) of the Agreement on Extradition
between the United States of America and the European Union, signed
25 June 2003**

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Republic of Hungary acknowledge that, in accordance with the provisions of this Protocol, the provisions of the U.S.-EU Extradition Agreement are applied in relation to the bilateral Treaty between the Government of the United States of America and the Government of the Republic of Hungary on Extradition signed 1 December 1994 (hereafter "the 1994 Extradition Treaty"), under the following terms:

<u>Article 1:  Transmission of request for extradition and supporting documents</u>

Pursuant to Articles 5(1) and 7(1) of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article 8(1) of the 1994 Extradition Treaty:

"Requests for extradition and supporting documents shall be transmitted through the diplomatic channel.  If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel by submitting the request and documents to the Embassy of the Requested State located in the Requesting State.  In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under Article 11 of this Treaty to enable the person's continued detention."

<u>Article 2:  Authentication of documents</u>

Pursuant to Article 5(2) of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article 9 of the 1994 Extradition Treaty:

"Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Republic of Hungary, the Ministry of Justice of the Republic of Hungary."

1

100

### Article 3:  Sensitive information in a request

Pursuant to Article 14 of the U.S.-EU Extradition Agreement, the following shall be applied as Article 9A of the 1994 Extradition Treaty:

"Sensitive information in a request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State.  If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted."

### Article 4:  Channel for supplementary information

Pursuant to Article 8(2) of the U.S.-EU Extradition Agreement, the following shall be applied as Article 12(1A) of the 1994 Extradition Treaty:

"(1A) Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Republic of Hungary."

### Article 5:  Requests for extradition or surrender made by several States

Pursuant to Article 10 of the U.S.-EU Extradition Agreement, the following shall be applied in place of Article 15 of the 1994 Extradition Treaty:

"Requests for extradition or surrender made by several States

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2. If the Republic of Hungary receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:
(a)    whether the requests were made pursuant to a treaty;
(b)    the places where each of the offenses was committed;
(c)    the respective interests of the requesting States;
(d)    the seriousness of the offenses;
(e)    the nationality of the victim;
(f)    the possibility of any subsequent extradition between the requesting States; and
(g)    the chronological order in which the requests were received from the requesting States."

2

101

<u>Article 6:  Temporal application</u>

1.  This Protocol shall apply to offenses committed before as well as after it enters into force.

2.  This Protocol shall not apply to requests for extradition made prior to its entry into force.

<u>Article 7:  Entry into force and termination</u>

1. This Protocol shall be subject to the completion by the United States of America and the Republic of Hungary of their respective applicable internal procedures for entry into force and instruments indicating that such measures have been completed shall be exchanged as soon as possible.  This Protocol shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement, as provided for in Article 22 thereof.

2. In the event of termination of the Agreement on Extradition between the United States of America and the European Union, signed 25 June 2003, this Protocol shall be terminated and the bilateral Treaty between the Government of the United States of America and the Government of the Republic of Hungary on Extradition, signed 1 December 1994, shall be applied.  The Governments of the United States of America and the Republic of Hungary nevertheless may agree to continue to apply some or all of the provisions of this Protocol.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Protocol.

Done at Budapest, in duplicate, this fifteenth day of November, 2005, in the English and Hungarian languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE                    FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:                    REPUBLIC OF HUNGARY :

3

**Instrument as contemplated by Article 3(2) of the
Agreement on Extradition between the United States of America
and the European Union signed 25 June 2003,
as to the application of the Treaty on Extradition between
the United States of America and Ireland signed 13 July 1983**

1.     As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and Ireland acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Treaty on Extradition between the United States of America and Ireland signed 13 July 1983 (hereafter "the 1983 Treaty on Extradition") under the following terms:

(a)    Article 5 of the U.S.-EU Extradition Agreement as set forth in Article VIII(1) and (7) of the Annex to this Instrument shall govern the mode of transmission, and requirements concerning certification, authentication or legalisation of the extradition request and supporting documents;

(b)    Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article VIII(8) of the Annex to this Instrument shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

(c)    Article 8(2) of the U.S.-EU Extradition Agreement as set forth in Article IX(3) of the Annex to this Instrument shall govern the channel to be used for submitting supplementary information;

(d)    Article 9 of the Annex to this Instrument shall govern the temporary surrender of a person being proceeded against or serving a sentence in the Requested State;

(e)    Article 10 of the U.S.-EU Extradition Agreement as set forth in Article XII of the Annex to this Instrument shall govern the decision on requests made by several States for the extradition or surrender of the same person;

(f)    Article 11 of the U.S.-EU Extradition Agreement as set forth in Article XII *bis* of the Annex to this Instrument shall govern the use of simplified extradition procedures;

(g)    Article 12(3) of the U.S.-EU Extradition Agreement as set forth in Article XV(2) of the Annex to this Instrument shall govern the procedures governing transit in the event of unscheduled landing of aircraft;

(h)    Article 13 of the U.S.-EU Extradition Agreement as set forth in Article VI of the Annex to this Instrument shall govern extradition with respect to conduct punishable by death in the Requesting State;

(i)    Article 14 of the U.S.-EU Extradition Agreement as set forth in Article VIII *bis* of the Annex to this Instrument shall govern consultations where the Requesting

1

103

State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.      The Annex reflects the integrated text of the provisions of the 1983 Treaty on Extradition and the U.S.-EU Extradition Agreement that shall apply upon entry into force of this Instrument.

3.      In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offences committed before as well as after it enters into force.

4.      This Instrument shall not apply to requests for extradition made prior to its entry into force; except that, in accordance with Article 16 of the U.S.-EU Extradition Agreement, Article VII *bis* of the Annex shall be applicable to requests made prior to such entry into force.

5.      (a)      This Instrument shall be subject to the completion by the United States of America and Ireland of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and Ireland shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

        (b)      In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be terminated and the 1983 Treaty on Extradition shall be applied. The Governments of the United States of America and Ireland nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorised by their respective Governments, have signed this Instrument.

DONE at Dublin, in duplicate, this 14 day of July 2005.

FOR THE GOVERNMENT OF THE          FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA:          IRELAND:

2

104

ANNEX

## TREATY ON EXTRADITION BETWEEN

## THE UNITED STATES OF AMERICA AND IRELAND

### ARTICLE I: Obligation to Extradite

Each Contracting Party agrees to extradite to the other, in accordance with the provisions of this Treaty, but subject to the law of the Requested State and to such exceptions as are therein provided, any persons, including its citizens or nationals, who are wanted for prosecution or the imposition or enforcement of a sentence in the Requesting State for an extraditable offence.

### ARTICLE II: Extraditable Offences

1. An offence shall be an extraditable offence only if it is punishable under the law of both Contracting Parties by imprisonment for a period of more than one year, or by a more severe penalty. When the request for extradition relates to a person who is wanted for the enforcement of a sentence of imprisonment, extradition shall be granted only if the duration of the sentence still to be served amounts to at least four months.

2. For the purpose of this Article, it shall not matter:

(a) whether the laws of the Contracting Parties place the offence within the same category of offence or denominate the offence by the same terminology; or

(b) whether the offence is one for which United States federal law requires proof of interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

3. Subject to the conditions set forth in paragraph 1 of this Article, extradition shall also be granted for attempt and conspiracy to commit, aiding, abetting, counselling, procuring, inciting, or otherwise being an accessory to the commission of, an offence referred to in paragraph 1.

4. If extradition is granted for an extraditable offence, it may also be granted for any other offence for which extradition is requested that meets all the requirements for extradition other than the periods of imprisonment specified in paragraph 1 of this Article.

3

105

**ARTICLE III: Place of Commission of Offence**

1. Extradition shall not be refused on the ground that the offence for which extradition is requested was committed outside the Requesting State.

2. Extradition may be refused when the offence for which extradition is requested is regarded under the law of the Requested State as having been committed in its territory. If extradition is refused pursuant to this paragraph, the Requested State shall submit the case to its competent authorities for the purpose of prosecution.

**ARTICLE IV:  Exceptions to Extradition**

Extradition shall not be granted in any of the following circumstances:

(a) when the person whose surrender is sought has been convicted or acquitted, or a prosecution is pending against that person, in the Requested State, for the offence for which extradition is requested;

(b) when the offence for which extradition is requested is a political offence. Reference to a political offence shall not include the taking or attempted taking of the life of a Head of State or a member of his or her family;

(c) when there are substantial grounds for believing that a request for extradition for an ordinary criminal offence has been made for the purpose of prosecuting or punishing a person on account of that person's race, religion, nationality or political opinion. Unless the law of the Requested State otherwise provides, decisions under this paragraph shall be made by the executive authority; or

(d) when the offence for which extradition is requested is a military offence which is not an offence under the ordinary criminal law of the Contracting Parties.

**ARTICLE V:  Discretionary Grounds for Refusal of Extradition**

Extradition may be refused in any of the following circumstances:

(a) when the person whose surrender is sought has been convicted or acquitted in a third State of the offence for which extradition is requested; or

(b) when the competent authorities of the Requested State have decided to refrain from prosecuting the person whose surrender is sought for the offence for which extradition is requested, or to discontinue any criminal proceedings which have been initiated against that person for that offence.

4

106

## ARTICLE VI: Capital Punishment

Where the offence for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.

## ARTICLE VII: Postponement of Surrender

When the person whose extradition is requested is being, or is about to be, proceeded against, or has been convicted, in the Requested State in respect of an offence other than that for which extradition has been requested, surrender may be postponed until the conclusion of the proceedings and the full execution of any punishment the person may be or may have been awarded.

## ARTICLE VII bis: Temporary surrender

1. If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.

2. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the Requesting and Requested States. The time spent in custody in the territory of the Requesting State pending prosecution in that State may be deducted from the time remaining to be served in the Requested State.

## ARTICLE VIII: Extradition Procedure and Required Documents

1. The request for extradition shall be made in writing and shall be transmitted, with supporting documents, through the diplomatic channel, which shall include transmission as provided for in paragraph 8 of this Article.

2. The request for extradition shall contain:

    (a) information which will help to establish the identity of the person sought;

5

107

(b) the location of the person if known or, if it is not known, a statement to that effect; and

(c) a brief statement of the facts of the case.

3. Every request for extradition shall be supported by documents which contain:

(a) as accurate a description as possible of the person sought, together with any other information which will assist in establishing the person's identity and nationality;

(b) a statement of the pertinent facts of the case, indicating as accurately as possible the time and place of commission of the offence; and

(c) the legal description of the offence and a statement of the maximum penalties therefor and the text of the law setting forth the offence or, where this is not possible, a statement of the relevant law.

4. When the request for extradition relates to a person who has not been convicted, it shall also be supported:

(a) by the original or an authenticated copy of the warrant of arrest, or equivalent order, issued by a competent authority of the Requesting State;

(b) by the original or an authenticated copy of the complaint, information or indictment; and

(c) in the case of a request emanating from Ireland, by a statement of facts, by way of affidavit or statutory declaration, setting forth reasonable grounds for believing that an offence has been committed and that the person sought committed it.

5. When the request for extradition relates to a convicted person, it shall also be supported:

(a) by the original or an authenticated copy of the judgment of conviction; and

(b) if a sentence has been imposed, by the original or an authenticated copy of the sentence and a statement of the extent to which it has been carried out and that it is immediately enforceable.

6. All documents transmitted by the Requesting State shall be in English or shall be translated into English by that State.

7. Documents that bear the certificate or seal of the Department of Justice, or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalisation. "Department of Justice" shall, for the United States of America, mean the United States Department of Justice, and, for Ireland, the Department of Justice, Equality and Law Reform.

6

108

8. If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under Article X of this Treaty to enable the person's continued detention.

**ARTICLE VIII** *bis*:  **Sensitive information in a request**

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

**ARTICLE IX:  Additional Evidence or Information**

1. If the Requested State requires additional evidence or information to enable it to decide on the request for extradition, such evidence or information shall be submitted to it within such time as that State shall specify.

2. If the person sought is in custody and the additional evidence or information submitted as aforesaid is found insufficient or if such evidence or information is not received within the period specified by the Requested State, the person shall be discharged from custody. Such discharge shall not preclude the Requesting State from submitting another request in respect of the same offence.

3. Such additional evidence or information may be requested and furnished directly between the United States Department of Justice and the Department of Justice, Equality and Law Reform in Ireland.

**ARTICLE X:  Provisional Arrest**

1. In case of urgency, a Contracting Party may request the provisional arrest of a person sought. The request for provisional arrest shall be made through the diplomatic channel or directly between the United States Department of Justice and the Department of Justice, Equality and Law Reform in Ireland, in which case the facilities of INTERPOL may be used. The request may be transmitted by post or telegraph or by any other means affording evidence in writing.

7

2. The request shall contain:

(a) a description of the person sought;

(b) a statement of the nature of the offence and of the time at which and the place where it is alleged to have been committed;

(c) a statement of the existence of one of the documents referred to in paragraph 4(a) or 5 of Article VIII; and

(d) a statement that it is intended to send a request for extradition.

3. On receipt of such a request, the Requested State shall take the appropriate steps to secure the arrest of the person sought. The Requesting State shall be promptly notified of the result of its request.

4. Unless the law of the Requested State otherwise provides, a person arrested upon such a request shall be released upon the expiration of forty-five days from the date of that person's arrest if the request for extradition has not been duly received by the Requested State. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if a request for extradition is subsequently received.


**ARTICLE XI:  Rule of Speciality**

1. A person extradited under this Treaty shall not be proceeded against, sentenced, punished, detained or otherwise restricted in his or her personal freedom in the Requesting State for an offence other than that for which extradition has been granted, or be extradited by that State to a third State, unless:

(a) the person has left the Requesting State after extradition and has voluntarily returned to it;

(b) the person, having had an opportunity to leave the Requesting State, has not done so within forty-five days of final discharge in respect of the offence for which that person was extradited; or

(c) the Requested State has consented.

2. Where the description of the offence charged in the Requesting State is altered in the course of proceedings, the person extradited shall not be proceeded against, sentenced, punished, detained or otherwise restricted in his or her personal freedom except insofar as the offence under its new description is composed of the same constituent elements as the offence for which extradition was granted.

3. Unless the law of the Requesting State otherwise provides, the person extradited may be proceeded against, sentenced, punished, detained or otherwise restricted in his or her

110

personal freedom for an offence for which that person could be convicted, under the law of that State, upon trial for the offence for which extradition was granted.

4. These stipulations shall not apply to offences committed after the extradition.

## ARTICLE XII:  Multiple Requests

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offence or for different offences, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.  If Ireland receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offence or for different offences, its High Court, or such other authority as it may subsequently designate, shall determine to which State, if any, the person is to be surrendered.

3.  In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

| | |
|---|---|
| (a) | whether the requests were made pursuant to a treaty; |
| (b) | the places where each of the offences was committed; |
| (c) | the respective interests of the requesting States; |
| (d) | the seriousness of the offences; |
| (e) | the nationality of the victim; |
| (f) | the citizenship or nationality of the person sought; |
| (g) | the possibility of any subsequent extradition between the requesting States; and |
| (h) | the chronological order in which the requests were received from the requesting States. |

## ARTICLE XII bis:  Simplified extradition procedures

If the person sought consents to be surrendered to the Requesting State, the Requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty.

## ARTICLE XIII:  Notification of Decision

1. The Requested State shall promptly communicate to the Requesting State through the diplomatic channel the decision on the request for extradition.

9

111

2. The Requested State shall provide reasons for any partial or complete rejection of the request for extradition. It shall also provide the Requesting State with a copy of each opinion issued by its courts in connection with a request for extradition under this Treaty.

3. If a warrant or order for the extradition of a person sought has been issued by the competent authority and the person is not removed from the territory of the Requested State within such time as may be prescribed by the law of that State, that person may be set at liberty and the Requested State may subsequently refuse to extradite that person for that offence.

## ARTICLE XIV:  Surrender of Property

1. To the extent permitted under the law of the Requested State and subject to the rights of third parties, which shall be duly respected, all property which appears to have been acquired as a result of the offence in question or which may be required as evidence shall, if found, be seized and surrendered to the Requesting State if the person sought is extradited or if extradition, having been granted, cannot be carried out by reason of the death or escape of that person.

2. The Requested State may make the surrender of the property conditional upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable, and may defer its surrender if it is needed as evidence in the Requested State.

## ARTICLE XV:  Transit

1. Transit through the territory of one of the Contracting Parties of a person surrendered to the other Contracting Party by a third State may be granted on request subject to the law of the State of transit and to such conditions as that State may impose. For the purpose of considering the request, the State of transit may require the submission of such information as it considers necessary.

2. Authorisation is not required when air transportation is used and no landing is scheduled on the territory of the transit State. If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit that contains a description of the person being transported and a brief statement of the facts of the case. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Irish Department of Justice, Equality and Law Reform.  The facilities of the International Criminal Police Organisation (INTERPOL) may be used to transmit such a request. All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing.

10

112

**ARTICLE XVI: Representation**

1. The Department of Justice of the United States shall advise, assist and represent, or provide for the representation of, Ireland in any proceedings in the United States arising out of a request for extradition made by Ireland.

2. The Attorney General of Ireland shall advise and assist, and represent, or provide for the representation of, the interests of the United States in any proceedings in Ireland arising out of a request for extradition made by the United States.

3. The functions referred to in this Article may be assumed by any successor agency designated by the State concerned.

**ARTICLE XVII: Expenses**

1. The Requesting State shall bear all expenses arising out of the translation of documents and the transportation of the person sought from the place of the extradition proceedings to the Requesting State. Notwithstanding any law to the contrary, the Requested State shall bear all other expenses arising out of the request for extradition and the proceedings.

2. The Requested State shall make no pecuniary claim against the Requesting State arising out of the arrest, detention, extradition proceedings and surrender of a person sought under this Treaty.

**ARTICLE XVIII: Termination**

Either Contracting Party may terminate this Treaty by giving written notice to the other Contracting Party at any time, and the termination shall become effective six months after the date of receipt of such notice.

11

113

**Instrument as contemplated by Article 3(2) of the Agreement on
Extradition between the United States of America and the European Union
signed 25 June 2003, as to the application of the Extradition Treaty between
the Government of the United States of America and the Government of the
Italian Republic signed 13 October 1983**

1.  As contemplated by Article 3(2) of the Agreement on Extradition between the
    United States of America and the European Union signed 25 June 2003
    (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the
    United States of America and the Italian Republic acknowledge that, in
    accordance with the provisions of this Instrument, the U.S.-EU Extradition
    Agreement is applied in relation to the bilateral Extradition Treaty between
    the Government of the United States of America and the Government of the Italian
    Republic signed 13 October 1983 (hereafter "the 1983 Extradition Treaty")
    under the following terms:

(a)  Article 5 of the U.S.-EU Extradition Agreement as set forth in Article X(1) and
     (7) of the Annex to this Instrument shall govern the mode of transmission, and
     requirements concerning certification, authentication or legalization, of the
     extradition request and supporting documents;

(b)  Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article X(8) of
     the Annex to this Instrument shall provide an alternative method for
     transmission of the request for extradition and supporting documents following
     provisional arrest;

(c)  Article 8(2) of the U.S.-EU Extradition Agreement as set forth in Article XI(3)
     of the Annex to this Instrument shall govern the channel to be used for
     submitting supplementary information;

(d)  Article 10 of the U.S.-EU Extradition Agreement as set forth in Article XV of
     the Annex to this Instrument shall govern the decision on requests made by
     several States for the extradition or surrender of the same person;

(e)  Article 13 of the U.S.-EU Extradition Agreement as set forth in Article IX of the
     Annex to this Instrument shall govern extradition with respect to conduct
     punishable by death in the Requesting Party;

(f)  Article 14 of the U.S.-EU Extradition Agreement as set forth in Article XI bis of
     the Annex to this Instrument shall govern consultations where the Requesting
     Party contemplates the submission of particularly sensitive information in
     support of a request for extradition.

2.  The Annex reflects the integrated text of the provisions of the 1983 Extradition
    Treaty and the U.S.-EU Extradition Agreement that shall apply upon entry into
    force of this Instrument.

1

114

3.   In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.   This Instrument shall not apply to requests for extradition made prior to its entry into force.

5.   (a)      This Instrument shall be subject to the completion by the United States of America and the Republic of Italy of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and the Italian Republic shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

      (b)      In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be terminated and the 1983 Extradition Treaty shall be applied.  The Governments of the United States of America and the Italian Republic nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Rome, in duplicate, this third day of May 2006, in the English and Italian languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE          FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:          ITALIAN REPUBLIC:

2

115

## ANNEX

### EXTRADITION TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE ITALIAN REPUBLIC

ARTICLE I
Obligation to Extradite

The Contracting Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities of the Requesting Party have charged with or found guilty of an extraditable offense.

ARTICLE II
Extraditable Offenses

1. An offense, however denominated, shall be an extraditable offense only if it is punishable under the laws of both Contracting Parties by deprivation of liberty for a period of more than one year or by a more severe penalty. When the request for extradition relates to a person who has been sentenced, extradition shall be granted only if the duration of the penalty still to be served amounts to at least six months.

2. An offense shall also be an extraditable offense if it consists of an attempt to commit, or participation in the commission of, an offense described in paragraph 1 of this Article. Any type of association to commit offenses described in paragraph 1 of this Article, as provided by the laws of Italy, and conspiracy to commit an offense described in paragraph 1 of this Article, as provided by the laws of the United States, shall also be extraditable offenses.

3. When extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request even if the latter offense is punishable by less than one year's deprivation of liberty, provided that all other requirements for extradition are met.

4. The provisions of this Article apply whether or not the offense is one for which United States federal law requires proof of an element, such as interstate transportation, the use of the facilities of interstate commerce, or the effects upon such commerce, since such an element is required for the sole purpose of establishing the jurisdiction of United States federal courts.

3

116

### ARTICLE III
### Jurisdiction

When an offense has been committed outside the territory of the Requesting Party, the Requested Party shall have the power to grant extradition if its laws provide for the punishment of such an offense or if the person sought is a national of the Requesting Party.

### ARTICLE IV
### Extradition of Nationals

A Requested Party shall not decline to extradite a person because such a person is a national of the Requested Party.

### ARTICLE V
### Political and Military Offenses

1. Extradition shall not be granted when the offense for which extradition is requested is a political offense, or if the person whose surrender is sought proves that the request for surrender has been made in order to try or punish him or her for a political offense.

2. For the purpose of the application of paragraph 1 of this Article, an offense with respect to which both Contracting Parties have the obligation to submit for prosecution or to grant extradition pursuant to a multilateral international agreement, or an offense against the life, physical integrity or liberty of a Head of State or Government or a member of their respective families, or any attempt to commit such an offense, will be presumed to have the predominant character of a common crime when its consequences were or could have been grave. In determining the gravity of the offense and its consequences, the fact that the offense endangered public safety, harmed persons unrelated to the political purpose of the offender, or was committed with ruthlessness shall, in particular, be taken into account.

3. Extradition shall not be granted for offenses under military law which are not offenses under ordinary criminal law.

### ARTICLE VI
### Non Bis in Idem

Extradition shall not be granted when the person sought has been convicted, acquitted or pardoned, or has served the sentence imposed, by the Requested Party for the same acts for which extradition is requested.

4

117

### ARTICLE VII
#### Pending Proceedings for the Same Acts

Extradition may be refused if the person sought is being proceeded against by the Requested Party for the same acts for which extradition is requested.

### ARTICLE VIII
#### Lapse of Time

Extradition shall not be granted when the prosecution, or the enforcement of the penalty, for the offense for which extradition has been requested has become barred by lapse of time under the laws of the Requesting Party.

### ARTICLE IX
#### Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting Party and not punishable by death under the laws in the Requested Party, the Requested Party may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting Party, on condition that the death penalty if imposed shall not be carried out. If the Requesting Party accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting Party does not accept the conditions, the request for extradition may be denied.

### ARTICLE X
#### Extradition Requests and Supporting Documents

1. Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 8 of this Article.

2. All requests for extradition shall be accompanied by:

(a) documents, statements or other information which set forth the identity and probable location of the person sought, with, if available, physical description, photographs and fingerprints;

(b) a brief statement of the facts of the case, including the time and location of the offense;

5

118

(c) the texts of the laws describing the essential elements and the designation of the offense for which extradition is requested;

(d) the texts of the laws describing the punishment for the offense; and

(e) the texts of the laws describing the time limit on the prosecution or the execution of the punishment for the offense.

3.   A request for extradition which relates to a person who has not yet been convicted shall also be accompanied by:

(a) a certified copy of the arrest warrant or any order having similar effect;

(b) a summary of the facts of the case, of the relevant evidence and of the conclusions reached, providing a reasonable basis to believe that the person sought committed the offense for which extradition is requested; in the case of requests from Italy such a summary shall be written by a magistrate, and in the case of requests from the United States it shall be written by the prosecutor and shall include a copy of the charge; and

(c) documents establishing that the person sought is the person to whom the arrest warrant or equivalent order refers.

4.   A request for extradition which relates to a person who has been convicted shall, in addition to those items set forth in paragraph 2 of this Article, be accompanied by:

(a) a copy of the judgment of conviction, or, in the case of the United States, if the person has been found guilty but not yet sentenced, a statement by a judicial officer to that effect;

(b) if the penalty has been pronounced, a copy of the sentence and a statement as to the duration of the penalty still to be served; and

(c) documents establishing that the person sought is the person convicted.

5.   If the person sought has been convicted in absentia or in contumacy, all issues relating to this aspect of the request shall be decided by the Executive Authority of the United States or the competent authorities of Italy.   In such cases, the Requesting Party shall submit such documents as are described in paragraphs 2, 3 and 4 of this Article and a statement regarding the procedures, if any, that would be available to the person sought if he or she were extradited.

6.   The documents which accompany an extradition request shall be made available in English and Italian by the Requesting Party.

6

119

7.   Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting Party shall be admissible in extradition proceedings in the Requested Party without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States, mean the United States Department of Justice; and, for Italy, the Italian Ministry of Justice.

8.   If the person whose extradition is sought is held under provisional arrest by the Requested Party, the Requesting Party may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the Requested Party located in the Requesting Party. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested Party for purposes of applying the time limit that must be met under Article XII of this Treaty to enable the person's continued detention.

ARTICLE XI
Additional Documentation

1.   If the Requested Party considers that the documentation furnished in support of a request for extradition is incomplete or otherwise does not conform to the requirements of this Treaty, that Party shall request the submission of necessary additional documentation. The Requested Party shall set a reasonable time limit for the submission of such documentation, and shall grant a reasonable extension of that time limit upon an application by the Requesting Party setting forth the reasons requiring the extension.

2.   If the person sought is in custody and the additional documentation submitted is incomplete or otherwise does not conform to the requirements of this Treaty, or if such documentation is not received within the period specified by the Requested Party, that person may be discharged from custody. Such discharge shall not prejudice the re-arrest and the extradition of the person sought if a new request and the additional documentation are delivered at a later date.

3.   Such additional documentation may be requested and furnished directly between the United States Department of Justice and the Italian Ministry of Justice.

120

### ARTICLE XI bis
#### Sensitive Information in a Request

Where the Requesting Party contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested Party to determine the extent to which the information can be protected by the Requested Party. If the Requested Party cannot protect the information in the manner sought by the Requesting Party, the Requesting Party shall determine whether the information shall nonetheless be submitted.

### ARTICLE XII
#### Provisional Arrest

1. In case of urgency, either Contracting Party may apply for the provisional arrest of any person charged or convicted of an extraditable offense. The application for provisional arrest shall be made either through the diplomatic channel or directly between the United States Department of Justice and the Italian Ministry of Justice, in which case the communication facilities of the International Criminal Police Organization (Interpol) may be used.

2. The application shall contain:  a description of the person sought including, if available, the person's nationality;  the probable location of that person; a brief statement of the facts of the case including, if possible, the time and location of the offense and the available evidence;  a statement of the existence of a warrant of arrest, with the date it was issued and the name of the issuing court;  a description of the type of offenses, a citation to the sections of law violated and the maximum penalty possible upon conviction, or a statement of the existence of a judgment of conviction against that person, with the date of conviction, the name of the sentencing court and the sentence imposed, if any; and a statement that a formal request for extradition of the person sought will follow.

3. On receipt of the application, the Requested Party shall take the appropriate steps to secure the arrest of the person sought.  The Requesting Party shall be promptly notified of the result of its application.

4. Provisional arrest shall be terminated if, within a period of 45 days after the apprehension of the person sought, the Executive Authority of the Requested Party has not received a formal request for extradition and the supporting documents required by Article X.

5. The termination of provisional arrest pursuant to paragraph 4 of this Article shall not prejudice the re-arrest and extradition of the person sought if the extradition request and the supporting documents are delivered at a later date.

6

121

### ARTICLE XIII
#### Decision and Surrender

1. The Requested Party shall promptly communicate to the Requesting Party through the diplomatic channel its decision on the request for extradition.

2. The Requested Party shall provide reasons for any partial or complete rejection of the request for extradition and a copy of the court's decision, if any.

3. When an extradition request has been granted, the competent authorities of the Contracting Parties shall agree on the time and place of the surrender of the person sought. If, however, that person is not removed from the territory of the Requested Party within the agreed time, that person may be set at liberty, unless a new date for surrender has been agreed upon.

### ARTICLE XIV
#### Deferred Surrender and Temporary Surrender

After a decision on a request for extradition has been rendered in the case of a person who is being proceeded against or is serving a sentence in the Requested Party for a different offense, the Requested Party shall have the authority to:

(a) defer the surrender of the person sought until the conclusion of the proceedings against that person or the full execution of any punishment that may be or may have been imposed; or

(b) temporarily surrender the person sought to the Requesting Party solely for the purpose of prosecution. A person so surrendered shall be kept in custody while in the Requesting Party and shall be returned to the Requested Party at the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the Contracting Parties.

### ARTICLE XV
#### Requests for Extradition or Surrender Made by Several States

1. If the Requested Party receives requests from the Requesting Party and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the Executive Authority of the Requested Party shall determine to which State, if any, it will surrender the person.

9

122

2. If Italy receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its Executive Authority shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the Requested Party shall consider all of the relevant factors, including, but not limited to, the following:

(a) whether the requests were made pursuant to a treaty;

(b) the places where each of the offenses was committed;

(c) the respective interests of the requesting States;

(d) the seriousness of the offenses;

(e) the nationality of the victim;

(f) the possibility of any subsequent extradition between the requesting States; and

(g) the chronological order in which the requests were received from the requesting States.

ARTICLE XVI
Rule of Specialty and Re-Extradition

1. A person extradited under this Treaty may not be detained, tried or punished in the Requesting Party except for:

(a) the offense for which extradition has been granted or when the same facts for which extradition was granted constitute a differently denominated offense which is extraditable;

(b) an offense committed after the surrender of a person; or

(c) an offense for which the Executive Authority of the United States or the competent authorities of Italy consent to the person's detention, trial or punishment. For the purpose of this subparagraph, the Requested Party may require the submission of the documents called for in Article X.

2. A person extradited under this Treaty may not be extradited to a third State unless the surrendering Party consents.

10

123

3.   Paragraphs 1 and 2 of this Article shall not prevent the detention, trial or punishment of an extradited person in accordance with the laws of the Requesting Party, or the extradition of that person to a third State, if:

(a)   that person leaves the territory of the Requesting Party after extradition and voluntarily returns to it; or

(b)   that person does not leave the territory of the Requesting Party within 30 days of the day on which that person is free to leave.

## ARTICLE XVII
### Simplified Extradition

If the person sought irrevocably agrees in writing to surrender to the Requesting Party after having been advised by a judge or competent magistrate of the right to formal proceedings and the protections afforded under this Treaty, the Requested Party may surrender the person without formal proceedings.

## ARTICLE XVIII
### Surrender of Articles, Instruments, Objects and Documents

1.   All articles, instruments, objects of value, documents and other evidence relating to the offense may be seized and surrendered to the Requesting Party.   Such property may be surrendered even when extradition cannot be effected.   The rights of third parties in such property shall be duly respected.

2.   The Requested Party may condition the surrender of the property upon satisfactory assurance from the Requesting Party that the property will be returned to the Requested Party as soon as practicable, and may defer its surrender if it is needed as evidence in the Requested Party.

## ARTICLE XIX
### Transit

1.   Either Contracting Party may authorize transit through its territory of a person surrendered to the other by a third State.   The Contracting Party requesting transit shall provide the transit State, through the diplomatic channel, a request for transit which shall contain a description of the person and a brief statement of the facts of the case.

124

2.  No authorization for transit shall be required when air transportation is used and no landing is scheduled in the territory of the other Contracting Party.  If an unscheduled landing occurs in the territory of that Contracting Party, it shall detain the person being transited not less than 96 hours while awaiting a request for transit pursuant to paragraph 1 of this Article.

### ARTICLE XX
### Assistance and Representation

The United States Department of Justice shall advise, assist and represent the Republic of Italy in any proceedings in the United States arising out of a request for extradition made by the Republic of Italy.

The Italian Ministry of Justice, through all means permitted by its legal system, shall advise, assist and provide for the representation of the United States of America in any proceedings in Italy arising out of a request for extradition made by the United States of America.

### ARTICLE XXI
### Expenses

The Requesting Party shall pay the expenses related to the translation of documents and the transportation of the person sought from the city where confined to the Requesting Party.  The Requested Party shall pay all other expenses related to the provisional arrest, extradition request and proceedings. Any expenses related to transit under Article XIX shall be borne by the Requesting Party.

The Requested Party shall make no pecuniary claim against the Requesting Party arising out of the arrest, detention or surrender of persons sought under the terms of this Treaty.

### ARTICLE XXII
### Denunciation

Either Contracting Party may terminate this Treaty at any time by giving written notice to the other Contracting Party.  Termination shall be effective six months after the date of receipt of such notice.

12

125

**Protocol on the application of the Agreement on Extradition between the United States of America and the European Union to the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Lithuania**

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Republic of Lithuania acknowledge that, in accordance with the provisions of this Protocol, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the Government of the United States of America and the Government of the Republic of Lithuania signed 23 October 2001 (hereafter "the 2001 Extradition Treaty") under the following terms:

(a)      Article 5(1) of the U.S.-EU Extradition Agreement as set forth in Article 8(1) of the Annex to this Protocol shall govern the mode of transmission of the extradition request and supporting documents;

(b)      Article 5(2) of the U.S.-EU Extradition Agreement as set forth in Article 9 of the Annex to this Protocol shall govern the requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

(c)      Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article 11(4) of the Annex to this Protocol shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

(d)      Article 8 of the U.S.-EU Extradition Agreement as set forth in Article 8 *bis* of the Annex to this Protocol shall govern the channel to be used for submitting supplementary information;

(e)      Article 10 of the U.S.-EU Extradition Agreement as set forth in Article 14 of the Annex to this Protocol shall govern the decision on requests made by several States for the extradition or surrender of the same person;

(f)      Article 13 of the U.S.-EU Extradition Agreement as set forth in Article 7 of the Annex to this Protocol shall govern extradition with respect to conduct punishable by death in the Requesting State; and

(g)      Article 14 of the U.S.-EU Extradition Agreement as set forth in Article 8 *ter* of the Annex to this Protocol shall govern consultations where the Requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.      The Annex reflects the integrated text of the provisions of the 2001 Extradition Treaty and the U.S.-EU Extradition Agreement that shall apply upon entry into force of this Protocol.

3.      In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Protocol shall apply to offenses committed before as well as after it enters into force.

1

126

4.    This Protocol shall not apply to requests for extradition made prior to its entry into force.

5.    (a)    This Protocol shall be subject to the completion by the United States of America and the Republic of Lithuania of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and the Republic of Lithuania shall thereupon exchange instruments indicating that such measures have been completed.  This Protocol shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

(b)    In the event of termination of the U.S.-EU Extradition Agreement, this Protocol shall be terminated and the 2001 Extradition Treaty shall be applied.  The Governments of the United States of America and the Republic of Lithuania nevertheless may agree to continue to apply some or all of the provisions of this Protocol.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Protocol.

DONE at Brussels, in duplicate, this 15th day of June, 2005, in the English and Lithuanian languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF THE
REPUBLIC OF LITHUANIA:

2

127

**ANNEX**

EXTRADITION TREATY
BETWEEN
THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND
THE GOVERNMENT OF THE REPUBLIC OF LITHUANIA

TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Obligation to Extradite |
| Article 2 | Extraditable Offenses |
| Article 3 | Nationality |
| Article 4 | Political and Military Offenses |
| Article 5 | Prior Prosecution |
| Article 6 | Lapse of Time |
| Article 7 | Capital Punishment |
| Article 8 | Extradition Procedures and Required Documents |
| Article 8 *bis* | Supplemental Information |
| Article 8 *ter* | Sensitive Information in a Request |
| Article 9 | Admissibility of Documents |
| Article 10 | Translation |
| Article 11 | Provisional Arrest |
| Article 12 | Decision and Surrender |
| Article 13 | Temporary and Deferred Surrender |
| Article 14 | Requests for Extradition or Surrender Made by Several States |
| Article 15 | Seizure and Surrender of Property |
| Article 16 | Rule of Speciality |
| Article 17 | Consent to Waiver of Extradition Proceedings |
| Article 18 | Transit |
| Article 19 | Representation and Expenses |
| Article 20 | Consultation |
| Article 21 | Termination |

3

128

## Article 1
### Obligation to Extradite

The Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State have charged with or convicted of an extraditable offense.

## Article 2
### Extraditable Offenses

1.    An offense shall be an extraditable offense if it is punishable under the laws in both States by deprivation of liberty for a period of more than one year or by a more severe penalty.

2.    An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of any offense described in paragraph 1.

3.    For the purposes of this Article, an offense shall be an extraditable offense:

   (a) whether or not the laws in the Requesting and Requested States place the offense within the same category of offenses or describe the offense by the same terminology; or

   (b) whether or not the offense in one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

4.   Extradition shall be granted for an extraditable offense regardless of where the act or acts constituting the offense were committed.

5.   If extradition has been granted for an extraditable offense it shall also be granted for any other offense specified in the request even if the latter offense in punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

## Article 3
### Nationality

Extradition shall not be refused based on the nationality of the person sought.

## Article 4
### Political and Military Offenses

1.   Extradition shall not be granted if the offense for which extradition is requested is a political offense.

4

129

2.   For the purposes of this Treaty, the following offenses shall not be considered political offenses:

(a) a murder or other violent crime against a Head of State of the Requesting or Requested State, or of a member of the Head of State's family;

(b) an offense for which both the Requesting and Requested States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution;

(c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm;

(d) an offense involving kidnaping, abduction, or any form of unlawful detention, including the taking of a hostage;

(e) placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and

(f) a conspiracy or attempt to commit any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses.

3.   Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4.   The executive authority of the Requested State may refuse extradition for offenses under military law that are not offenses under ordinary criminal law.


Article 5
Prior Prosecution

1.   Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested. Conviction or acquittal also means, under Lithuanian law, an agreed resolution approved by a court with final and binding effect.

2.   Extradition shall not be precluded by the fact that the competent authorities of the Requested State have decided either:

(a) not to prosecute the person sought for the acts for which extradition is requested;

(b) to discontinue any criminal proceedings which have been instituted against the person sought for those acts; or

(c) to investigate the person sought for the same acts.

130

### Article 6
### Lapse of Time

The decision by the Requested State whether to grant the request for extradition shall be made without regard to the law of either the Requesting State or the Requested State concerning lapse of time.

### Article 7
### Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.

### Article 8
### Extradition Procedures and Required Documents

1.    Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in Article 11(4).

2.    All requests shall include:

(a) documents, statements, or other types of information which describe the identity and probable location of the person sought;

(b) information describing the facts of the offense and the procedural history of the case;

(c) a statement of the relevant text of the provisions of the laws describing the essential elements of the offense for which extradition is requested;

(d) a statement of the relevant text of the provisions of law prescribing punishment for the offense;

(e) a statement of the provisions of law describing any time limit on the prosecution; and

(f) the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

6

131

3.     A request for extradition of a person who is sought for prosecution also shall include:

      (a) a copy of the warrant or order of arrest issued by a judge, court, or other authority competent for this purpose;

      (b) a copy of the charging document; and

      (c) such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is sought.

4.   A request for extradition relating to a person who has been convicted of the offense for which extradition is sought also shall include:

      (a)  a copy of the judgment of conviction, or, if a copy is not available, a statement by a judicial authority that the person has been convicted;

      (b) information establishing that the person sought is the person to whom the finding of guilt refers;

      (c) a copy of the sentence imposed, if the person sought has been sentenced, and a  statement establishing to what extent the sentence has been carried out; and

      (d)  in the case of a person who has been convicted in absentia, the documents required by paragraph 3.

Art. 8 *bis*
Supplemental Information

1.   The Requested State may require the Requesting State to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Treaty.

2.   Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Republic of Lithuania.

Article 8 *ter*
Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State.  If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

7

132

### Article 9
### Admissibility of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Republic of Lithuania, the Ministry of Justice of the Republic of Lithuania.

### Article 10
### Translation

All documents submitted by the Requesting State shall be translated into the language of the Requested State.

### Article 11
### Provisional Arrest

1.     In case of urgency, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Office of the Public Prosecutor of the Republic of Lithuania. The facilities of the International Criminal Police Organization (Interpol) also may be used to transmit such a request.

2.     The application for provisional arrest shall contain:

    (a)   a description of the person sought;

    (b)   the location of the person sought, if known;

    (c)   a brief statement of the facts of the case, including, if possible, the time and location of the offense;

    (d)   a description of the law(s) violated;

    (e)   a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

    (f)   a statement that the documents supporting the extradition request for the person sought will follow within the time specified in this treaty.

3.     The Requesting State shall be notified without delay of the disposition of its request for provisional arrest and the reasons for any inability to proceed with the request.

4.     A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the request for

8

133

extradition required in Article 8. For this purpose, receipt of the request for extradition by the Embassy of the Requested State in the Requesting State shall constitute receipt by the executive authority of the Requested State.

5. The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

### Article 12
### Decision and Surrender

1. The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Requesting and Requested States shall agree on the time and place for the surrender of the person sought.

4. If the person sought is not removed from the territory of the Requested State within the time period prescribed by the law of that State, that person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offense.

### Article 13
### Temporary and Deferred Surrender

1. If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the Requesting and Requested States.

2. The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

### Article 14
### Requests for Extradition or Surrender Made by Several States

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same

9

134

offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.        If the Republic of Lithuania receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3.        In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)        whether the requests were made pursuant to a treaty;
(b)        the places where each of the offenses was committed;
(c)        the respective interests of the Requesting States;
(d)        the seriousness of the offenses;
(e)        the nationality of the victim;
(f)        the possibility of any subsequent extradition between the Requesting States; and
(g)        the chronological order in which the requests were received from the Requesting States.

Article 15
Seizure and Surrender of Property

1.        To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all items, including articles, documents, and evidence, that are connected with the offense in respect of which extradition is granted.  The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.        The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable.  The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State.

3.        The rights of third parties in such items shall be duly respected in accordance with the laws of the Requested State.

Article 16
Rule of Speciality

1.        A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

(a)  any offense for which extradition was granted, or a differently denominated offense based on the same facts as the offense for which extradition was granted, provided such offense is extraditable, or is a lesser included offense;

(b)  any offense committed after the extradition of the person; or

10

135

(c)  any offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment.  For the purpose of this subparagraph:

(i)  the Requested State may require the submission of the documentation called for in Article 8; and

(ii)  the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.      A person extradited under this Treaty may not be extradited to a third State or extradited or surrendered to an international tribunal for any offense committed prior to extradition unless the Requested State consents.

3.      ·   Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a)  that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b)  that person does not leave the territory of the Requesting State within 10 days of the day on which that person is free to leave.

Article 17
Consent to Waiver of Extradition Proceedings

If the person sought consents in writing to be surrendered to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

Article 18
Transit

1.      Either State may authorize transportation through its territory of a person surrendered to the other State by a third State.  A request for transit shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Lithuania.  The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request to the above-mentioned authorities.  The request for transit shall contain a description of the person being transported and a brief statement of the facts of the case.  A person in transit may be detained in custody during the period of transit.

2.      Authorization is not required when air transportation is used by one State and no landing is scheduled on the territory of the other State.  If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for

11

136

transit pursuant to paragraph 1, and it may detain the person until the request for transit is received and the transit is effected, as long as the request is received within 48 hours of the unscheduled landing.

Article 19
Representation and Expenses

1.   The Requested State shall advise, assist, appear in court on behalf of, and represent the interests of the Requesting State in any proceedings arising out of a request for extradition.

2.   The Requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered.  The Requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings.

3.   Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons under this Treaty.

Article 20
Consultation

The United States Department of Justice and the Office of the Public Prosecutor and the Ministry of Justice of the Republic of Lithuania may consult with each other in connection with the processing of individual cases and in furtherance of efficient implementation of this Treaty.

Article 21
Termination

Either State may terminate this Treaty at any time by giving written notice to the other State, and the termination shall be effective six months after the date of such notice.

12

137

**Instrument as contemplated by Article 3, paragraph 2 (a), of the Agreement on
Extradition between the United States of America and the European Union signed
25 June 2003 as to the application of the Extradition Treaty between the
Government of the United States of America and the
Government of the Grand Duchy of Luxembourg signed 1 October 1996**

As contemplated by Article 3, paragraph 2 (a) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and of the Grand Duchy of Luxembourg acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the Government of the United States of America and the Government of the Grand Duchy of Luxembourg signed 1 October 1996 (hereafter "the 1996 Bilateral Treaty on Extradition") under the following terms:

I

A.    Article 5, paragraph 1, of the U.S.-EU Extradition Agreement provides:

"Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in Article 7."

B.    Article 5, paragraph 1, of the U.S.-EU Extradition Agreement shall govern the mode of transmission of an extradition request and supporting documents and shall be applied in place of Article 8, paragraph 1, of the 1996 Bilateral Treaty on Extradition. For purposes of applying its terms, the reference to "Article 7" refers to Part III of this Instrument.

II

A.    Article 5, paragraph 2, of the U.S.-EU Extradition Agreement provides:

"Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalisation."

B.    Article 5, paragraph 2, of the U.S.-EU Extradition Agreement shall govern the requirements concerning certification, authentication or legalisation of an extradition request and supporting documents, and shall be applied in place of Article 10 of the 1996 Bilateral Treaty on Extradition. For purposes of applying its terms, "Ministry of Justice" means, for the United States of America, the United States Department of Justice, and, for the Grand Duchy of Luxembourg, the Ministry of Justice of the Grand Duchy of Luxembourg.

1

138

## III

A.   Article 7, paragraph 1, of the U.S.-EU Extradition Agreement provides:

"If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 5(1), by submitting the request and documents to the Embassy of the requested State located in the requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under the applicable extradition treaty to enable the person's continued detention."

B.   Article 7, paragraph 1, of the U.S.-EU Extradition Agreement shall govern the transmission of a request for extradition and supporting documents following provisional arrest, and shall be applied to supplement the terms of Article 8 of the 1996 Bilateral Treaty on Extradition.  For purposes of applying its terms, the reference to "Article 5(1)" relates to Part I of this Instrument.

## IV

A.   Article 8, paragraph 2, of the U.S.-EU Extradition Agreement provides:

"Such supplementary information may be requested and furnished directly between the Ministries of Justice of the States concerned."

B.   Article 8, paragraph 2, of the U.S.-EU Extradition Agreement shall govern the channel to be used for submitting supplementary information, and shall be applied to supplement the terms of Article 9 of the 1996 Bilateral Treaty on Extradition.  For purposes of applying its terms, "Ministry of Justice" means, for the United States of America, the United States Department of Justice, and, for the Grand Duchy of Luxembourg, the Ministry of Justice of the Grand Duchy of Luxembourg.

## V

A.   Article 10 of the U.S.-EU Extradition Agreement provides:

"Requests for extradition or surrender made by several States

1.   If the requested State receives requests from the requesting State and from any other State or States for the extradition of the same person, either for the same offence or for different offences, the executive authority of the requested State shall determine to which State, if any, it will surrender the person.

2.   If a requested Member State receives an extradition request from the United States of America and a request for surrender pursuant to the European

2

139

arrest warrant for the same person, either for the same offence or for different offences, the competent authority of the requested Member State shall determine to which State, if any, it will surrender the person. For this purpose, the competent authority shall be the requested Member State's executive authority if, under the bilateral extradition treaty in force between the United States and the Member State, decisions on competing requests are made by that authority; if not so provided in the bilateral extradition treaty, the competent authority shall be designated by the Member State concerned pursuant to Article 19.

3.  In making its decision under paragraphs 1 and 2, the requested State shall consider all of the relevant factors, including, but not limited to, factors already set forth in the applicable extradition treaty and, where not already so set forth, the following:

    (a)   whether the requests were made pursuant to a treaty;

    (b)   the places where each of the offences was committed;

    (c)   the respective interests of the requesting States;

    (d)   the seriousness of the offences;

    (e)   the nationality of the victim;

    (f)   the possibility of any subsequent extradition between the requesting States; and

    (g)   the chronological order in which the requests were received from the requesting States."

B.  Article 10, paragraph 2, of the U.S.-EU Extradition Agreement shall govern the decision by the Grand Duchy of Luxembourg on a request by the United States of America for extradition and a request pursuant to the European arrest warrant for surrender of the same person, and shall be applied to supplement the terms of Article 15 of the 1996 Bilateral Treaty on Extradition. For purposes of applying its terms and for purposes of Article 19 of the U.S.-EU Extradition Agreement:

    1.  the Minister of Justice of the Grand Duchy of Luxembourg shall be the competent authority to determine to which State the person will be surrendered;

    2.  in making the decision the Minister of Justice shall consider all of the relevant factors, including those referred to in Article 15, paragraphs (a) through (g), of the 1996 Bilateral Treaty on Extradition.

3

140

## VI

A.   Article 13 of the U.S.-EU Extradition Agreement provides:

"Capital punishment

Where the offence for which extradition is sought is punishable by death under the laws in the requesting State and not punishable by death under the laws in the requested State, the requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting State, on condition that the death penalty if imposed shall not be carried out. If the requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the requesting State does not accept the conditions, the request for extradition may be denied."

B.   Article 13 of the U.S.-EU Extradition Agreement shall govern extradition with respect to conduct punishable by the death penalty in the Requesting State and shall be applied in place of Article 7 of the 1996 Bilateral Treaty on Extradition.

## VII

A.   Article 14 of the U.S.-EU Extradition Agreement provides:

"Sensitive information in a request

Where the requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested State to determine the extent to which the information can be protected by the requested State.  If the requested State cannot protect the information in the manner sought by the requesting State, the requesting State shall determine whether the information shall nonetheless be submitted."

B.   Article 14 of the U.S.-EU Extradition Agreement shall govern the treatment of sensitive information in a request for extradition and shall be applied to supplement the provisions of the 1996 Bilateral Treaty on Extradition.

## VIII

Pursuant to Article 16, paragraph 1 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offences committed before as well as after it enters into force.

Pursuant to Article 16, paragraph 2 of the U.S.-EU Extradition Agreement, this Instrument shall not apply to requests for extradition made prior to its entry into force.

4

141

IX

This Instrument shall be subject to the completion by the United States of America and the Grand Duchy of Luxembourg of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Grand Duchy of Luxembourg shall thereupon exchange instruments indicating that such measures have been completed. This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement, in accordance with Article 22, paragraph 1, thereof.

In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be terminated and the 1996 Bilateral Treaty on Extradition shall be applied.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Washington, in duplicate, this ___/ST___ day of February, in the English and French languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE                    FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:                     GRAND DUCHY OF LUXEMBOURG:

5

142

**AGREEMENT COMPRISING THE INSTRUMENT AS CONTEMPLATED
BY ARTICLE 3(2) OF THE AGREEMENT ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA AND THE EUROPEAN UNION
SIGNED AT WASHINGTON ON 25 JUNE 2003,
AS TO THE APPLICATION OF THE EXTRADITION TREATY
BETWEEN THE UNITED STATES OF AMERICA
AND THE KINGDOM OF THE NETHERLANDS
SIGNED AT THE HAGUE ON 24 JUNE 1980**

The Government of United States of America

and

the Government of the Kingdom of the Netherlands,

have agreed as follows:

*Article 1*

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Kingdom of the Netherlands acknowledge that, in accordance with the provisions of this Agreement, the bilateral Extradition Treaty between the United States of America and the Kingdom of the Netherlands signed 24 June 1980 (hereafter "the 1980 Extradition Treaty") is applied in relation to the U.S.-EU Extradition Agreement, under the following terms:

1

143

a)   Pursuant to Article 5(1) of the U.S.-EU Extradition Agreement, Article 9(1) of the Annex to this Agreement shall be applied in place of Article 9(1) of the 1980 Extradition Treaty;

b)   Pursuant to Article 5(2) of the U.S.-EU Extradition Agreement, Article 9(6) of the Annex to this Agreement shall be applied in place of Article 9(6) of the 1980 Extradition Treaty;

c)   Pursuant to Article 7(1) of the U.S.-EU Extradition Agreement, Article 9(7) of the Annex to this Agreement shall be applied to supplement the provisions of the 1980 Extradition Treaty;

d)   Pursuant to Article 8(2) of the U.S.-EU Extradition Agreement, Article 10(3) of the Annex to this Agreement shall be applied to supplement the provisions of the 1980 Extradition Treaty;

e)   Pursuant to Article 10 of the U.S.-EU Extradition Agreement, Article 14 of the Annex to this Agreement shall be applied in place of Article 14 of the 1980 Extradition Treaty;

f).   Pursuant to Article 13 of the U.S.-EU Extradition Agreement, Article 7(1) of the Annex to this Agreement shall be applied in place of Article 7(1) of the 1980 Extradition Treaty;

g)   Pursuant to Article 14 of the U.S.-EU Extradition Agreement, Article 10 *bis* of the Annex to this Agreement shall be applied to supplement the provisions of the 1980 Extradition Treaty.

*Article 2*

The Annex to this Agreement reflects the text of the provisions of the 1980 Extradition Treaty and the U.S.-EU Extradition Agreement as a result of paragraph 1 of this Agreement.  This integrated text shall apply upon entry into force of this Agreement.

2

144

*Article 3*

This Agreement shall apply to the United States of America and the Kingdom of the Netherlands in Europe. The Application of the 1980 Extradition Treaty to the Netherlands Antilles and Aruba shall remain unaffected by the U.S.-EU Extradition Agreement. Accordingly, this Agreement shall not apply to the Netherlands Antilles or Aruba unless the United States of America and the European Union, by exchange of diplomatic notes in accordance with Article 20(1)(b) of the U.S.-EU Extradition Agreement, agree to extend its application to them. Such application may be terminated in accordance with Article 20(2) of the U.S.-EU Extradition Agreement.

*Article 4*

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Agreement shall apply to offenses committed before as well as after it enters into force.

*Article 5*

This Agreement shall not apply to requests for extradition made prior to its entry into force.

*Article 6*

(a)  This Agreement shall be subject to the completion by the United States of America and the Kingdom of the Netherlands of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Kingdom of the Netherlands shall thereupon exchange instruments indicating that such measures have been completed. This Agreement shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

3

145

(b)   In the event of termination of the U.S.-EU Extradition Agreement, this Agreement shall be terminated at the same time and application of the original text of the 1980 Extradition Treaty shall resume six months after the notice of termination.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at *The Hague*, in duplicate, *29 September 2004*, in the English and Dutch languages, both texts being equally authentic.

For the Government of the
United States of America

For the Government of the
Kingdom of the Netherlands

4

146

ANNEX

ARTICLE 1:  Obligation to Extradite

The Contracting Parties agree to extradite to each other, subject to the provisions described in this Treaty, persons found in the territory of one of the Contracting Parties who have been charged with an offense, found guilty of committing an offense, or are wanted for the enforcement of a judicially pronounced penalty involving a deprivation of liberty or detention order.

ARTICLE 2:  Extraditable Offenses and Jurisdiction

1.    Extraditable offenses under this Treaty are:

a.    Offenses referred to in the Appendix to this Treaty which are punishable under the laws of both Contracting Parties;

b.    Offenses, whether listed in the Appendix to this Treaty or not, provided they are punishable under the Federal laws of the United States of America and the laws of the Kingdom of the Netherlands.

In this connection it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate an offense by the same terminology.

2.    Extradition shall be granted in respect of an extraditable offense:

a.    For prosecution, if the offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a period exceeding one year;

b.    For the imposition of a penalty or detention order, if the offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a period exceeding one year; or

c.    For the enforcement of a penalty or detention order for such an offense, if the duration of the penalty or detention order still to be served amounts to at least four months.

5

147

3.   Extradition shall be granted in respect of an extraditable offense committed outside the territory of the Requesting State if:

a.   The courts of the Requested State would be competent to exercise jurisdiction in similar circumstances, or

b.   The person sought is a national of the Requesting State.

4.   Subject to the conditions set out in paragraphs 1, 2 and 3, extradition shall also be granted:

a.   For attempts to commit or participation in an extraditable offense, including participation in an association of persons whose intention it is to commit the offense;

b.   For any extraditable offense when, for the purpose of granting jurisdiction to the United States Government, transportation of persons or property, the use of the mails or other means of carrying out interstate or foreign commerce is also an element of the specific offense.

5.   When extradition has been granted in respect of an extraditable offense, it may also be granted in respect of any other extraditable offense which would otherwise not be extraditable only by reason of the operation of paragraph 2.

ARTICLE 3:  Territorial Application

For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including airspace and territorial waters.

ARTICLE 4:  Political and Military Offenses

1.   Extradition shall not be granted when in the view of the Requested State the offense for which extradition is requested is of a political character, is connected with an offense of a political character, or it is established that extradition is requested for political purposes.

6

148

2. For the purpose of this Treaty a murder or willful crime against the life or physical integrity of a Head of State or Head of Government of one of the Contracting Parties or of a member of that person's family, including attempts to commit such offenses, shall not be deemed to be offenses within the meaning of paragraph 1.

3. Extradition shall not be granted when the offense for which extradition is requested is a purely military offense.

4. It shall be the responsibility of the Executive Authority of the Requested State to decide on any question raised under this Article, except to the extent that the national laws of that State expressly grant such powers to its courts.

ARTICLE 5: Prior Jeopardy for the Same Offense

Extradition shall not be granted when:

a. The person sought is being proceeded against, has been prosecuted, or has been tried and convicted or acquitted by the Requested State for the offense for which extradition is requested; or,

b. The person sought is otherwise immune from prosecution for the offense for which extradition is requested by reason of the law in the Requested State relating to prior jeopardy.

ARTICLE 6: Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requested State.

ARTICLE 7: Capital Punishment and Special Circumstances

1. Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed

7

149

shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.

2.   In special circumstances, having particular regard to the age, health or other personal condition of the person sought, the Executive Authority of the Requested State may refuse extradition if it has reason to believe that extradition will be incompatible with humanitarian considerations.

ARTICLE 8:  Extradition of Nationals

1.   In the event there is a treaty in force between the Contracting Parties on the execution of foreign penal sanctions, neither Contracting Party may refuse to extradite its own nationals solely on the basis of their nationality.

2.   As long as there is no treaty in force between the Contracting Parties on the execution of foreign penal sanctions, neither Contracting Party shall be bound to extradite its own nationals, but the Executive Authority of the Requested State shall, if not prevented by the law of that State, have the power to extradite them if, in its discretion, it be deemed proper to do so.

3.   If extradition is not granted solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for the purpose of prosecution, provided that the offense constitutes a criminal offense under the law of that State and that State has jurisdiction over the offense.

ARTICLE 9:  Extradition Procedures and Required Documents

1.   The request for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 7 of this Article.

2.   The request for extradition shall be accompanied by:

a.   All available information concerning the identity, nationality, and probable location of the person sought;

8

150

b.   A statement of the facts of the case including, if possible, the time and location of the crime;

c.   The provisions of the law describing the essential elements and the designation of the offense for which extradition is requested;

d.   The provisions of the law describing the punishment for the offense;

e.   The provisions of the law providing for jurisdiction when the offense was committed outside of the territory of the Requesting State.

3.   A request for extradition relating to a person sought for the purpose of prosecution shall be accompanied by:

a.   The original or a certified copy of the warrant of arrest issued by a judge or other competent judicial officer of the Requesting State; and

b.   Such evidence as, according to the law of the Requested State, would justify that person's arrest and committal for trial if the offense had been committed there, including evidence establishing that the person sought is the person to whom the warrant of arrest refers.

4.   A request for extradition relating to a convicted person shall be accompanied by:

a.   The original or certified copy of the judgment of conviction pronounced by a court of the Requesting State;

b.   Evidence establishing that the person sought is the person to whom the conviction refers.

If the person was found guilty but not sentenced, the request for extradition shall be accompanied by a statement to that effect by the appropriate court and by the original or certified copy of the warrant of arrest.

If the convicted person was sentenced, the request for extradition shall be accompanied by the original or certified copy of the sentence imposed, a statement that the sentence has final and binding effect and is enforceable and a statement showing to what extent the sentence has not been carried out.

5.   The documents to be submitted in support of the request for extradition, in accordance with this Article and Article 10, shall be translated into the language of the Requested State.

9

6.     Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Kingdom of the Netherlands, the Ministry of Justice of the Netherlands, or, should territorial application of this Treaty be extended in accordance with Article 20 (1)(b) of the U.S.-EU Extradition Agreement, as specified in the exchange of diplomatic notes pursuant thereto.

7.     If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under Article 11 of this Treaty to enable the person's continued detention.

ARTICLE 10:  Additional Evidence

1.     If the competent authority of the Requested State considers that the evidence furnished in support of the request for the extradition of a person sought is not sufficient to fulfill the requirements of this Treaty, that State shall request the submission of necessary additional evidence. The Requested State may set a time limit for the submission of such evidence and, upon the Requesting State's application, may grant a reasonable extension of such time limit.

2.     If the person sought has been taken into custody and the additional evidence or information submitted is not sufficient, or if such evidence or information is not received within the period specified by the Requested State, that person may be discharged from custody. However, such discharge shall not bar either the continued consideration of the request on

10

152

the basis of supplemented documents, or, if a final decision has already been taken, the submission of a subsequent request for the same offense. In such a case it shall be sufficient if reference is made in the subsequent request to the supporting documents already submitted, provided these documents will be available at the extradition proceedings.

3. Such additional evidence or information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Netherlands.

Article 10 bis:  Sensitive information in a request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

ARTICLE 11:  Provisional Arrest

1. In case of urgency, either Contracting Party may request the provisional arrest of any accused or convicted person. Application for provisional arrest may be made either through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice in the Netherlands or, should application of this Treaty be extended in accordance with Article 20 (1)(b) of the U.S.-EU Extradition Agreement, as specified in the exchange of diplomatic notes pursuant thereto.

2. The application shall contain: a description of the person sought, including, if available, the person's nationality; a brief statement of the facts of the case including, if possible, the time and location of the offense; a statement of the existence of a warrant of arrest or a judgment of conviction against that person; and a statement that a request for extradition of the person sought will follow.

11

153

3.   On receipt of such an application the Requested State shall take the appropriate steps to secure the arrest of the person sought. The Requesting State shall be promptly notified of the result of its application.

4.   Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person sought, the Requested State has not received the formal request for extradition and the supporting documents mentioned in Article 9.

5.   The termination of provisional arrest pursuant to paragraph (4) shall not prejudice the extradition of the person sought if the extradition request and the supporting documents mentioned in Article 9 are delivered at a later date.

ARTICLE 12:  Decision and Surrender

1.   The Requested State shall promptly communicate through the diplomatic channel to the Requesting State the decision on the request for extradition.

2.   The Requested State shall give the reasons for any complete or partial rejection of the request for extradition.

3.   If the extradition has been granted, surrender of the person sought shall take place within such time as may be prescribed by the law of the Requested State. The competent authorities of the Contracting Parties shall agree on the time and place of the surrender of the person sought. If, however, that person is not removed from the territory of the Requested State within such time as may be agreed, that person may be set at liberty and the Requested State may subsequently refuse extradition for the same offense.

ARTICLE 13:  Delayed Decision and Temporary Surrender

After a decision on a request for extradition has been rendered in the case of a person who is being proceeded against or is serving a sentence in the territory of the Requested State for a different offense, the Requested State may:

12

154

a.  Defer the surrender of the person sought until the conclusion of the proceedings against that person, or the full execution of any punishment that may be or may have been imposed; or

b.  Temporarily surrender the person sought to the Requesting State solely for the purpose of prosecution. The person so surrendered shall be kept in custody while in the Requesting State and returned at the conclusion of the proceedings against that person in accordance with conditions to be determined by mutual agreement of the Contracting Parties.

ARTICLE 14: Requests for Extradition or Surrender made by Several States

1.  If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the Executive Authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.  If the Kingdom of the Netherlands receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its Executive Authority shall determine to which State, if any, it will surrender the person.

3.  In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

a.  whether the requests were made pursuant to a treaty;

b.  the places where each of the offenses was committed;

c.  the respective interests of the requesting States;

d.  the seriousness of the offenses;

e.  the nationality of the victim;

f.  the possibility of any subsequent extradition between the requesting States; and

g.  the chronological order in which the requests were received from the requesting States.

13

155

ARTICLE 15: Rule of Speciality

1.   A person extradited under this Treaty shall not be detained, tried or punished in the territory of the Requesting State for an offense other than that for which extradition has been granted, nor be extradited by that State to a third State, unless:

a.   That person has left the territory of the Requesting State after extradition and has voluntarily returned to it;

b.   That person has not left the territory of the Requesting State within 30 days after being free to do so; or

c.   The Executive Authority of the Requested State has consented to detention, trial, or punishment of that person for an offense other than that for which extradition was granted, or to extradition to a third State. For this purpose, the Requested State may require the submission of any document or statement mentioned in Article 9, including any statement made by the extradited person with respect to the offense concerned.

These stipulations shall not apply to offenses committed after extradition.

2.   If the charge for which the person was extradited is legally altered in the course of proceedings, that person may be prosecuted or sentenced provided the offense under its new legal description is:

a.   Based on the same set of facts contained in the extradition request and its supporting documents; and

b.   Punishable by the same maximum penalty as, or a lesser maximum penalty than, the offense for which that person was extradited.

ARTICLE 16: Simplified Extradition

If the extradition of a person sought is not obviously precluded by the law of the Requested State and provided the person sought irrevocably agrees in writing to extradition after personally being advised by a judge or competent magistrate of other rights granted in formal extradition proceedings and the protection afforded by them that this person would lose, the Requested State may grant extradition without a formal extradition proceeding having taken place. In this case Article 15 shall not be applicable.

14

156

ARTICLE 17:  Surrender of Property

1.     To the extent permitted under the law of the Requested State and subject to the rights of third parties, which shall be duly respected, all articles, instruments, objects of value or documents relating to the offense, whether or not used for its execution, or which in any other manner may be evidence for the prosecution, shall at the request of the Requesting State be seized and surrendered upon the granting of the extradition. The property mentioned in this Article shall be handed over even if the extradition cannot be effected due to the death, escape or disappearance of the person sought.

2.     The Requested State may condition the surrender of property upon a satisfactory assurance from the Requesting State that the property will be returned to the Requested State as soon as possible.

ARTICLE 18:  Transit

1.     Either Contracting Party may authorize the other transit through its territory of a person surrendered by a third State. The Contracting Party requesting transit shall provide the information mentioned in Article 11, paragraph 2, through channels provided in that Article. No such authorization is required where air transportation is used and no landing is scheduled on the territory of the other Contracting Party.

2.     If an unscheduled landing on the territory of the other Contracting Party occurs, transit shall be subject to the provisions of paragraph 1. That Contracting Party may detain the person to be transited for a period of 96 hours while awaiting the request for transit.

ARTICLE 19:  Expenses

1.     The Requested State shall review for legal sufficiency documentation in support of an extradition request prior to submission to its judicial authorities and shall present the request of the Requesting State to such authorities.

15

157

2.   Expenses related to the translation of documents supporting the request for extradition and to the transportation of the person sought shall be borne by the Requesting State. All other expenses related to the extradition request and proceedings shall be borne by the Requested State. No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the Requested State against the Requesting State.

ARTICLE 20:   Denunciation

Either Contracting Party may terminate this Treaty at any time by giving notice to the other Party and the termination shall be effective six months after the date of receipt of such notice.

16

158

APPENDIX:  SCHEDULE OF OFFENSES

1.  Murder; assault with intent to commit murder.

2.  Manslaughter.

3.  Malicious wounding; inflicting grievous bodily harm.

4.  Arson.

5.  Rape; indecent assault; incest; bigamy.

6.  Unlawful sexual acts with or upon children under the age specified by the laws of both the Requesting and Requested States.

7.  Wilful abandonment of a minor or other dependent person when the life of that minor or that dependent person is or is likely to be injured or endangered.

8.  Kidnapping; abduction; false imprisonment.

9.  Robbery; burglary; larceny; embezzlement.

10.  Fraud, including obtaining property, money or valuable securities by false pretenses, deceit, falsehood, or other fraudulent means.

11.  Bribery, including soliciting, offering and accepting.

12.  Extortion.

13.  Receiving, possessing or transporting anything of value knowing it to have been unlawfully obtained.

14.  Offenses relating to criminal breach of trust.

15.  An offense against the laws relating to counterfeiting and forgery; including the forging of seals, trademarks, documents, or use of such forgeries.

16.  An offense against the laws relating to international transfers of funds.

17.  An offense against the laws relating to importation, exportation or transit of goods, articles, or merchandise, including violations of the customs laws.

18.  Offenses relating to slavery or the illegal transporting of persons.

19.  Offenses against the laws relating to bankruptcy.

20.  Offenses against the laws relating to prohibition of private monopoly or unfair trade practices.

21.  Perjury; suboration of perjury; making a false statement to a government agency or official.

22.  Offenses relating to wilful evasion of taxes and duties.

17

23. Any act or omission intended or likely to: (a) endanger the safety of an aircraft in flight or of any person on board such aircraft; or (b) destroy or render any aircraft incapable of flight.

24. Any unlawful seizure or exercise of control of an aircraft in flight by force or violence, or by threat of force or violence, or by any other form of intimidation.

25. Any unlawful act or omission intended or that is likely to endanger the safety of any person in a railway train or in any vessel or other means of transportation.

26. Piracy, mutiny, or any mutinous act committed on board a vessel.

27. Malicious damage to property.

28. Offenses against the laws relating to the traffic in, or the possession, production or manufacture of narcotic drugs, cannabis, psychotropic drugs, cocaine and its derivatives, and other dangerous drugs and chemicals.

29. Offenses against laws relating to poisonous chemicals or substances injurious to health.

30. Offenses against the laws relating to firearms, ammunition, explosives, incendiary devices or nuclear materials.

31. Offenses against the laws relating to the abuse of official authority.

32. Offenses against the laws relating to obstruction of justice.

33. Offenses relating to securities and commodities.

34. Facilitating or permitting the escape of a person from custody.

35. Incitements to violence.

36. Any other act for which extradition may be granted in accordance with the laws of both Contracting Parties.

160

No. 34

I have the honor to refer to the Agreement between the United States of America and the Kingdom of the Netherlands, signed this day, comprising the instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003, as to the application of the Extradition Treaty between the United States of America and the Kingdom of the Netherlands signed at The Hague 24 June 1980. In view of the signature of this instrument, I wish to clarify the legal status of certain notes relating to the 1980 Extradition Treaty and to the 2003 U.S.-EU Extradition Agreement.

On 31 December 1985, the Government of the Kingdom of the Netherlands conveyed to the Government of the United States of America a diplomatic note confirming that, inter alia, the 1980 Extradition Treaty continues to apply to the Netherlands Antilles and to Aruba. The Extradition Agreement signed this day provides that the application of the 1980 Extradition Treaty to the Netherlands Antilles and to Aruba shall remain unaffected by the 2003 U.S.-EU Extradition Agreement. As a result,

161

the 1980 Extradition Treaty in its original form shall continue to apply to the Netherlands Antilles and to Aruba.

On 11 July 1991, the United States of America and the Kingdom of the Netherlands exchanged diplomatic notes constituting an understanding between the two governments regarding the extradition of nationals pursuant to the 1980 Extradition Treaty. This exchange of diplomatic notes shall continue to be applied in relation to Article 8 of the annex to the Extradition Agreement signed this day.

It is also noted that the 2003 U.S.-EU Extradition Agreement includes an explanatory note that "reflects understandings regarding the application of certain provisions of the Agreement" and constitutes an integral part of it. The understandings set forth in the explanatory notes are binding upon both the parties to the 2003 U.S.-EU Extradition Agreement and the member states of the European Union, and thus are applicable as well to the corresponding provisions of the Extradition Agreement signed this day.

If the foregoing understandings are shared by the Kingdom of the Netherlands, I have the honor to propose that this Note and Your Excellency's Note in reply shall constitute an understanding between the two Governments.

162

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

Embassy of the United States of America,

The Hague, September 29, 2004.

I certify this to be
a true copy of the
signed original.

Treaty Analyst

163



His Excellency
Mr. C.M. Sobel
Ambassador of the United States of America
At the Hague


The Hague, 29 September 2004


I have the honor to acknowledge receipt of your Note of today's date, which reads as follows:

"I have the honor to refer to the Agreement between the United States of America and the Kingdom of the Netherlands, signed this day, comprising the instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003, as to the application of the Extradition Treaty between the United States of America and the Kingdom of the Netherlands signed at the Hague 24 June 1980. In view of the signature of this instrument, I wish to clarify the legal status of certain notes relating to the 1980 Extradition Treaty and to the 2003 U.S.-EU Extradition Agreement.

On 31 December 1985, the Government of the Kingdom of the Netherlands conveyed to the Government of the United States of America a diplomatic note confirming that, inter alia, the 1980 Extradition Treaty continues to apply to the Netherlands Antilles and to Aruba. The Extradition Agreement signed this day provides that the application of the 1980 Extradition Treaty to the Netherlands Antilles and to Aruba shall remain unaffected by the 2003 U.S.-EU Extradition Agreement. As a result, the 1980 Extradition Treaty in its original form shall continue to apply to the Netherlands Antilles and to Aruba.

On 11 July 1991, the United States of America and the Kingdom of the Netherlands exchanged diplomatic notes constituting an understanding between the two governments regarding the extradition of nationals

164



pursuant to the 1980 Extradition Treaty. This exchange of diplomatic notes shall continue to be applied in relation to Article 8 of the annex to the Extradition Agreement signed this day.

It is also noted that the 2003 U.S.-EU Extradition Agreement includes an explanatory note that "reflects understandings regarding the application of certain provisions of the Agreement" and constitutes an integral part of it. The understandings set forth in the explanatory notes are binding upon both the parties to the 2003 U.S.-EU Extradition Agreement and the member states of the European Union, and thus are applicable as well to the corresponding provisions of the Extradition Agreement signed this day.

If the foregoing understandings are shared by the Kingdom of the Netherlands, I have the honor to propose that this Note and Your Excellency's Note in reply shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration".

I have the honor to confirm that the understanding described above is also the understanding of the Kingdom of the Netherlands  and that Your Excellency's Note together with this Reply Note shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

Mr. J.P.H. Donner
Minister of Justice

I certify this to be
a true copy of the
signed original.

Treaty Analyst

165

**Agreement between the United States of America and the Republic of Poland on the application of the Extradition Treaty between the United States of America and the Republic of Poland signed 10 July 1996, pursuant to Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003**

The United States of America and the Republic of Poland (the "Contracting States" referred to in the Annex to this Agreement),

In view of Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003,

Have agreed as follows:

Article 1

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the United States of America and the Republic of Poland acknowledge that, in accordance with the provisions of this Agreement, the bilateral Extradition Treaty between the United States of America and the Republic of Poland signed at Washington on 10 July 1996 (hereafter "the U.S.-Poland Extradition Treaty") is applied in relation to the U.S.-EU Extradition Agreement, under the following terms:

(a)     Article 6 of the Annex to this Agreement shall be applied in place of Article 6 of the U.S.-Poland Extradition Treaty, pursuant to Article 13 of the U.S.-EU Extradition Agreement;

(b)     Article 9(1) of the Annex to this Agreement shall be applied in place of Article 9(1) of the U.S.-Poland Extradition Treaty, pursuant to Article 5(1) of the U.S.-EU Extradition Agreement;

(c)     Article 9 bis of the Annex to this Agreement shall be applied to supplement the provisions of the U.S.-Poland Extradition Treaty, pursuant to Article 14 of the U.S.-EU Extradition Agreement;

(d)     Article 10 of the Annex to this Agreement shall be applied in place of Article 10 of the U.S.-Poland Extradition Treaty, pursuant to Article 5(2) of the U.S.-EU Extradition Agreement;

(e)     Article 12(4) of the Annex to this Agreement shall be applied to supplement the provisions of the U.S.-Poland Extradition Treaty, pursuant to Articles 5(1) and 7(1) of the U.S.-EU Extradition Agreement; the previous Article 12(4) and 12(5) shall be renumbered as Articles 12(5) and 12(6) respectively;

1

166

(f)    Article 17 of the Annex to this Agreement shall be applied in place of Article 17 of the U.S.-Poland Extradition Treaty, pursuant to Article 10 of the U.S.-EU Extradition Agreement;

(g)    In view of Articles 3 and 5 of this Agreement, Articles 24 and 26 of the U.S.-Poland Extradition Treaty shall be deleted.  Accordingly, Article 25 of the U.S.-Poland Extradition Treaty shall be renumbered as Article 24 of the Annex, and Article 27 of the U.S.-Poland Extradition Treaty shall be renumbered as Article 25 of the Annex.

### Article 2

The Annex reflects the integrated text of the provisions of the U.S.-Poland Extradition Treaty and the U.S.-EU Extradition Agreement as a result of Article 1 of this Agreement.  This integrated text shall apply upon entry into force of this Agreement.

### Article 3

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Agreement shall apply to offenses committed before as well as after it enters into force.

### Article 4

This Agreement shall not apply to requests made prior to its entry into force.

### Article 5

1.    This Agreement shall be subject to ratification and the instruments of ratification shall be exchanged as soon as possible.  This Agreement shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

2.    In the event of termination of the U.S.-EU Extradition Agreement, this Agreement shall be terminated as of the date of termination of the U.S.-EU Extradition Agreement, and the U.S.-Poland Extradition Treaty shall be applied instead.  The United States of America and the Republic of Poland nevertheless may agree to continue to apply some or all of the provisions of this Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at Warsaw this 9th day of June , 2006, in duplicate, in the English and Polish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF  THE
REPUBLIC OF POLAND:

2

167

ANNEX

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND
THE REPUBLIC OF POLAND

Article 1
Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense.

Article 2
Extraditable Offenses

1. An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2. An offense shall also be an extraditable offense if it consists of an attempt to commit, or participation in the commission of, an offense described in paragraph 1 of this Article. Any type of association to commit offenses described in paragraph 1 of this Article, as provided by the laws of Poland, and conspiracy to commit an offense described in paragraph 1 of this Article, as provided by the laws of the United States, shall also be extraditable offenses.

3. For the purposes of this Article, an offense shall be an extraditable offense:

(a) whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology; or

(b) whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

4. If the offense has been committed outside the territory of the Requesting State, extradition shall be granted if the laws in the Requested State provide for the punishment of an offense committed outside its territory in similar circumstances. If the laws in the Requested State do not so provide, the executive authority of the Requested State may, in its discretion, grant extradition.

5. If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request, even if the latter offense is punishable by

3

168

deprivation of liberty for one year or less, provided that all other requirements for extradition are met.

### Article 3
### Fiscal Offenses

An offense shall also be an extraditable offense if it consists of an offense in connection with taxes, duties, international transfers of funds, and importation, exportation, and transit of goods, even if the law of the Requested State does not require the same type of fee or tax or does not regulate fees, taxes, duties, transit of goods, and currency transactions in the same manner as the laws of the Requesting State.

### Article 4
### Nationality

1. Neither Contracting State shall be bound to extradite its own nationals, but the Executive Authority of the Requested State shall have the power to extradite such persons if, in its discretion, it be deemed proper and possible to do so.

2. If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for a decision as to prosecution.

### Article 5
### Political and Military Offenses

1. Extradition shall not be granted if the offense for which extradition is requested is an offense of a political character.

2. For the purposes of this Treaty, the following offenses shall not be considered to be of a political character:

(a) murder or any other offense against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b) an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution; and

(c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm or other grievous injury to health;

(d) an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

4

169

(e)   placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and,

(f)   an attempt to commit, or participation in the commission of, any of the foregoing offenses, as well as an association to commit these offenses as provided by the laws of Poland, or conspiracy to commit these offenses as provided by the laws of the United States.

3. Notwithstanding paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4. The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

Article 6
Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out.  If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions.   If the Requesting State does not accept the conditions, the request for extradition may be denied.

Article 7
Prior Prosecution

1. Extradition shall not be granted when the person sought has been convicted or acquitted with final and binding effect in the Requested State for the offense for which extradition is requested.

2. Extradition shall not be precluded by the fact that the competent authorities in the Requested State have decided either:

(a)   not to prosecute the person sought for the acts for which extradition is requested; or

(b)   to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

5

170

Article 8
Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requesting State.

Article 9
Extradition Procedures and Required Documents

1. Requests for extradition and supporting documents shall be transmitted through the diplomatic channel.

2. A request for extradition shall be supported by:

(a)  documents, statements, or other types of information which describe the identity, nationality, and probable location of the person sought;

(b)  information describing the facts of the offense and the procedural history of the case;

(c)  the text of the law describing the essential elements of the offense for which extradition is requested;

(d)  the text of the law prescribing the punishment for the offense;

(e)  a statement of the provisions of law describing any time limit on the prosecution or enforcement of the penalty for the offense for which extradition has been sought; and

(f)  the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

3. A request for extradition of a person who is sought for prosecution shall also be supported by:

(a) a copy of the warrant or order of arrest, if any, issued by a judge or other competent authority;

(b) a copy of the charging document, if any; and

(c) such information as would justify the committal for trial of the person if the offense had been committed in the Requested State.

6

4. A request for extradition relating to a person who has been found guilty of the offense for which extradition is sought shall also be supported by:

(a) a copy of the warrant or order of arrest, if any, issued by a judge or other competent authority;

(b) a copy of the judgment of conviction or, if such copy is not available, a statement by a judicial authority that the person has been found guilty;

(c) information establishing that the person sought is the person to whom the finding of guilt refers;

(d) a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

(e) in the case of a person who has been convicted in absentia, the documents required in paragraph 3.

## Article 9 bis
### Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

## Article 10
### Admissibility of Documents

Documents that bear the certificate or seal of the Ministry or Department of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization.

## Article 11
### Translation

All documents submitted by the Requesting State shall be translated into the language of the Requested State.

7

172

Article 12
Provisional Arrest

1. In case of urgency, a Contracting State may apply for the provisional arrest of the person sought before the request for extradition is submitted. An application for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request.

2. The application for provisional arrest shall contain:

(a)   a description of the person sought and information concerning the person's nationality;

(b)   the location of the person sought, if known;

(c)   a brief statement of the facts of the case, including, if possible, the time and location of the offense;

(d)   a description of the laws violated;

(e)   a statement of the existence of either:

(i)   a warrant of arrest for a person sought for prosecution or already found guilty but not yet sentenced, or

(ii) a judgment of conviction against a person sought for the enforcement of a sentence; and

(f)   a statement that a request for extradition for the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4.  If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 9, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State.  In that case, the date of receipt by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under paragraph 5 of this Article in order to enable the person's continued detention.

8

173

5.  A person who is provisionally arrested shall be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 9.

6.  The fact that the person sought has been discharged from custody pursuant to paragraph (5) of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

Article 13
Additional Information

If the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the requirements of this Treaty, that State may request that additional information be furnished within such a reasonable length of time as it specifies. Such additional information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Poland or through the diplomatic channel.

Article 14
Decision and Surrender

1. The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4. Surrender of the person sought shall take place within such time as may be prescribed by the laws of the Requested State. If the law of the Requested State does not provide a specific time for surrender, it shall take place within thirty (30) days from the date on which the Requesting State is notified of the decision to extradite.

5. If the person sought is not removed from the territory of the Requested State within the time required under paragraph (4), he may be set at liberty. The Requested State may subsequently refuse to extradite the person sought for the same offense.

9

174

6. If circumstances beyond its control prevent a Contracting State from timely surrendering or taking delivery of the person to be extradited, it shall notify the other Contracting State before the expiration of the time limit. In such a case the competent authorities of the Contracting States may agree upon a new date for the surrender.

### Article 15
### Convictions in Absentia

If a Contracting State has applied to the other State for extradition of a person convicted in absentia, the executive authority of the Requested State may refuse to surrender the person if it deems that the proceedings in absentia did not ensure the minimum right to defense to which the person charged is entitled. Extradition may be effected, however, if the Requesting State guarantees, in a manner deemed adequate, that the case against the person whose extradition is requested will be reopened, with guaranteed right of defense.

### Article 16
### Temporary and Deferred Surrender

1. If the extradition request is granted in the case of a person who is being prosecuted for an offense other than that for which extradition is sought or is serving a sentence in the territory of the Requested State for an offense other than that for which extradition is sought, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.

2. The Requested State may postpone the extradition proceedings against a person who is being prosecuted for the same offense for which that person is sought or any other offense, or who is serving a sentence in that State for an offense other than that for which extradition is sought. The postponement shall continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

### Article 17
### Requests for Extradition or Surrender Made by Several States

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

10

175

2. If the Republic of Poland receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)   whether the requests were made pursuant to a treaty;
(b)   the places where each of the offenses was committed;
(c)   the respective interests of the requesting States;
(d)   the seriousness of the offenses;
(e)   the nationality of the victim;
(f)   the possibility of any subsequent extradition between the requesting States; and
(g)   the chronological order in which the requests were received from the requesting States.

## Article 18
### Seizure and Surrender of Property

1. To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered, to the extent permitted under the law of the Requested State, even when extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.   The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3. The rights of third parties in such property shall be duly respected.

## Article 19
### Rule of Speciality

1. A person extradited under this Treaty may not be detained, prosecuted, sentenced, or punished in the Requesting State except for:

(a) an offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser form of such offense;

11

176

(b) an offense committed after the extradition of the person; or

(c) an offense for which the executive authority of the Requested State has consented to the person's detention, prosecution, sentencing, or punishment. For the purpose of this subparagraph:

(i) the Requested State may require the submission of the documents specified in Article 9; and

(ii) unless the Requested State objects in writing, the person extradited may be detained by the Requesting State for ninety (90) days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.    A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to the surrender unless the surrendering State consents.

3.    Paragraphs 1 and 2 of this Article shall not prevent the detention, prosecution, sentencing, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b) that person does not leave the territory of the Requesting State within thirty (30) days of the day on which that person is free to leave.

Article 20
Simplified Extradition

If the extradition of a person sought to the Requesting State is not obviously precluded by the laws of the Requested State and provided the person sought irrevocably agrees in writing to his extradition after personally being advised by a judge or competent magistrate of his rights to formal extradition proceedings and the protection afforded by them that he would lose, the Requested State may surrender the person sought without a formal extradition proceeding having taken place. In this case Article 19 shall not be applicable.

Article 21
Transit

1.Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of

12

177

Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization is required where air transportation is being used by one Contracting State and no landing is scheduled on the territory of the other Contracting State. If an unscheduled landing occurs on the territory of the other Contracting State, that Contracting State may require the request for transit as provided in paragraph 1. That Contracting State may detain the person to be transported until the request for transit is received and the transit is effected, so long as the request is received within ninety-six (96) hours of the unscheduled landing.

Article 22
Representation and Expenses

1. The Requested State shall assist, appear in court, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3. Neither State shall make any other pecuniary claim against the other State arising out of extradition procedures under this Treaty.

Article 23
Consultation

1. The United States Department of Justice and Ministry of Justice of the Republic of Poland may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

2. The Requesting State shall, at the request of the Requested State, inform the Requested State of the status of criminal proceedings against persons who have been extradited, and provide a copy of the final and binding decision if one has been issued in the case in question.

178

Article 24
Executive Authorities

For the United States of America, the executive authority shall be the Secretary of State or a person designated by the Secretary of State. For Poland, the executive authority shall be the Minister of Justice-Attorney General or a person designated by the Minister of Justice-Attorney General.

Article 25
Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State, and the termination shall be effective six months after the date of the receipt of such notice.

14

**Instrument between the United States of America and the Portuguese Republic as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003**

1.    As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Portuguese Republic acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Convention on Extradition between the Government of the United States of America and the Government of Portugal signed in Washington the 7th of May 1908 (hereafter "the 1908 Convention on Extradition"), under the following terms:

(a)    Article 4 of the U.S.-EU Extradition Agreement as set forth in Article I of the Annex to this Instrument shall govern the scope of extraditable offences;

(b)    Article 5(1) of the U.S.-EU Extradition Agreement as set forth in Article IV of the Annex to this Instrument shall govern the mode of transmission of the extradition request and supporting documents;

(c)    Article 5(2) of the U.S.-EU Extradition Agreement as set forth in Article V of the Annex to this Instrument shall govern the requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

(d)    Article 6 of the U.S.-EU Extradition Agreement as set forth in Article VI of the Annex to this Instrument shall authorize an alternative channel of transmission of requests for provisional arrest;

(e)    Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article IV of the Annex to this Instrument shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

(f)    Article 8 of the U.S.-EU Extradition Agreement as set forth in Article VII of the Annex to this Instrument shall govern the channel to be used for submitting supplementary information;

(g)    Article 9 of the U.S.-EU Extradition Agreement as set forth in Article III of the Annex to this Instrument shall govern the temporary surrender of a person being proceeded against or serving a sentence in the requested State;

(h)    Article 10 of the U.S.-EU Extradition Agreement as set forth in Article II of the Annex to this Instrument shall govern the decision on requests made by several countries for the extradition or surrender of the same person;

(i)    Article 11 of the U.S.-EU Extradition Agreement as set forth in Article IX of the Annex to this Instrument shall govern the use of simplified extradition procedures;

(j)    Article 12 of the U.S.-EU Extradition Agreement as set forth in Article X of the Annex to this Instrument shall govern requests for transit of persons in custody; and

1

180

(k) Article 14 of the U.S.-EU Extradition Agreement as set forth in Article VIII of the Annex to this Instrument shall govern consultations where the requesting country contemplates the submission of particularly sensitive information in support of a request for extradition.

2. The functions described in Article 2(3) of the U.S.-EU Extradition Agreement shall be exercised, for the Portuguese Republic, by the Procuradoria Geral da República; and, for the United States of America, by the United States Department of Justice, in the manner set forth in the Annex to this Instrument.

3. In order to implement the U.S.-EU Extradition Agreement, the Annex reflects the provisions to be applied to the 1908 Convention on Extradition upon entry into force of this Instrument; without prejudice to those provisions of the U.S.-EU Extradition Agreement directly applicable.

4. Where the constitutional principles of, or final judicial decisions binding upon, the requested State may pose an impediment to fulfillment of its obligation to extradite, and neither the Annex to this Instrument nor the 1908 Convention on Extradition resolve the matter, consultations shall take place between the requested and requesting States.

5. In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offences committed before as well as after it enters into force.

6. This Instrument shall not apply to requests for extradition made prior to its entry into force; except that, in accordance with Article 16 of the U.S.-EU Extradition Agreement, Articles I and III of the Annex shall be applicable to requests made prior to such entry into force.

7. This Instrument shall be subject to the completion by the United States of America and the Portuguese Republic of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Portuguese Republic shall thereupon exchange instruments indicating that such measures have been completed. This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement, and shall terminate upon termination of the U.S.-EU Extradition Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Washington, in duplicate, this 14th day of July 2005, in the English and Portuguese languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:

FOR THE PORTUGUESE REPUBLIC:

2

181

**ANNEX**

**Article 1**
**Extraditable offences**

A.    The following shall be applied in place of Article II of the 1908 Convention on Extradition:

"ARTICLE II

1.    An offence shall be an extraditable offence if it is punishable under the laws of the requesting and requested countries by deprivation of liberty for a maximum period of more than one year or by a more severe penalty. An offence shall also be an extraditable offence if it consists of an attempt or conspiracy to commit, or participation in the commission of, an extraditable offence. Where the request is for enforcement of the sentence of a person convicted of an extraditable offence, the deprivation of liberty remaining to be served must be at least four months.

2.    If extradition is granted for an extraditable offence, it shall also be granted for any other offence specified in the request if the latter offence is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

3.    For purposes of this Article, an offence shall be considered an extraditable offence:
       (a) regardless of whether the laws in the requesting and requested countries place the offence within the same category of offences or describe the offence by the same terminology;
       (b) regardless of whether the offence is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court; and
       (c) in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the requesting and requested countries provide for the same kinds of taxes, customs duties, or controls on currency or on the import or export of the same kinds of commodities.

4.    If the offence has been committed outside the territory of the requesting country, extradition shall be granted, subject to the other applicable requirements for extradition, if the laws of the requested country provide for the punishment of an offence committed outside its territory in similar circumstances. If the laws of the requested country do not provide for the punishment of an offence committed outside its territory in similar circumstances, the executive authority of the requested country, at its discretion, may grant extradition provided that all other applicable requirements for extradition are met."

B.    The phrase "committed within the jurisdiction of one of the Contracting Parties while said person was actually within such jurisdiction when the crime was committed, and who shall seek an asylum or shall be found within the territories of the other" in Article I of the 1908 Convention on Extradition shall not be applied.

3

182

**Article II**
**Requests for extradition or surrender made by several states**

The following shall be applied in place of Article VII of the 1908 Convention on Extradition:

"1.   If the requested country receives requests from the requesting country and from any other country or countries for the extradition of the same person, either for the same offence or for different offences, the executive authority of the requested country shall determine to which country, if any, it will surrender the person.

2.   If the Portuguese Republic receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offence or for different offences, its competent judicial authority shall determine to which country, if any, it will surrender the person.

3.   In making its decision under paragraphs 1 and 2, the requested country shall consider all of the relevant factors, including, but not limited to, the following:

    (a)   whether the requests were made pursuant to a treaty;
    (b)   the places where each of the offences was committed;
    (c)   the respective interests of the requesting countries;
    (d)   the seriousness of the offences;
    (e)   the nationality of the victim;
    (f)   the possibility of any subsequent extradition between the requesting countries; and
    (g)   the chronological order in which the requests were received from the requesting countries."

**Article III**
**Temporary surrender**

The following shall be applied to supplement the provisions of the 1908 Convention on Extradition:

"1.   If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the requested country, the requested country may temporarily surrender the person sought to the requesting country for the purpose of prosecution.

2.   The person so surrendered shall be kept in custody in the requesting country and shall be returned to the requested country at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the requesting and requested countries. The time spent in custody in the territory of the requesting country pending prosecution in that country may be deducted from the time remaining to be served in the requested country."

4

183

### Article IV
### Transmission of documents

The following shall be applied in place of Article XI, paragraph 2, of the 1908 Convention on Extradition:

"Requests for extradition and supporting documents shall be transmitted through the diplomatic channel. If the person whose extradition is sought is held under provisional arrest by the requested country, the requesting country may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel by submitting the request and documents to the Embassy of the requested country located in the requesting country. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested country for purposes of applying the time limit that must be met under Article XII to enable the person's continued detention."

### Article V
### Authentication of documents

The following shall be applied to supplement the provisions of the 1908 Convention on Extradition:

"Documents that bear the certificate or seal of the Procuradoria Geral da República of Portugal or of the Ministry of Foreign Affairs of Portugal shall be admissible in extradition proceedings in the United States of America without further certification, authentication, or other legalization. Documents that bear the certificate or seal of the United States Department of Justice or of the United States Department of State shall be admissible in extradition proceedings in the Portuguese Republic without further certification, authentication, or other legalization."

### Article VI
### Transmission of requests for provisional arrest

The following shall be applied to supplement the provisions of the 1908 Convention on Extradition:

"Requests for provisional arrest may be made directly between the Procuradoria Geral da República of Portugal and the United States Department of Justice, as an alternative to the diplomatic channel. The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request."

### Article VII
### Supplemental information

The following shall be applied to supplement the provisions of the 1908 Convention on Extradition:

"1.    The requested country may require the requesting country to furnish additional information within such reasonable length of time as it specifies, if it considers that the

5

information furnished in support of the request for extradition is not sufficient to fulfil the requirements of the Convention.

2.     Such supplementary information may be requested and furnished directly between the Procuradoria Geral da República of Portugal and the United States Department of Justice."

### Article VIII
### Sensitive information in a request

The following shall be applied to supplement the provisions of the 1908 Convention on Extradition:

"Where the requesting country contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested country to determine the extent to which the information can be protected by the requested country. If the requested country cannot protect the information in the manner sought by the requesting country, the requesting country shall determine whether the information shall nonetheless be submitted."

### Article IX
### Simplified extradition procedures

The following shall be applied to supplement the provisions of the 1908 Convention on Extradition:

"If the person sought consents to be surrendered to the requesting country, the requested country may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty."

### Article X
### Transit

The following shall be applied to supplement the provisions of the 1908 Convention on Extradition:

"1.     The United States of America may authorize transportation through its territory of a person surrendered to the Portuguese Republic by a third country, or by the Portuguese Republic to a third country. The Portuguese Republic may authorize transportation through its territory of a person surrendered to the United States of America by a third country, or by the United States of America to a third country.

2.     A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Procuradoria Geral da República of Portugal. The facilities of Interpol may also be used to transmit such a request. The request shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit shall be detained in custody

6

185

during the period of transit.

3.    Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit country. If an unscheduled landing does occur, the country in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 2. All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing."

7

**Declaration by the Portuguese Republic pursuant to the signature of the**

**Instrument between the United States of America and the Portuguese Republic as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003**

*"The Portuguese Republic states that under Portuguese constitutional law, impediments exist to extradition with respect to offences punishable by death, or by imprisonment for life or an unlimited duration. As a result, extradition for such offenses may only be granted in accordance with specific conditions considered by the Portuguese Republic to be consistent with its Constitution. Should a case arise in which these constitutional principle are involved, the Portuguese Republic will invoke the terms of Paragraph 4 of this Instrument."*

187

**Instrument on Extradition between the United States of America and the Slovak Republic, as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003**

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U. S.-EU Extradition Agreement"), the United States of America and the Slovak Republic acknowledge that, in accordance with the provisions of this Instrument, the U. S.-EU Extradition Agreement is applied in relation to the bilateral Treaty between the United States and Czechoslovakia Concerning the Mutual Extradition of Fugitive Criminals signed 2 July 1925 and the Supplementary Extradition Treaty between the United States of America and Czechoslovakia signed 29 April 1935 (hereafter collectively referred to as "the bilateral extradition treaty") under the following terms:

(a)     Article 4 of the U. S.-EU Extradition Agreement as set forth in Articles I and II of the Annex to this Instrument shall govern the scope of extraditable offenses;

(b)     Articles 5(1) and 7(1) of the U. S.-EU Extradition Agreement as set forth in Article XII(2) of the Annex to this Instrument shall govern the mode of transmission of the extradition request and supporting documents and shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

(c)     Article 5(2) of the U. S.-EU Extradition Agreement as set forth in Article XII(6) of the Annex to this Instrument shall govern the requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

(d)     Article 6 of the U. S.-EU Extradition Agreement as set forth in Article XII(3) of the Annex to this Instrument shall authorize an alternative channel of transmission of requests for provisional arrest;

(e)     Article 8 of the U. S.-EU Extradition Agreement as set forth in Article XIII of the Annex to this Instrument shall govern the submission of supplementary information;

(f)     Article 9 of the U. S.-EU Extradition Agreement as set forth in Article VII of the Annex to this Instrument shall govern the temporary surrender of a person being proceeded against or serving a sentence in the requested State;

(g)     Article 10 of the U. S.-EU Extradition Agreement as set forth in Article VIII of the Annex to this Instrument shall govern the decision on requests made by several States for the extradition or surrender of the same person;

(h)     Article 11 of the U. S.-EU Extradition Agreement as set forth in Article XV of the Annex to this Instrument shall govern the use of simplified extradition procedures;

1

188

(i)  Article 12 of the U. S.-EU Extradition Agreement as set forth in Article XVII of the Annex to this Instrument shall govern requests for transit of persons in custody;

(j)  Article 13 of the U. S.-EU Extradition Agreement as set forth in Article XVIII of the Annex to this Instrument shall govern extradition with respect to conduct punishable by death in the requesting State; and

(k)  Article 14 of the U. S.-EU Extradition Agreement as set forth in Article XIV of the Annex to this Instrument shall govern consultations where the requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.   The Annex, which is an integral part of this Instrument, reflects the integrated text of the provisions of the bilateral extradition treaty and the U. S.-EU Extradition Agreement that shall apply upon entry into force of this Instrument.

3.   In accordance with Article 16 of the U. S.-EU Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.   This Instrument shall not apply to requests for extradition made prior to its entry into force; except that, in accordance with Article 16 of the U. S.-EU Extradition Agreement, Articles II, VI and VII of the Annex shall be applicable to requests made prior to such entry into force.

5.(a)  This Instrument shall be subject to the completion by the United States of America and the Slovak Republic of their respective applicable internal procedures for entry into force. The United States of America and the Slovak Republic shall thereupon exchange instruments indicating that such measures have been completed. This Instrument shall enter into force on the date of entry into force of the U. S.-EU Extradition Agreement.

(b)  In the event of termination of the U. S.-EU Extradition Agreement, this Instrument shall be terminated and the bilateral extradition treaty shall be applied. The United States of America and the Slovak Republic nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

(c)  The United States of America or the Slovak Republic may also terminate this Instrument if the bilateral extradition treaty is terminated at the same time in accordance with the terms thereof.

2

189

IN WITNESS WHEREOF, the undersigned, being duly authorized for this purpose, have signed this Instrument.

Done at Bratislava, in duplicate, this 6ᵗʰ day of February, 2006, each in the English and Slovakian languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:    FOR THE SLOVAK REPUBLIC:

*Rudolph M. Vale*                 *[signature]*

3

190

Annex

Treaty between the United States of America and the Slovak Republic Concerning the
Mutual Extradition of Criminal Offenders

Article 1

It is agreed that the United States of America and the Slovak Republic shall, upon
requisition duly made as herein provided, deliver up to justice any person, who may be
charged with, or may have been convicted of any of the criminal offenses specified in
Article ll of this Treaty, and who shall seek an asylum or shall be found within their
respective territories; provided that such surrender shall take place only upon such
evidence of criminality, as according to the laws of the place where the fugitive or person
so charged shall be found, would justify his apprehension and commitment for trial if the
criminal offense had been there committed.

Article ll

1.      A criminal offense shall be an extraditable criminal offense if it is punishable
under the laws of the requesting and requested States by deprivation of liberty for a
maximum period of more than one year or by a more severe penalty.   A criminal offense
shall also be an extraditable criminal offense if it consists of an attempt or conspiracy to
commit, or participation in the commission of, an extraditable criminal offense.  Where
the request is for enforcement of the sentence of a person convicted of an extraditable
criminal offense, the deprivation of liberty remaining to be served must be at least four
months.

2.      If extradition is granted for an extraditable criminal offense, it shall also be
granted for any other criminal offense specified in the request if the latter criminal
offense is punishable by one year's deprivation of liberty or less, provided that all other
requirements for extradition are met.

3.      For purposes of this Article, a criminal offense shall be considered an extraditable
criminal offense:

        (a) regardless of whether the laws in the requesting and requested States place the
criminal offense within the same category of criminal offenses or describe the criminal
offense by the same terminology;

        (b) regardless of whether the criminal offense is one for which United States
federal law requires the showing of such matters as interstate transportation, or use of the
mails or of other facilities affecting interstate or foreign commerce, such matters being
merely for the purpose of establishing jurisdiction in a United States federal court; and

4

191

(c) in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the requesting and requested States provide for the same kinds of taxes, customs duties, or controls on currency or on the import or export of the same kinds of commodities.

4.      If the criminal offense has been committed outside the territory of the requesting State, extradition shall be granted, subject to the other applicable requirements for extradition, if the laws of the requested State provide for the punishment of a criminal offense committed outside its territory in similar circumstances.  If the laws of the requested State do not provide for the punishment of a criminal offense committed outside its territory in similar circumstances, the executive authority of the requested State, at its discretion, may grant extradition provided that all other applicable requirements for extradition are met.

Article III

1.      The provisions of this Treaty shall not import a claim of extradition for any criminal offense of a political character, nor for acts connected with such criminal offenses; and no persons surrendered by or to either of the Contracting Parties in virtue of this Treaty shall be tried or punished for a political offense committed before his extradition.

2.      The State applied to or Courts of that State shall decide whether the criminal offense is of a political character or not.

3.      When the criminal offense charged comprises the act either of murder or assassination or of poisoning, either consummated or attempted, the fact that the criminal offense was committed or attempted against the life of the Sovereign or Head of any State or against the life of any member of his family, shall not be deemed sufficient to sustain that such criminal offense was of a political character; or was an act connected with criminal offenses of a political character.

Article IV

No person shall be tried for any criminal offense committed before his extradition other than that for which he was surrendered or be extradited to another State, unless the executive authority of the surrendering State consents thereto, or unless he shall have been allowed one month to leave the State after having been set at liberty as a result of the disposition of the charges upon which he was extradited.

Article V

A criminal offender shall not be surrendered under the provisions hereof, when, from lapse of time or other lawful cause, according to the laws of either of the States within the jurisdiction of which the criminal offense was committed, the criminal offender is exempt from prosecution or punishment for the offense for which the surrender is asked.

192

Article VI

1.      If the person claimed should be under examination or under punishment in the State applied to for other criminal offenses, his extradition may be deferred until the conclusion of the trial or, in case of his conviction, until the full execution of any punishment imposed upon him.

2.      Yet this circumstance shall not be a hindrance to deciding the request for the extradition in the shortest time possible.

Article VII

1.      If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the requested State, the requested State may temporarily surrender the person sought to the requesting State for the purpose of prosecution.

2.      The person so surrendered shall be kept in custody in the requesting State and shall be returned to the requested State at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the requesting and requested States.  The time spent in custody in the territory of the requesting State pending prosecution in that State may be deducted from the time remaining to be served in the requested State.

Article VIII

1.      If the requested State receives requests from the requesting State and from any other State or States for the extradition of the same person, either for the same criminal offense or for different criminal offenses, the executive authority of the requested State shall determine to which State, if any, it will surrender the person.

2.      If the Slovak Republic receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same criminal offense or for different criminal offenses, the Minister of Justice of the Slovak Republic shall determine to which State, if any, it will surrender the person.

3.      In making its decision under paragraphs 1 and 2 of this Article, the requested State shall consider all of the relevant factors, including, but not limited to, the following:

        (a)      whether the requests were made pursuant to a treaty;

        (b)      the places where each of the criminal offenses was committed;

        (c)      the respective interests of the requesting States;

6

193

(d)     the seriousness of the criminal offenses;

(e)     the nationality of the victim;

(f)     the possibility of any subsequent extradition between the requesting States; and

(g)     the chronological order in which the requests were received from the requesting States.

Article IX

Under the stipulations of this Treaty, neither of the Contracting Parties shall be bound to deliver up its own citizens.

Article X

The requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered.  The requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings.

Article XI

Everything found in the possession of the criminal offender at the time of his arrest, whether being the proceeds of the criminal offense, or which may be material as evidence in making proof of the crime, shall so far as practicable according to the laws of either of the Contracting Parties, be delivered up with his person at the time of surrender. Nevertheless, the rights of a third party with regard to the articles referred to, shall be duly respected.

Article XII

1.     The stipulations of this treaty shall be applicable to all territory wherever situated, belonging to either of the Contracting Parties or in the occupancy and under the control of either of them, during such occupancy or control.

2.     Requests for extradition and supporting documents shall be transmitted through the diplomatic channel. If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel by submitting the request and documents to the Embassy of the requested State located in the requesting State.  In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under paragraph 4 of this Article to enable the person's continued detention.

7

194

3.      Requests for provisional arrest may be made directly between the United States Department of Justice and the Ministry of Justice of the Slovak Republic, as an alternative to the diplomatic channel.  The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request.

4.      The person provisionally arrested shall be released, unless within two months from the date of commitment in the United States, or from the date of arrest in the Slovak Republic, the formal requisition for surrender, with the documentary proofs hereinafter described, be made as aforesaid through the diplomatic channel.

5.      If the criminal offender shall have been convicted of the criminal offense for which his extradition is asked, a copy of the sentence of the court before which such conviction took place, duly authenticated, shall be produced. If, however, the criminal offender is merely charged with crime, a duly authenticated copy of the warrant of arrest in the State where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case.

6.      Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalization.  "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Slovak Republic, the Ministry of Justice of the Slovak Republic.

Article XIII

1.      The requested State may require the requesting State to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Treaty.

2.      Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Slovak Republic.

Article XIV

Where the requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested State to determine the extent to which the information can be protected by the requested State.  If the requested State cannot protect the information in the manner sought by the requesting State, the requesting State shall determine whether the information shall nonetheless be submitted.

8

195

Article XV

If the person sought consents to be surrendered to the requesting State, the requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty.

Article XVI

In every case of a request made by either of the Contracting Parties, for the arrest, detention or extradition of criminal offenders, the appropriate legal officers of the State where the proceedings of extradition are had, shall assist the State demanding the extradition before the respective judges and magistrates, by every legal means within their power.

Article XVII

1.      The United States of America may authorize transportation through its territory of a person surrendered to the Slovak Republic by a third State, or by the Slovak Republic to a third State.  The Slovak Republic may authorize transportation through its territory of a person surrendered to the United States of America by a third State, or by the United States of America to a third State.

2.      A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Slovak Republic.  The facilities of Interpol may also be used to transmit such a request. The request shall contain a description of the person being transported and a brief statement of the facts of the case.  A person in transit shall be detained in custody during the period of transit.

3.      Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit State.  If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 2.  All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing.

Article XVIII

Where the criminal offense for which extradition is sought is punishable by death under the laws in the requesting State and not punishable by death under the laws in the requested State, the requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting State, on condition that the death penalty if imposed shall not be carried out. If the requesting State accepts extradition

9

196

subject to conditions pursuant to this Article, it shall comply with the conditions.  If the requesting State does not accept the conditions, the request for extradition may be denied.

Article XIX

This Treaty shall continue in force until the expiration of one year from the date on which notice of termination shall be given by either of the Contracting Parties.

10

197

**Agreement between the Government of the United States of America and the Government of the Republic of Slovenia comprising the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, as to the Application of the Treaty on Extradition between the United States and the Kingdom of Serbia, signed 25 October 1901**

The Government of the United States of America and the Government of the Republic of Slovenia have agreed as follows:

Article 1

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Republic of Slovenia acknowledge that, in accordance with the provisions of this Agreement, the U.S.-EU Extradition Agreement is applied in relation to the bilateral extradition treaty currently in force between the United States of America and the Republic of Slovenia (the Treaty on Extradition between the United States and the Kingdom of Serbia, signed 25 October 1901; hereafter "the 1901 Treaty on Extradition"), under the following terms:

(a)  Article 4 of the U.S.-EU Extradition Agreement as set forth in Articles 1 and 2 of the Annex to this Agreement shall govern the scope of extraditable offenses;

(b)  Articles 5(1) and 7(1) of the U.S.-EU Extradition Agreement as set forth in Article 3(1) of the Annex to this Agreement shall govern the mode of transmission of the extradition request and supporting documents, and shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

(c)  Article 5(2) of the U.S.-EU Extradition Agreement as set forth in Article 3(3) of the Annex to this Agreement shall govern the requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

(d)  Article 6 of the U.S.-EU Extradition Agreement as set forth in Article 4(1) of the Annex to this Agreement shall authorize an alternative channel of transmission of requests for provisional arrest;

(e)  Article 8 of the U.S.-EU Extradition Agreement as set forth in Article 3 *bis* of the Annex to this Agreement shall govern the channel to be used for submitting supplementary information;

(f)  Article 9 of the U.S.-EU Extradition Agreement as set forth in Article 10 *bis* of the Annex to this Agreement shall govern the temporary surrender of a person being proceeded against or serving a sentence in the requested country;

(g)  Article 10 of the U.S.-EU Extradition Agreement as set forth in Article 10 of the Annex to this Agreement shall govern the decision on requests made by several countries for the extradition or surrender of the same person;

1

(h) Article 11 of the U.S.-EU Extradition Agreement as set forth in Article 10 *ter* of the Annex to this Agreement shall govern the use of simplified extradition procedures;

(i) Article 12 of the U.S.-EU Extradition Agreement as set forth in Article 11 *bis* of the Annex to this Agreement shall govern requests for transit of persons in custody;

(j) Article 13 of the U.S.-EU Extradition Agreement as set forth in Article 8 *bis* of the Annex to this Agreement shall govern extradition with respect to conduct punishable by death in the requesting country; and

(k) Article 14 of the U.S.-EU Extradition Agreement as set forth in Article 3 *ter* of the Annex to this Agreement shall govern consultations where the requesting country contemplates the submission of particularly sensitive information in support of a request for extradition.

Article 2

The Annex reflects the integrated text of the provisions of the 1901 Treaty on Extradition and the U.S.-EU Extradition Agreement. The Annex is an integral part of this Agreement that shall apply upon entry into force of this Agreement.

Article 3

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Agreement shall apply to offenses committed before as well as after it enters into force.

Article 4

This Agreement shall not apply to requests for extradition made prior to its entry into force; except that, in accordance with Article 16 of the U.S.-EU Extradition Agreement, Articles 1, 2 and 10 *bis* of the Annex shall be applicable to requests made prior to such entry into force.

Article 5

(a) This Agreement shall be subject to the completion by the United States of America and the Republic of Slovenia of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Republic of Slovenia shall thereupon exchange instruments indicating that such measures have been completed. This Agreement shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

(b) In the event of termination of the U.S.-EU Extradition Agreement, this Agreement shall be terminated and the 1901 Treaty on Extradition shall be applied. The Governments of the United States of America and the Republic of Slovenia nevertheless may agree to continue to apply some or all of the provisions of this Agreement.

2

199

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at Ljubljana, in duplicate, this 17 day of October, 2005, in the English and Slovenian languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE          FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:          REPUBLIC OF SLOVENIA:

3

200

## ANNEX

### Treaty on Extradition between the Governments of the United States
### of America and the Republic of Slovenia

#### ARTICLE 1

The Government of the United States of America and the Government of the Republic of Slovenia mutually agree to deliver up persons who, having been charged with or convicted of any of the offenses specified in the following article, shall be found within their respective territories; provided, that this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the offense had been committed there.

#### ARTICLE 2

1.      An offense shall be an extraditable offense if it is punishable under the laws of the requesting and requested countries by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.      An offense shall also be an extraditable offense if it consists of an attempt or conspiracy to commit, or participation in the commission of, an extraditable offense.  Where the request is for enforcement of the sentence of a person convicted of an extraditable offense, the deprivation of liberty remaining to be served must be at least four months.

2.      If extradition is granted for an extraditable offense, it shall also be granted for any other offense specified in the request if the latter offense is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

3.      For purposes of this Article, an offense shall be considered an extraditable offense:

        (a) regardless of whether the laws in the requesting and requested countries place the offense within the same category of offenses or describe the offense by the same terminology;

        (b) regardless of whether the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court; and

        (c) in criminal cases relating to taxes, customs duties, currency control and the import or export of commodities, regardless of whether the laws of the requesting and requested countries provide for the same kinds of taxes, customs duties, or controls on currency or on the import or export of the same kinds of commodities.

4.      If the offense has been committed outside the territory of the requesting country, extradition shall be granted, subject to the other applicable requirements for extradition,

4

201

if the laws of the requested country provide for the punishment of an offense committed outside its territory in similar circumstances. If the laws of the requested country do not provide for the punishment of an offense committed outside its territory in similar circumstances, the executive authority of the requested country, at its discretion, may grant extradition provided that all other applicable requirements for extradition are met.

### ARTICLE 3

1.       Requests for extradition and supporting documents shall be transmitted through the diplomatic channel. If the person whose extradition is sought is held under provisional arrest by the requested country, the requesting country may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel by submitting the request and documents to the Embassy of the requested country located in the requesting country. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested country for purposes of applying the time limit that must be met under Article 4 to enable the person's continued detention.

2.       If the person whose extradition is requested shall have been convicted of an offense, a duly authenticated copy of the sentence of the Court in which he has been convicted, or if the fugitive is merely charged with an offense, a duly authenticated copy of the warrant of arrest in the country where the offense has been committed, and of the depositions or other evidence upon which such warrant was issued, shall be produced.

3.       Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting country shall be admissible in extradition proceedings in the requested country without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States, mean the United States Department of Justice; and, for the Republic of Slovenia, the Ministry of Justice of the Republic of Slovenia.

4.       To the extent not inconsistent with this Treaty, the extradition of fugitives under the provisions of this Treaty shall be carried out in the United States and in the Republic of Slovenia, respectively, in conformity with the laws regulating extradition for the time being in force in the State on which the demand for surrender is made.

### Article 3 *bis*

1.       The requested country may require the requesting country to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Treaty.

2.       Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Republic of Slovenia.

### Article 3 *ter*

Where the requesting country contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested

5

202

country to determine the extent to which the information can be protected by the requested country. If the requested country cannot, protect the information in the manner sought by the requesting country, the requesting country shall determine whether the information shall nonetheless be submitted.

ARTICLE 4

1.    Requests for provisional arrest may be made directly between the United States Department of Justice and the Ministry of Justice of the Republic of Slovenia, as an alternative to the diplomatic channel. The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request.

2.    The provisional detention of a fugitive shall cease and the prisoner be released if a formal requisition for his surrender, accompanied by the necessary evidence of criminality, has not been produced under the stipulations of this Treaty, within two months from the date of his provisional arrest and detention.

ARTICLE 5

Neither of the high contracting parties shall be bound to deliver up its own citizens under the stipulations of this Treaty.

ARTICLE 6

1.    A fugitive criminal shall not be surrendered if the offense in respect of which his surrender is demanded be of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try to punish him for an offense of a political character.

2.    No person surrendered by either of the high contracting parties to the other shall be triable or tried, or be punished, for any political offense, or for any act connected therewith, committed previously to his extradition.

3.    If any questions shall arise as to whether a case comes within the provisions of this article, the decision of the authorities of the Government on which the demand for surrender is made, or which may have granted the extradition, shall be final.

ARTICLE 7

Extradition shall not be granted, in pursuance of the provisions of this Treaty, if legal proceedings or the enforcement of the penalty for the act committed by the person claimed has become barred by limitation, according to the laws of the country to which the requisition is addressed.

ARTICLE 8

No person surrendered by either of the high contracting parties to the other shall, without his consent, freely granted and publicly declared by him, be triable or tried or be punished for any offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered.

6

203

Article 8 *bis*

Where the offense for which extradition is sought is punishable by death under the laws in the requesting country and not punishable by death under the laws in the requested country, the requested country may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting country, on condition that the death penalty if imposed shall not be carried out.  If the requesting country accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions.  If the requesting country does not accept the conditions, the request for extradition may be denied.

ARTICLE 9

All articles seized which are in the possession of the person to be surrendered at the time of his apprehension, whether being the proceeds of the offense charged, or being material as evidence in making proof of the offense, shall, so far as practicable and in conformity with the laws of the respective countries, be given up to the country making the demand, when the extradition takes place. Nevertheless, the rights of third parties with regard to such articles shall be duly respected.

ARTICLE 10

1.      If the requested country receives requests from the requesting country and from any other country or countries for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the requested country shall determine to which country, if any, it will surrender the person.

2.      If the Republic of Slovenia receives an extradition request from the United States and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, the Supreme Court of the Republic of Slovenia, or such other authority as the Republic of Slovenia may subsequently designate, shall determine to which country, if any, it will surrender the person.

3.      In making its decision under paragraphs 1 and 2 of this Article, the requested country shall consider all of the relevant factors, including, but not limited to, the following:

      (a)      whether the requests were made pursuant to a treaty;

      (b)      the places where each of the offenses was committed;

      (c)      the respective interests of the requesting countries;

      (d)      the seriousness of the offenses;

      (e)      the nationality of the victim;

      (f)      the possibility of any subsequent extradition between the requesting countries; and

7

204

(g)    the chronological order in which the requests were received from the requesting countries.

### Article 10 *bis*

1.    If a request for extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the requested country, the requested country may temporarily surrender the person sought to the requesting country for the purpose of prosecution.

2.    The person so surrendered shall be kept in custody in the requesting country and shall be returned to the requested country at the conclusion of the proceedings against that person, in accordance with the conditions to be determined by mutual agreement of the requesting and requested countries.  The time spent in custody in the territory of the requesting country pending prosecution in that country may be deducted from the time remaining to be served in the requested country.

### Article 10 *ter*

If the person sought consents to be surrendered to the requesting country, the requested country may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings.  The consent of the person sought may include agreement to waiver of protection of the rule of specialty.

### ARTICLE 11

The expenses incurred in the arrest, detention, examination, and delivery of fugitives under this Treaty shall be borne by the State in whose name the extradition is sought: Provided, that the demanding Government shall not be compelled to bear any expense for the services of such public officers of the Government from which extradition is sought as received a fixed salary; and, provided, that the charge for the services of such public officers as receive only fees or perquisites shall not exceed their customary fees for the acts or services performed by them had such acts or services been performed in ordinary criminal proceedings under the laws of the country of which they are officers.

### Article 11 *bis*

1.    The United States may authorize transportation through its territory of a person surrendered to the Republic of Slovenia by a third country, or by the Republic of Slovenia to a third country.  The Republic of Slovenia may authorize transportation through its territory of a person surrendered to the United States by a third country, or by the United States to a third country.

2.    A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Slovenia.  The facilities of Interpol may also be used to transmit such a request.  The request shall contain a description of the person being transported and a brief statement of the facts of the case.  A person in transit shall be detained in custody during the period of transit.

8

205

3.      Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit country.  If an unscheduled landing does occur, the country in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 2 of this Article.  All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing.

### Article 12

The present Treaty shall remain in force for a period of six months after either of the contracting Governments shall have given notice of a purpose to terminate it.

9

206

Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the
United States of America and the European Union signed 25 June 2003, as to the
application of the Treaty on Extradition between the United States of America and Spain
signed 29 May 1970, and the Supplementary Treaties on Extradition signed
25 January 1975, 9 February 1988 and 12 March 1996

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the
United States of America and the European Union signed 25 June 2003 (hereafter "the
U.S.-EU Extradition Agreement"), the Governments of the United States of America and
Spain acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU
Extradition Agreement is applied in relation to the bilateral Treaty on Extradition between
the United States of America and Spain signed 29 May 1970, the Supplementary Treaty on
Extradition signed 25 January 1975, the Second Supplementary Treaty on Extradition
signed 9 February 1988, and the Third Supplementary Extradition Treaty signed 12 March
1996, respectively, (hereafter collectively referred to as the "bilateral extradition treaty"),
under the following terms:

(a)      Article 5 of the U.S.-EU Extradition Agreement as set forth in Article X(A) and (F)
of the Annex to this Instrument shall govern the mode of transmission, and requirements
concerning certification, authentication, or legalization of, the extradition request and
supporting documents;

(b)      Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article X(H) of
the Annex to this Instrument shall provide an alternative method for transmission of the
request for extradition and supporting documents following provisional arrest;

(c)      Article 8(2) of the U.S.-EU Extradition Agreement as set forth in Article XII of the
Annex to this Instrument shall govern the channel to be used for submitting supplementary
information;

(d)      Article 10 of the U.S.-EU Extradition Agreement as set forth in Article XIV of the
Annex to this Instrument shall govern the decision on requests made by several States for
the extradition or surrender of the same person;

(e)      Article 12 of the U.S.-EU Extradition Agreement as set forth in Article XV Bis of
the Annex to this Instrument shall govern requests for transit of persons in custody;

(f)      Article 13 of the U.S.-EU Extradition Agreement as set forth in Article VII of the
Annex to this Instrument shall govern extradition with respect to conduct punishable by
death in the requesting Party;

(g)      Article 14 of the U.S.-EU Extradition Agreement as set forth in Article X Bis of the
Annex to this Instrument shall govern consultations where the requesting Party
contemplates the submission of particularly sensitive information in support of a request
for extradition.

2.      In order to implement the U.S.-EU Extradition Agreement, the Annex reflects the
integrated text of the provisions of the bilateral extradition treaty and the U.S.-EU
Extradition Agreement that shall apply upon entry into force of this Instrument, without
prejudice to those provisions of the U.S.-EU Extradition Agreement directly applicable.

1

207

3.    In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.    This Instrument shall not apply to requests for extradition made prior to its entry into force.

5.    (a)    This Instrument shall be subject to the completion by the United States of America and Spain of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and Spain shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

       (b)    In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be terminated and the bilateral extradition treaty shall be applied. The Governments of the United States of America and Spain nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Madrid, in duplicate, this 17th day of December 2004, in the English and Spanish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF                        FOR THE KINGDOM OF
THE UNITED STATES OF AMERICA:                SPAIN:

2

208

ANNEX

INTEGRATED TEXT OF THE PROVISIONS OF THE BILATERAL EXTRADITION
TREATY AND THE U.S.-EU EXTRADITION AGREEMENT THAT SHALL APPLY
UPON ENTRY INTO FORCE OF THIS INSTRUMENT

ARTICLE I

Pursuant to the provisions of this Treaty, the Contracting Parties agree to extradite to each
other for prosecution or to undergo sentence persons sought for extraditable offenses.

ARTICLE II

A. An offense shall be an extraditable offense if it is punishable under the laws in both
Contracting Parties by deprivation of liberty for a period of more than one year or by a
more severe penalty, or in the case of a sentenced person, if the sentence imposed was
greater than four months.

B. Extradition shall also be granted for participation in any of these offenses, not only as
principals or accomplices, but as accessories, as well as for attempts to commit or
conspiracy to commit any of the aforementioned offenses, when such participation, attempt
or conspiracy is subject, under the laws of both Parties, to a term of imprisonment
exceeding one year.

C. For the purposes of this Article, an offense shall be an extraditable offense whether or
not the laws in the Contracting States place the offense within the same category of
offenses or describe the offense by the same terminology.

D. If extradition has been granted for an extraditable offense, it shall also be granted for
any other offense specified in the request even if the latter offense is punishable by less
than one year's deprivation of liberty, provided that all other requirements for extradition
are met.

E. Extradition shall also be granted for these offenses, even when, in order to recognize the
competent federal jurisdiction, circumstances such as the transportation from one State to
another, have been taken into account and may be elements of the offense.

ARTICLE II Bis

A. Provided that all other requirements for extradition are met, extradition shall also be
granted even if, in accordance with the laws of the Requested Party, the prosecution or the
penalty would have been barred by the statute of limitations. The Requested Party shall be
bound by the statement of the Requesting Party that the statute of limitations of the
Requesting Party does not bar the prosecution or the execution of the penalty.

3

209

B. An amnesty promulgated in the Requested Party shall not constitute an obstacle to extradition.

ARTICLE III

A. For the purposes of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including airspace and territorial waters and vessels and aircraft registered in that Contracting Party if any such aircraft is in flight or if any such vessel is on the high seas when the offense is committed. For purposes of this Treaty an aircraft shall be considered to be in flight from the moment when power is applied for the purpose of take-off until the moment when the landing run ends.

B. Without prejudice to paragraph A, 1 of Article V, when the offense for which extradition has been requested has been committed outside the territory of the requesting Party, extradition may be granted if the laws of the requested Party provide for the punishment of such an offense committed in similar circumstances, and if the person whose surrender is sought is not also the subject of a request from another State whose jurisdiction over the person may take preference for territorial reasons and in respect of which there exists an equal possibility of acceding to a request for extradition.

ARTICLE IV

Neither of the Contracting Parties shall be bound to deliver up its own nationals, but the Executive Authority of the United States and the competent authority of Spain, unless prohibited by their domestic legislation, shall have the power to deliver them up if, in their discretion, it be deemed proper to do so.  If extradition is refused solely on the basis of the nationality of the person sought, the requested Party shall, at the request of the requesting Party, submit the case to its authorities for prosecution.

ARTICLE V

A. Extradition shall not be granted in any of the following circumstances:

1. When the person whose surrender is sought is being proceeded against or has been tried and discharged or punished in the territory of the requested Party for the offense for which his extradition is requested.

2. When the person whose surrender is sought has been tried and acquitted or has undergone his punishment in a third State for the offense for which his extradition is requested.

3. When the offense in respect of which the extradition is requested is regarded by the requested Party as an offense of a political character, or that Party has substantial grounds for believing that the request for extradition has been made for the purpose of trying or punishing a person for an offense of the above mentioned character. If any question arises

4

210

as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

4. When the offense is purely military.

B. For the purpose of this Treaty, the following offenses shall not be deemed to be offenses of a political character within the meaning of subparagraph A of this Article:

(1) a murder or other willful crime against the person of a Head of State of one of the Contracting Parties, or of a member of the Head of State's family;

(2) an offense for which both Contracting Parties have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for the purpose of prosecution;

(3) murder, voluntary manslaughter and voluntary assault and battery inflicting serious bodily harm;

(4) an offense involving kidnapping, abduction, the taking of a hostage, or any other form of illegal detention;

(5) an offense involving the placement or use of an explosive, incendiary or destructive device or substance, as well as the use of automatic weapons, to the extent that they cause or are capable of causing serious bodily harm or substantial property damage;

(6) an attempt to commit one of the above-mentioned offenses or the participation as co-author or accomplice of a person who commits or attempts to commit such an offense;

(7) illicit association or bands formed to commit any of the foregoing offenses under the laws of Spain, or a conspiracy to commit any such offenses as provided by the laws in the United States.

ARTICLE VI

If a request for extradition is made under this Treaty for a person who at the time of such request is under the age of eighteen years and is considered by the requested Party to be one of its residents, the requested Party, upon a determination that extradition would disrupt the social readjustment and rehabilitation of that person, may recommend to the requesting Party that the request for extradition be withdrawn, specifying the reasons therefor.

ARTICLE VII

Where the offense for which extradition is sought is punishable by death under the laws in the requesting Party and not punishable by death under the laws in the requested Party, the requested Party may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be

5

211

complied with by the requesting Party, on condition that the death penalty if imposed shall not be carried out. If the requesting Party accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the requesting Party does not accept the conditions, the request for extradition may be denied.

ARTICLE VIII

A. If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the requested State, the requested Party may temporarily surrender the person sought to the requesting Party for the purpose of prosecution. The person so surrendered shall be kept in custody in the requesting State and shall be returned to the requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting Parties.

B. The requested Party may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded and any sentence has been served.

ARTICLE IX

The determination that extradition based upon the request therefor should or should not be granted shall be made in accordance with this Treaty and with the law of the requested Party. The person whose extradition is sought shall have the right to use such remedies and recourses as are provided by such law.

ARTICLE X

A. Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph H of this Article.

B. The request shall be accompanied by:

1. A description of the person sought;

2. A statement of the facts of the case;

3. The text of the applicable laws of the Requesting Party including the law defining the offense and the law establishing the punishment;

4. A statement that neither the prosecution nor the execution of the penalty are barred according to the legislation of the Requesting Party.

C. 1. When the request relates to a person already convicted, it must be accompanied by:

6

212

When emanating from the United States, a copy of the judgment of conviction and of the sentence, if it has been passed; or

When emanating from Spain, a copy of the sentence.

2. In any case, a statement showing that the sentence has not been served or how much of the sentence has not been served shall accompany the request.

D. When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting Party and such information as would justify the committal for trial of the person if the offense had been committed in the requested State. The requested Party may refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded.

E. If a question arises regarding the identity of the person whose extradition is sought, evidence proving the person requested is the person to whom the warrant of arrest or sentence refers shall be submitted.

F. Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting Party shall be admissible in extradition proceedings in the requested Party without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for Spain, the Spanish Ministry of Justice.

G. The documents mentioned in this article shall be accompanied by an official translation into the language of the requested Party which will be at the expense of the requesting Party.

H. If the person whose extradition is sought is held under provisional arrest by the requested Party, the requesting Party may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph A of this Article, by submitting the request and documents to the Embassy of the requested Party located in the requesting Party. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested Party for purposes of applying the time limit that must be met under Article XI of this Treaty to enable the person's continued detention.


ARTICLE X Bis

Where the requesting Party contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested Party to determine the extent to which the information can be protected by the requested Party. If the requested Party cannot protect the information in the manner sought by the requesting Party, the requesting Party shall determine whether the information shall nonetheless be submitted.

7

213

## ARTICLE XI

A. In case of urgency a Contracting Party may apply to the other Contracting Party for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. This application may be made either through the diplomatic channel or directly between the respective Ministries of Justice. The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request.

B. The application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction or sentence against that person, and such further information, if any, as may be required by the requested Party.

C. On receipt of such an application the requested Party shall take the necessary steps to secure the arrest of the person claimed.

D. A person arrested upon such an application shall be set at liberty upon the expiration of 45 days from the date when the Embassy of the country seeking extradition is informed through the diplomatic channels of the fact of this arrest if a request for his extradition accompanied by the documents specified in Article X shall not have been received. However, this stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

## ARTICLE XII

If the requested Party requires additional evidence or information to enable it to decide on the request for extradition, such evidence or information shall be submitted to it within such time as that Party shall require.

If the person sought is under arrest and the additional evidence or information submitted as aforesaid is not sufficient or if such evidence or information is not received within the period specified by the requested Party, he shall be discharged from custody. However, such discharge shall not bar the requesting Party from submitting another request in respect of the same or any other offense.

Such additional evidence or information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Spain.

## ARTICLE XIII

A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:

1. He has left the territory of the requesting Party after his extradition and has voluntarily returned to it;

8

214

2. He has not left the territory of the requesting Party within 45 days after being free to do so; or

3. The requested Party has consented to his detention, trial, punishment or to his extradition to a third State for an offense other than that for which extradition was granted.

These stipulations shall not apply to offenses committed after the extradition.

ARTICLE XIV

1. If the requested Party receives requests from the requesting Party and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the Executive Authority of the requested Party shall determine to which State, if any, it will surrender the person.

2. If Spain receives an extradition request from the United States and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its Ministry of Justice shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the requested Party shall consider all of the relevant factors, including, but not limited to, the following:

(a) whether the requests were made pursuant to a treaty;

(b) the places where each of the offenses was committed;

(c) the respective interests of the requesting States;

(d) the seriousness of the offenses;

(e) the nationality of the victim;

(f) the nationality of the person sought;

(g) the possibility of any subsequent extradition between the requesting States; and

(h) the chronological order in which the requests were received from the requesting States.

ARTICLE XV

The requested Party shall communicate to the requesting Party as soon as possible through the diplomatic channel the decision on the request for extradition.

In the case of a complete or partial rejection of the extradition request, the requested Party shall indicate the reasons for the rejection.

9

215

The surrender shall be subject to the laws of the requested Party.

If the extradition has been granted, the authorities of the requesting and requested Parties shall agree on the time and place of the surrender of the person sought.  Surrender shall take place within such times as may be prescribed by the laws of the requested Party.

If the person sought is not removed from the territory of the requested Party within the time prescribed, he may be set at liberty and the requested Party may subsequently refuse to extradite that person for the same offense.


ARTICLE XV Bis

1. The United States may authorize transportation through its territory of a person surrendered to Spain by a third State, or by Spain to a third State.  Spain may authorize transportation through its territory of a person surrendered to the United States by a third State, or by the United States to a third State.

2. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of Spain.  The facilities of Interpol may also be used to transmit such a request.  The request shall contain a description of the person being transported and a brief statement of the facts of the case.  A person in transit shall be detained in custody during the period of transit.

3. Authorization is not required when air transportation is used and no landing is scheduled on the territory of the transit Party.  If an unscheduled landing does occur, the Party in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 2.  All measures necessary to prevent the person from absconding shall be taken until transit is effected, as long as the request for transit is received within 96 hours of the unscheduled landing.


ARTICLE XVI

To the extent permitted under the law of the requested Party and subject to the rights of third Parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall, if found, be surrendered upon the granting of the extradition request.


Subject to the qualifications of the first paragraph, the above mentioned articles shall be returned to the requesting Party even if the extradition, having been agreed to, cannot be carried out owing to the death or escape of the person sought.

10

216

ARTICLE XVI Bis

The Requested Party, in accordance with its own procedures, shall surrender the person sought without submission of the documents required by Article X of this Treaty, if the person sought freely consents before a judicial authority to be surrendered to the Requesting Party.  The consent of the person sought may include agreement to waiver of the rule of speciality, as provided by Article XIII of this Treaty.

ARTICLE XVII

Expenses related to the transportation of the person sought shall be paid by the requesting Party. The appropriate legal officers of the country in which the extradition proceedings take place shall, by all legal means within their power, assist the requesting Party before the respective judges and magistrates.

No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested Party against the requesting Party.

ARTICLE XVIII

This Treaty shall continue in force until either Contracting Party shall give notice of termination to the other, which termination shall be effective six months after the date of receipt of such notice.

11

217

DECLARATION MADE BY THE KINGDOM OF SPAIN

"The Kingdom of Spain declares that when applying Article VII of the provisions ruling extradition between the United States of America and the Kingdom of Spain, as set forth in the Annex of the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union, Spanish authorities shall deny extradition if the requesting State does not accept the conditions established in the said article".

218

Instrument as contemplated by Article 3(2) of the Agreement on Extradition between
the United States of America and the European Union signed 25 June 2003, as to the
application of the Convention on Extradition between the United States of America and
Sweden signed 24 October 1961 and the Supplementary Convention on Extradition
between the United States of America and the Kingdom of Sweden signed
14 March 1983

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the
United States of America and the European Union signed 25 June 2003 (hereafter "the
Extradition Agreement"), the Governments of the United States of America and the
Kingdom of Sweden acknowledge that, in accordance with the provisions of this
Instrument, the Extradition Agreement is applied in relation to the bilateral Convention
on Extradition between the United States of America and Sweden signed
24 October 1961 and the Supplementary Convention on Extradition between the
United States of America and the Kingdom of Sweden signed 14 March 1983 (hereafter
collectively referred to as "the bilateral extradition treaty") under the following terms:

(a)     Article 5 of the Extradition Agreement as set forth in Article X (1) and (5) of the
        Annex to this Instrument shall govern the mode of transmission, and requirements
        concerning certification, authentication or legalization, of the extradition request
        and supporting documents;

(b)     Article 6 of the Extradition Agreement as set forth in Article XIII (1) of the
        Annex to this Instrument shall authorize an alternative channel of transmission of
        requests for provisional arrest;

(c)     Article 7(1) of the Extradition Agreement as set forth in Article X (7) of the
        Annex to this Instrument shall provide an alternative method for transmission of
        the request for extradition and supporting documents following provisional arrest;

(d)     Article 8 of the Extradition Agreement as set forth in Article XII of the Annex to
        this Instrument shall govern the channel to be used for submitting supplementary
        information;

(e)     Article 10 of the Extradition Agreement as set forth in Article XVI of the Annex
        to this Instrument shall govern the decision on requests made by several States for
        the extradition or surrender of the same person;

(f)     Article 11 of the Extradition Agreement as set forth in Article XVII of the Annex
        to this Instrument shall govern the use of simplified extradition procedures;

(g)     Article 12(3) of the Extradition Agreement as set forth in Article XV (3) of the
        Annex to this Instrument shall govern the procedures for transit in the event of
        unscheduled landing of aircraft;

(h)     Article 13 of the Extradition Agreement as set forth in Article VII of the Annex to
        this Instrument shall govern extradition with respect to conduct punishable by
        death in the requesting State; and

1

219

(i)     Article 14 of the Extradition Agreement as set forth in Article XI of the Annex to this Instrument shall govern consultations where the requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2.     The Annex reflects the integrated text of the provisions of the bilateral extradition treaty and the Extradition Agreement that shall apply upon entry into force of this Instrument.

3.     In accordance with Article 16 of the Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.     This Instrument shall not apply to requests for extradition made prior to its entry into force.

5.     (a)  This Instrument shall be subject to the completion by the United States of America and the Kingdom of Sweden of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and the Kingdom of Sweden shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the Extradition Agreement.

       (b)  In the event of termination of the Extradition Agreement, this Instrument shall be terminated and the bilateral extradition treaty shall be applied.  The Governments of the United States of America and the Kingdom of Sweden nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Brussels, in duplicate, this 16th day of December 2004, in the English and Swedish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF          FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA:   THE KINGDOM OF SWEDEN:

2

220

ANNEX

CONVENTION ON EXTRADITION BETWEEN THE UNITED STATES OF
AMERICA AND SWEDEN

ARTICLE I

Each Contracting State undertakes to surrender to the other, subject to the provisions
and conditions laid down in this Convention, those persons found in its territory who
are sought for the purpose of prosecution, who have been found guilty of committing an
offense, or who are wanted for the enforcement of a sentence, in respect of any offense
made extraditable under Article II of this Convention committed within the territorial
jurisdiction of the other, or outside thereof under the conditions specified in Article IV
of this Convention.

ARTICLE II

(1)  An offense shall be an extraditable offense only if it is punishable under the laws of
both Contracting States by deprivation of liberty for a period of at least two years.
However, when the request for extradition relates to a person who has been convicted
and sentenced, extradition shall be granted only if the duration of the penalty, or the
aggregate of the penalties still to be served amounts to at least six months.

(2)  For the purpose of this Article, it shall not matter:

(a)  whether or not the laws of the Contracting States place the offense within the same
category of offenses or denominate the offense by the same terminology; or

(b)  whether or not the offense is one for which United States federal law requires proof
of interstate transportation, or use of the mails or of other facilities affecting interstate
or foreign commerce, such matters being merely for the purpose of establishing
jurisdiction in a United States federal court.

(3)  Subject to the conditions set out in paragraphs (1) and (2) of this Article, extradition
shall also be granted for conspiring in, attempting, preparing for, or participating in, the
commission of an offense.

(4)  When extradition has been granted with respect to an extraditable offense, it shall
also be granted with respect to any other offense specified in the extradition request that
meets all other requirements for extradition except for periods of deprivation of liberty
set forth in paragraph (1) of this Article.

3

221

ARTICLE III

(1) Subject to the provisions of paragraph (2) of this Article, extradition shall be granted in respect of an extraditable offense committed outside the territorial jurisdiction of the requesting State if:

(a) the courts of the requested State would be competent to exercise jurisdiction in similar circumstances; or

(b) the person sought is a national of the requesting State.

(2) Extradition may be refused for an offense which has been committed within the territorial jurisdiction of the requested State, when that State takes all possible measures in accordance with its own laws to prosecute the person claimed.

(3) The words "territorial jurisdiction" as used in this Article and in Article I of this Convention mean: territory, including territorial waters, and the airspace thereover, belonging to or under the control of one of the Contracting States; and vessels and aircraft belonging to one of the Contracting States or to a citizen or corporation thereof when such vessel is on the high seas or such aircraft is over the high seas.


ARTICLE IV

Extradition shall not be granted in any of the following circumstances:

1. When the person sought has already been or is at the time of the request being proceeded against in the requested State in accordance with the criminal laws of that State for the offense for which his extradition is requested.

2. When the legal proceedings or the enforcement of the penalty for the offense have become barred by limitation according to the laws of either the requesting State or the requested State.

3. When the person sought has been or will be tried in the requesting State by an extraordinary tribunal or court.

4. When the offense is purely military.

5. If the offense is regarded by the requested State as a political offense or as an offense connected with a political offense.

6. If in the specific case it is found to be obviously incompatible with the requirements of humane treatment, because of, for example, the youth or health of the person sought, taking into account also the nature of the offense and the interests of the requesting State.

4

222

ARTICLE V

If the extradition request is granted in the case of a person who is being prosecuted or is serving a sentence in the territory of the requested State for a different offense, the requested State may:

(a) defer the surrender of the person sought until the conclusion of the proceedings against that person, or the full execution of any punishment that may be or may have been imposed; or

(b) temporarily surrender the person sought to the requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody while in the requesting State and shall be returned to the requested State after the conclusion of the proceedings against that person in accordance with conditions to be determined by mutual agreement of the Contracting States.

ARTICLE VI

(1) There is no obligation upon the requested State to grant the extradition of a person who is a national of the requested State, but the executive authority of the requested State shall, subject to the appropriate laws of that State, have the power to surrender a national of that State if, in its discretion, it be deemed proper to do so.

(2) If the request for extradition is denied solely on the basis that the person claimed is a national of the requested State, that State shall, if asked to do so by the requesting State, take all possible measures in accordance with its own laws to prosecute the person claimed. If the requested State requires additional documents or evidence, such documents or evidence shall be submitted without charge to that State. The requesting State shall be informed of the result of its request.

ARTICLE VII

Where the offense for which extradition is sought is punishable by death under the laws in the requesting State and not punishable by death under the laws in the requested State, the requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting State, on condition that the death penalty if imposed shall not be carried out. If the requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the requesting State does not accept the conditions, the request for extradition may be denied.

ARTICLE VIII

A person extradited by virtue of this Convention may not be tried or punished by the requesting State for any offense committed prior to his extradition, other than that

5

223

which gave rise to the request, nor may he be re-extradited by the requesting State to a third country which claims him, unless the surrendering State so agrees or unless the person extradited, having been set at liberty within the requesting State, remains voluntarily in the requesting State for more than 45 days from the date on which he was released. Upon such release, he shall be informed of the consequences to which his stay in the territory of the requesting State might subject him.

ARTICLE IX

To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall be surrendered.

ARTICLE X

(1) The request for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 7 of this Article.

(2) The request for extradition shall be accompanied by:

(a) a statement as to the identity and probable location of the person sought;

(b) a statement of the facts of the case, including, if possible, the time and location of the crime;

(c) the provisions of the law describing the essential elements and the designation of the offense for which extradition is requested;

(d) the provisions of the law describing the punishment for the offense; and

(e) the provisions of the law describing any time limit on the prosecution or the execution of punishment for the offense.

(3) A request for extradition relating to a person who is sought for prosecution also shall be accompanied by:

(a) evidence providing probable cause to believe that the person sought is the person to whom the warrant or decision of arrest refers:

(b) a certified copy of the warrant of arrest, issued by a judge or other competent judicial officer with respect to a request emanating from the United States, or a certified copy of the decision of arrest (häktningsbeslut) issued by a judge or other competent judicial officer with respect to a request emanating from Sweden, and such supplementary documentation as provides probable cause to believe that the person sought committed the offense for which extradition is requested. Such a warrant or decision of arrest and supplementary documentation shall be recognized as sufficient

6

224

grounds for extradition, unless, in a specific case, it appears that the warrant or decision of arrest is manifestly ill-founded.

(4) In the case of a person who has been convicted of the offense, a request for extradition shall be accompanied by a duly certified or authenticated copy of the final sentence of the competent court. If the person was found guilty but not sentenced, the request shall be accompanied by a statement to that effect by the competent court. However, in exceptional cases, the requested State may request additional documentation.

(5) Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for Sweden, the Ministry of Justice of Sweden.

(6) The documents in support of the request for extradition shall be accompanied by a duly certified translation thereof into the language of the requested State.

(7) If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the requested State located in the requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under Article XIII of this Convention to enable the person's continued detention.


ARTICLE XI

Where the requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested State to determine the extent to which the information can be protected by the requested State. If the requested State cannot protect the information in the manner sought by the requesting State, the requesting State shall determine whether the information shall nonetheless be submitted.

7

225

Article XII

1. The requested State may require the requesting State to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Convention.

2. Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Sweden.

ARTICLE XIII

(1) In case of urgency, either Contracting State may request the provisional arrest of any accused or convicted person. Requests for provisional arrest may also be made directly between the United States Department of Justice and the Ministry of Justice of Sweden as an alternative to the diplomatic channel. The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request.

(2) The application shall contain: a description of the person sought; the location of that person, if known; a brief statement of the facts of the case including, if possible, the time and location of the offense; a statement of the existence of a warrant or decision of arrest or a judgment of conviction against that person, as referred to in Article X; and a statement that a request for extradition of the person sought will follow.

(3) On receipt of such an application, the requested State shall take the appropriate steps to secure the arrest of the person sought. The requesting State shall be promptly notified of the result of its application.

(4) Provisional arrest shall be terminated if, within a period of 40 days after the apprehension of the person sought, the Executive Authority of the requested State has not received the formal request for extradition and the supporting documents required by Article X.

(5) The termination of provisional arrest pursuant to paragraph (4) of this Article shall not prejudice the extradition of the person sought if the extradition request and the supporting documents mentioned in Article X are delivered at a later date.

ARTICLE XIV

(1) The requested State shall provide review of documentation in support of an extradition request for its legal sufficiency prior to presentation to the judicial authorities and shall provide for representation of the interests of the requesting State before the competent authorities of the requested State.

(2) Expenses related to the translation of documents and to the transportation of the person sought shall be paid by the requesting State. No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of

8

226

this Convention or arising out of the representation of the interests of the requesting
State before the competent authorities of the requested State, shall be made by the
requested State against the requesting State.

ARTICLE XV

1. Transit through the territory of one of the Contracting States of a person in the
custody of an agent of the other Contracting State, and surrendered to the latter by a
third State, and who is not of the nationality of the country of transit, shall, subject to
the provisions of the second paragraph of this Article, be permitted, independently of
any judicial formalities, when requested through diplomatic channels and accompanied
by the presentation in original or in authenticated copy of the document by which the
State of refuge has granted the extradition. In the United States of America, the
authority of the Secretary of State of the United States of America shall be first
obtained.

2. The permission provided for in this Article may nevertheless be refused if the
criminal act which has given rise to the extradition does not constitute an offense
enumerated in Article II of this Convention, or when grave reasons of public order are
opposed to the transit.

3. Authorization is not required when air transportation is used and no landing is
scheduled on the territory of the transit State. If an unscheduled landing does occur, the
State in which the unscheduled landing occurs may require a request for transit that
contains a description of the person being transported and a brief statement of the facts
of the case. A request for transit shall be made through the diplomatic channel or
directly between the United States Department of Justice and the Ministry of Justice of
Sweden. The facilities of the International Criminal Police Organization (Interpol) may
be used to transmit such a request. All measures necessary to prevent the person from
absconding shall be taken until transit is effected, as long as the request for transit is
received within 96 hours of the unscheduled landing.

ARTICLE XVI

1. If the requested State receives requests from the requesting State and from any other
State or States for the extradition of the same person, either for the same offense or for
different offenses, the Executive Authority of the requested State shall determine to
which State, if any, it will surrender the person.

2. If Sweden receives an extradition request from the United States of America and a
request for surrender pursuant to the European arrest warrant for the same person, either
for the same offense or for different offenses, its Executive Authority shall determine to
which State, if any, it will surrender the person

3. In making its decision under paragraphs 1 and 2, the requested State shall consider all
of the relevant factors, including, but not limited to, the following:

9

227

(a) whether the requests were made pursuant to a treaty;

(b) the places where each of the offenses was committed;

(c) the respective interests of the requesting States;

(d) the seriousness of the offenses;

(e) the nationality of the victim;

(f) the possibility of any subsequent extradition between the requesting States; and

(g) the chronological order in which the requests were received from the requesting States.

ARTICLE XVII

If the person sought consents to be surrendered to the requesting State, the requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty.

ARTICLE XVIII

To the extent consistent with the stipulations of this Convention and with respect to matters not covered herein, extradition shall be governed by the laws and regulations of the requested State.

ARTICLE XIX

This Convention may be terminated by either Contracting State giving notice of termination to the other Contracting State at any time, the termination to be effective six months after the date of such notice.

10

228

Instrument as contemplated by Article 3(2) of the Agreement on Extradition
between the United States of America and the European Union signed 25 June 2003, as
to the application of the Extradition Treaty between
the Government of the United States of America and the Government of the
United Kingdom of Great Britain and Northern Ireland signed 31 March 2003

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the
United States of America and the European Union signed 25 June 2003 (hereafter "the
Extradition Agreement"), the Governments of the United States of America and the
United Kingdom of Great Britain and Northern Ireland acknowledge that, in accordance
with the provisions of this Instrument, the Extradition Agreement is applied in relation
to the bilateral Extradition Treaty between the Government of the United States of
America and the Government of the United Kingdom of Great Britain and Northern
Ireland signed 31 March 2003 (hereafter "the 2003 Extradition Treaty") under the
following terms:

a)      Article 5(1) of the Extradition Agreement shall be applied as set forth in
Article 8(1) and 12(4) of the Annex to this Instrument to provide for the mode of
transmission of the extradition request and supporting documents;

b)      Article 5(2) of the Extradition Agreement shall be applied as set forth in
Article 9 of the Annex to this Instrument to provide for the requirements concerning
certification, authentication or legalization of the extradition request and supporting
documents;

c)      Article 7(1) of the Extradition Agreement shall be applied as set forth in
Article 12(4) of the Annex to this Instrument to provide for an alternative method for
transmission of the request for extradition and supporting documents following
provisional arrest;

d)      Article 8(2) of the Extradition Agreement shall  be applied as set forth in
Article 10(2) of the Annex to this Instrument to provide for the channel to be used for
submitting supplementary information;

e)      Article 10 of the Extradition Agreement shall be applied as set forth in
Article 15 of the Annex to this Instrument to provide for the decision on requests made
by several States for the extradition or surrender of the same person; and

f)      Article 14 of the Extradition Agreement shall be applied as set forth in Article
8 bis of the Annex to this Instrument to provide for consultations where the Requesting
State contemplates the submission of particularly sensitive information in support of a
request for extradition.

2.      The Annex reflects the integrated text of the operative provisions of the
2003 Extradition Treaty and the Extradition Agreement that shall apply upon entry into
force of this Instrument.

3.a)   This Instrument shall apply to the United States of America and to Great Britain and
Northern Ireland.  Subject to subparagraph b), the application of the 2003 Extradition Treaty to
the Channel Islands, the Isle of Man, and any other territory of the United Kingdom to which

1

229

the 2003 Extradition Treaty may apply in accordance with its terms, shall remain unaffected by the Extradition Agreement and this Instrument.

b)      This Instrument shall not apply to any territory for whose international relations the United Kingdom is responsible unless the United States of America and the European Union, by exchange of diplomatic notes duly confirmed by the United Kingdom in accordance with Article 20(1) (b) of the Extradition Agreement, agree to extend its application thereto.  The exchange of notes shall specify the authority in the territory responsible for the measure set forth in Article 9 of the Annex and the channels between the United States of America and the territory for transmissions pertaining to the extradition process, in lieu of those designated in the Annex. Such application may be terminated by either the United States of America or the European Union by giving six months' written notice to the other through the diplomatic channel, where duly confirmed between the United States of America and the United Kingdom in accordance with Article 20(2) of the Extradition Agreement.

4.      In accordance with Article 16 of the Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

5.      This Instrument shall not apply to requests for extradition made prior to its entry into force.

6.      (a)  This Instrument shall be subject to the completion by the United States of America and the United Kingdom of Great Britain and Northern Ireland of their respective applicable internal procedures for entry into force.  The Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland shall thereupon exchange instruments indicating that such measures have been completed.  This Instrument shall enter into force on the date of entry into force of the Extradition Agreement.

(b)      In the event of termination of the Extradition Agreement, this Instrument shall be terminated and the 2003 Extradition Treaty shall be applied. The Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at London, in duplicate, this 16 day of December 2004.

FOR THE GOVERNMENT OF                    FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA:                 THE UNITED KINGDOM OF GREAT
                                          BRITAIN AND NORTHERN IRELAND:

2

230

ANNEX

EXTRADITION TREATY
BETWEEN
THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND
THE GOVERNMENT OF THE UNITED KINGDOM OF GREAT BRITAIN AND
NORTHERN IRELAND

TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Obligation to Extradite |
| Article 2 | Extraditable Offenses |
| Article 3 | Nationality |
| Article 4 | Political and Military Offenses |
| Article 5 | Prior Prosecution |
| Article 6 | Statute of Limitations |
| Article 7 | Capital Punishment |
| Article 8 | Extradition Procedures and Required Documents |
| Article 8 *bis* | Sensitive Information in a Request |
| Article 9 | Authentication of Documents |
| Article 10 | Additional Information |
| Article 11 | Translation |
| Article 12 | Provisional Arrest |
| Article 13 | Decision and Surrender |
| Article 14 | Temporary and Deferred Surrender |
| Article 15 | Requests for Extradition or Surrender Made by Several States |
| Article 16 | Seizure and Surrender of Property |
| Article 17 | Waiver of Extradition |
| Article 18 | Rule of Specialty |
| Article 19 | Transit |
| Article 20 | Representation and Expenses |
| Article 21 | Consultation |
| Article 22 | Termination |

3

231

## Article 1
### Obligation to Extradite

The Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons sought by the authorities in the Requesting State for trial or punishment for extraditable offenses.

## Article 2
### Extraditable Offenses

1.     An offense shall be an extraditable offense if the conduct on which the offense is based is punishable under the laws in both States by deprivation of liberty for a period of one year or more or by a more severe penalty.

2.     An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, participation in the commission of, aiding or abetting, counseling or procuring the commission of, or being an accessory before or after the fact to any offense described in paragraph 1 of this Article.

3.     For the purposes of this Article, an offense shall be an extraditable offense:

   (a)   whether or not the laws in the Requesting and Requested States place the offense within the same category of offenses or describe the offense by the same terminology; or

   (b)   whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being jurisdictional only.

4.     If the offense has been committed outside the territory of the Requesting State, extradition shall be granted in accordance with the provisions of the Treaty if the laws in the Requested State provide for the punishment of such conduct committed outside its territory in similar circumstances.  If the laws in the Requested State do not provide for the punishment of such conduct committed outside of its territory in similar circumstances, the executive authority of the Requested State, in its discretion, may grant extradition provided that all other requirements of this Treaty are met.

5.     If extradition has been granted for an extraditable offense, it may also be granted for any other offense specified in the request if the latter offense is punishable by less than one year's deprivation of liberty, provided that all other requirements for extradition are met.

4

232

### Article 3
### Nationality

Extradition shall not be refused based on the nationality of the person sought.

### Article 4
### Political and Military Offenses

1.     Extradition shall not be granted if the offense for which extradition is requested is a political offense.

2.     For the purposes of this Treaty, the following offenses shall not be considered political offenses:

   (a)   an offense for which both Parties have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution;

   (b)   a murder or other violent crime against the person of a Head of State of one of the Parties, or of a member of the Head of State's family;

   (c)   murder, manslaughter, malicious wounding, or inflicting grievous bodily harm;

   (d)   an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

   (e)   placing or using, or threatening the placement or use of, an explosive, incendiary, or destructive device or firearm capable of endangering life, of causing grievous bodily harm, or of causing substantial property damage;

   (f)   possession of an explosive, incendiary, or destructive device capable of endangering life, of causing grievous bodily harm, or of causing substantial property damage;

   (g)   an attempt or a conspiracy to commit, participation in the commission of, aiding or abetting, counseling or procuring the commission of, or being an accessory before or after the fact to any of the foregoing offenses.

3.     Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the competent authority of the Requested State determines that the request was politically motivated. In the United States, the executive branch is the competent authority for the purposes of this Article.

5

233

4.     The competent authority of the Requested State may refuse extradition for offenses under military law that are not offenses under ordinary criminal law.  In the United States, the executive branch is the competent authority for the purposes of this Article.

Article 5
Prior Prosecution

1.     Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested.

2.     The Requested State may refuse extradition when the person sought has been convicted or acquitted in a third state in respect of the conduct for which extradition is requested.

3.     Extradition shall not be precluded by the fact that the competent authorities of the Requested State:

(a)     have decided not to prosecute the person sought for the acts for which extradition is requested;

(b)     have decided to discontinue any criminal proceedings which have been instituted against the person sought for those acts; or

(c)     are still investigating the person sought for the same acts for which extradition is sought.

Article 6
Statute of Limitations

The decision by the Requested State whether to grant the request for extradition shall be made without regard to any statute of limitations in either State.

Article 7

Capital Punishment

When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the executive authority in the Requested State may refuse extradition unless the Requesting State provides an assurance that the death penalty will not be imposed, or, if imposed, will not be carried out.

6

234

Article 8
Extradition Procedures and Required Documents

1.      All requests for extradition shall be submitted through the diplomatic channel.

2.      All requests for extradition shall be supported by:

(a)     as accurate a description as possible of the person sought, together with any other information that would help to establish identity and probable location;

(b)     a statement of the facts of the offense(s);

(c)     the relevant text of the law(s) describing the essential elements of the offense for which extradition is requested;

(d)     the relevant text of the law(s) prescribing punishment for the offense for which extradition is requested; and

(e)     documents, statements, or other types of information specified in paragraphs 3 or 4 of this Article, as applicable.

3.      In addition to the requirements in paragraph 2 of this Article, a request for extradition of a person who is sought for prosecution shall be supported by:

(a)     a copy of the warrant or order of arrest issued by a judge or other competent authority;

(b)     a copy of the charging document, if any; and

(c)     for requests to the United States, such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested.

4.      In addition to the requirements in paragraph 2 of this Article, a request for extradition relating to a person who has been convicted of the offense for which extradition is sought shall be supported by:

(a)     information that the person sought is the person to whom the finding of guilt refers;

(b)     a copy of the judgment or memorandum of conviction or, if a copy is not available, a statement by a judicial authority that the person has been convicted;

(c)     a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

7

235

    (d)      in the case of a person who has been convicted *in absentia*, information regarding the circumstances under which the person was voluntarily absent from the proceedings.

### Article 8 bis
### Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

### Article 9
### Authentication of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall mean, for the United States, the United States Department of Justice; and, for the United Kingdom, the Home Office.

### Article 10
### Additional Information

1.    If the Requested State requires additional information to enable a decision to be taken on the request for extradition, the Requesting State shall respond to the request within such time as the Requested State requires.

2.    Such additional information may be requested and furnished directly between the United States Department of Justice and the Home Office.

### Article 11
### Translation

All documents submitted under this Treaty by the Requesting State shall be in English or accompanied by a translation into English.

### Article 12
### Provisional Arrest

1.    In an urgent situation, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition.  A

8

236

request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and such competent authority as the United Kingdom may designate for the purposes of this Article.

2.    The application for provisional arrest shall contain:

(a)    a description of the person sought;

(b)    the location of the person sought, if known;

(c)    a brief statement of the facts of the case including, if possible, the date and location of the offense(s);

(d)    a description of the law(s) violated;

(e)    a statement of the existence of a warrant or order of arrest or a finding of guilt or judgment of conviction against the person sought; and

(f)    a statement that the supporting documents for the person sought will follow within the time specified in this Treaty.

3.    The Requesting State shall be notified without delay of the disposition of its request for provisional arrest and the reasons for any inability to proceed with the request.

4.    A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the documents supporting the extradition request as required in Article 8. For this purpose, receipt of the formal request for extradition and supporting documents by the Embassy of the Requested State in the Requesting State shall constitute receipt by the executive authority of the Requested State.

5.    The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent re-arrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

Article 13
Decision and Surrender

1.    The Requested State shall promptly notify the Requesting State of its decision on the request for extradition. Such notification should be transmitted directly to the competent authority designated by the Requesting State to receive such notification and through the diplomatic channel.

9

237

2.      If the request is denied in whole or in part, the Requested State shall provide reasons for the denial.  The Requested State shall provide copies of pertinent judicial decisions upon request.

3.      If the request for extradition is granted, the authorities of the Requesting and Requested States shall agree on the time and place for the surrender of the person sought.

4.      If the person sought is not removed from the territory of the Requested State within the time period prescribed by the law of that State, that person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offense(s).

Article 14
Temporary and Deferred Surrender

1.      If the extradition request is granted for a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.  If the Requested State requests, the Requesting State shall keep the person so surrendered in custody and shall return that person to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the States.

2.      The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State.  The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

Article 15
Requests for Extradition or Surrender Made by Several States

1.      If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.      If the United Kingdom receives an extradition request from the United States and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3.      In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

10

238

(a)   whether the requests were made pursuant to a treaty;
(b)   the places where each of the offenses was committed;
(c)   the respective interests of the requesting States;
(d)   the seriousness of the offenses;
(e)   the nationality of the victim;
(f)   the possibility of any subsequent extradition between the requesting
        States; and
(g)   the chronological order in which the requests were received from the
        requesting States.


Article 16
Seizure and Surrender of Property

1.     To the extent permitted under its law, the Requested State may seize and
surrender to the Requesting State all items in whatever form, and assets, including
proceeds, that are connected with the offense in respect of which extradition is granted.
The items and assets mentioned in this Article may be surrendered even when the
extradition cannot be effected due to the death, disappearance, or escape of the person
sought.

2.     The Requested State may condition the surrender of the items upon
satisfactory assurances from the Requesting State that the property will be returned to
the Requested State as soon as practicable.  The Requested State may also defer the
surrender of such items if they are needed as evidence in the Requested State.


Article 17
Waiver of Extradition

If the person sought waives extradition and agrees to be surrendered to the
Requesting State, the Requested State may surrender the person as expeditiously as
possible without further proceedings.


Article 18
Rule of Specialty

1.     A person extradited under this Treaty may not be detained, tried, or
punished in the Requesting State except for:

(a)   any offense for which extradition was granted, or a differently
        denominated offense based on the same facts as the offense on
        which extradition was granted, provided such offense is
        extraditable, or is a lesser included offense;

(b)   any offense committed after the extradition of the person; or

(c)   any offense for which the executive authority of the Requested
        State waives the rule of specialty and thereby consents to the

11

239

person's detention, trial, or punishment. For the purpose of this subparagraph:

(i)     the executive authority of the Requested State may require the submission of the documentation called for in Article 8; and

(ii)    the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request for consent is being processed.

2.      A person extradited under this Treaty may not be the subject of onward extradition or surrender for any offense committed prior to extradition to the Requesting State unless the Requested State consents.

3.      Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of the person to a third State, if the person:

(a)     leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b)     does not leave the territory of the Requesting State within 20 days of the day on which that person is free to leave.

4.      If the person sought waives extradition pursuant to Article 17, the specialty provisions in this Article shall not apply.

Article 19
Transit

1.      Either State may authorize transportation through its territory of a person surrendered to the other State by a third State or from the other State to a third State. A request for transit shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit shall be detained in custody during the period of transit.

2.      Authorization is not required when air transportation is used by one State and no landing is scheduled on the territory of the other State. If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 1 of this Article, and it may detain the person until the request for transit is received and the transit is effected, as long as the request is received within 96 hours of the unscheduled landing.

12

240

### Article 20
### Representation and Expenses

1.      The Requested State shall advise, assist, and appear on behalf of, the Requesting State in any proceedings in the courts of the Requested State arising out of a request for extradition or make all necessary arrangements for the same.

2.      The Requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered.  The Requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings.

3.      Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons under this Treaty.

### Article 21
### Consultation

The Parties may consult with each other in connection with the processing of individual cases and in furtherance of efficient implementation of this Treaty.

### Article 22
### Termination

Either State may terminate this Treaty at any time by giving written notice to the other State through the diplomatic channel, and the termination shall be effective six months after the date of receipt of such notice.

13

241

EMBASSY OF THE
UNITED STATES OF AMERICA

No. 120

The Embassy of the United States of America at London, England, presents its compliments to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs and has the honor to refer to the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003 (the "2003 Extradition Treaty").

Having been informed by the Government of the United Kingdom of Great Britain and Northern Ireland that it will be unable to apply Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, relating to authentication of extradition documents, until a corresponding change is made in its domestic law governing extradition, the Embassy has the honor to propose on behalf of the United States Government as follows:

Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, shall not be applied until the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland indicate in a subsequent exchange of notes that the required internal procedures have been completed. Until that time, the parties agree to apply the procedure for authentication of extradition documents set forth in Article 9 of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, upon its entry into force. The Government of the United Kingdom of Great Britain and Northern Ireland shall undertake to seek the necessary legislation at the earliest possible time.

The Embassy also wishes to confirm that two exchanges of letters related to the 2003 Extradition Treaty and done simultaneous with its signature shall remain the understandings of the Governments with respect to this Instrument, until such time as they may agree otherwise.

If the foregoing is acceptable to your Government, the Embassy has the honor to propose that this Note and your Note in reply shall constitute an agreement between our two Governments, which shall enter into force on the date of entry into force of the Instrument.

The Embassy avails itself of the opportunity to express to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs the renewed assurance of its highest consideration.

Embassy of the United States of America
London, England. December 16, 2004



242

The Consular Directorate of the Foreign and Commonwealth Office presents its compliments to the Embassy of the United States of America and has the honour to refer to the Embassy's Note No. 120 of 16 December 2004 which reads as follows:

"The Embassy of the United States of America at London, England, presents its compliments to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs and has the honour to refer to the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003 (the "2003 Extradition Treaty").

Having been informed by the Government of the United Kingdom of Great Britain and Northern Ireland that it will be unable to apply Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, relating to authentication of extradition documents, until a corresponding change is made in its domestic law governing extradition, the Embassy has the honour to propose on behalf of the United States Government as follows:

Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, shall not be applied until the United States of America and the Government of Great Britain and Northern Ireland indicate in a subsequent exchange of notes that the required internal procedures have been completed. Until that time, the parties agree to apply the procedure for authentication of extradition documents set forth in Article 9 of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, upon its entry into force. The Government of the United Kingdom of Great Britain and Northern Ireland shall undertake to seek the necessary legislation at the earliest possible time.

243

The Embassy also wishes to confirm that two exchanges of letters related to the 2003 Extradition Treaty and done simultaneous with its signature shall remain the understandings of the Governments with respect to this Instrument, until such time as they may agree otherwise.

If the foregoing is acceptable to your Government, the Embassy has the honour to propose that this Note and your Note in reply shall constitute an agreement between our two Governments, which shall enter into force on the date of entry into force of the Instrument.

The Embassy avails itself of this opportunity to  express to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs the renewed assurance of its highest consideration."


In reply, the Foreign and Commonwealth Office has the honour to confirm that the proposal set out in the Embassy's Note is acceptable to the Government of the United Kingdom of Great Britain and Northern Ireland and that the Embassy's  Note, and this Reply, shall constitute an agreement between the two Governments which shall enter into force on the date of entry into force of the Instrument.

The Consular Directorate of the Foreign and Commonwealth Office avails itself  of this opportunity to renew to the Embassy of the United States the assurances of its highest consideration.

London
16 December 2004