# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DON KOLLMAR,<br>Defendant. | Case No. 19-mj-70677-MAG-1 (KAW)<br>**ORDER GRANTING RELEASE ON SECURED BOND** |

On May 6, 2019, the United States filed a complaint under 18 U.S.C. § 3184, seeking to provisionally arrest Defendant Don Kollmar for extradition to Canada. (Compl., Dkt. No. 1.) The United States also filed a memorandum of law in opposition to bail. (United States Memo., Dkt. No. 4.) On May 13 and 17, 2019, the Court held hearings regarding the status of bail. (Dkt. Nos. 13, 27.)

Having considered the parties' filings, oral arguments, and the relevant authority, the Court ORDERS Defendant's release on a secured bond in the amount of $4 million, with eight special conditions of release.

## I.   BACKGROUND

On November 28, 2018, Defendant was charged in Canada with violations of the Criminal Code of Canada ("CCC") § 149 (indecent assault on a female), § 143(b)(iii) (rape), and § 146(2) (rape of a female). (Compl. ¶ 6.) The charges stem from a 1997 report from B.B. that Defendant had sexually assaulted her when she and her family belonged to a religious group, "Students of Light." (Compl. ¶ 7a.) B.B. stated that the sexual activity started in 1975, when B.B. was twelve or thirteen years old. (Compl. ¶ 7c.) B.B. reported the activity to her parents when she was sixteen years old, but her parents were advised by a lawyer provided by the religious group not to

file a formal complaint. (Compl. ¶ 7f.) Following B.B.'s statement to the Canadian authorities in 1997, an initial arrest warrant for Defendant was issued, under the name "Donald Kolmar." (Compl. ¶ 7e; United States Supp. Brief at 5, Dkt. No. 22.)

In July 2017, Canadian authorities found a photo of a man named Don Kollmar on a spiritual website. (Compl. ¶ 7f.) B.B. identified the individual as the man who had sexually assaulted her as a child. (Compl. ¶ 7f.) On December 24, 2018, the Ontario Court of Justice issued a warrant for Defendant's arrest. (Compl. ¶ 7.)

On May 3, 2019, Defendant was arrested in this district. (Dkt. No. 6.) By this time, Defendant, a United States citizen, had moved to the Netherlands, although he had visited Canada repeatedly over the last twenty years. (R. Kollmar Decl. ¶ 4, Dkt. No. 10; United States Memo. at 12.)

## II.  LEGAL STANDARD

"There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *see also Wright v. Henkel*, 190 U.S. 40, 63 (1903) ("We are unwilling to hold that . . . while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief."). The presumption against bail stems from the United States' obligations under extradition treaties, with the Supreme Court explaining:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Wright*, 190 U.S. at 62.

While "it is unusual and extraordinary for bail to be granted, it is not impossible to obtain bail in an international extradition treaty case." *In re Nacif-Borge*, 829 F. Supp. 1210, 1213 (D. Nev. 1993). The defendant "has the burden of establishing an entitlement to bail," and must not only demonstrate that there are "special circumstances" justifying bail, but that the defendant is

2

not a flight risk or a danger to the community. *Id.* at 1214; *see also United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990) ("special circumstances must exist in addition to absence of risk of flight"). "Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *In re Extradition of Maniero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996).

## III. DISCUSSION

### A. Risk of Flight and Danger to the Community

The Court finds that Defendant is not a flight risk. The United States argues that Defendant is a flight risk based on the charges that he faces, as well as the facts that Defendant left Canada after the victim reported the assault, and that Defendant now resides in the Netherlands. (United States Memo. at 12.) There is no showing, however, that Defendant left Canada to escape the charges (or that he even knew of the charges); indeed, Defendant lived openly in the United States and the Netherlands, and has repeatedly returned to Canada in the last twenty years, after the initial arrest warrant was issued in or around 1997. (*See* Compl. ¶ 7f; R. Kollmar Decl. ¶ 4.)

The Court concludes that there are conditions of release that can be set which will negate the risk of flight, including surrender of all passports and home confinement. There are numerous individuals who are willing to act as sureties on Defendant's behalf, and to post money and/or property to ensure his appearance. (*See* R. Kollmar Decl. ¶ 5; Dkt. Nos. 17-20.) Courts have recognized that bail itself "will present a significant financial deterrent to flight." *In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006).

Likewise, the Court finds that Defendant is not a danger to the community. Indeed, the United States does not argue that Defendant would pose a danger, and Defendant has no criminal history other than the current charges.

### B. Special Circumstances

Having found that there is no risk of flight or danger to the community, the Court must determine whether there are special circumstances that would justify bail.

As an initial matter, the Court finds that Defendant has not demonstrated that there would be unusual delay in the appeals process. The Ninth Circuit has found that "unusual delay in the

3

appeal process" constitutes a special circumstance. *Salerno*, 878 F.2d at 317; *In re Requested Extradition of Kirby*, 106 F.3d 855, 863 (9th Cir. 1996). In *Taitz*, the district court found an unusual delay where the defendant faced 434 counts of fraud, which would require the district court to consider the evidence to determine whether probable cause existed as to each count. 130 F.R.D. at 445. Moreover, there were issues of whether the offense constituted an extraditable offense, and the defendant pointed to two similar cases in the district where more than six months had passed without an extradition hearing due to the complexity of the cases. *Id.* at 445-46. Additionally, the resolution of the case would likely involve habeas proceedings, such that the extradition proceedings could last as long as two years. *Id.*

Here, Defendant argues that there will be complex challenges regarding the propriety of extradition, and also suggests that the likelihood of an appeal of the bail and merits decisions "is high." (Def.'s Supp. Brief at 2-3, Dkt. No. 23.) The propriety of extradition, however, is a question on the merits, and the fact that it may be complex alone is insufficient to show that there will be unusual delay. Likewise, the "high" likelihood of appeal does not necessarily mean there will be *unusual* delay, rather than the normal delays associated with an appeal. For those reasons, the Court cannot, at this time, find that Defendant has carried his burden of showing that there will be unusual delay in the appeals process.

The Court, however, finds that the following special circumstances exist to warrant bail.

### i. Character

The Court finds that Defendant has no criminal record other than the current charges. Defendant has also filed declarations from several individuals who attest to Defendant's good character, and are willing to personally sign a personal appearance bond and/or act as a surety by posting money or property. (*See* Dkt. Nos. 17-20.)

The Court acknowledges that several courts have found that "the character and background of a person subject to extradition are considered in regard to risk of flight and danger to the community, rather than as a special circumstance." *In re Extradition of Nacif-Borge*, 829 F. Supp. at 1220. Others, however, have considered it a special circumstance, particularly when other special circumstances also exist. *See Taitz*, 130 F.R.D. at 446; *In re Extradition of Chapman*, 459

4

F. Supp. 2d 1024, 1027 (D. Haw. 2006).

                **ii.    Lack of Diplomatic Necessity due to Delay in Prosecution**

The Court finds that the delay in prosecution of this case is a special circumstance that justifies bail. In *United States v. Castaneda-Castillo*, the district court found that there was a lack of diplomatic necessity for detention where Peru, the country seeking extradition, "ha[d] obviously not actively pursued this twenty-five year old charge, thereby resulting in a very lengthy delay." 739 F. Supp. 2d 49, 57-58 (D. Mass. 2010). While the district court recognized that the Peruvian government was in turmoil for years, and that the Peruvian president had passed an amnesty law which prevented prosecution for several years, the court found there was no explanation for a three-year delay between the commencement of the case in 2005 and the extradition request in 2008. *Id.* at 58. The district court also found there was no explanation for the two-year delay between the extradition request and the United States seeking the defendant's provisional arrest, particularly when the United States knew that the defendant was in federal custody while pursuing his amnesty petition. *Id.* at 53, 58. The district court concluded that under those circumstances, the delay weighed "very heavily in favor of release." *Id.* at 58.

Likewise, in *In re Chapman*, the district court found there was a "lack of any diplomatic necessity for denying bail" because the country seeking extradition had "waited three years before bringing extradition proceedings against the Respondents, during which Respondents were living openly and notoriously, aware of the charges against them . . . ." 459 F. Supp. 2d at 1027. Such delay demonstrated that the country seeking extradition "ha[d] not made prosecution of this offense a priority," supporting the defendant's release on bail. *Id.*

In contrast, in *In re Extradition of Drumm*, the district court found that a seven-year delay in filing charges against the defendant was not a special circumstance because "it appears that Ireland ha[d] been actively investigating the case since 2009 and that the delay in charging [the defendant] was attributable, at least in part, to his own decision to relocate to the United States." 150 F. Supp. 3d 92, 98-99 (D. Mass. 2015).[1]

---

[1] The United States also cites to other cases where the district courts did not grant bail despite lengthy delays in the prosecution, but both cases are distinguishable as the district courts found

5

In the instant case, Defendant is charged with sexually assaulting a minor in 1975 and 1977. (Compl. ¶¶ 7c, 7d.) The assault was reported to the Canadian authorities in 1997, after which an initial arrest warrant was issued under the name "Donald Kolmar." (Compl. ¶ 7e; United States Supp. Brief at 5.) There is no showing, however, that the Canadian authorities took any actions after the 1997 report and issuance of the arrest warrant until July 2017 -- twenty years later -- when they found a photograph of a man that B.B. identified as the man who had sexually assaulted her. (Compl. ¶ 7f.) Indeed, it appears the Canadian authorities took no actions at all to investigate during this time; rather, in 2017, the Division Warrant Office happened to be "conducting an audit of old arrest warrants [when] an Internet search revealed a possible hit for the accused 'Donald Kollmar' . . . ." (United States Supp. Brief at 5.) Only then did Canadian authorities reach out to B.B. to ensure that she was still willing to testify. Even then, Defendant was not charged until November 28, 2018, more than a year after Defendant's photograph was identified. (Compl. ¶ 6.)

The twenty-year delay in the investigation, as well as over a year delay between B.B. identifying the photograph and Defendant being charged, demonstrates a failure to actively prosecute the case, which reduces the lack of any diplomatic necessity for denying bail. Thus, the significant delay in prosecution is a special circumstance justifying the granting of bail.

### iii. The Availability of Bail in Extradition Cases in Canada

Finally, the Court finds that the fact that Canada would grant bail to defendants facing extradition for similar offenses is a special circumstance. In *Taitz*, the district court found that there was "no diplomatic necessity for denying bail" under such circumstances, explaining that "the rationale for denying bail is that the United States will suffer consequences in foreign affairs if one subject to extradition absconds while on release." 130 F.R.D. at 446. There was, however,

---

that the delays were outweighed by other circumstances. *See In re Johnson*, No. MAG 12-65m, 2012 WL 3929811, at *4-5 (W.D. Penn. Sept. 7, 2012) (finding that delay did not warrant bail where the defendant was accused of murdering and raping a 16-year old boy before fleeing Mexico); *United States v. De Lorea*, No. 2:06-MJ-98-PRC, 2006 WL 1518981, at *3-4 (N.D. Ind. May 31, 2006) (ten-year delay in requesting extradition and good character outweighed by the defendant having allegedly committed the crime while he was living in the United States, was employed, and had a family).

6

"no diplomatic concern by South Africa [the extraditing country] if a United States court releases on bail a person who is facing extradition to South Africa where bail is available in South Africa for persons facing extradition to the United States." *Id.* at 447.

The United States points to cases which found that the availability of bail in the country seeking extradition is not a special circumstance. (United States Supp. Brief at 7.) Those cases, however, considered the availability of bail generally, not the availability of bail for defendants seeking extradition specifically. *See In re Extradition of Sutton*, 898 F. Supp. 691, 694-95 (E.D. Mo. 1995) (considering whether the availability of bail "on the underlying substantive offense" only, not in extradition cases only); *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386 (D. Nev. 1995) ("we respectfully disagree with [*Nacif-Borge's*] holding that the availability of bail on the underlying offense in the requesting country may constitute a 'special circumstance' justifying bail in the United States pending resolution of the extradition case"); *In re Extradition of Rouvier*, 839 F. Supp. 537, 540-41 (N.D. Ill. 1993); *In re Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1070-71 (C.D. Cal. 2017) (focusing on the availability of bail in the extraditing country generally); *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 172 (S.D.N.Y. 2009) (disagreeing with *Taitz* that there would be a lack of diplomatic necessity based on the availability of bail, but focusing solely on the availability of bail in the extraditing country rather than the availability of bail during extradition hearings specifically).[2]

The Court finds *Taitz* persuasive.[3] Further, Defendant has provided significant evidence that Canada would release a defendant on bail for similar offenses, even when extradition is being sought. Defendant has provided a declaration by Mr. Seth Weinstein, a Canadian attorney who has expertise in extradition and mutual legal assistance cases. (Weinstein Decl. ¶¶ 2-3, Dkt. No. 24.) Mr. Weinstein states that in his experience, "bail is routinely granted to Canadian citizens in

---

[2] Many of these cases criticized *In re Gannon*, which focused on the fact that the offense at issue was bailable in both Pennsylvania and Canada, the country seeking extradition. 27 F.2d 362, 362 (E.D. Penn. 1928). Notably, *Taitz* did not rely on *In re Gannon*. *See* 130 F.R.D. at 446-47.

[3] The Court notes that even if it did not find this to be a special circumstance, special circumstances still exist, including the delay in prosecution of this case.

7

extradition cases as well as on appeal . . . ." (Weinstein Decl. ¶ 9.) Importantly, Mr. Weinstein points to specific cases in which bail was granted pending extradition hearings based on similar offenses. For example, in *United States v. Hillis*, 2018 ONSC 5360, "a Canadian citizen was released pending his extradition hearing for allegations involving the sexual assault of three young girls in Minnesota." (Weinstein Decl. ¶ 11, Attachment at 25-42.[4]) Likewise, in *United States v. Ruggeberg*, 2005 BCSC 113, "the person was being sought for his extradition for allegations that he had raped a woman at gunpoint in Texas approximately 25 years earlier. He had initially been denied bail but was released when he presented a better release plan to the court." (Weinstein Decl. ¶ 13, Attachment at 44-65.) And while on a different charge, the Court also notes that in *Republic of France v. Diab*, 2009 CanLII 26600, an individual being sought for four counts of murder and forty counts of attempted murder related to the bombing of a synagogue nearly thirty years prior was released on bail pending his extradition hearing, despite "liv[ing] a very transient lifestyle with roots in many countries." (Weinstein Decl. ¶ 15, Attachment at 71-96.) Given that Canada has released defendants being sought for extradition on similar or more serious charges, the Court concludes that this is a special circumstance that also warrants bail.

## IV. CONCLUSION

For the reasons stated above, the Court finds that there is no risk of flight or danger to the community and that special circumstances exist that merit release on bail. Therefore the Court will order Defendant's release on a secured bond in the amount of $4 million, secured with the properties of Mr. Richard Kollmar, Mr. Peter Capuciati, Mr. Christopher Kirkham, and Ms. Samantha Good. The conditions of release shall include:

1. Defendant shall report to Pretrial Services as directed;
2. Defendant shall not travel outside the Northern District of California;
3. Defendant shall surrender all passports and visas to Pretrial Services and shall not apply for any passports or other travel documents;
4. Defendant shall not possess any firearm, destructive device, or other dangerous

---

[4] The Court refers to the ECF headers, as the various cases are included in one attachment to the Weinstein declaration.

8

weapon;

5. Defendant shall not have contact with any defendant in a related case;
6. Defendant shall not change residence without prior approval of Pretrial Services;
7. Defendant shall remain in the custody of his custodians Christopher Kirkham and Samantha Good at 97 Tamalpais Road, Berkeley, California, who agree to report any violation of Defendant's release conditions to pretrial services; and
8. Defendant shall participate in location monitoring and be placed on home confinement and may only leave for court, attorney visits, pretrial services appointments, and medical reasons.

The Court will sign the bond for Defendant's release after all sureties have signed the bond and all properties have been posted with the Clerk of the Court to secure the full amount of the $4 million bond.

IT IS SO ORDERED.

Dated: May 17, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge