1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  JOHN D. RIESENBERG (CABN 232839)
   Trial Attorney, U.S. Department of Justice
5
   MAUREEN C. BESSETTE (CABN 165775)
6  Assistant United States Attorney

7        1301 Clay Street, Suite 340S
         Oakland, California 94612
8        Telephone: (510) 637-3680
         Fax: (510) 637-3724
9        Maureen.bessette@usdoj.gov

10 Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                   OAKLAND DIVISION

14 IN THE MATTER OF THE EXTRADITION    )  CASE NO. 4:19-MJ-70677
   OF DONALD KOLLMAR                   )
15                                     )  UNITED STATES' MEMORANDUM IN SUPPORT
                                       )  OF EXTRADITION
16                                     )
                                       )  July 11, 2019 at 10:30 a.m.
17                                     )  Hon. Kandis A. Westmore
                                       )  Courtroom: #4
18                                     )
                                       )
19 _____    )

20

21

22

23

24

25

26

27

28

U.S.' MEMORANDUM IN SUPPORT OF EXTRADITION

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.   BACKGROUND ......................................................................................................................2

    A.   Procedural Background..................................................................................................2

    B.   Factual Background ......................................................................................................2

II.  DISCUSSION .........................................................................................................................5

    A.   The Documentary Evidence Submitted by Canada Supports Certification; the Fugitive May Only Submit Explanatory Evidence ........................................................6

        1.   Canada's Written Submissions Are Sufficient and Admissible ..........................6

        2.   Kollmar's Right to Introduce Evidence Is Limited.............................................7

    B.   The Requirements for Certification Are Satisfied .........................................................8

        1.   This Court Has Authority Over the Proceeding...................................................8

        2.   This Court Has Jurisdiction Over Kollmar .........................................................9

        3.   The Relevant Treaty Is in Full Force and Effect.................................................9

        4.   The Charged Crimes Are Covered by the Treaty ................................................9

        5.   Canada's Evidence Establishes Probable Cause that the Fugitive Committed the Charged Offenses ..........................................................................14

III. CONCLUSION......................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

Cases

*Afanasjev v. Hurlburt*, 418 F.3d 1159, 1162-63 & 1116 (11th Circ.), cert. denied, 546 U.S. 993 (2005)..................6

*Austin v. Healey*, 5 F.3d 598 (2d Cir. 1993), cert. denied, 510 U.S. 1165 (1994) ........................................9

*Bingham v. Bradley*, 241 U.S. 511 (1916) .......................................................................................6

*Bovio v. United States*, 989 F.2d 255 (7th Cir. 1993) .....................................................6, 8, 15, 16

*Bozilov v. Seifert*, 983 F.2d 140 (9th Cir. 1992) ...........................................................................1

*Caplan v. Vokes*, 649 F.2d 1336 (9th Cir. 1981) .........................................................................10

*Castro Bobadilla v. Reno*, 826 F. Supp. 1428 (S.D. Fla. 1993), aff'd 28 F.3d 116 (11th Cir. 1994)................14, 15

*Collins v. Loisel*, 259 U.S. 309 (1922)..................................................................................14, 15

*Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981)....................................................................10

*Eain v. Wilkes*, 641 F.2d 504 (7th Cir.), cert. denied, 454 U.S. 894 (1981) ........................................8

*Factor v. Laubenheimer*, 290 U.S. 276 (1933) ...........................................................................11

*Fernandez v. Phillips*, 268 U.S. 311 (1925)................................................................................14

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ....................................................................................14

*Glucksman v. Henkel*, 221 U.S. 508 (1911)................................................................................12

*Gonzalez v. O'Keefe*, 2014 WL 6065880 (N.D. Cal. Nov. 20, 2014)................................................14

*Grin v. Shine*, 187 U.S. 181 (1902)........................................................................................9, 12

*Hilario v. United States*, 854 F. Supp. 165 (E.D.N.Y. 1994)............................................................11

*Hooker v. Klein*, 573 F.2d 1360 (9th Cir.), cert. denied, 439 U.S. 932 (1978)......................................7

*In re Extradition of Figueroa*, 2013 WL 3243096 (N.D. Ill. June 26, 2013) .........................................14

*In re Extradition of Howard*, 996 F.2d 1320 (1st Cir. 1993) ...........................................................9

*In re Extradition of Kirby*, 106 F.3d 855 (9th Cir. 1997)................................................................9

*In re Extradition of Nunez-Garrido*, 829 F. Supp. 2d 1277 (S.D. Fla. 2011) ......................................15

*In re Extradition of Shaw*, 2015 WL 3442022 (S.D. Fla. May 28, 2015)........................................8, 14

*In re the Extradition of Kyung Joon Kim*, 2005 WL 6399831 (C.D. Cal. Oct. 21, 2005) .........................16

*Jimenez v. Aristeguieta*, 311 F.2d 547 (5th Cir. 1962), cert. denied, 373 U.S. 914 (1963) .......................7

*Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir.), cert. denied, 469 U.S. 817 (1984) ...................13

*Kastnerova v. United States*, 365 F.3d 980, cert. denied, 541 U.S. 1090 (2004).......................................9

*Koskotas v. Roche*, 931 F.2d 169 (1st Cir. 1991)..................................................................................12

*Manta v. Chertoff*, 518 F.3d 1134 (9th Cir. 2008) ...........................................................................6, 7

*Martin v. Warden*, 993 F.2d 824 (11th Cir. 1993) ..........................................................................1, 13

*Matter of Extradition of Kraiselburd*, 786 F.2d 1395 (9th Cir. 1986), cert. denied, 479 U.S. 990 (1986).......13, 14

*Matter of Extradition of Mainero*, 990 F. Supp. 1208 (S.D. Cal. 1997)...............................................12

*Matter of Extradition of Murphy*, 1998 WL 1179109 n.3 (N.D.N.Y. Jun. 30, 1998), aff'd 199 F.3d 599 (2d Cir. 1999)...........................................................................................................................................11

*Matter of Extradition of Noeller*, 2018 WL 1027513 (N.D. Ill. Feb. 23, 2018), aff'd 922 F.3d 797 (7th Cir. 2019) 8

Matter of Extradition of Ricardo Alberto Martinelli Berrocal, 2017 WL 3776953 (S.D. Fla. Aug. 31, 2017).......16

*Neely v. Henkel*, 180 U.S. 109 (1901)................................................................................11, 13, 15

*Nezirovic v. Holt*, 779 F.3d 233 (4th Cir. 2015) ...............................................................................11

*Oen Yin-Choy v. Robinson*, 858 F.2d 1400 (9th Cir. 1988), cert. denied, 490 U.S. 1106 (1989).............................7

*Pettit v. Walshe*, 194 U.S. 205 (1904)................................................................................................9

*Prasoprat v. Benov*, 421 F.3d 1009 (9th Cir. 2005), cert. denied, 546 U.S. 1171 (2006) .......................................1

*Quinn v. Robinson*, 783 F.2d 776 (9th Cir.), cert. denied, 479 U.S. 882 (1986) .................................8, 14

*Santos v. Thomas*, 830 F.3d 987 (9th Cir. 2016) ................................................................................8

*Sayne v. Shipley*, 418 F.2d 679 (5th Cir. 1969), cert. denied, 398 U.S. 903 (1970) ......................................6

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973)...........................................................................5

*Simmons v. Braun*, 627 F.2d 635 (2d Cir. 1980) ..............................................................................6

*Theron v. U.S. Marshal*, 832 F.2d 492 (9th Cir. 1987)..................................................................10, 11

*United States ex rel. Oppenheim v. Hecht*, 16 F.2d 955 (2d Cir. 1927), cert. denied, 273 U.S. 769 (1927) ..........11

United States v. Duarte-Acero, 296 F.3d 1277 (11th Cir.), cert. denied 541 U.S. 1090 (2004) ...............................9

*United States v. Fernandez-Morris*, 99 F. Supp.2d 1358 (S.D. Fla. 1999).................................................8

*United States v. Johnson*, 2014 WL 5685522 (D. Minn. Nov. 4, 2014) ................................................16

*United States v. Wallace*, 550 F.3d 729 (8th Cir. 2008), aff'd 848 F.3d 872 (8th Cir. 2017) ..............................16

*United States v. Wathne*, 2008 WL 4344112 (N.D. Cal. Sept. 22, 2008) .............................................12

*United States v. Zanazanian*, 729 F.2d 624 (9th Cir. 1984)..............................................................6, 8

U.S' MEMORANDUM IN SUPPORT OF EXTRADITION

*Wright v. Henkel*, 190 U.S. 40 (1903) ............................................................................................ 10

**Statutes**

18 U.S.C. § 1170 ................................................................................................................................ 13

18 U.S.C. § 2243 ........................................................................................................................... 2, 13

18 U.S.C. § 2244 ........................................................................................................................... 2, 13

18 U.S.C. § 3184 ....................................................................................................................... passim

18 U.S.C. § 3186 .................................................................................................................................. 5

18 U.S.C. § 3190 .................................................................................................................................. 7

Cal. Penal Code § 261 .................................................................................................................... 2, 13

Cal. Penal Code § 261.5 ................................................................................................................. 2, 13

Cal. Penal Code § 264 ....................................................................................................................... 13

Cal. Penal Code § 288 .................................................................................................................... 2, 13

Criminal Code of Canada § 143 ...................................................................................................... 2, 12

Criminal Code of Canada § 144 ...................................................................................................... 2, 12

Criminal Code of Canada § 149 ...................................................................................................... 2, 12

*Other Authorities*

*Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988*, S. Treaty Doc. No. 101-17 (1990) and *Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001*, S. Treaty Doc. No. 107-11 (2002) ("Treaty") ................. passim

NDCA Local Rule 7-1(b)(13) ............................................................................................................... 9

U.S' MEMORANDUM IN SUPPORT OF EXTRADITION

### MEMORANDUM OF POINTS AND AUTHORITIES

On May 1, 2019, the United States filed a complaint for the provisional arrest of Don Kollmar ("Kollmar") to extradite him to Canada, at the request of the Government of Canada, pursuant to the Treaty on Extradition Between the United States of America and Canada.[1]

On June 27, 2019, Canada submitted its formal request for extradition through diplomatic channels.[2]  Canada submitted the appropriate documents to the U.S. Department of State.  *See* Attachment A, Extradition documents submitted by Canada, at bates 65-69 (Declaration of Katherine Fennell, U.S. Department of State, Attorney Adviser).  Pursuant to 18 U.S.C. § 3184, this Court must now hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."

The United States respectfully submits this memorandum to set forth the procedural and factual background of the case and to explain the legal standards and protocols that govern extradition proceedings under Section 3184.  As detailed below, the evidence submitted by Canada fulfills the Treaty requirements.  The Court should therefore "certify the same" to the Secretary of State, who will decide whether to surrender the fugitive "according to the treaty."  *Id.*[3]

///

///

///

---

[1]  *See* U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, as amended by the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), and the Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively the "Treaty").

[2]  *See* Memorandum of Law in Opposition to Bail at 1 in which the U.S. government explained that Canada's timely submission of its formal request to the U.S. State Department satisfies Article 11 of the Treaty.  *See Bozilov v. Seifert*, 983 F.2d 140, 144 (9th Cir. 1992) ("Extradition is facilitated by validating extradition requests received by the American Embassy.  Extradition requests received by an authorized diplomatic authority within the Treaty's time limit are sufficient.").

[3]  After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender."  *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 829 (11th Cir. 1993).  "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations which an extradition magistrate may not."  *Id.*; *see also Prasoprat v. Benov*, 421 F.3d 1009, 1016 (9th Cir. 2005) ("[T]he Secretary of State's exercise of discretion regarding whether to extradite an individual may be based not only on considerations individual to the person facing extradition but may be based on foreign policy considerations instead.") (internal quotation marks omitted), *cert. denied*, 546 U.S. 1171 (2006).

U.S.' MEMO IN SUPPORT OF EXTRADITION

1

# I.      BACKGROUND

## A.      Procedural Background

Kollmar is wanted by Canada for trial on charges of Rape and Indecent Assault, in violation of sections 143, 144, and 149 of the Criminal Code of Canada.[4]  These offenses correspond to violations of various U.S. criminal statutes, including 18 U.S.C. §§ 2243, 2244, and Cal. Penal Code §§ 261, 261.5, 288.

Canadian authorities first issued a warrant for Kollmar's arrest on November 17, 1997. Attachment A at bates 30.  Subsequent warrants were issued on November 28, 2018, December 24, 2018, and June 7, 2019.  *Id.* at bates 31.  The most recent warrant "is in full force and effect in Ontario[, Canada]."  *Id*. at bates 6.

On May 1, 2009, the United States filed a complaint pursuant to 18 U.S.C. § 3184 seeking Kollmar's provisional arrest with a view toward his extradition based on the Canadian authorities' request.  On May 3, 2019, Kollmar was arrested in the Northern District of California.  A hearing in this extradition matter is scheduled for July 11, 2019.

## B.      Factual Background

In 1974, the then 12-year old complainant (born October 13, 1962)[5] and her family became involved with a group called "Students of Light."  Attachment A at bates 23.  Through her involvement with this group, the complainant met Kollmar.  *Id*.  Kollmar (born July 29, 1951) was then 23-years old and a spiritual advisor and minister to the Students of Light, as well as chief assistant to the group's leader, John Hanas ("Hanas").  *Id*. at 23, 31.  Kollmar expressed an interest in the complainant, informing her and her parents that she was an extremely special and sensitive child.  *Id*. at 23.

The complainant lived in Sudbury, Ontario; Kollmar was originally from the Buffalo, New York area, and spent time in Toronto, making monthly trips to Sudbury.  *Id*.  During these trips to Sudbury, Kollmar visited the complainant and initiated time alone with her.  *Id*.  While he and the complainant

---

[4]  The Canadians are no longer pursuing charges of sexual assault of a female aged 14-16.  *See* Attachment A at bates 6 and 31.

[5]  The criminal complaint in this matter refers to the alleged female victim as "B.B."  This memorandum refers to her as the "complainant," consistent with the language used in the formal materials submitted by Canada in support of extradition.

were alone, Kollmar would tell her how he was unique, significant, and chosen to do special work.  *Id*.

at 24.  He also told her about his spiritual and psychic powers, and his direct relationship with God.  *Id*.

Kollmar emphasized the complainant's specialness and stated that she could only realize her spiritual

potential through his teachings.  *Id*.

Kollmar further told the complainant about what he described as his pure and unique love for

her.  *Id*.  Kollmar stated that he had intended to wait to approach her physically until she turned 16 years

old, but that he could not wait any longer.  *Id*.  Instead, he began touching her in a sexual manner when

she was 13 years old and continued to do so until she was 16 years old.  *Id*. at 26.  These incidents

included four or five occasions, starting after she had turned 14 years old, in which Kollmar penetrated

the complainant's vagina with his penis.  *Id*. at 28.

Kollmar told the complainant that she should not tell anyone else about their physical

relationship because others would be jealous and unable to understand the spiritual and special nature of

their connection.  *Id*. at 24.  Instead, she should tell other people that she and Kollmar were just close

friends.  *Id*.  Kollmar said that she had been chosen for him by God and that it was her responsibility to

live with him as his wife.  *Id*.  In turn, the complainant understood that she needed to "turn my will

totally and completely over to him so he could mold and shape me into a spiritual being that could best

serve God and humanity."  *Id*.  Similarly, he told her that her own will and desires were not valid and

instructed her that if she didn't love or want to marry Kollmar, then those feelings would be contrary to

God's plan.  *Id*. at 25.  Moreover, when they were alone, Kollmar criticized the complainant's family

members and told her that she should separate and isolate herself from them, most importantly her

mother.  *Id*. at 24.

As time progressed, Kollmar became increasingly controlling and abusive.  *Id*.  Often, Kollmar

only allowed the complainant three hours or less sleep per night.  *Id*.  On several occasions when she

started to fall asleep, Kollmar slapped her face and told her not to be lazy.  *Id*. at 25.  He controlled when

she used the bathroom, showered or bathed, brushed her teeth and hair, and how she wore her hair.  *Id*.

He also repeatedly verbally assailed her and then held up his hand in a motion threatening to strike her,

telling her that she angered him so much that he could barely restrain from hitting her.  *Id*.  Several times

Kollmar grabbed and twisted the complainant's wrist causing her pain.  *Id*.

U.S.' MEMO IN SUPPORT OF EXTRADITION

3

In response to this verbal and physical abuse, the complainant lived in "severe anxiety and terror, never knowing what would trigger his rage . . . abid[ing] by everything he did and said, always feeling like [she] was walking . . . a tight rope, ensuring that [she] never gave him 'just cause' to be upset with [her]." *Id.* From the complainant's perspective, Kollmar engaged in "constant punishment and humiliation" of her, and never allowed her to "experience[] a moment free from fear, intimidation, and oppression." *Id.*

During her relationship with Kollmar, she stated that he sexual abused her in the following ways:

- When she was 13-years-old, she attended a weekend retreat with Kollmar in Buffalo, New York.  On the trip, Kollmar told the complainant to remove her clothes and then gave her a "therapeutic massage," during which he massaged her breasts.  In response, the complainant felt "sickened inside" and "unbearably uncomfortable, embarrassed, and confused." *Id.* at 26.

- While in Sudbury, Kollmar arranged to spend time alone with the complainant, including in his van that he had converted into a "mini home."  Kollmar told her to lie down in the van.  He then placed his arm around her and fondled her breasts over her clothes.  *Id.* at 27.

- When meeting Kollmar in Toronto, on numerous occasions, the complainant would stay in a room maintained by the Students of Light.  Kollmar would come to her room and bring her to his van, where he would have the complainant lie beside him.  He would then put his hand under her clothes and fondle her breasts.  Eventually, he took off her clothes and lay on top of her while kissing her, fondling her breasts and genitals, and rubbing his groin against her.  He also forced the complainant to massage him while they were both naked, including the area around his genitals.  When she tried to avoid touching his penis, he demanded that she do so using oil to massage his genitalia.  He then got on top of her while fully nude, fondled her breasts, and put his fingers inside her vagina.  *Id.* at 27-28.

- On Mother's Day weekend in 1977, when the complainant was 14 years old, Kollmar penetrated her vagina with his penis.  He only "partially" penetrated her and did not do so more deeply because he wanted her to remain a virgin until he married her.  He did this on four or five occasions.  After the 1977 Mother's Day incident, Kollmar began masturbating the complainant and became very angry when she was unable to reach orgasm, which he saw as willfully punishing and denying him pleasure.  Kollmar also had her masturbate him and ejaculated on several occasions when she did so.  *Id.* at 28.

According to the complainant, "99% of the time" these incidents were preluded by Kollmar "verbally humiliating and demoralizing" her. *Id.* at 29.  The verbal assaults took a ritualistic bend, with Kollmar spending up to two hours yelling and criticizing her before the sexual abuse. *Id.*  This included

U.S.' MEMO IN SUPPORT OF EXTRADITION

4

1  Kollmar telling her that she was "stupid, "a piece of shit," "worthless," "fat and ugly," and other words

2  and phrases of similar effect.  *Id*.  He also told her that she "must submit [her] will to him."  *Id*.

3        As of June 1979, Kollmar and the complainant were still scheduled to marry.  *Id*.  The

4  complainant's parents were unaware of the abuse and the complainant believed she was still following

5  God's plan.  *Id*.  However, after the complainant was hospitalized with stomach pains, her mother

6  realized the "oppression" from which the complainant was suffering.  *Id*.  Although up to that point, the

7  complainant had not told her parents about Kollmar's behavior – because he had insisted that no one

8  would believe her if she did – she told her parents that she didn't want to be with Kollmar anymore.  *Id*.

9  Thereafter, she ended their relationship and ceased contact with Kollmar.  *Id*. at 29-30

10        Over time, the complainant disclosed more specifics of Kollmar's sexual and other forms of

11  abuse to her parents, and to group leaders and members, including Hanas.  *Id*. at 30.  While her parents

12  were very upset, the group members told her that she had a "weak case" and that the abuse was her fault.

13  *Id*.  Eventually, on February 25, 1997, the complainant provided a statement to Canadian police making

14  the above-referenced allegations.  *Id*. at 23.  She provided audio-video and written statements, which

15  were used to support the 1997 warrant for Kollmar's arrest.  *Id*. at 23, 30.

16  **II.**     **DISCUSSION**

17        Through the hearing prescribed by 18 U.S.C. § 3184, the Court must determine whether to certify

18  to the Secretary of State that the evidence submitted by Canada is "sufficient to sustain" the charges

19  against Kollmar.  If any evidence is offered by Kollmar, the Court should rule on its admissibility.  Once

20  the evidentiary record is complete, the Court should make written findings of fact and conclusions of

21  law as to each of the elements for certification, including separate findings for each offense as to which

22  extradition is sought.  *See Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973).  If the Court finds

23  that the requirements for certification have been met, it must provide the certification to the Secretary of

24  State, together with a copy of any testimony taken before the Court, and must commit Kollmar to the

25  custody of the United States Marshal to await the Secretary's final determination regarding surrender.

26  18 U.S.C. §§ 3184, 3186.  The Secretary will then decide whether to surrender Kollmar to Canada.

27

28

U.S.' MEMO IN SUPPORT OF EXTRADITION

As discussed below, Canada's evidence satisfies the requirements of the Treaty and supports a finding that Kollmar's case is extraditable on the offenses of Rape and Indecent Assault. Accordingly, this Court should certify as such to the Secretary of State.

**A.      The Documentary Evidence Submitted by Canada Supports Certification; the Fugitive May Only Submit Explanatory Evidence**

"The procedural framework of international extradition gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation," including "[u]nique rules of wide latitude [that] govern reception of evidence" when offered by the requesting state. *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969) (citation and internal quotation marks omitted), *cert. denied*, 398 U.S. 903 (1970).

**1.      Canada's Written Submissions Are Sufficient and Admissible**

Extradition treaties do not contemplate the introduction of live witness testimony at extradition proceedings because to do so "would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916). Thus, hearsay evidence is admissible at extradition hearings and may properly support a finding of extraditability. *See id.* (rejecting fugitive's claim that *ex parte* witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses); *see also, e.g.*, *United States v. Zanazanian*, 729 F.2d 624, 626-27 (9th Cir. 1984) (unsworn written statements may properly form the basis for extradition); *Simmons v. Braun*, 627 F.2d 635, 636 (2d Cir. 1980) (same). Accordingly, a finding of extraditability may be, and typically is, based entirely on the authenticated documentary evidence and information provided by the requesting government. *See, e.g.*, *Manta v. Chertoff*, 518 F.3d 1134, 1139-40, 1145-47 (9th Cir. 2008) (upholding probable cause determination based on investigation report written by prosecutor); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1162-63 & 1166 (11th Cir.) (upholding probable cause determination based on unsworn 106-page bill of indictment prepared by a foreign investigator summarizing witness statements and other hearsay evidence), *cert. denied*, 546 U.S. 993 (2005*); Bovio v. United States*, 989 F.2d 255, 259-61 (7th Cir. 1993) (Swedish investigator's statement sufficient to establish probable cause).

1    The certification of documents introduced during an extradition hearing is governed by the

2    Treaty and by 18 U.S.C. § 3190.  Article 9 of the Treaty lists the documents the Government of Canada

3    is required to submit when it makes a request for the extradition of a fugitive charged with a crime.

4    Section 3190 provides that "properly and legally authenticated" documentary evidence including

5    "depositions, warrants, or other papers or copies thereof . . . *shall be received and admitted.*"  18 U.S.C.

6    § 3190 (emphasis added); *see also Manta*, 518 F.3d at 1146; *Oen Yin-Choy v. Robinson*, 858 F.2d 1400,

7    1406 (9th Cir. 1988), *cert. denied,* 490 U.S. 1106 (1989).

8    Proof that the authentication is proper exists if the documents are accompanied by the certificate

9    of an appropriate U.S. diplomatic or consular officer in the requesting country attesting that the

10   documents would be admissible for similar purposes in that country.  18 U.S.C. § 3190.  The documents

11   filed in this case are accompanied by such a certification by Kelly Craft, Ambassador of the United

12   States of America to Canada, attesting to the authenticity of the foreign official's signature.  Attachment

13   A at bates 1.  Accordingly, the documents are properly authenticated and thereby admissible in this

14   proceeding.  *See* 18 U.S.C. § 3190; *see also* Declaration of Katherine C. Fennell at bates 65-69

15   ("Documents submitted by the Government of Canada in support of its extradition request were certified

16   . . . in accordance with Title 18, United States Code, Section 3190.").

17                        **2.       Kollmar's Right to Introduce Evidence Is Limited**

18   Kollmar's opportunity to challenge the evidence introduced against him is heavily

19   circumscribed.  "The accused is not entitled to introduce evidence which merely goes to his defense but

20   he may offer limited evidence to explain elements in the case against him, since the extradition

21   proceeding is not a trial of the guilt or innocence but of the character of a preliminary examination held

22   before a committing magistrate to determine whether the accused shall be held for trial in another

23   tribunal." *Jimenez v. Aristeguieta*, 311 F.2d 547, 556 (5th Cir. 1962), *cert. denied,* 373 U.S. 914 (1963);

24   *see also Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.) ("[T]he extraditing court properly may exclude

25   evidence of alibi, of facts contradicting the government's proof, or of a defense such as insanity. . . .

26   Because of the limited function of an extradition proceeding and the limited participation permitted of

27   the fugitive, the order of the court does not reflect a consideration of all the merits of the case."), *cert.*

28   *denied,* 439 U.S. 932 (1978).  "[A]s has been said time and again, an extradition hearing must not allow

U.S.' MEMO IN SUPPORT OF EXTRADITION

to become a trial on the merits." *Matter of Extradition of Noeller*, 2018 WL 1027513, at *8 (N.D. Ill. Feb. 23, 2018), *aff'd*, *Noeller v. Wojdylo*, 922 F.3d 797 (7th Cir. 2019). It is axiomatic that "[f]oreign states requesting extradition are not required to litigate their criminal cases in American courts," *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (en banc), and that "the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing," *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir.), *cert. denied,* 454 U.S. 894 (1981).

This allowance of "explanatory evidence" and prohibition on "contradictory evidence" is rooted in the fact that an extradition judge may not weigh conflicting evidence and determine what to credit, "but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir.), *cert. denied*, 479 U.S. 882 (1986). "Testimony that merely gives the opposite version of the facts does not destroy the probability of guilt" and thus is inadmissible. *United States v. Fernandez-Morris*, 99 F. Supp.2d 1358, 1361 (S.D. Fla. 1999). Similarly, evidence (or argument) regarding the credibility of the requesting country's witnesses must be disregarded. *See, e.g.*, *Bovio*, 989 F.2d at 259 (rejecting evidence that major witness lied during the investigation because "issues of credibility are to be determined at trial"); *In re Extradition of Shaw*, 2015 WL 3442022, at *8 (S.D. Fla. May 28, 2015) ("Defendant has consistently attempted to contradict the case brought against him in [the requesting country]. . . . This the Defendant cannot do.").

### B.      The Requirements for Certification Are Satisfied

The Court must certify a fugitive as extraditable where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *See*, *e.g.*, *Zanazanian*, 729 F.2d at 625-26. Each of these elements are met in this case.

### 1.      This Court Has Authority Over the Proceeding

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge

U.S.' MEMO IN SUPPORT OF EXTRADITION

1   of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  As such, the judicial officer

2   conducting the extradition hearing prescribed by Section 3184 does not exercise "any part of the judicial

3   power of the United States," *In re Extradition of Kirby*, 106 F.3d 855, 866 (9th Cir. 1997), but is rather

4   acting in a "non-institutional capacity by virtue of a 'special authority,'" *In re Extradition of Howard*,

5   996 F.2d 1320, 1325 (1st Cir. 1993).  It is well settled that both magistrate judges and district judges

6   may render a certification under Section 3184.  *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993),

7   *cert. denied*, 510 U.S. 1165 (1994).  This Court is therefore authorized to conduct the hearing in this

8   case.  *See id.*; *see also* Local Rule 7-1(b)(13) (authorizing magistrate judges to "[c]onduct proceedings

9   for extradition").

### 2.   This Court Has Jurisdiction Over Kollmar

11   It is also well settled that the Court has jurisdiction over a fugitive found within its jurisdictional

12   boundaries.  18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person

13   found within his jurisdiction, . . .  issue [its] warrant for the apprehension of the person so charged.");

14   *Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin v. Shine*, 187 U.S. 181, 185-86 (1902).  Kollmar was

15   arrested in this jurisdiction on May 3, 2019.  Accordingly, this Court has jurisdiction over him.

### 3.   The Relevant Treaty Is in Full Force and Effect

17   Section 3184 provides for extradition in instances in which a treaty or convention is in force

18   between the requesting state and the United States.  *See id.*  In this case, Katherine C. Fennell, Attorney-

19   Advisor in the Office of the Legal Adviser for the Department of State, has provided a declaration

20   attesting that the Treaty in full force and effect between Canada and the United States.  Attachment A at

21   bates 65, ¶ 2.  The Court must defer to the Department of State's determination in this regard.  *See, e.g.*,

22   *Kastnerova v. United States*, 365 F.3d 980, 986 (11th Cir.) ("[E]very other Court of Appeals to consider

23   whether a treaty has lapsed has deferred to the Executive's determination."), *cert. denied,* 541 U.S. 1090

24   (2004); *cf. United States v. Duarte-Acero,* 296 F.3d 1277, 1282 (11th Cir.) ("[T]he State Department's

25   interpretation of a treaty is entitled to great deference."), *cert. denied,* 541 U.S. 1090 (2004).

### 4.   The Charged Crimes Are Covered by the Treaty

27   Article 1 of the Treaty provides for the return of fugitives charged with, or convicted of, an

28   extraditable offense.  Offenses are extraditable if they are "punishable by the laws of both Contracting

1  Parties by imprisonment or other form of detention for a term exceeding one year or any greater

2  punishment." Treaty, art. 2.

3  　　　The dual criminality requirement is met where the description of criminal conduct provided by

4  Canada in support of its charges would be criminal under U.S. federal law, the law of the state in which

5  the hearing is held, or the law of a preponderance of the states, if it had been committed here –

6  regardless of whether the Canadian and U.S. crimes are identical. *See, e.g.*, *Cucuzzella v. Keliikoa*, 638

7  F.2d 105, 107 (9th Cir. 1981); *Caplan v. Vokes*, 649 F.2d 1336, 1334 n.16 (9th Cir. 1981); *Theron v.*

8  *U.S. Marshal*, 832 F.2d 492, 496 (9th Cir. 1987) (abrogated on other grounds).

9  　　　In *Wright v. Henkel*, 190 U.S. 40, 58-59, 61 (1903), the Supreme Court unequivocally held that

10  U.S. state law could be used as a basis for dual criminality:

11  　　　　　As the state of New York was the place where the accused was found and,
　　　　　in legal effect, the asylum to which he had fled, is the language of the
12  　　　　　treaty, "made criminal by the laws of both countries," to be interpreted as
　　　　　limiting its scope to acts of Congress, and eliminating the operation of the
13  　　　　　laws of the state?  That view would largely defeat the object of our
　　　　　extradition treaties by ignoring the fact that, for nearly all crimes and
14  　　　　　misdemeanors, the laws of the states, and not the enactments of Congress,
　　　　　must be looked to for the definition of the offense . . . [W]e rule it now . . .
15  　　　　　that when, by the law of Great Britian, and by the law of the state in which
　　　　　the fugitive is found, the fraudulent acts charged to have been committed
16  　　　　　are made criminal, the case comes fairly within the treaty[.]

17  Similarly, in *Cucuzzella*, the Ninth Circuit examined the language of the same extradition treaty at issue

18  in this case, the U.S.-Canadian extradition treaty, and held:

19  　　　　　To be extraditable Article 2 requires that each offense be "punishable by
　　　　　the laws of both Contracting Parties by a term of imprisonment exceeding
20  　　　　　one year." . . . Article 2 refers to "the laws of both Contracting Parties."
　　　　　The "Contracting Parties" are the United States and Canada. *We therefore*
21  　　　　　*look to proscription by similar criminal provisions of federal law or, if*
　　　　　*none, the law of the place where the fugitive is found or, if none, the law of*
22  　　　　　*the preponderance of the states.*[6]

23  638 F.2d at 107 & n. 3 (emphasis added) (analyzing federal and Hawaii's criminal laws when reviewing

24  for dual criminality and holding that consideration of both federal and state law in the dual-criminality

25

26  ───────────────────────
[6]  As a 1981 decision, *Cucuzzella* analyzed the 1971 version of the Treaty.  Subsequently, the first Protocol (1988)
27  amended Article 2 of the Treaty to eliminate the Treaty's list of extraditable offenses, and made the definition of
an extraditable offense based strictly on its dual criminality and maximum punishments in the respective
28  countries.  However, the Treaty's reference to the "laws of both Contracting Parties" remained unchanged by the
amendment.  Therefore, *Cucuzzella*'s holding remains applicable and controlling in this case.

U.S.' MEMO IN SUPPORT OF EXTRADITION

context was approporate:  "[t]his broad interpretation also comports with the principle that treaties should be construed to enlarge the rights of the parties [to the treaty]") (citing *Factor v. Laubenheimer*, 290 U.S. 276, 293-294 (1933) (extradition treaties are to be liberally construed in favor of extradition); *see also Theron*, 832 F.2d at 496 ("Because Theron was arrested in California, we will first evaluate the laws of the United States and then, if necessary, the laws of California.").[7]  Therefore, the Court may look to both U.S. federal and state law when evaluating whether Kollmar's conduct is dually criminal.

Furthermore, when analyzing a fugitive's extraditability, courts "look to the law in place at the time the extradition request was made, not the law in effect when [the fugitive] allegedly committed the offense."  *Nezirovic v. Holt*, 779 F.3d 233, 238 (4th Cir. 2015), *citing United States ex rel. Oppenheim v. Hecht,* 16 F.2d 955, 956–57 (2d Cir. 1927), *cert. denied*, 273 U.S. 769 (1927) and *Hilario v. United States,* 854 F. Supp. 165, 176 (E.D.N.Y. 1994).  It is well-established that the Ex Post Facto Clause of the U.S. Constitution is not applicable to extradition proceedings, which are not criminal cases.  *Id.*; *Neely v. Henkel*, 180 U.S. 109, 122 (1901) (ex post facto principles have "no relation to crimes committed without the jurisdiction of the United States against the laws of a foreign country").

These firmly-rooted principles apply in the dual-criminality context, and dictate that extradition courts analogize to those U.S. federal and state laws in effect at the time of the foreign country's extradition request.  "Although the relator argues that the court must apply the law in force at the time of the incident in determining whether there is analogous law in the United States, it is clear that in determining dual criminality, the court may apply the current American law . . . . The law pertinent to the question of extradition is the law in force *at the time of the demand*."  *In Matter of Extradition of Murphy*, 1998 WL 1179109 at *5 n.3 (N.D.N.Y. Jun. 30, 1998) (emphasis in original), *aff'd* 199 F.3d 599 (2d Cir. 1999); *Hecht*, 16 F.2d at 956 (fugitive's conduct was not criminal in the United States at the time of the incident but was criminal "at the time of demand"; Second Circuit found dual criminality

---

[7]  The *Theron* court drew a clear distinction between an extradition court's statute of limitations analysis (pursuant to "lapse-of-time" provisions contained in some extradition treaties) where U.S. statute of limitations may be applicable, and an extradition court's dual criminality analysis.  Unlike in the dual-criminality context, when extradition courts examine an applicable U.S. statute of limitations, they look to the relevant federal statute of limitations only.  *Id.* at 498-99.  In this case, there is no U.S. statute of limitations to apply, since the Treaty provides that only the statute of limitations of the "Requesting State" (*i.e.*, Canada's statute of limitations) may provide a fugitive with a potential defense to extradition.  *See* Treaty, art. 4(1)(II).

where the extradition treaty required that the conduct was "made criminal by the laws of both countries," holding that because "[e]xtradition proceedings are not in their nature criminal . . . all talk of ex post facto legislation, or of the niceties of common law on the criminal side . . . is quite beside the mark"), *citing Glucksman v. Henkel*, 221 U.S. 508 (1911) and *Grin*, 187 U.S. 181 (1902).

*United States v. Wathne*, 2008 WL 4344112 (N.D. Cal. Sept. 22, 2008) is inapposite. *Wathne* is not a case involving the extradition of a fugitive from the United States to a foreign country. *Wathne* instead involved an U.S. criminal defendant and his argument that his voluntary-return agreement with U.S. prosecutors, which stated that he retained any rights pursuant to the U.S.-India extradition treaty, provided him protection under the treaty's dual-criminality provision. *Id.* at *3. The defendant averred that India's interpretation of that provision provided him this protection because India (not the United States) would have declined to apply it retroactively when considering whether to extradite him pursuant to its law, where Indian law did not prohibit the defendant's misconduct at the time he committed it. *Id.* at *8-13. *Wathne* has no bearing on cases such as Kollmar's, in which the United States is the Requested State, and does not purport to contradict the universally held proposition in U.S. extradition law that ex post facto principles have no place in U.S. extradition proceedings involving fugitives sought by foreign countries.

Therefore, dual criminality is satisfied if Kollmar's conduct would have violated either U.S. federal or state laws in effect at the time of Canada's request for his extradition. Based on his alleged conduct, Kollmar is charged in Canada with violating sections 143-144 (Rape)[8] and section 149 (Indecent Assault)[9] of the Canadian Criminal Code.[10] Accordingly, Kollmar could be charged in the

---

[8] Section 143 provides that "A male person commits rape when he has sexual intercourse with a female person who is not his wife, (a) without her consent, or (b) with her consent if the consent (i) is extorted by threats or fear of bodily harm, (ii) is obtained by personating her husband, or (iii) is obtained by false and fraudulent representations as to the nature and quality of the act." Attachment A at bates 8. Section 144 carried a maximum punishment of life imprisonment for rape under the statute in effect at the time of the alleged offense in this case, which was later amended to provide a 14-year maximum punishment if the victim is under the age of 16 years old. *Id.* at 8, 11.

[9] Section 149 provides that "Every one who indecently assaults a female person is guilty of an indictable offence and is liable to imprisonment for five years. . . ." *Id.* at 12. The Canadian prosecutor's affidavit explains that Indecent Assault may be committed through a perpetrator's non-consensual touching of a victim in a sexual way (*id.* at 9-10), and that the definition of consent is the same for both Rape and Indecent Assault (*id.* at 10).

[10] It is appropriate for a Requesting Country to modify or add charges and provide additional evidence in a formal request that follows a fugitive's provisional arrest. *See, e.g., Koskotas v. Roche*, 931 F.2d 169, 174-75 (1st Cir. 1991) (rejecting fugitive's procedural due process challenge to Greece's supplementation of its request for provisional arrest to "encompass new charges and additional evidence"); *Matter of Extradition of Mainero*, 990 F.

U.S.' MEMO IN SUPPORT OF EXTRADITION

12

1    United States with a variety of federal and state sexual offenses, including 18 U.S.C. §§ 2243 (Sexual

2    Abuse),[11] 2244 (Abusive Sexual Contact),[12] and Cal. Penal Code §§ 261 (Rape),[13] 261.5 (Unlawful

3    Sexual Intercourse),[14] 288(a), (c) (Bigamy, Incest, and the Crime Against Nature).[15]

4         Furthermore, in *Kamrin v. United States*, Ninth Circuit rejected any notion that an extradition

5    treaty's reference, such as that in Article 8 of the Treaty, to the "remedies and recourses" of the

6    Requested State provided a fugitive found in the United States to protection under the Due Process

7    clause of the U.S. Constitution or to any speedy trial rights.  725 F.2d 1225, 1228 (9th Cir.) ("[I]t has

8    long been settled that United States due process rights cannot be extended extraterritorially," *citing

9    Neely*, 180 U.S. 109), *cert. denied,* 469 U.S. 817 (1984); *Matter of Extradition of Kraiselburd*, 786 F.2d

10   1395, 1398 (9th Cir. 1986) (same), *cert. denied,* 479 U.S. 990 (1986); *see also Martin*, 993 F.2d at 829

11   ("Even if a treaty states that 'the person whose extradition is sought shall have the right to use all

12   remedies and recourses provided by [the law of the Requested State],' as does the treaty between the

---

Supp. 1208, 1215 (S.D. Cal. 1997) (following provisional arrest "the later supplementation of the record and supplementation of Mexico's request for extradition, with additional charges, [were] not inconsistent with the Treaty or its provisions").  Likewise, in this case, modification and inclusion of additional charges is not inconsistent with the Treaty or the extradition statutes.

[11]  Making punishable by 15 years' imprisonment conduct committed by persons within federal jurisdiction who "knowingly engage[] in a sexual act who another person who [] has attained the age of 12 but has not attained the age of 16 years," as long as the offender is at least four years older than the victim.

[12]  Making punishable by two years' imprisonment conduct committed by persons within federal jurisdiction who "knowingly engage in or cause[] sexual contact with or by another person, if to do so would violate . . section 2243 of this title had the sexual contact been a sexual act."

[13]  "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances . . . Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." Cal. Penal Code § 264 makes this offense punishable by up to 11 years imprisonment where the victim is a 14-year-old child.

[14]  "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor.  For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age . . . Any person 21 years of age or older who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years."

[15]  "[A] person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years . . . A person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year."

U.S.' MEMO IN SUPPORT OF EXTRADITION

13

1   United States and Canada, the defendant does not have a right to a speedy extradition." *quoting*

2   *Kraiselburd,* 786 F.2d at 1398; *Gonzalez v. O'Keefe*, 2014 WL 6065880, *3 (N.D. Cal. Nov. 20, 2014)

3   (relying on *Kamrin* and *Kraiselburd* to reject fugitive's argument that the relevant extradition treaty's

4   "lapse of time" provision incorporated the right to a speedy trial).

5           **5.**    **Canada's Evidence Establishes Probable Cause that the Fugitive Committed**
6                **the Charged Offenses**

7           The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to

8   Section 3184 is the familiar domestic requirement of probable cause.  The Court must conclude there is

9   probable cause to believe that the crimes charged by Canada were committed and that the person before

10   the Court committed them.  *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433 (S.D. Fla. 1993), *aff'd*

11   28 F.3d 116 (11th Cir. 1994).  The evidence is sufficient, and probable cause is established, if it would

12   cause a "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense."

13   *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotation marks and citation omitted); *see also*

14   *Collins v. Loisel*, 259 U.S. 309, 316 (1922) ("The function of the committing magistrate is to determine

15   whether there is competent evidence to justify holding the accused to await trial, and not to determine

16   whether the evidence is sufficient to justify a conviction."); *Fernandez v. Phillips*, 268 U.S. 311, 312

17   (1925) ("Competent evidence to establish reasonable grounds is not necessarily competent evidence to

18   convict.").

19           The extradition judge's probable cause determination is "not a finding of fact 'in the sense that

20   the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the

21   narrow function of indicating those items of submitted evidence on which the decision to certify

22   extradition is based.'"  *Quinn*, 783 F.2d at 791 (citation omitted).  Accordingly, probable cause in an

23   extradition proceeding may not be defeated when a fugitive alleges that the evidence submitted by the

24   requesting country contains inconsistencies.  *See, e.g.*, *In re Extradition of Shaw*, 2015 WL 3442022, at

25   *7-11 (S.D. Fla. 2015) (finding probable cause despite fugitive's arguments that the evidence against

26   him was "unreliable, contradictory, inconsistent, unbelievable, and inadmissible"); *In re Extradition of*

27   *Figueroa*, 2013 WL 3243096, at *8 (N.D. Ill. June 26, 2013) ("In sum, although we agree with [the

28   fugitive] that the evidence that Mexico has provided is by no means perfect, the issue before us is not

U.S.' MEMO IN SUPPORT OF EXTRADITION

whether [he] should be convicted of the crime....  Although there may be some inconsistencies in the record, we do not believe that these are so compelling as to negate a finding of probable cause."); *Castro Bobadilla*, 826 F. Supp. at 1434 (upholding probable cause finding despite "contradictions in the evidence [that] may create a reasonable doubt as to [the fugitive's] guilt").  This principle accords with the fact that an extradition hearing is only preliminary in nature and is not a determination of guilt; accordingly, the resolution of any inconsistencies in the record, as well as the weighing of inculpatory with exculpatory evidence, are tasks that are properly left to the courts in the requesting country.  *See, e.g.*, *Collins*, 259 U.S. at 316; *Neely*, 180 U.S. at 123; *In re Extradition of Nunez-Garrido*, 829 F. Supp. 2d 1277, 1282 (S.D. Fla. 2011).

The facts summarized above and set forth in great detail in Canada's extradition request easily establish probable cause.  Canada's evidence is straightforward:  the complainant provided Canadian authorities with both audio-video and written statements, summarized in the extradition request, which explained the circumstances of Kollmar's sexual abuse of her when she was a child between the ages of 13 and 16 years old.  Attachment A at bates 23 and 30.  She further identified a photograph of Kollmar from his website, "indicating that with 100% certainty that this photo was of the person who assaulted her."[16]  *Id*. at 32.

This is classic extradition evidence "sufficient to sustain the charge."  Even in cases in which the facts have not been so well sourced, or in which the requesting country has relied on multiple levels of hearsay, probable cause has been found.  *Bovio* is highly instructive.  989 F.2d 255.  There, the extradition magistrate found that probable cause existed based solely upon the affidavit of a Swedish investigator.  989 F.2d at 258.  The fugitive contested that finding in the Seventh Circuit arguing that:

> (1) [the investigator's] statements do not indicate how he obtained the information on which the statements are based, whether witnesses were under oath, and whether there are any original notes or recordings of witness interviews; (2) all the evidence implicating Bovio is hearsay; (3) there is no physical evidence implicating Bovio; and (4) the major witness relied upon by the Swedish government, Perttunen, has admitted lying

---

[16]  The person arrested in this case has not specifically contested identity; namely, that he is, in fact, the fugitive, whom the complainant identified and who is wanted for trial in Canada.  Moreover, the person who has appeared before this court strongly resembles the person in the photographs of the fugitive provided by Canada.  Accordingly, there is probable cause to believe that the person before the Court is the same person alleged to have committed the offenses charged in Canada.

U.S.' MEMO IN SUPPORT OF EXTRADITION

15

1    during the investigation, and there is otherwise no corroboration of her
2    account.

3    *Id.* at 259.  The Seventh Circuit rejected all of these arguments, noting that a fugitive has "no right to

4    attack the credibility" of witnesses in an extradition hearing, as "issues of credibility are to be

5    determined at trial," and that "hearsay testimony is often used in extradition hearings."  *Id.* at 259-60.[17]

6          Furthermore, here, Canadian authorities have explained in depth not only the factual nature of

7    the allegations against Kollmar, but how those allegations establish probable cause to believe "that the

8    complainant did not provide genuine consent to sexual activity" for purposes of both the Rape and

9    Indecent Assault charges.  Attachment A at bates 16.  As the Canadian prosecutor cogently explained:

10          [T]he relationship of domination, the constant threat of assault for
11          disobeying Kollmar's will, her fear of incurring Kollmar's rage, and the
             position of authority that existed between Kollmar and the complainant are
12          all relevant in determining whether the complainant genuinely consented
             to any sexual activity.  In the context of this abusive, dominating
13          relationship, any possible indication of consent was not freely given as
             required to constitute genuine consent . . . .  The complainant lived in fear
14          of Kollmar, who controlled every aspect of her life, physically assaulted
             her on several occasions, and threatened to assault her on other occasions.
15          Kollmar was in a position of authority to the complainant, a vulnerable
             child.  The complainant subjectively did not want the sexual touching to
16          occur, and described feeling "tormented when Kollmar touched her, and
             holding herself "unbearably stiff."  In these circumstances the complainant
             did not provide genuine and free consent to sexual touching.

17

18    *Id*. at bates 16-17.

19          Accordingly, there is probable cause to believe that Kollmar committed the Canadian offense of

20    Rape for those incidents in which he had sexual intercourse with the complainant, and the Canadian

21    offense of Indecent Assault, for his other acts of alleged sexual activity with her.

22

23    _____

24    [17]  It is well-established that the statement of a sexual assault victim, even if uncorroborated, can support probable
       cause – just as it can support the far greater standard to convict of beyond a reasonable doubt.  *See, e.g.*, *United
25    States v. Johnson*, 2014 WL 5685522, *1 (D. Minn. Nov. 4, 2014) ("First, as the Magistrate Judge and the
       Government note, the uncorroborated testimony of a sexual assault victim, alone, can support probable cause."),
26    *citing United States v. Wallace*, 550 F.3d 729, 734 (8th Cir. 2008), *aff'd* 848 F.3d 872 (8th Cir. 2017).  This
       principle has even more force in the extradition context, where the contents of the Requesting State's materials
27    submitted in support of extradition cannot be contradicted and must be assumed as true.  *See, e.g.*, *Matter of
       Extradition of Ricardo Alberto Martinelli Berrocal*, 2017 WL 3776953, at *35 (S.D. Fla. Aug. 31, 2017) ("courts
28    'must accept as true all of the statements and offers of proof by the demanding state'"); *In re the Extradition of
       Kyung Joon Kim*, 2005 WL 6399831, at *11 (C.D. Cal. Oct. 21, 2005) ("For purposes of extradition proceedings,
       the extradition magistrate properly accepts as true the offers of proof from the demanding state.").

U.S.' MEMO IN SUPPORT OF EXTRADITION

16

III.     **CONCLUSION**

For the foregoing reasons, the elements for certification of extradition are met in Kollmar's case. Therefore, the United States requests that the Court hold a hearing pursuant to 18 U.S.C. § 3184 and certify to the Secretary of State that his case is extraditable to Canada on the charges for which his extradition is requested.

Dated:  July 9, 2019                              Respectfully submitted,

                                                  DAVID L. ANDERSON
                                                  United States Attorney


                                                  _____/s/_____
                                                  JOHN D. RIESENBERG
                                                  Trial Attorney, U.S. Department of Justice

                                                  MAUREEN C. BESSETTE
                                                  Assistant United States Attorney
                                                  Northern District of California