1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   JOHN D. RIESENBERG (CABN 232839)
    Trial Attorney, U.S. Department of Justice
5
    MAUREEN C. BESSETTE (CABN 165775)
6   Assistant United States Attorney

7        1301 Clay Street, Suite 340S
         Oakland, California 94612
8        Telephone: (510) 637-3680
         Fax: (510) 637-3724
9        Maureen.bessette@usdoj.gov

10  Attorneys for United States of America

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                        OAKLAND DIVISION

14  IN THE MATTER OF THE EXTRADITION    )   CASE NO. 4:19-MJ-70677
    OF DONALD KOLLMAR                   )
15                                      )   U.S.' RESPONSE TO MOTION FOR DISCOVERY
                                        )
16                                      )   September 5, 2019 at 10:30 a.m.
                                        )   Hon. Kandis A. Westmore
17  _____)   Courtroom: #4

18

19

20

21

22

23

24

25

26

27

28

U.S.' RESPONSE TO MOTION FOR DISCOVERY

1

## TABLE OF CONTENTS

2   I.      Summary ......................................................................................................................1

3   II.     Discovery in Extradition Matters .................................................................................2

4   III.    Kollmar Has No Right to the Discovery He Seeks ......................................................6

5   IV.     Conclusion .................................................................................................................11

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S.' RESPONSE TO MOTION FOR DISCOVERY

1

## **TABLE OF AUTHORITIES**

2

Cases

3  *Ahmad v. Wigen*, 726 F. Supp. 389 (E.D.N.Y. 1989), aff'd, 910 F.2d 1063 (2d Cir. 1990) ............... 5, 10

4  *Barapind v. Enomoto*, 400 F.3d 744 (9th Cir. 2005) ................................................................. 4

5  *Bisram v. United States*, 2019 WL 2932755 (2d Cir. July 9, 2019) ........................................... 4

6  *Caplan v. Vokes,* 649 F.2d 1336 (9th Cir. 1981) ..................................................................... 2

7  *Charlton v. Kelly*, 229 U.S. 447 (1913) ......................................................................... 2, 6, 11

8  *Collins v. Loisel*, 259 U.S 309 (1922) ............................................................................ 5, 6, 11

9  *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), *cert. denied,* 513 U.S. 914 (1994)................. 2, 10

10  *Desautels v. United States*, 970 F.2d 896 (2d Cir. 1992), *aff'd,* 970 F.2d 896 (2d Cir. 1992) ................ 6

11  *Emami v. U.S. District Court for the Northern District of California*, 834 F.2d 1444 (9th Cir. 1987)...... 9

12  *Escobedo v. United States*, 623 F.2d 1098 (5th Cir. 1980), *cert. denied,* 450 U.S. 922 (1981)  ............... 7

13  *Extradition of Atta*, 706 F. Supp. 1032 (E.D.N.Y. 1989) .......................................................... 6

14  *Extradition of Cheung*, 968 F. Supp. 791 (D. Conn. 1997) ...................................................... 6

15  *Extradition of Marzook*, 924 F. Supp. 565 (S.D.N.Y. 1996)..................................................... 6

16  *Gill v. Imundi*, 747 F. Supp. 1028 (S.D.N.Y. 1990), *aff'd,* 970 F.2d 896 (2d Cir. 1992), ......................... 5

17  *Hooker v. Klein*, 573 F. 2d 1360 (9th Cir.), *cert. denied,* 439 U.S. 932 (1978) ............................... 9

18  *In re Extradition of Aguasvivas*, 2018 WL 3614137 (D. Mass. July 27, 2018) ...................................... 10

19  *In re Extradition of Drayer,* 190 F.3d 410 (6th Cir. 1999), *cert. denied,* 528 U.S. 1176 (2000)  1, 2, 3, 10,
20   11

21  *In re Extradition of Handanovic*, 826 F. Supp. 2d 1237 (D. Ore. 2011)................................................. 8, 9

22  *In re Extradition of Zhenly Ye Gon*, 613 F. Supp. 2d 92 (D.D.C. 2009) ............................................ 9

23  *In re Kirby*, 106 F.3d 855 (9th Cir. 1996)............................................................................ 3

24  *In re Koskotas*, 127 F.R.D. 13 (D. Mass. 1989), *aff'd,* 931 F.2d 169 (1st Cir. 1991)...................... 2, 3, 10

25  *In re Kraiselburd*, 786 F.2d 1395 (9th Cir. 1986) ................................................................. 4

26  *In re Okeke*, 1996 WL 622213 (D.N.J. 1996)...................................................................... 5

27  *In re Solis*, 402 F. Supp. 2d 1128 (C.D. Cal. 2005)............................................................... 6

28  *Manta v. Chertoff*, 518 F.3d 1134 (9th Cir. 2008)................................................................. 7

*Matter of Extradition of Ameen*, 378 F. Supp.3d 902 (E.D. Cal. 2019) ........................... 1, 2, 10

*Matter of Extradition of Lehming*, 951 F. Supp. 505 (D. Del. 1996) ....................................... 5

*Matter of Extradition of Mainero*, 990 F. Supp. 1208 (S.D. Cal. 1997)............................... 3, 5

*Matter of Extradition of Singh*, 123 F.R.D. 108 (D.N.J. 1987) ......................................... 2, 10

*Matter of Sindona*, 450 F. Supp. 672 (S.D.N.Y. 1978) ........................................................ 5

*Merino v. United States Marshal,* 326 F.2d 5 (9th Cir. 1963), *cert. denied,* 377 U.S. 997 (1964) ........ 2, 9

*Messina v. United States*, 728 F.2d 77 (2d Cir. 1984) ............................................................ 8

*Noeller v. Wojdlyo*, 922 F.3d 797 (7th Cir. 2019) ................................................................ 4

*Peryea v. United States*, 782 F. Supp. 937 (D. Vt. 1991) .................................................. 5, 10

*Prasoprat v. Benov*, 294 F. Supp.2d 1165 (C.D. Cal. 2003), *aff'd,* 421 F.3d 1009 (9th Cir. 2005), *cert. denied,* 546 U.S. 1171 (2006) ................................................................................. 3

*Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986), 479 U.S. 882 (1986)................................. 5, 6

*Santos v. Thomas*, 830 F.3d 987 (9th Cir. 2016) .................................................................. 6

*Schmeer v. Warden of Santa Rosa Cty. Jail*, 2014 WL 5430310 (N.D. Fla. Oct. 22, 2014) ............ 5

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973)............................................................. 5

*United States v. Cotroni*, 527 F.2d 708 (2d Cir. 1975) ........................................................ 3

*United States v. Friedman*, 593 F.2d 109 (9th Cir. 1979) ..................................................... 3

*United States v. Hughes*, 211 F.3d 676 (1st Cir. 2000) ....................................................... 3

*United States v. Meija*, 448 F.3d 436 (D.C. Cir. 2006) ....................................................... 3

*United States v. Yousef*, 327 F.3d 56 ................................................................................ 3

Statutes

18 U.S.C. § 2243 ............................................................................................................. 7

18 U.S.C. § 2244 ............................................................................................................. 7

Cal. Penal Code § 261.5 .................................................................................................. 7

Cal. Penal Code § 288(a), (c) .......................................................................................... 7

Canadian Criminal Code Section 149 ............................................................................... 6

Rules

Fed. R. Crim. P. 1(a)(5)(A)............................................................................................. 3

# I.      Summary

Kollmar's argument for discovery relies on the Sixth Circuit case *In re Extradition of Drayer*, which held:

> [T]o the extent that [the fugitive's] motion for discovery included requests for materials in the possession or control of Canada, it was properly denied.  The United States does not have any obligation or authority to obtain those materials on behalf of [the fugitive].  An extradition proceeding is not a forum in which to establish the guilt or innocence of the accused; rather, the sole inquiry is into probable cause.  The United States complied with its discovery obligations by turning over the materials in its possession to petitioner.  *Items that may be in the possession of Canada must be sought in a Canadian forum.*

190 F.3d 410, 415 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000) (emphasis added).[1]  As in *Drayer*, the items sought by Kollmar – audio-video recordings, written statements made by the complainant and her father to Canadian police (Discovery Motion at i), and related Canadian police reports – are not in the possession of the government.  Those materials are in Canada where Kollmar's criminal trial will be held.

Further, as in *Drayer*, the government is not in possession of any materials that would "undermine," "undercut," or "negate" the showing of probable cause that Canada has made through its formal extradition request, to believe that Kollmar committed the Canadian offenses of rape and indecent assault, which would be the outer boundary of any *Brady* obligation that the government may have in extradition proceedings.  *Id.; see also Matter of Extradition of Ameen,* 378 F. Supp.3d 902, 913-14 (E.D. Cal. 2019) (discussing Ninth Circuit cases holding that there is no *Brady* obligation in extradition cases).  Here, the government, which is acting in its ministerial role to fulfill its treaty obligations to the government of Canada, has "turn[ed] over the materials in its possession to petitioner" that accompanied Canada's formal extradition request, thereby fulfilling any such discovery obligation.  *Id*. at 415.

Accordingly, Kollmar's motion for discovery should be denied.

///

---

[1]  In his motion for discovery, Kollmar cites to *Drayer* and urges the Court to "follow the Sixth Circuit's approach," Arrestee Don Kollmar's Motion for Discovery ("Discovery Motion") at 16, but completely neglects to inform the Court of *Drayer*'s actual holding.

## II.       Discovery in Extradition Matters

It is "well-established by case law that [a fugitive] has no per se constitutional right to discovery." *In re Koskotas*, 127 F.R.D. 13, 27 (D. Mass. 1989), *aff'd*, 931 F.2d 169 (1st Cir. 1991) (holding that *Brady* is not applicable to extradition cases), *quoting Matter of Extradition of Singh*, 123 F.R.D. 108, 123-4, 126-7 (D.N.J. 1987).  In *Merino v. United States Marshal*, the Ninth Circuit specifically held that *Brady* does not apply in extradition proceedings.  326 F.2d 5, 13 (9th Cir. 1963), *cert. denied*, 377 U.S. 997 (1964) ("In our view the principles set forth in [*Brady*] are not applicable to a preliminary examination in an international extradition case.").  In *Caplan v. Vokes*, the Ninth Circuit reaffirmed that principle.  649 F.2d 1336, 1342 n.10 (9th Cir. 1981) (holding that in extradition proceedings, "the accused has no absolute right to introduce exculpatory evidence and the government has no duty to do so") (internal citation omitted), *citing Charlton v. Kelly*, 229 U.S. 447, 456 (1913); *see also Ameen*, 378 F. Supp.3d at 909-11 & n.15 (reviewing Ninth Circuit extradition cases and those from other jurisdictions, explaining "the Ninth Circuit held that *Brady* is not applicable to international extradition hearings").

The Sixth Circuit in *Demjanjuk v. Petrovsky* extended *Brady* concepts to the atypical case where "the United States had conducted its own investigation of the offense underlying the request for extradition and uncovered exculpatory material in the course of that effort," *see Drayer*, 190 F.3d at 413-14, *citing Demjanjuk*, 10 F.3d 338 (6th Cir. 1993), *cert. denied*, 513 U.S. 914 (1994), and describing the underlying facts.  However, in *Drayer*, the Sixth Circuit limited *Demjanjuk*'s holding to only those materials in the possession of the U.S. prosecutors that would "undercut," or completely negate, the requesting country's showing of probable cause, and expressly excluded records or information held by the country requesting extradition.  *Id*. at 415; *see also Ameen*, 378 F. Supp.3d at 912-13 & n.20 (interpreting the "*Drayer* court's use of 'undercut'" to mean "evidence that would actually serve to negate probable cause," as opposed to meaning any evidence favorable to the fugitive).  The *Drayer* court further held that because "all documents received by the United States from Canadian authorities were, in fact, turned over to counsel for [the fugitive]," the government had unequivocally

1  "complied with its discovery obligations."  *Id*. at 414-415 ("Items that may be in the possession of

2  Canada must be sought in a Canadian forum.").[2]

3       In addition to having no per se constitutional right to discovery, international fugitives likewise

4  have no statutory right to discovery.  *See*, *e.g.*, *In re Koskotas*, 127 F.R.D. at 28.  And the discovery

5  provisions in the Federal Rules of Criminal Procedure (as well as the Federal Rules of Civil Procedure)

6  are inapplicable to extradition.  *See* Fed. R. Crim. P. 1(a)(5)(A) ("[p]roceedings not governed by the

7  rules include: . . . the extradition and rendition of a fugitive); *In re Kirby*, 106 F.3d 855, 867 (9th Cir.

8  1996). ("Extradition proceedings are not criminal proceedings. . . no guilt or innocence is determined in

9  them.  Nor are extradition proceedings civil as the term is used in our rules, so that they are not governed

10  by the Federal Rules of Civil Procedures.")

11       The framework of extradition law is structured accordingly because extradition proceedings are

12  not criminal proceedings where the normal constitutional, statutory, and evidentiary rules governing

13  criminal discovery may apply.  *See Prasoprat v. Benov,* 294 F. Supp.2d 1165, 1169 (C.D. Cal. 2003) ("a

14  fugitive in an extradition case has no right to discovery"), *aff'd* 421 F.3d 1009 (9th Cir. 2005), *cert.*

15  *denied*, 546 U.S. 1171 (2006); *Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1220 n.26 (S.D.

16  Cal. 1997) ("Discovery is not available in extradition proceedings . . . The extradition proceeding is not

17  a criminal trial nor is [the fugitive] entitled to the rights available in a criminal trial at common law.")

18  (internal citations omitted).  Instead, extradition cases are limited proceedings focused on the narrow

19

20  _____

[2] Even in U.S. criminal cases, evidence in the possession of foreign authorities is generally not subject to discovery.  *See*, *e.g.*, *United States v. Meija*, 448 F.3d 436, 444-45 (D.C. Cir. 2006) (government's

21  authority under a mutual legal assistance treaty to seek tapes or transcript from a trial held in Costa Rica does not place the items within the government's possession), *cert. denied*, 549 U.S. 1137 (2007); *United*

22  *States v. Yousef*, 327 F.3d 56, 129 (2d Cir.) ("The Government is not under an obligation to produce prior statements of foreign law enforcement officials that it does not possess."), *cert. denied*, 540 U.S. 933

23  (2003); *United States v. Hughes*, 211 F.3d 676, 688 (1st Cir. 2000) (prosecution not required to produce crime scene photographs in possession of Mexico government because "the government has no duty to

24  produce evidence outside its control"); *United States v. Friedman*, 593 F.2d 109, 120 (9th Cir. 1979) ("Neither Rule 16 nor [the Jencks Act] required production of [a coconspirator's] diary, because the

25  Government did not have possession or control of it; the Chilean government seized the diary in 1974 and has retained possession of it."); *United States v. Cotroni*, 527 F.2d 708, 712 (2d Cir. 1975) ("We likewise

26  see no error resulting from appellants' inability to review wiretap records still in the possession of Canadian police. The prosecution cannot be charged with wrongdoing for failure to permit inspection of

27  recorded statements not 'within the possession, custody or control of the government.'"), *cert. denied*, 426 U.S. 906 (1976).

28

U.S.' RESPONSE TO MOTION FOR DISCOVERY

3

question of whether the formal request for extradition and supporting documents submitted by the requesting country meet the requirements of the relevant extradition treaty. *In re Kraiselburd*, 786 F.2d 1395, 1399 (9th Cir. 1986) ("discovery in an international extradition hearing is limited and lies with the discretion of the magistrate").[3]  Therefore, in the typical extradition case where the United States is fulfilling its treaty obligations in a ministerial capacity, there is no "discovery" other than the provision of the formal extradition request with accompanying exhibits from the requesting country to fugitive's counsel and the court in advance of the extradition hearing, which has occurred in this case (Docket Entry "D.E." 39, Attachment A).

These significant constraints on a fugitive's right to discovery dovetail with the firmly-rooted legal principle that a fugitive in extradition proceedings has no right to admit evidence that conflicts with the extradition request or impeaches the evidence submitted by the requesting country.  This prohibition on contradictory evidence includes attacks on the credibility of the foreign country's witnesses. *See Barapind v. Enomoto*, 400 F.3d 744, 749-50 (9th Cir. 2005) (en banc) (per curiam) (assessing as contradictory evidence the fugitive's attempt to introduce a statement "the credibility of which could not be assessed without a trial"); *Noeller v. Wojdlyo*, 922 F.3d 797, 807 (7th Cir. 2019) (fugitive's "arguments challenging the credibility of the evidence against him have no place in extradition hearings . . . Evidence that contradicts the demanding country's proof or poses questions of credibility – i.e., contradictory evidence – is off-limits . . . [W]itnesses' potential biases and inconsistencies are surely relevant to the ultimate question of [the fugitive's] guilt or innocence, but those issues must be addressed in the [foreign] criminal justice system, not ours.") (internal citations and quotations omitted); *Bisram v. United States*, 2019 WL 2932755, at *3 (2d Cir. July 9, 2019) (contradictory evidence is that which "poses a clear-cut credibility dispute well suited for resolution in the extraditing country, but that does not undermine the extraditing country's threshold showing of

---

[3]  In *Kraiselburd*, the Ninth Circuit recounted how the magistrate judge in that case had "ordered" the requesting country, Argentina, to produce certain documents, while denying the fugitive's "blanket discovery motion." *Id.*  The Ninth Circuit did not approve of or analyze whether the magistrate had the authority to issue such an order to a foreign country; instead, it simply held that the magistrate did not err by denying the fugitive's broader request for discovery, and made the common observation that "the purpose of the extradition hearing is simply to determine whether there exists probable cause that the fugitive committed the charged offense." *Id*.

U.S.' RESPONSE TO MOTION FOR DISCOVERY

probable cause"), and at *2, *quoting Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973)

("Statements that would in no way explain or obliterate the government's evidence, but would only pose

a conflict of credibility should properly await trial in the country seeking extradition.") (internal

quotation marks, brackets, and ellipses omitted).

Furthermore, "[w]hile the [fugitive] may offer what has been called 'explanatory testimony,' the

law 'nowhere requires a magistrate to authorize compelled disclosure of sources of such explanatory

testimony.'" *Peryea v. United State*s, 782 F. Supp. 937, 939–40 (D. Vt. 1991), *quoting Gill v. Imundi*,

747 F. Supp. 1028, 1040 (S.D.N.Y. 1990), *aff'd* 970 F.2d 896 (2d Cir. 1992); *see also Matter of*

*Extradition of Mainero*, 990 F. Supp. at 1220 n.26 ("There is no authority that exists that requires a

magistrate judge to authorized compelled disclosures of explanatory information."). "Explanatory"

evidence does not include all evidence that a fugitive seeks to introduce "explaining" his attack on the

requesting country's evidence; its legal definition in extradition proceedings is far narrower. "Explanatory

evidence has been defined as 'reasonably *clear-cut* proof which would be of limited scope and have some

reasonable chance of *negating* a showing of probable cause . . . the extraditee cannot be allowed to turn

the extradition hearing into a full trial on the merits.'" *Matter of Extradition of Lehming*, 951 F. Supp.

505, 514 (D. Del. 1996) (emphasis added), *quoting Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y.

1978); *see also In re Okeke*, 1996 WL 622213, *3 (D.N.J. 1996) (fugitive is "limited to explanatory

evidence that offers a benign explanation for the evidence presented against him").

Attempts, such as may be appropriate at trial on the merits, to dissect and assail the requesting

country's evidence as flawed are prohibited:  "Court[s] shall exclude evidence which is proffered to

contradict testimony, challenge the credibility of witnesses or establish a defense to the crimes alleged."

*Lehming*, 951 F. Supp. at 514.  Instead, the extradition court "must accept as true all of the statements and

offers of proof by the demanding state," reserving the weighing of evidence and making of credibility

determinations for the courts in the requesting country – which is where the determination of guilt will be

made.  *Schmeer v. Warden of Santa Rosa Cty. Jail*, 2014 WL 5430310, at *4 (N.D. Fla. Oct. 22, 2014)

(citation and internal quotation marks omitted); *see also, e.g.*, *Collins v. Loisel*, 259 U.S. 309, 316 (1922);

*Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986), *cert. denied*, 479 U.S. 882 (1986); *Ahmad v. Wigen*,

726 F. Supp. 389, 399-400 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) ("The primary source of evidence for the probable cause determination is the extradition request, and any evidence submitted in it is deemed truthful for purposes of this determination.") (quotation omitted); *In re Solis*, 402 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005) ("Because [the fugitive's] argument does not accept Mexico's evidence as true, it is contradictory rather than explanatory within the meaning of extradition law."); *Extradition of Cheung*, 968 F. Supp. 791, 794 n.6 (D. Conn. 1997) (evidence submitted in the extradition request must be considered as true); *Extradition of Marzook*, 924 F. Supp. 565, 592 (S.D.N.Y. 1996) (same); *Desautels v. United States*, 782 F. Supp. 942, 944 n.2 (D. Vt. 1991) (same), *aff'd* 970 F.2d 896 (2d Cir. 1992); *Extradition of Atta*, 706 F. Supp. 1032, 1050-52 (E.D.N.Y. 1989) (same).

Thus, an extradition hearing is more akin to a pre-indictment committal hearing, *see Charlton*, 229 U.S. at 459-60, although an extradition hearing is procedurally narrower in scope.  In an extradition matter, "'[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.'"  *Santos v. Thomas*, 830 F.3d 987, 992-93 (9th Cir. 2016) (en banc), *quoting Collins*, 259 U.S. at 316.  Accordingly, it has long been established in extradition law that the "country seeking extradition is not required to produce all of its evidence" at the extradition hearing.  *Quinn*, 783 F.2d at 815.  In turn, an international fugitive has no authority to force the requesting country to do so through a request for discovery in extradition proceedings.

### III.    Kollmar Has No Right to the Discovery He Seeks

On May 1, 2019, the government filed a complaint seeking a provisional warrant for Kollmar's arrest, pursuant to a lawfully formatted treaty request by the government of Canada.  The complaint alleged a violation of Canadian sexual assault offenses, including Section 149 of the Canadian Criminal Code (Indecent Assault), which asserts a theory of liability based on an offender's sexual touching of a victim without consent.  *See* D.E. 39, Attachment A at bates 12-13 (Canadian prosecutor's affidavit quoting Canadian case law:  "indecent assault described as 'a non-consensual touching that has an indecent element to it in this instance, sexual element to it'").

U.S.' RESPONSE TO MOTION FOR DISCOVERY

Kollmar now grasps for something untoward in the contents of Canada's formal request that would justify an unprecedented expansion of an international fugitive's discovery rights.  *See, e.g.*, D.E. 44 at 7, 13 & n.4 (asserting that Canadian authorities improperly showed the complainant a single photograph of Kollmar when seeking an identification of her assailant);[4] D.E. 44 at 1-2, 7, 15 & n.5 (claiming that the Canadian offense of rape by "false and fraudulent representations," involving a child victim, would not be an extraditable offense because of a lack of dual criminality in the United States, and implying that therefore Canadian investigators improperly "cherry-picked" portions of the complainant's statements to advance a rape "without [the victim's] consent").[5]  *Id.* at 1, 10-13, n.7.  His efforts fail.

*First,* as the government has previously explained, *see* D.E. 39 at n.10, the modification or addition of charges in a formal request following a fugitive's provisional arrest is appropriate under the U.S.-Canada extradition treaty and the extradition statutes, and Kollmar has identified no authority to the contrary.  Moreover, Kollmar does not cite any authority for the proposition that a foreign country must be bound by the charges or charging theory advanced in its provisional arrest request.[6]

*Second*, a comparison of the factual summary underlying the complaint for his provisional arrest and the materials supporting Canada's formal request for extradition belies Kollmar's argument.  When

---

[4]  *But see Manta v. Chertoff*, 518 F.3d 1134, 1445-46 (9th Cir. 2008) (rejecting fugitive's argument that a single photograph identification procedure conducted by foreign law enforcement was "impermissibly suggestive," holding that "identification based on a single photograph may be competent evidence of identity in an extradition proceeding" and approving the magistrate judge's crediting the identifying witness identification in part because she had "multiple interactions with [the fugitive]"); *Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir. 1980) (single photograph of fugitive identified by witness sufficient to support probable cause finding), *cert. denied,* 450 U.S. 922 (1981).  Moreover, Kollmar does not appear to contest that he is the person wanted for alleged sexual assault offenses by Canada, or that he is the person who was the complainant's spiritual advisor during the period of time that she and her parents belonged to the "Students of Light."

[5]  As the government has previously discussed, *see* D.E. 39 at 10-13, 15-16, because dual criminality is a *conduct-based* test, this claim is patently wrong.  The *conduct* underlying the sexual assault of child, regardless of the charging theory on which the requesting country chooses to proceed in its foreign charges, would obviously be criminal conduct and prosecutable in the United States.  *See, e.g.*, 18 U.S.C. §§ 2243 (Sexual Abuse), 2244 (Abusive Sexual Contact), and Cal. Penal Code §§ 261.5 (Unlawful Sexual Intercourse), 288(a), (c) (Bigamy, Incest, and the Crime Against Nature).

[6]  Indeed, according to Canadian authorities, they have not abandoned the charging theory of rape "by false and fraudulent representations."  *See* D.E. 39, Attachment A at bates 8-9.  It is simply that the facts of the case also clearly support a theory of rape "without consent" and "consent obtained by threats," as Kollmar is charged in Canada.  *Id.* at bates 8-11.

U.S.' RESPONSE TO MOTION FOR DISCOVERY

1    read together, they are entirely cohesive.  Moreover, they clearly apprise Kollmar of the charges against

2    him and Canada's relevant criminal codes.  The fact that there may be different manners in which the

3    Canadian prosecutor can prove the charges does not provide grounds for discovery.  In sum, the

4    allegations are that Kollmar, an adult male, used his position of power and authority in the Students of

5    Light to manipulate the complainant while she was a child from age 13 to 16 and sexually molest her,

6    without interference from her parents or others.  Only when the complainant had such intense stomach

7    pain at age 16 which required her hospitalization, and when the marriage to Kollmar was imminent, did

8    she tell her mother she was fearful and did not want to be with him.  While Kollmar has attempted to

9    describe these narratives as vastly different, a careful review reveals their similarity.  An adult man, in a

10   position of power over a minor, sexually abused and molested the complainant until she was able to

11   break away and tell her parents the truth.  The lack of consent in this relationship is clear.  Whether it is

12   defined as no consent, or "consent" unlawfully obtained through false and fraudulent representations or

13   by threats, does little to change the facts alleged.

14            Certainly, no more is needed from Canada than the extensive factual detail it has provided in its

15   formal extradition request.  Moreover, it is hornbook extradition law that the requesting country is not

16   required to present the underlying evidence supporting the recitation of facts establishing probable

17   cause.  *See*, *e.g.*, *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984) (holding extradition court

18   properly denied fugitive's discovery request for tapes containing incriminating phone conversations

19   intercepted by Italian police and which supported probable cause to extradite fugitive); *In re Extradition*

20   *of Handanovic*, 826 F. Supp. 2d 1237, 1241-42 (D. Ore. 2011) (rejecting fugitive's demand for

21   discovery of witness statements, finding that the applicable treaty required Bosnia to produce only the

22   evidence which supports probable cause for the charges, and "[n]othing in the Treaty requires that

23   Bosnia submit "all" of the evidence upon which warrant was issued, such as unredacted or other

24   witnesses' testimony, so long as the evidence submitted is sufficient to establish probable cause for the

25   charges").  Furthermore, as the government has previously explained, *see* D.E. 39 at 6, it is equally

26   firmly-established that hearsay evidence is admissible in extradition proceedings and may support a

27   probable cause showing.

28

U.S.' RESPONSE TO MOTION FOR DISCOVERY

1    Similarly, Kollmar is not entitled to the requesting country's underlying witness statements

2    based on his theory of "explanatory evidence."  Kollmar would prefer that "explanatory evidence" is any

3    evidence that allows him "to explain the allegations against him," *see* D.E. 44 at 14; meaning any

4    evidence he desires to present supporting his attacks on the credibility of the complainant and Canadian

5    law enforcement authorities.  But what Kollmar seeks to do, with whatever discovery he can obtain, is

6    exactly what he cannot do pursuant to extradition law:  admit contradictory evidence attempting to brand

7    the complainant's testimony and statements as untrue.

8    Accordingly, his discovery motion is replete with foreshadowing of his attack on the

9    complainant's (and Canadian investigators') credibility, for example:

10   •    He claims that the complainant's "allegations [are] worthy of
          skepticism based [sic] their vintage, the lack of a clear, sensible
11        explanation for the delay in reporting, and . . . [by being] from a
          complainant who claims she was brainwashed by persons other
12        than Kollmar and somehow had her memory refreshed over time
          by unexplained means."  (D.E. 44 at 1);
13

14   •    He alleges that Canadian authorities have "cherry-picked portions"
          of the complainant's statements, and implied that they did so to
15        present a distorted version of the facts of the case (*id.* at 1, 10-13 &
          n.7); and

16   •    He attacks the complainant's explanation for "why [she] and/or her
          parents did not then (in 1979) make a report to the authorities" (*id.*
17        at 12).

18   While these lines of attack may be appropriate at trial in Canada, they are impermissible in the limited

19   extradition proceedings now before the Court.

20   And in turn, each proposed line of attack falls far short as a basis for an international fugitive to

21   demand discovery.  *See, e.g.*, *Emami v. U.S. District Court for the Northern District of California,* 834

22   F.2d 1444, 1452 (9th Cir. 1987) (affirming extradition court's denial of fugitive's request for discovery to

23   "explain" that he did not fraudulently bill for medical services, as such evidence was only appropriate at

24   trial); *Handanovic*, 826 F. Supp. 2d at 1241 ("Here, Handanovic seeks exculpatory evidence in order to

25   contradict Bosnia's proof of probable cause, which the case law clearly prohibits."), *citing Hooker v.*

26   *Klein*, 573 F. 2d 1360, 1368 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978); *In re Extradition of Zhenly Ye*

27   *Gon*, 613 F. Supp. 2d 92, 102 (D.D.C. 2009) ("It cannot be suggested that an American defendant is

28

U.S.' RESPONSE TO MOTION FOR DISCOVERY

9

1   entitled to discovery before a preliminary hearing or before the presentation of evidence against him to a

2   grand jury.  Yet if a defendant whose extradition is sought gets such discovery, he would be accorded a

3   right that is not available to him under American law . . . Thus, whatever 'right' the defendant can claim

4   to discovery, the courts that have permitted it have never extended the right to evidence that would

5   contradict the demanding state's showing because such evidence is ultimately inadmissible at the

6   extradition hearing.") (internal footnote omitted); *Peryea*, 782 F. Supp. at 940 ("Access to the requested

7   discovery items would not have aided [the fugitive] in challenging the critical rulings of the magistrate:

8   that the charged offenses are covered by the treaty and that there is sufficient competent evidence to

9   conclude that petitioner committed the crimes of which he is accused in Canada."); *Koskotas*, 127 F.R.D.

10  at 29 (denying fugitive's request for discovery, in part, because "Koskotas' right to present evidence is

11  limited to that which explains, but does not contradict the Greek government's evidence"); *Singh*, 123

12  F.R.D. at 116-18 (rejecting specific discovery request as to the circumstances of witness identification

13  because such evidence "would tend to contradict or impeach, rather than explain that identification").

14          Additionally, in this matter, like in *Drayer*, the United States' "involvement can only be

15  characterized as ministerial in the sense that it merely received factual information developed by [foreign]

16  authorities," *id*. at 414, through Canada's extradition request.  Unlike in *Demjanjuk*, there is no collateral

17  or related U.S. criminal investigation.  As the documents accompanying Canada's formal extradition

18  request have been turned over to counsel for Kollmar, and the government is not in possession of any

19  other materials that "undercut a finding of probable cause," *id*. at 415, any *Brady* obligation on the

20  government that may exist has been satisfied.  *See In re Extradition of Aguasvivas*, 2018 WL 3614137, at

21  *10 (D. Mass. July 27, 2018) (no obligation by the government to turn over materials that would be

22  relevant to fugitive's defense at trial and were likely in the custody of Dominican prosecutors); *Ameen*,

23  378 F. Supp. 3d at 913 ("*Brady* does not require the government to seek out and disclose exculpatory

24  material to the [fugitive] that is not currently known to it, either by requesting such material that may be

25  in the [requesting country] (an argument that *Drayer* itself explicitly rejected) or by seeking out new

26  material that is not currently in its possession.") (internal citation omitted).

27

28

U.S.' RESPONSE TO MOTION FOR DISCOVERY

As the Sixth Circuit in *Drayer* made clear, the United States is under no obligation to obtain evidence for the fugitive that is in the custody and control of foreign authorities.  190 F. 3d at 414-15.  To find otherwise would be to require the requesting state "to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter," and to forego extradition until after a full trial on the merits in the United States, which would be "in plain contravention of the intent and meaning of the extradition treaties."  *Collins*, 259 U.S. at 316, *quoting Charlton v. Kelly,* 229 at 461.

## IV.     Conclusion

The government is not in possession of the materials Kollmar seeks.  Pursuant to well-established extradition principles, Kollmar may not force the government to reach across international borders to obtain evidence which, in any event, would be inadmissible in these proceedings. Furthermore, the government is not in possession of any evidence that would undercut or negate the probable cause showing that Canada has made in its formal extradition request.  Therefore, Kollmar's discovery motion should be denied in full.


Dated:  August 12, 2019                          Respectfully submitted,


                                                 DAVID L. ANDERSON
                                                 United States Attorney


                                                 _____/s/_____
                                                 JOHN D. RIESENBERG
                                                 Trial Attorney, U.S. Department of Justice

                                                 MAUREEN C. BESSETTE
                                                 Assistant United States Attorney
                                                 Northern District of California

U.S.' RESPONSE TO MOTION FOR DISCOVERY