UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DON KOLLMAR,<br>Defendant. | Case No. 19-mj-70677-MAG-1 (KAW)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DISCOVERY**<br>Re: Dkt. No. 44 |

On May 6, 2019, the United States filed a complaint under 18 U.S.C. § 3184, seeking to provisionally arrest Defendant Don Kollmar for extradition to Canada. (Compl., Dkt. No. 1.) On July 10, 2019, the United States filed its Memorandum in Support of Extradition. (Extradition Memo., Dkt. No. 39.)

Pending before the Court is Defendant's motion for discovery. (Def.'s Mot., Dkt. No. 44.) Having considered the parties' filings, oral arguments, and the relevant legal authority, the court GRANTS IN PART and DENIES IN PART Defendant's motion for discovery.

**I.  BACKGROUND**

On May 6, 2019, the instant criminal complaint was filed, alleging that Defendant was wanted in Canada. (Compl. ¶ 5.) The complaint alleged that in 1997, B.B. reported to Canadian law enforcement that Defendant had sexually assaulted her while she and her family belonged to a religious group, the "Students of Light." (Compl. ¶ 7a.) B.B. was eleven or twelve when her family first joined, while Defendant was a member who had a close connection to the group's leader. (Compl. ¶ 7a.) B.B. stated that Defendant would spend time alone with her under the guise of providing her with instruction on the group's beliefs, but would sexually molest and abuse her starting when she was twelve or thirteen. (Comp. ¶¶ 7b-c.) On Mother's Day weekend

1  in 1977, when B.B. was fourteen, Defendant penetrated her. (Compl. ¶ 7d.)

2  Per the complaint, B.B. described her relationship with Defendant by saying that Defendant was a spiritual leader "chosen by God." (Compl. ¶ 7e.) She felt like she was "chosen by God to be with him." Defendant would tell B.B. that he intended to marry her once she was sixteen, and B.B. felt that it was her "responsibility" and "honour to be with him, and married to him." (Compl. ¶ 7e.) When B.B. was sixteen, she reported Defendant's behavior to her parents. (Compl. ¶ 7f.) B.B.'s parents consulted with an attorney provided by the group, who advised them against lodging a formal complaint. (Compl. ¶ 7f.)

Following B.B.'s statement to the Canadian authorities in 1997, an initial arrest warrant for Defendant was issued. (Compl. ¶ 7e.) On November 28, 2018, an Information was sworn before the Ontario Court of Justice, charging Defendant with: (1) indecent assault on a female, contrary to the Criminal Code of Canada ("CCC") § 149; (2) rape, contrary to CCC § 143(b)(iii), and (3) rape of a female, contrary to CCC § 146(2). (Compl. ¶ 6.) On December 24, 2018, an arrest warrant was issued. (Compl. ¶ 7.)

On May 3, 2019, Defendant was arrested in this district. (Dkt. No. 6.) On May 6, 2019, the United States filed a memorandum in opposition to bail for Defendant. (Dkt. No. 4.) On May 10, 2019, Defendant filed a response regarding bail. (Dkt. No. 9.) In seeking bail, Defendant argued in part that he could not be extradited on Count 1 or 2 because "there is no federal analogue to rape by false statements . . . ." (*Id.* at 11.) Defendant also argued there was no federal analogue as to Count 3. (*Id.*)

On May 17, 2019, the Court granted Defendant release on a secured bond. (Dkt. No. 28.) On July 10, 2019, the United States filed a Memorandum in Support of Extradition, stating that Defendant "is wanted by Canada for trial on charges of Rape and Indecent Assault, in violation of sections 143, 144, and 149 of the [CCC]." (Extradition Memo. at 2.) The Memorandum included an affidavit by Detective Constable Robert Speakman. (Speakman Aff., Dkt. No. 39-1.) Mr. Speakman stated that on February 25, 1997, B.B. provided a statement to Canadian authorities that Defendant had sexually assaulted her between 1974 and 1978, when B.B. was between the ages of twelve and sixteen. (Speakman Aff. ¶ 4.) B.B. provided both an audio-video recorded statement

2

and a written statement that she had prepared in advance. (Speakman Aff. ¶ 4.)

Based on the audio-video recorded statement and her written statement, Mr. Speakman stated that in 1974, B.B.'s family became involved in the Students of Light group. (Speakman Aff. ¶ 5.) Defendant was a "spiritual advisor" and licensed minister, and the "right hand assistant" of the group's leader, John Hanas. (Speakman Aff. ¶ 5.) Defendant began to show a strong interest in B.B. when she was twelve, and started spending time alone with her. (Speakman Aff. ¶ 8.) Defendant would tell B.B. how unique and important he was, and that B.B. was a very special person. (Speakman Aff. ¶ 8.) Defendant also told B.B. that he had a "very pure and unique love" for her, and that he had intended to wait until she was sixteen years old before approaching her, but that he could not wait any longer. (Speakman Aff. ¶ 9.) Defendant emphasized that she should not tell anyone, and criticized her family, telling her that she had to separate herself from them. (Speakman Aff. ¶ 11.)

Over time, Defendant became more abusive, controlling when B.B. slept, went to the bathroom, brushed her teeth, showered, and brushed her hair. (Speakman Aff. ¶¶ 12-14.) Defendant slapped her on three occasions, would threaten to hit her, and grabbed and twisted her wrist several times. (Speakman Aff. ¶¶ 15-16.) Defendant would also tell B.B. that her will or desire "was not valid." (Speakman Aff. ¶ 18.) B.B. stated she "felt paralyzed by fear in [his] presence" and would do what he wanted to avoid making him upset with her. (Speakman Aff. ¶ 17.) She felt fear even during the time she was away from Defendant. (Speakman Aff. ¶ 19.)

B.B. described how Defendant touched her in a sexual manner, including when Defendant penetrated her during Mother's Day weekend in 1977. (Speakman Aff. ¶¶ 20-22, 25, 27, 29, 31, 32.) B.B. further stated that 99% of the time, Defendant would prelude the sexual assaults by verbally humiliating and demoralizing her, yelling at her and telling her that she was stupid, incompetent, worthless, and a terrible person. (Speakman Aff. ¶ 34.)

In June 1979, arrangements were underway for B.B. to marry Defendant. (Speakman Aff. ¶ 35.) That month, B.B. lost consciousness and was taken to the hospital, where she told her parents about Defendant's abuse. (Speakman Aff. ¶¶ 35-36.) The relationship ended, and Defendant was "enraged" by the interference of B.B.'s parents. (Speakman Aff. ¶¶ 36-37.)

3

Defendant allegedly attempted to coerce people into following him rather than John Hanas; failing at that, he returned to New York. (Speakman Aff. ¶ 37.)

At an unknown time, John Hanas and another member of the group, Robert Pollock, advised B.B. and her family that her case was "weak." (Speakman Aff. ¶ 38.)

Based on these facts, Canada sought extradition based on the charges of indecent assault and rape. (Rivers Aff. ¶ 11, Dkt. No. 39-1.) Canada states that it is no longer pursuing charges for sexual intercourse with a female aged fourteen to sixteen, the CCC § 146 charge. (Rivers Aff. ¶ 10.) Additionally, the rape charge is no longer based only on CCC § 143(b)(iii) which concerns sexual intercourse with consent if consent was "obtained by false and fraudulent representations as to the nature and quality of the act." (Rivers Aff. ¶¶ 20, 23.) Instead, Canada intends to rely primarily on CCC § 143(a), which concerns sexual intercourse without consent. (Rivers Aff. ¶ 23.)

On July 26, 2019, Defendant filed the instant motion for discovery. On August 12, 2019, the United States filed its opposition. (Gov.'s Opp'n, Dkt. No. 45.) On August 19, 2019, Defendant filed his reply. (Def.'s Reply, Dkt. No. 46.)

## II. LEGAL STANDARD

"[T]here is no explicit statutory basis for ordering discovery in extradition hearings . . . ." *Quinn v. Robinson*, 783 F.2d 776, 817 n.41 (9th Cir. 1986) (internal citations omitted). Rather, "the extradition magistrate has the right under the court's 'inherent power' to order such discovery procedures as law and justice require." *Id.* (internal citations omitted). In exercising that jurisdiction, the judge:

> should consider both the well-established rule that extradition proceedings are not to be converted into a dress rehearsal trial, and whether the resolution of the contested issue would be appreciably advanced by the requested discovery. Although the accused is not entitled to introduce evidence that goes to his defense, he may offer limited evidence to explain elements in the case against him.

*Id.* (internal quotations omitted). In other words, "[b]ecause the purpose of the extradition hearing is simply to determine whether there exists probable cause that the fugitive committed the offense charged," "discovery in an international extradition hearing is limited . . . ." *In re Extradition of*

4

*Kraiselburd*, 786 F.2d 1395, 1399 (9th Cir. 1986).[1]

## III. DISCUSSION

Defendant seeks: (1) a copy of the February 25, 1997 audio-recording of B.B.'s statement; (2) a copy of B.B.'s written statement that she provided to the Canadian authorities; (3) a copy of the March 8, 1997 statement provided by B.B.'s father to the Canadian authorities, and any reports addressing that statement; and (4) any and all evidence that would undermine Canada's account that Defendant engaged in sexual conduct with B.B. without her consent. (Def.'s Mot. at i.)

### A. Witness Statements

Defendant's primary argument in support of discovery is that he requires the underlying statements because "the allegations have changed considerably: while Canada relied on [B.B.'s] and her father's 1997 accounts to [establish] allegations based expressly on consensual sex, the authorities now assert that those same 1997 accounts now establish nonconsensual sex." (Def.'s Mot. at 1.) Further, Defendant contends this shift occurred only after he argued during the bail proceedings that the offenses for which he had been charged would not meet the requirements of dual criminality, and thus were not extraditable. (*Id.* at 1-2.) Thus, he contends that he requires the underlying statements to determine whether there is probable cause, and to understand B.B.'s allegations of misconduct. (*Id.* at 14.)

In *In re Extradition of Kraiselburd*, Argentina sought extradition of the defendant for two murders. 786 F.2d at 1396. The defendant requested that Argentina be required to produce its entire file on the murders. *Id.* at 1399. The magistrate judge denied the blanket discovery request, but ordered Argentina to produce specific documents to substantiate the allegations of the arrest warrant, including its analysis that the handwriting left at the murder scene was the defendant's, any threatening letters written by the defendant, and any witness statements alleging that the defendant had threatened either victim. *Id.* The Ninth Circuit upheld this limited scope, finding

---

[1] In his motion, Defendant points to the Federal Rules of Civil Procedure. (Def.'s Mot. at 15.) The Ninth Circuit, however, has found that "[e]xtradition proceedings are not criminal proceedings; no guilt or innocence is determined in them. Nor are extradition proceedings civil as the term is used in our rules, so that they are not governed by the Federal Rules of Civil Procedure[]." *In re Extradition of Kirby*, 106 F.3d 855, 867 (9th Cir. 1996). In his reply, Defendant concedes that the Federal Rules do not apply. (Def.'s Reply at 3.)

5

that the magistrate judge had properly granted the "discovery motion to the extent it related to the question whether there existed probable cause tying [the defendant] to the murders." *Id.*

Here, the Court finds that it may exercise its discretion to permit limited discovery as to B.B.'s statements. The United States correctly observes that Defendant would generally be prohibited from introducing conflicting evidence that would, for example, cast doubts as to a witness's credibility. (*See* Gov.'s Opp'n at 4 (citing *Barapind v. Enomoto*, 400 F.3d 744, 749-50 (9th Cir. 2005)).) Defendant, however, does not seek the statements to challenge their veracity, but to ensure that the Canadian government has correctly characterized their content. While the two accounts in the complaint and the Speakman Affidavit are not necessarily inconsistent, the Court notes that the Speakman Affidavit refers to threats and physical abuse that were not referred to in the original complaint. Such threats and physical abuse go to the issue of non-consent, which in turn affects the extradibility issue. Further, like the handwriting analysis and threats towards the victims in *In re Extradition of Kraiselburd*, B.B.'s statements go directly to substantiating the allegations in the arrest warrants, as well as whether the charges are extraditable. *See In re Extradition of Kraiselburd*, 786 F.2d at 1399.[2] Indeed, the Speakman Affidavit is based almost entirely on the two B.B. statements. (Speakman Aff. ¶ 4.) Thus, discovery of these two statements is warranted, for the limited purpose of determining whether the Speakman Affidavit correctly characterizes the B.B. statements. The Court will **not** consider attacks on B.B.'s credibility if such attacks are based on contradictory evidence. *See Choe v. Torres*, 525 F.3d 733, 740 (9th Cir. 2008) (finding no error where the magistrate judge refused to allow discovery as to a witness's credibility "because any such evidence wouldn't be admissible"); *Barapind v. Enomoto*,

---

[2] In contrast in *Emami v. U.S. District Court for Northern District of California*, the Ninth Circuit upheld the district court's denial of discovery where the defendant sought to use his records to explain no fraudulent billings for medical services had occurred. 834 F.2d 1444, 1452 (9th Cir. 1987). Thus, such discovery concerned contradictory evidence, which "would only be appropriate at trial," rather than explanatory evidence. *Id.*

To the extent the Government relies on *Emami*'s findings regarding the use of hearsay statements, those findings did not consider discovery but whether the statements were competent evidence. *See Emami*, 834 F.2d at 1450-52. The Ninth Circuit's analysis focused on provisions of United States extradition law and specific provisions of the operative treaty that concerned authentication and admissibility of hearsay statements.

400 F.3d 744, 749 (9th Cir. 2005) (affirming the extradition court's finding that the credibility of the victim's statement was an issue "which could not be assessed without a trial [b]ecause extradition courts do not weigh conflicting evidence in making their probable cause determinations") (internal quotation omitted).

The Court, however, finds that the statement of B.B.'s father does not go to probable cause. At most, it appears this statement goes to why B.B. did not report the alleged abuse before 1997, as both B.B. and her father stated that Mr. Pollock and Mr. Hanas had advised them that B.B.'s case against Defendant was "weak." (Speakman Aff. ¶ 38.) This does not go to probable cause, nor is it inconsistent with prior accounts. (*See* Compl. ¶ 5f ("B.B.'s parents apparently consulted with a lawyer provided by the religious group, who advised them against lodging a formal complaint.").) Thus, discovery of this statement and reports addressing that statement are not warranted.

### i. Exculpatory Evidence

Defendant also "seeks all information that would tend to undermine [B.B.]'s various accounts and would tend to support his claim that he is innocent, and did not commit the acts of which he [is] accused." (Def.'s St. at 16.) In short, Defendant seeks all exculpatory information in the possession of the United States, pointing to the United States's *Brady* obligations. (*Id.*; *see also* Def.'s Reply at 7.)

Defendant relies on *Demjanjuk v. Petrovsky*, in which the Sixth Circuit found that "*Brady* should be extended to cover denaturalization and extradition cases . . . ." 10 F.3d 338, 353 (6th Cir. 1993). In *In re Extradition of Drayer*, also cited by Defendant, the Sixth Circuit explained that *Demjanjuk*'s "seemingly broad language must be read in the context of a case that involved an unusual set of circumstances," namely where "the United States had conducted its own investigation of the offenses underlying the request for extradition and uncovered exculpatory material in the course of that effort." 190 F.3d 410, 414 (9th Cir. 1999). In *Drayer*, however, no such investigation had occurred, and "the involvement of the United States can only be characterized as ministerial in the sense that it merely received factual information developed by Canadian authorities." *Id.* Moreover, the Sixth Circuit found that the obligation to turn over

7

exculpatory evidence did not apply to the Canadian authorities, and that "[t]he United States does not have any obligation or authority to obtain these materials on behalf of [the] petitioner." *Id.* at 415. Thus, to the extent exculpatory evidence was sought from Canada, those items had to "be sought in a Canadian forum." *Id.*

Here, the United States asserts that it did not conduct any collateral or related criminal investigation, and that it does not possess any materials that undercut probable cause. (Gov.'s Opp'n at 10.) Further, as the Sixth Circuit has made clear, the United States lacks the authority to seek exculpatory evidence from Canada, for production to Defendant. (*Id.*; *see also In re Extradition of Drayer*, 190 F.3d at 415; *In re Extradition of Handanovic*, 826 F. Supp. 2d 1237, 1241 (D. Or. 2011) ("Absent any evidence that the United States has conducted its own independent investigation that uncovered exculpatory evidence, the principles articulated in *Demjanjuk* do not apply.").) Thus, no further production is required.

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for discovery. Defendant's request for all information that would tend to undermine B.B.'s various accounts and support Defendant's claim that he is innocent is denied. The request for B.B.'s father's statement and any reports addressing it is also denied. The Canadian government shall produce B.B.'s 1997 statements to Defendant.

Defendant will have 30 days from the receipt of the discovery to file his opposition brief regarding extradition, and the government shall file its reply no later than November 7, 2019. The extradition hearing is set for November 21, 2019 at 1:30 p.m. in Courtroom 4.

IT IS SO ORDERED.

Dated: September 9, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge