COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Arrestee
DONALD KOLLMAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DON KOLLMAR | Case No. 4:19-70677 MAG<br><br>DECLARATION OF BRIAN H. GREENSPAN |

I, Brian H. Greenspan, declare under penalty of perjury as follows:

1. I am a criminal defence lawyer in Toronto, Ontario, Canada. Unless otherwise expressly noted, I state the following on personal knowledge. I have been engaged almost exclusively in a criminal defence practice for the past 45 years. I have extensive experience defending cases involving constitutional issues, including claims for relief under the *Charter of Rights and Freedoms* at trial, in provincial courts of appeal, and in the Supreme Court of Canada. I have been retained by Mr. Kollmar to defend the charges which he faces in Canada. Appended to this declaration as Exhibit A is my brief biography.

2. I have reviewed the material submitted by the Canadian authorities to the American authorities in this extradition proceeding. I have reviewed the transcript of the complainant's police statement in 1997, as well as the declaration of Tom Klatt dated December 9, 2019.

3. In my opinion, the significant delay in advising Mr. Kollmar of the 1997 complaint, which was allegedly based on events that occurred 20 years prior, and the significant delay leading to his arrest on the initial charges that were laid in 1997 have violated his rights under sections 7, 11(a), and 11(b) of the *Charter of Rights and Freedoms*. Were similar circumstances to be present with respect to a person arrested in Canada, I would apply to a Canadian court for a stay of proceedings as a constitutional remedy for the extraordinary lapse of time. A stay of proceedings is a remedy that, if granted, would permanently halt and prohibit any future prosecution. In my opinion, Mr. Kollmar's rights have been violated to such an extent that the continuation of this prosecution is constitutionally unacceptable, and, would in Canada, be stayed.

////

1

4.       Section 7 of the *Charter of Rights and Freedoms* guarantees both procedural and substantive due process in criminal proceedings. Where the state purports to affect a person's liberty by charging that person with a criminal offence that carries with it the possibility of imprisonment, the state must comply with principles of fundamental justice. One such principle is the right to make full answer and defence. If, as a result of inordinate delay and lapse of time in laying criminal charges, the accused loses evidence that would be integral to his or her right to make full answer and defence, a s. 7 breach may be established.

5.       In addition to the rights guaranteed under section 7, section 11 of the *Charter of Rights and Freedoms* guarantees several rights to persons who are charged with criminal offences. Two rights are applicable here: the right guaranteed by s. 11(a) to be informed without unreasonable delay of the specific offence with which the accused is charged; and the right guaranteed by s. 11(b) to be tried within a reasonable time.

6.       In Canadian criminal procedure, an arrest warrant cannot be issued unless the police have charged the accused with a criminal offence in a document known as an Information. In determining whether an accused's right under s. 11(a) or s. 11(b) of the *Charter* has been breached, the relevant period of time begins no later than the date upon which the arrest warrant was issued. The extradition package notes and identifies an arrest warrant dated November 12, 1997 and an Information from 1997, which would have existed prior to the arrest warrant.

7.       A s. 11(a) breach is established where the delay between the swearing of the Information and the date on which the accused was informed of the charges is unreasonable. The Supreme Court of Canada has held that the determining factor in assessing reasonableness

////

is whether the delay impairs the accused's ability to prepare a defence.[1] The onus is on the accused to provide evidence to demonstrate that the delay impaired his or her ability to make full answer and defence to the charge, or that the delay would otherwise affect the fairness of the trial. Ordinarily, this requires the accused to show what evidence he would have been able to gather or preserve had he known of the charges, and that the evidence is no longer available.

8.  A s. 11(b) breach is established where the delay between the laying of the charges and the actual or anticipated end of trial is unreasonable. Unlike s. 11(a), the accused is not required to show that he or she has been prejudiced by the delay. The Supreme Court of Canada has established presumptive ceilings for assessing the reasonableness of delay under s. 11(b). For cases tried in the Superior Court – which would likely apply to this case – the presumptive ceiling is 30 months.[2] If the delay between the laying of the charges and the actual or anticipated end of trial, minus any delay attributable to the defence, exceeds 30 months, the onus shifts to the Crown to justify the delay. The Crown can do so in one of two ways: by pointing to exceptional circumstances that were outside its control which caused the excessive delay, or by relying upon the complexity of the case as justification for the delay in reaching trial. In order to justify delay based either on exceptional circumstances or complexity, the Crown must prove that it took proactive steps and attempted to mitigate delay as much as possible.

9.  While 30 months of delay is presumptively unreasonable, this case involves a delay of over 240 months – over 8 times the outer boundary of what Canadian courts have

---

[1] *R. v. Delaronde*, [1997] 1 S.C.R. 213.

[2] *See R. v. Jordan*, 2016 SCC 27.

3

deemed constitutionally permissible. This extreme and inordinate delay vastly exceeds the limits of *Charter* delay in any case of which I am aware.

10. In my opinion, the significant delay in informing Mr. Kollmar of the 1997 charges resulted in the loss of evidence that is critical to his defence. Most significantly, Mr. John Hanas passed away in 2012. Mr. Hanas is a significant figure in the complainant's narrative and his evidence would have been significant to Mr. Kollmar's defence. Mr. Hanas, as the leader of the Students of Light, was in a position to spend a significant amount of time with Mr. Kollmar and the complainant during the period of the alleged offences. Apart from the complainant's allegations, there is no evidence that Mr. Hanas observed anything untoward in Mr. Kollmar's behaviour toward the complainant. Absent the testimony of Mr. Hanas, however, Mr. Kollmar ability to rebut the crux of the complainant's assertions that Mr. Kollmar was continuously mentally and sexually abusive toward her is significantly impaired.

11. Further, Mr. Hanas had significant animus toward Mr. Kollmar and significant mental and spiritual influence over the complainant. In her own words, she felt "brainwashed". The lack of evidence from Mr. Hanas, however, significantly impairs Mr. Kollmar's ability to advance the defence that this complaint is a false memory; the product of Mr. Hanas' influence on a psychologically vulnerable young woman.

12. Mr. Hanas figured prominently in the complainant's evidence, and she even told the police officer where Mr. Hanas lived at the time. Yet to the best of my knowledge and belief, no attempt was ever made to interview Mr. Hanas.

13. Further, had Mr. Kollmar known of the charges in 1997, he could have taken steps to obtain records that would contradict material aspects of the complaint. Most of the sexual abuse that the complainant describes occurred in a particular van which she said Mr.

Kollmar owned, a particular house which she said the alleged cult owned, and in Mr. Kollmar's parents' residence in Buffalo, New York. Had Mr. Kollmar known of the charges in or around 1997, he could have obtained vehicle registration records demonstrating that he did not own the van the complainant described at the time she said he was sexually abusing her, and instead, had obtained a red truck years later that he converted in the manner the complainant describes. He could have obtained flight records to show that he did not spend the weekend with her at his parents' house in Buffalo in the spring of 1975. He could have interviewed witnesses who were present at the house in Toronto and could testify that they did not hear or see anything untoward between Mr. Kollmar and the complainant on the dates that she visited.

14. As described in the Klatt Declaration, it has been difficult to find, locate and interview various individuals. Their testimony would be helpful and necessary for the preparation of the defence in this case. Similarly, it has been difficult to locate certain evidence due to the 40 year delay between alleged events and the date on which this proceeding was initiated. That evidence would be helpful and necessary for the defence of this case.

15. In my opinion, the Canadian authorities are solely responsible for the extraordinary delay in informing Mr. Kollmar of these charges and in attempting to bring Mr. Kollmar to trial on these charges. The Canadian approach to Mr. Kollmar's rights was beyond lackadaisical: after obtaining an arrest warrant, the Canadian authorities did nothing to investigate the allegation, seek to arrest Mr. Kollmar, inform him of the charges, and bring him to trial. They instead abandoned any semblance of diligence, only deciding in late 2017 – 20 years after the original complaint and 40 years after the underlying events – to pursue it. This dilatory approach by the Canadian authorities to Mr. Kollmar's rights is egregious and, in my opinion, unconstitutional.

5

16. Mr. Kollmar has been personally prejudiced by this delay. He has spent the past 40 years living a reputable and crime-free life in the community. He was living openly under his real name, travelling regularly and making no attempt to hide from the authorities, and could have been easily identified and located. Yet, 20 years after the complaint was made, he has now been arrested and is facing the potential for extradition. He is presently suffering under extreme emotional, psychological and financial hardship as a result of this arrest; all to his severe psychological, financial and emotional prejudice.

17. In my opinion, this unreasonable delay on the part of the Canadian authorities violated Mr. Kollmar's rights under sections 7, 11(a), and 11(b) of the *Charter of Rights and Freedoms*. It violated his right to be informed of the charges without unreasonable delay, and his right to be tried within a reasonable time. In my opinion it has caused significant prejudice to Mr. Kollmar's ability to advance full answer and defence to the charges, as the passage of time has resulted in the death or incapacity of key witnesses, the loss of relevant records, and the fading of memories.

18. In my opinion, Mr. Kollmar's rights have been violated to such an extent that the continuation of this prosecution is constitutionally intolerable, and, as such, this prosecution should be stayed.

I state the foregoing is true and correct under penalty of perjury of the laws of the United States of America.

DATED: December 12, 2019

_____
BRIAN H. GREENSPAN

# EXHIBIT A

**BRIAN H. GREENSPAN  LLD**

Brian Greenspan is a partner in the Toronto firm Greenspan Humphrey Weinstein.  He received his B.A. from the University of Toronto in 1968 and his LL.B. from Osgoode Hall Law School in 1971.  He was awarded the Laidlaw Foundation Fellowship and received his LL.M. from the London School of Economics in 1972. He was a special lecturer in Criminal Justice at Osgoode Hall Law School from 1977 to 1984 and at the Faculty of Law, University of Toronto from 1984 to 1998.

He was President of the Criminal Lawyers' Association (Ontario) from 1989 to 1993 and was the founding Chair of the Canadian Council of Criminal Defence Lawyers from 1992 to 1996.  He is a member of the Board of Directors of the Innocence Canada Foundation.

He is a Fellow of the American College of Trial Lawyers and a Fellow of the International Society of Barristers. He was awarded the Douglas K. Laidlaw Medal for excellence in oral advocacy in 2002 and received the G. Arthur Martin Medal for contributions to criminal justice in Canada in 2010. In 2012, he was recognized by The Law Society of Upper Canada with an honorary Doctor of Laws degree. In 2013 he was awarded the Alumni Gold Key for Achievement by Osgoode Hall Law School; received the "Key to the City" of his hometown, Niagara Falls, Ontario and was selected as an "Alumni of Influence" by University College of the University of Toronto.

He has been recognized in *The International Who's Who of Business Crime Lawyers* and *The Best Lawyers in Canada* since their inception and is a Band 1 leading individual in White Collar Crime in *Chambers Canada*. He was named as one of the 25 Most Influential Lawyers in Canada by Canadian Lawyer Magazine in 2010, 2013, and 2018.