COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Arrestee
DONALD KOLLMAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DON KOLLMAR | Case No. 4:19-70677 MAG<br><br>DECLARATION OF THOMAS KLATT |

I, Thomas Klatt, declare under penalty of perjury as follows:

1. I am a private investigator and have been retained by counsel to conduct an investigation with respect to the allegations raised by a complainant known as B.B. against American citizen Donald Kollmar. Unless otherwise expressly noted, I state the following on personal knowledge. I am a licensed private investigator in the province of Ontario, Canada. I am also the owner of a private investigative agency known as Klatt Investigations operating in the Province of Ontario, Canada. I spent 20 years with the Toronto Police Service, retiring in 1998 as a Detective in the Homicide Squad. I have owned and operated two private investigative firms from 1998 to present and therefore have been a licensed private investigator for 21 years.

2. During our interviews of witnesses in this matter, we discussed the complainant by her full name. Because I am informed by defense counsel that the defense is forbidden from publishing the complainant's name in these proceedings, I will refer to her as "B.B." in this declaration.

3. I investigated whether in 1975 to 1979 there were commercial flights between Toronto and Buffalo. I was unable to locate any information that supported the allegation that any such flights existed during that time period.

4. We interviewed Henry Hall on November 25, 2019. In that interview, Mr. Hall said met regularly with Donald Kollmar from 1975 to 1977 when he hosted "aura balancing" sessions in North Carolina. He also travelled to Canada with Mr. Kollmar in May and June 1977, and spent time with him in Sudbury, Canada. Mr. Hall stated that the person identified as B.B. was not with Mr. Kolllmar on any of these occasions, and he never saw her or met her. When Mr. Kollmar left the Student of Light ("SOL") group, Mr. Kollmar did not try to recruit

1

anyone to go with him or otherwise abandon the SOL. Mr. Hall further informed me that he had never heard Mr. Kollmar preach sleep control or any other type of control, and that Mr. Kollmar never suggested that he had any "special powers." We additionally interviewed Mr. Hall on December 5, 2019 and he recalls Mr. Kollmar's white van from the late 1970's and that he had traveled in it. He recalls that the van had "a sleeper in the back on the driver's side that spanned from front to back and a sliding door on the passenger side" and that "one would sleep in the back while the other drove." He did not report that the van was otherwise camper equipped with such items sink, stove, cooking area, toilet, etc.

    5. We interviewed Stanley North on November 25, 2019. Mr. North stated that he met regularly with Donald Kollmar from 1973 to 1976 when he hosted aura balancing sessions in Massachusetts, and that he spent time with Mr. Kollmar in Belmont, New York during the summers of 1977 to 1979. Mr. North stated that the person identified as B.B. was not present on any of these occasions, and he never saw or met her. Mr. North reported that he never heard Mr. Kollmar preach sleep or personal care control. Mr. North further reported that when Mr. Kollmar left the group, Mr. Kollmar did not try to recruit anyone or otherwise disrupt the SOL. Like Mr. Hall, Mr. North never heard Mr. Kollmar claim to be a "special person" or have "special powers." Mr. North further reported that he left the group in September 1987. At this point in time, Mr. North concluded that the SOL was functioning as a cult under "brainwashing" by John Hanas, who had by that time had taken on the role of "Jesus." We additionally interviewed Mr. North on December 5, 2019 and he recalled Mr. Kollmar's white van from the late 1970s. He recalled that the van had a bed spanning from front to back on the driver's side and that the van had a sliding door on the passenger side. He does not report that the van was otherwise camper equipped with such items sink, stove, cooking area, toilet, etc.

2

6. We interviewed Robin Harman on November 25, 2019. Ms. Harman reported that she met Donald Kollmar in 1976 at aura balancing sessions held in North Carolina. From 1977 to 1978, Mr. Kollmar stayed as a guest in her residence during his visits. Ms. Harman reported that, she never saw Mr. Kollmar in the company of any young female. She further advised Mr. Kollmar as the travelling guy who was doing work healing people, and after he left the group, he never tried to recruit anyone. Like the other witnesses I've discussed above, Ms. Harman never heard of Mr. Kollmar using sleep or personal hygiene tactics to control people, and she never heard him claiming to have "special powers."

7. We interviewed Gary Stuber on November 26, 2019. He met Donald Kollmar in 1976, and that from then until the end of 1979, Mr. Kollmar would visit him in Massachusetts and lead aura balancing sessions approximately every four months. Mr. Stuber reported that Mr. Kollmar typically traveled alone on these occasions, and that Mr. Kollmar was never in the company of any female companions. Additionally Stuber said when he visited Toronto and saw John Hanas he felt that there was "something not right with him."

8. We have reviewed this matter and can attest that based upon my and my firm's long standing experience in law enforcement and as a professional private investigator it appears there has been a serious failure falling below any professional standard. The extradition packet does not provide any information to suggest any type of investigation was undertaken with respect to the allegations made by BB in 1997 and further there appears to be no attempt in any way to locate and/or arrest Mr. Kollmar. This is a severe and gross departure from normal police practices and in my opinion have severely prejudiced Mr. Kollmar's ability to answer and defend the charges laid against him.

////

9. Our investigation has revealed that Mr. Kollmar was living openly under his real name, travelling regularly, and making no attempt to hide from the authorities and was easy to identify and locate.

10. We researched the purchase history of property found at 301 Keele Street in Toronto. The property records reflect that the Students of Light purchased that home on February 15, 1977. A true and correct copy of those property records is attached hereto as Exhibit A.

11. We conducted an investigation of this matter and have determined that a great deal of evidence including information favorable to Mr. Kollmar which would otherwise be available from individuals and or documents are no longer available which include but are not limited to and on information and belief state:

- Martin Bevelander would have been an important defense witness for Mr. Kollmar, as Mr. Bevelander was heavily involved in the group at the relevant time. Mr. Bevelander travelled extensively with Mr. Kollmar to do aura balancing sessions, and spent most of his free time at the 301 Keele Street house;

- Mr. Kollmar expects that Mr. Bevelander would have been able to testify that the complainant never accompanied Mr. Kollmar on his many trips to the United States to perform aura balancing, and that the complainant did not visit the 301 Keele Street house "countless times." He also would have been able to testify that he did not hear any yelling or observe any untoward behaviour by Mr. Kollmar toward the complainant;

- However, Marten Bevelander's sister, Clarisse Bevelander, informed us that her brother is in the early stages of Alzheimer's. She further reported that Mr. Bevelander has experienced drug addiction, and subsequently lost most if not all of his possessions, including any photographs and documents that related his prior time with the Students of Light;

- Mr. John Hanas, as the leader of the cult, was in a position to spend a significant amount of time with Mr. Kollmar and the complainant during the period of the alleged offences. There is no evidence in the extradition package that Mr. Hanas ever reported observing anything untoward in Mr. Kollmar's behaviour toward the complainant. Mr. Hanas figured prominently in the complainant's evidence, and she even told the police officer where Mr. Hanas lived at the time;

4

- Our investigation uncovered information that John Hanas passed away in 2012 and his wife, Joanne Hanas passed away in 2014. They both would have been available to provide evidence regarding the allegations from 1975 to 2012 and 2014, respectively. Yet to the best of my knowledge, no attempt was ever made to interview Mr. or Mrs. Hanas.

- That attorney Jim Smyth is suffering from Alzheimer's and is no longer a practicing lawyer. The added passage of time puts into question the availability of any files or documents regarding a potential meeting involving Mr. Smyth. However, during our investigation follow up, we interviewed Smyth's law partner from the relevant period—Sandy McIntyre—and he informed us that during one of Mr. Smyth's "lucid moments," he reported that he had no recollection of any conversations he may have had with Messrs. Pollack and/or Hanas regarding allegations brought forward by BB;

- That an investigation in 1997 would have confirmed the correct spelling of Kollmar, which would have enabled the police to easily find Mr. Kollmar and inform him of the charges;

- That many of the businesses located in close proximity to 301 Keele Street, Toronto which were mentioned by the complainant in her initial 1997 statement, such as the Four Season Health Food store, United Craft mall, Vegetarian restaurant, Soy City and the Fenton flower shop mentioned in BB's statements do not exist today and many of the current occupants of the addresses could not provide any information to assist our investigation. The police were aware in 1997 that these businesses were associated with the cult and their proprietors may have material information; and

- That the complainant's allegations focused on a certain vehicle, and the defense's ability to overcome that account is undermined her by the time period because the Ministry of Transportation for the Province of Ontario (MTO) has advised that without direct information such as a driver's licence number or vehicle identification number (VIN), it cannot provide concrete information on the vehicles Mr. Kollmar registered and owned during the relevant time period.

I state the foregoing is true and correct under penalty of perjury of the laws of the United States of America.

DATED: December 10, 2019

THOMAS KLATT

# EXHIBIT A

EXHIBIT "A"
DEC 10, 19

See PIN 21355-0052 (LT)

CHAIN OF TITLE AS OF 1970 RE:
PCL 2-1 SEC M112; LT 2 PL M112 TORONTO; TORONTO, CITY OF TORONTO

B14700 →  VICTOR TKACZYK / ANNA TKACZYK   TR 1958/07/02

B286777 → KOLLINTZAS, ANTONIOS / KOLLINTZAS, STAUROULA   TR 1971/05/26

A515535 → KENNING, ANNE   TR 1975/10/15

A602338 → STUDENTS OF LIGHT CORPORATION   TR 1977/02/15

A976981 → OZAWA, SUMIKO   TR 1982/03/15

C386275 → 676384 ONTARIO LIMITED   TR 1987/06/12

C398130 → YU, HENRY HON-LUN   TR 1987/07/21

E497282 → 1507418 ONTARIO INC.   TR 2002/01/16

"A"
Plat
DEC 10, 19

Form No. 352
TRANSFER, L.T.A.—WITHOUT DOWER
Newsome and Gilbert, Limited, Toronto

# The Land Titles Act

#15-77-9093-066980 FE ***010.00
#15-77-9094-066980 ** EX ***001.00

I, ANNE KENNING, Married Woman, of the City of Toronto, in the Municipality of Metropolitan Toronto,

the registered owner of the freehold land registered in the Land Registry Office for the Land Titles Division of Toronto

as Parcel 2-1
in the register for Section M-112

in consideration of the sum of TWO--------------------------------
----------------------($2.00)------------------------

paid to me TRANSFER to STUDENTS OF LIGHT CORPORATION, a company incorporated under the laws of the Province of Ontario,

~of~the~ xof ~in~the~xx

the land hereinafter particularly described namely

ALL AND SINGULAR the lands and premises situate on the east side of Keele Street, in the City of Toronto, in the Municipality of Metropolitan Toronto (formerly the County of York), and recorded in the Land Titles Office at Toronto for the Land Titles Division of Toronto and being the whole of Lot Two (2) as shown on Plan M-112 filed in the Office of Land Titles at Toronto,

TRANSFER TAX

D. O. CHATTERTON

1977 FEB 15 PM 3 56
LAND REGISTRY OFFICE 66

"A"
T9Cart
DEC 10/19

TRANSFER L.T.A.—P.2—353

TRANSFER TAX

D. O. CHATTERTON

Insert here 'the whole' or 'a part' according to the fact. Where the whole parcel is transferred a particular description is unnecessary.

being the whole of the said Parcel

2

TRANSFER TAX

D. O. CHATTERTON

"A"
T.Mart
DEC 10/19

TRANSFER L.T.A.—P. 3—354   Rev. March/72

TRANSFER TAX

D. O. CHATTERTON

DATED the 17th day of December, 19 76

WITNESS:

<u>S.A.Mamak</u>    <u>Anne Kenning</u>
                            Anne Kenning

3

AFFIDAVIT OF SUBSCRIBING WITNESS

Revised March/72

I, STAN A. MAMAK
of the City of Toronto
in the Municipality of Metropolitan Toronto

make oath and say:

*See footnote

I am a subscribing witness to the attached instrument and I was present and saw it executed at Toronto by Anne Kenning.

*See footnote

I verily believe that each person whose signature I witnessed is the party of the same name referred to in the instrument.

SWORN before me at the City of Toronto,
in the Municipality of Metropol-
itan Toronto,
this 24th day of December, 19 76

S.A.Mamak

Rita Borg
A COMMISSIONER FOR TAKING AFFIDAVITS, ETC. Rita Borg, a Commissioner, etc.,
Judicial District of York,
for Darney and Mamak, Barristers.
Expires December 1, 1979.

* Where a party is unable to read the instrument or where a party signs by making his mark or in foreign characters add "after the instrument had been read to him and he appeared fully to understand it". Where executed under a power of attorney insert "(name of attorney) as attorney for (name of party)"; and for next clause substitute "I verily believe that the person whose signature I witnessed was authorized to execute the instrument as attorney for (name)".

"A"
Plat
DEC 10/19

Form 1008 – Affidavit, Planning Act, L.T.A.
Newsome and Gilbert, Limited, Toronto

Revised June, 1976

# The Land Titles Act

IN THE MATTER of the PLANNING ACT (as amended)

AND IN THE MATTER of the TITLE TO   PARCEL 2-1, SECTION M-112, TORONTO

Transfer, Charge, Caution, Lease

AND IN THE MATTER OF A   TRANSFER

THEREOF, FROM   ANNE KENNING

TO   STUDENTS OF LIGHT CORPORATION

DATED   DECEMBER 17TH, 1976

I, ANNE KENNING

of the   City   of   Toronto   in the   Municipality of Metropolitan Toronto

MAKE OATH AND SAY AS FOLLOWS:

1. I am   the transferor
named in the above mentioned Instrument, and have knowledge of the matters hereinafter sworn.

2. The said Instrument, and the conveyance or other dealing with land affected thereby, do not contravene the provisions of The Planning Act, as amended, because

Delete if not applicable

(a) *The present registered owner does not retain the fee or the equity of redemption in, or a power or right to grant, assign or exercise a power of appointment with respect to any land abutting the land affected by the*   transfer.

State other reason if any

SWORN before me

at the   City of Toronto

in the   Municipality of Metropolitan Toronto

this   21st

day of   December,   19 76.

_Anne Kenning_
Anne Kenning

_A. Namah_
A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

"A"
T°Mart
10 DEC 19

THE LAND TRANSFER TAX ACT, 1974

AFFIDAVIT OF RESIDENCE

IN THE MATTER OF THE CONVEYANCE OF the whole of Lot 2, Plan M-112, City of Toronto, municipally known as 301 Keele Street, Toronto, Ontario;

TO:   Anne Kenning
    (insert names of all transferees in original deed)

REGISTERED   October 15, 1975

1.   I, ANNE KENNING, of the City of Mississauga, in the Regional Municipality of Peel, MAKE OATH AND SAY THAT AS OF October 15, 1975, I was the transferee named in the above-described conveyance, and as such have personal knowledge of the facts herein deposed to.

2.   None of the transferees in trust for whom the land conveyed in the above-described conveyance was being conveyed was, within the meaning of the Act, a non-resident person.

3.   I have read over and considered the definitions of "non-resident corporation" and "non-resident person" set out respectively in clause f and g of subsection 1/of section 1 of the Act.

Sworn before me at the   )
City of Toronto, in the  )
Municipality of          )      D. O. CHA[...]ON
Metropolitan Toronto,    )
                         )
this 21st day of         )      _Anne Kenning_
December 1976            )      Anne Kenning
~~January, 1977.~~       )
_A Mamak_
A Commissioner, etc.

"A"
Gxlant
DEC 10/19

Form 100  Newsome and Gilbert, Limited, Toronto                                         Revised for Jan. 1/75

# The Land Transfer Tax Act, 1974
## AFFIDAVIT OF VALUE OF THE CONSIDERATION

IN THE MATTER OF THE CONVEYANCE made

by: __ANNE KENNING__

(identify the parties to the conveyance)

to: __STUDENTS OF LIGHT CORPORATION__

on the __17th__ day of __December__, 19 __76__.

I, __ANNE KENNING__
of the __City of Toronto__
in the __Municipality of Metropolitan Toronto__

MAKE OATH AND SAY THAT:

This affidavit may be made by the purchaser or vendor or by any one acting for them under power of attorney or by an agent accredited in writing by the purchaser or vendor or by the solicitor of either of them or by some other person approved by the Minister of Revenue.

1. I am __the transferor__ named in the within (or annexed) conveyance.

2. I have a personal knowledge of the facts stated in this affidavit.

3. (1) The total consideration for this transaction has been allocated as follows:

   (a) Land, buildings, fixtures and goodwill ............ $ NIL
   (b) Chattels — items of tangible personal property - (see note) ........ $ NIL

   TOTAL CONSIDERATION ............................................. $ NIL

   (2) The true consideration for the transfer or conveyance for Land Transfer Tax purposes is as follows:

   (a) Monies paid in cash ............................................. $ NIL
   (b) Property transferred in exchange (Detail below) .............. $ NIL
   (c) Securities transferred to the value of (Detail below) ........ $ NIL
   (d) Balances of existing encumbrances with interest owing at date of transfer ........................ $ NIL
   (e) Monies secured by mortgage under this transaction ........... $ NIL
   (f) Liens, legacies, annuities and maintenance charges to which transfer is subject ..................... $ NIL
   (g) Other (Detail below) ........................................ $ NIL

   TOTAL CONSIDERATION (should agree with 3(1)(a) above) $ NIL

   All blanks must be filled in.

4. If consideration is nominal, is the transfer for natural love and affection? __n/a__

5. If so, what is the relationship between Grantor and Grantee? __n/a__

6. Other remarks and explanations, if necessary __Trustee to beneficial owner:__
   __The grantee has been the sole beneficial owner during the__
   __entire period the lands have been or will be registered in the__
   __name of the grantor.__

SWORN before me at the City
of Toronto
in the Municipality
of Metropolitan Toronto
this __31st__ day of December, 1976

_Anne Kenning_
Anne Kenning

_A. Mama_
A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

6

NOTE TO PARAGRAPH 3(1)(b): Chattels: Retail sales tax is payable on the valuation of items shown in 3(1)(b) unless otherwise exempted under the provisions of The Retail Sales Tax Act R.S.O. 1970 C415 as amended. For the purpose of this affidavit insert above only the value of chattels, the total value of which in the opinion of the deponent exceeds $100.00. This does not exonerate a purchaser from the payment of Retail Sales Tax on any tangible personal property as part of this transaction. When chattels are purchased as part of this transaction, with value of less than $100.00, the applicable tax should be paid by the purchaser to the Treasurer of Ontario and remitted to the Minister of Revenue.

"A"
TMCart
DEC 10/19

ANNE KENNING,

of the City of Toronto,

in the Municipality of Metropolitan Toronto,

make oath and say: When I executed the attached instrument,

*If attorney see footnote

I was at least eighteen years old.

Strike out inapplicable clauses.

I was married /~~single~~

~~I was the spouse of~~

~~We were the spouses of each other~~

Resident of Canada, etc.

I was not a non-resident of Canada within the meaning of Section 116 of The Income Tax Act.

~~SEVERALLY~~ SWORN before me at the City of Toronto, in the Municipality of Metropolitan Toronto,

this 21st day of December, 19 76

*A. Mamak*
A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

*Anne Kenning*
Anne Kenning

8

* Where affidavit made by attorney substitute: "When I executed the attached instrument as attorney for (name), he/she was (marital status, and if married, name of spouse), and when he/she executed the power of attorney, he/she had attained the age of majority".

---

No. 3966 A6C2338
Land Titles Act

Dated DECEMBER 17TH 19 76

ANNE KENNING

—TO—

STUDENTS OF LIGHT CORPORATION

**Transfer**
of
**Freehold Land**
WITHOUT DOWER

Newsome and Gilbert, Limited, Toronto

ASSESSMENT ROLL NO.
ADDRESS OF PROPERTY 301 Keele Street
Toronto, Ontario

DAMERY AND MAMAK
Barristers and Solicitors
101 Roncesvalles Avenue,
Toronto, Ontario

No. A-602338
Received at the Office of Land Titles at TORONTO at 3:57 o'clock P.M. of the 15th day of Feb. A.D. 19 77 and entered in Vol. 1 Parcel 2-1 Section M-112

| | |
|---|---|
| REGISTRATION FEE | |
| LAND TRANSFER TAX | |
| RETAIL SALES TAX | |

THIS SPACE TO BE RESERVED FOR CERTIFICATE OF REGISTRATION