1  COLEMAN & BALOGH LLP
   ETHAN A. BALOGH, No. 172224
2  235 Montgomery Street, Suite 1070
3  San Francisco, CA 94104
   Telephone: 415.391.0440
4  Facsimile: 415.373.3901
   eab@colemanbalogh.com
5
6  Attorneys for Arrestee
   DONALD KOLLMAR
7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                          OAKLAND DIVISION
10

11 | IN THE MATTER OF THE EXTRADITION | Case No. 4:19-70677 MAG
12 | OF DON KOLLMAR                   | DECLARATION OF MARIE LOUISE
13 |                                  | BARBARA EMMA KOLLMAR-STIENEN

## DECLARATION OF MARIE LOUISE BARBARA EMMA KOLLMAR-STIENEN

I, Marie Louise Barbara Emma Kollmar-Stienen, declare under penalty of perjury as follows:

1. I am a citizen of the Netherlands, and make this declaration on behalf of Donald Kollmar. I am over the age of 18 and make this declaration on personal knowledge. If called as a witness before this Court, I could testify competently to the facts presented in this declaration.

2. I am 53 years old, and have been married to Donald J. Kollmar (age 68) for almost 25 years. I live in in Zaandam, Netherlands. In August 1984 I started my law degree studies at the Vrije Universiteit Amsterdam. After getting my law degree, I have worked for the 'Ministerie van Justitie en Veiligheid' (Ministry for Justice and Security) since July 1991, full-time and in different positions. In July 1991 I started at the 'Rechtbank Amsterdam' (Court of Justice Amsterdam) as a clerk for the Criminal Judge on a temporary contract. In December 1991 I was asked to remain in a permanent position. In the summer of 1995, on my own request, I changed within the Court of Justice Amsterdam to the Department of Juvenile Judges. This department reviews all civil (divorce and custody) and child protection cases involving children from 0 to 18 years of age. This position also included child criminal law, which is applicable between the age of 12 to 18. In June 2007, I applied for a different position within the Ministry for Justice and Security. I changed to the 'Raad voor de Kinderbescherming' Amsterdam (Council of Child Protection). In this position I am a legal adviser to the social workers who write the reports for the Juvenile Judge to advice in child criminal law and civil court cases involving a child or requests on child protection orders.

3. I met Don Kollmar on July 3, 1994, we dated for a couple of months, and were married on February 14, 1995. I knew from the start it was good. He is a good person. This is the man

I am going to spend the rest of my life with. And 25 years later, this is still very true for me. We have no children. Since 2007, we have a dog, Maxwell, an English Springer Spaniel. We've lived together in Amsterdam. On March 25, 2019 we moved to an apartment in Zaandam, a town North of Amsterdam. Don left for the States on April 25, 2019 and we have since been separated based upon this case.

4. I worry about Don's health. Up until his detention and house arrest, my husband was an active person. He would walk our dog several times a day, walk to do grocery shopping and visit the gym a couple of times a week. His confinement, which is now going on for 8 months, in combination with his age, is not good for his health. I know my husband extraordinarily well. He has never yelled, threatened, or used violence against me in any way. I have never seen him berate or otherwise physically or verbally abuse any person on any occasion. Don is one of the kindest, soft-spoken, warm human beings I have ever met. He has never done anything disrespectful towards me or any person I have seen him interact with in the 25 years that I have known him. He is my soulmate, and I miss him very much. He has guided me to be a better person and have a positive approach to life. Now is a very difficult time, but his teachings, mediations, and loving support make it so that I am not breaking down completely. During the 25 years that I have lived with him, I have seen him have the same positive effect on other people, his friends, and clients.

5. Don never acts in a controlling way. For instance, I have never heard him even suggest that fasting is an appropriate practice, much less a required practice. He has never attempted to control me in any way, nor has he ever exhibited narcissistic tendencies or grandiose ideas about himself. He has never claimed to possess any special powers, nor that he has been chosen by God for any purpose. In sharp contrast, he is clear, compassionate and respectful in his

communications. He listens to what a person is saying and will to work together. Where possible, and needed, he uses humor to keep people engaged. In the week-long workshops he gives, he would go out of his way to attend to everybody's needs. He would ask all the participants if they had special or preferable food requirements and he would see to it that those were met. Sometimes he would go shopping every day if anything else was needed. His teachings are based on respecting the feelings of the person. The first and most important question is: How and what are you feeling? How does that make you feel? His teachings focus on to learn to be in contact and feel your true self. Through his methods he helps you to be open to feeling what is happening in your body and how that can affect you, how you are being or reacting to things in your life. His teachings are not about telling you what you should feel or what to do. In the week-long workshops, everyone attending would be experiencing his or her own path. Over the years I have attended many workshops. I have never seen Don being controlling toward a person attending or claiming he had special powers. At home we would meditate on a regular basis. Although it is not always easy to acknowledge what is going on in yourself, I can truly say that his teachings and his support have helped me. It has helped me to better understand myself and for instance over the years to be able to process information from cases I encounter in my job: child abuse, (domestic) violence and murder.

6. As a legal adviser, I have reviewed the complaining witness' allegations in this case with keen interest. The conduct she describes cannot be credible. Neither I nor any person I know have ever seen my husband conduct himself in the controlling, abusive, and narcissistic way the complainant describes her alleged abuser. I can say with complete confidence that it is not possible that my husband acted as she described. While there must be some reason or reasons for this woman to present such an inflammatory account to the authorities, it is not possible that

3

her story is accurate based on my deep understanding of my husband, Don Kollmar, and his history and his behaviors.

7. I love and miss my husband very much. I am standing by him with all my heart and support him in this case with these unjust allegations. And hope that he can return back home to me and Maxwell very soon.

I state the foregoing is true and correct under penalty of perjury of the laws of the United States of America.

DATED: December 9, 2019

MARIE LOUISE BARBARA EMMA KOLLMAR-STIENEN

4