COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Arrestee
DONALD KOLLMAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN THE MATTER OF THE EXTRADITION OF DON KOLLMAR

Case No. 4:19-70677 MAG

DECLARATION OF PHILIP LEO NOTERMANN

## DECLARATION OF PHILIP LEO NOTERMANN

I, Philip Leo Notermann, declare under penalty of perjury as follows:

1. I am a citizen of the United States of America, and make this declaration on behalf of Donald Kollmar. I am over the age of 18 and make this declaration on personal knowledge. If called as a witness before this Court, I could testify competently to the facts presented in this declaration.

2. I am 69 years old and live in unincorporated Snohomish County outside Bothell, Washington. I graduated from New College, Sarasota, Florida, in 1973 with a Bachelor's degree in Philosophy. In 1977 I graduated from Florida State University, Tallahassee, Florida, with a Master's Degree in Comparative Religion. In 1986 I graduated from the University of Washington, Seattle, Washington, with a Master's Degree in Social Work. I served as director of an outpatient center for alcohol and drug rehabilitation at Cabrini Hospital, and, subsequently, Swedish Hospital, from 1988 until 1998, when I retired from paid employment. I served as President of the board of the Oneness Project, a non-profit associated with the Dances of Universal Peace from 2002 to 2009. I currently serve as President of Songaia Co-Housing Association. I have been married to Helen Gabel since 1979.

3. I met Donald Kollmar in 2004 at a week-long meditation seminar sponsored by the Oneness Project. Since that time I attended at least three other week-long workshops with Mr. Kollmar. I have also attended many monthly conference call meditations since the first seminar, and received individual coaching sessions from Mr. Kollmar. Based on all my interactions and observations of Donald Kollmar over the past 15 years, I believe that I have a fairly strong knowledge and understanding of his behaviors and characteristics, particularly in the role of meditation instructor.

4. I have been informed by Mr. Kollmar's attorney that, in this extradition case, the complaining witness claims that when she was a teenager and Mr. Kollmar was in his mid-20s, that Mr. Kollmar physically abused her, including by assaulting her, mentally abused her by degrading her and calling her horrible names and asserting power over her. I am further informed that the complaining witness asserts that Mr. Kollmar told her he should be seen as a "King," and that he had special powers, including psychic abilities, and had been chosen by God to lead a special life. I am further informed that the complaining witness alleges that Mr. Kollmar demeaned and verbally chastised this teenager in front of others. I am further informed that the complaining witness alleges that Mr. Kollmar required her to fast regularly, and allegedly berated her forcefully when he was informed that she took an almond from a bowl of almonds. Finally, I am informed that the complaining witness reported that Mr. Kollmar was extraordinarily controlling in his behaviors.

5. These descriptions do not even remotely match my experiences and observations of Mr. Kollmar over the years that I've known him. In fact, they are completely at odds with my experiences with Mr. Kollmar. I've never known him to be physically or mentally abusive. I experienced Mr. Kollmar as a kind, caring, empathetic man, and it is difficult to imagine that he could even be capable of acting in the controlling and abusive behaviors ascribed to him. Furthermore, though he served as a meditation teacher and guide of sorts, he never carried any sense of being in any way arrogant or above any other participant in the retreat settings that I was in. It is precisely his humility, his gentleness, his empathetic sensitivity and his highly developed exquisitely sensitive awareness that attracted me in the first place. To imagine Mr. Kollmar, even as a young man demeaning someone in public or abusing an individual as described in the allegations is completely contrary to any experience I've ever had with Mr. Kollmar. The kind of

abuse ascribed to him as a young man would suggest someone with significant emotional and mental health deficits that would continue to mark his character over the years and certainly show up in the context of the kind retreats that I was in. That simply was never the case. There were never any even remote allegations of misconduct, or abuse. In various settings with a variety of participants, I saw only respect, humility, and a commitment to integrity and compassion. In addition, given conversations I've had with others concerning their experiences with and observations of Mr. Kollmar and to the best of my knowledge, my evaluation of Mr. Kollmar's kindness and gentleness is widely and consistently shared by others.

6. Finally, as a result of my interactions with and observations of Mr. Kollmar, I can say, without reservation, the Mr. Kollmar is an honest person who consistently tells the truth. Based on my years of experience with Mr. Kollmar in intensive retreat settings, as well as other settings, it is my opinion that Mr. Kollmar is peaceful, law abiding, and nonviolent. In fact, Mr. Kollmar has developed such an unusual degree of empathy, an extraordinarily highly developed sensitivity to what others are experiencing, that it is inconceivable to me that he could ever be as abusive, controlling, narcissistic, grandiose and self-centered as the reported allegations would suggest

I state the foregoing is true and correct under penalty of perjury of the laws of the United States of America.

DATED: November 20, 2019

PHILIP LEO NOTERMANN