UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DON KOLLMAR,<br><br>Defendant. | Case No. 19-mj-70677-MAG-1 (KAW)<br><br>**ORDER REGARDING THE DUAL CRIMINALITY OF THE INDECENT ASSAULT CHARGE**<br><br>Re: Dkt. No. 91 |

On February 10, 2020, the Court granted the request by the United States for a certificate of extraditability of Defendant Donald Kollmar. (Certificate of Extraditability Order, Dkt. No. 86.) Defendant then filed a petition for a writ of habeas corpus. (Case No. 20-cv-1388-JST, Dkt. No. 1.) On April 27, 2022, Judge Tigar denied the petition in part and remanded the case to the undersigned to determine whether the Indecent Assault charge satisfies the dual criminality requirement. (Case No. 20-cv-1388-JST, Dkt. No. 32 ("Habeas Order") at 21.)

Having considered the parties' supplemental filings and the arguments made at the June 28, 2022 hearing, the Court determines that the conduct underlying the Indecent Assault charge would be criminal in the United States with respect to certain acts, which thus satisfies the dual criminality requirement.

## I. BACKGROUND

Defendant is charged with Rape and Indecent Assault, in violation of sections 143, 144, and 149 of the Criminal Code of Canada. (Certificate of Extraditability Order at 1.) The charges stem from a 1997 report by B.B. that Defendant sexually assaulted her on a number of occasions when B.B. was between the ages of twelve and sixteen. (*See id.* at 1.) The specifics of the allegations are detailed in the February 10, 2020 order. (*See id.* at 1-4.)

The Court determined that the Rape and Indecent Assault charges were extraditable offenses, and that there was probable cause to believe that Defendant had committed the offenses for which extradition was sought. (Certificate of Extraditability Order at 18.) Defendant filed a petition for a writ of habeas corpus, which was denied in part and remanded for further proceedings as to whether the Indecent Assault charge satisfied the dual criminality requirement, specifically "whether the conduct underlying the indecent assault charge would be criminal in the United States." (*Id.* at 20.)

On May 6, 2022, the Court ordered the parties to file supplemental briefing as to the dual criminality of the Indecent Assault charge. (Dkt. No. 91.) On May 26, 2022, the United States filed its supplemental brief. (Gov.'s Suppl. Br., Dkt. No. 92.) On June 7, 2022, Defendant filed his supplemental brief. (Def.'s Suppl. Br., Dkt. No. 94.)[1] On June 28, 2022, the Court held a hearing as to this matter.

## II.   LEGAL STANDARD

"Under the principles of dual criminality, no offense is extraditable unless it describes conduct which is criminal in both jurisdictions." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988). "To satisfy dual criminality, the name by which the crime is described in the two countries need not be the same, nor does the scope of liability for the crime need to be the same. Rather, dual criminality exists if the 'essential character' of the acts criminalized by the law of each country are the same and if the laws are 'substantially analogous.'" *Id.* (internal quotation omitted). In turn, "[w]hen the laws of both the requesting and the requested party appear to be directed to the same basic evil, the statutes are substantially analogous." *Choe v. Torres*, 525 F.3d 733, 738 (9th Cir. 2008).

## III.   DISCUSSION

Per Article 2 of the extradition treaty, "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other

---

[1] On June 7, 2022, Defendant filed a motion to suspend the briefing schedule pending his appeal of the Habeas Order. (Dkt. No. 93.) The Court denied the motion on the ground that Defendant had appealed a non-final order, such that the Court was not deprived of jurisdiction. (*See* Dkt. No. 96.)

form of detention for a term exceeding one year or any greater punishment." Here, Defendant is charged with Indecent Assault in violation of § 149 of the Criminal Code of Canada, which requires that the prosecution "establish (1) touching; (2) the absence of consent; and (3) the assault was 'indecent.'" (Rivers Aff. ¶ 38, Dkt. No. 41 at 4-18.) "Indecent" has been described as "a non-consensual touching that has an indecent element to it[,] in this instance, sexual element to it." (Rivers Aff. ¶ 40 (internal quotation omitted).) Indecent Assault is punishable by five years of imprisonment. (Rivers Aff. ¶ 44.) The Indecent Assault claim is based on unwanted sexual touching, including the allegation that Defendant fondled B.B.'s breasts and genitals, as well as inserting his fingers into her vagina and masturbating her. (*See* Dkt. No. 74 at 11-12.)

The United States argues that dual criminality is satisfied because Defendant can be charged with California Penal Code ("CPC") § 289(a)(1)(A), 18 U.S.C. § 2244(a)(3), and CPC § 288(a) and (c). The Court finds that CPC § 289(a)(1)(A) satisfies the dual criminality requirement, but that the other statutes do not.

### A. Statutory Rape Provisions

18 U.S.C. § 2244(a)(3) and CPC § 288 concern statutory rape. Specifically, 18 U.S.C. § 2244(a)(3) criminalizes sexual contact with another person "in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department of agency" if such sexual contact would violate § 2243(a). 18 U.S.C. § 2243(a), in turn, makes it a crime to "knowingly engage[] in a sexual act with another person who-- (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging." Similarly, CPC § 288(a) criminalizes sexual acts with a child under the age of 14 years, while CPC § 288(c) criminalizes sexual acts with a child of fourteen or fifteen years of age by individuals who are at least ten years older than the child.

The Court finds that these statutes are not substantially analogous to § 149 of the Criminal Code of Canada. While each statute concerns nonconsensual sexual touch, the means by which lack of consent is proven is manifestly different. As explained by Erin Nicole Rivers, Counsel in

the Crown Law Office – Criminal, Indecent Assault is "a species of assault, which requires the intentional application of force to another person without consent." (Rivers Aff. ¶ 38.) Lack of consent considers whether the victim, "in her mind, did not want the sexual touching to take place." (Rivers Aff. ¶¶ 27, 41.) "Factors relevant to whether consent was genuinely given can include the presence of threats or fear of bodily harm, and/or a relationship of authority between the perpetrator and the complainant." (Rivers Aff. ¶ 41.) Statutory rape, in contrast, establishes lack of consent based solely on age, as "the age requirements are based on the premise that minors are legally incapable of consenting to sexual acts with adults." (Gov.'s Suppl. Br. at 7; *see also United States v. Rodriguez-Guzman*, 506 F.3d 738, 746 (9th Cir. 2007) ("The operative term, 'age of consent,' is in turn defined as the age . . . at which a person is legally capable of agreeing to . . . sexual intercourse.") (internal quotation omitted).)

The United States argues that the statutes are analogous because they are aimed at the same conduct -- "sexual touching without lawful consent" -- and that it is immaterial that one statute may be broader than the other. (Gov.'s Suppl. Br. at 7-8.) This, however, is not simply a matter of § 149 being broader than 18 U.S.C. § 2244(a)(3) and CPC § 288 (or vice versa); rather, "the absence of a consent defense to statutory rape is analytically distinct from situations in which a victim's consent is deemed not legally valid, such as where consent to the conduct is involuntary, incompetent or coerced." *United States v. Caceres-Olla*, 738 F.3d 1051, 1055 (9th Cir. 2013) (internal quotation omitted). "A state statute that for policy reasons treats a minor's consent as irrelevant does not necessarily render that minor's conduct similar to conduct that is 'involuntary, incompetent, or coerced,' all of which depend on the specific circumstances of the crime and the victim. Instead, statutory rape offenses outlaw conduct based on the minor's age alone; however voluntary and competent the minor, her consent will not be a defense to the crime." *Id.* Thus, the "basic evil" is distinct; § 149 criminalizes unwanted sexual touching that is involuntary or coerced based on the circumstances, whereas statutory rape criminalizes sexual touching with minors because the minor is legally incapable of consenting. Accordingly, the Court concludes that the

statutory rape provisions are not analogous to § 149.[2]

### B. CPC § 289(a)(1)(A)

#### i. Analogous

The Court finds that CPC § 289(a)(1)(A) is analogous to § 149.  CPC § 289(a)(1)(A) provides: "Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."  Unlike the statutory rape provisions above, CPC § 289(a)(1)(A) criminalizes "the same basic evil" as § 149, namely non-consensual sexual touch, where the lack of consent is found to be involuntary or coerced based on the circumstances of the crime.

At the hearing, Defendant argued that § 289(a)(1)(A) is not analogous because it requires force, but CPC § 289(a)(1) is not so narrow. (*See also* Def.'s Suppl. Br. at 2; 20-cv-1388-JST, Dkt. No. 14 at 5.)  As the Court pointed out at the hearing, CPC § 289(a)(1)(A) is not limited to force, but by its own terms includes **duress**, which is defined as "a direct or implied threat of force, violence, danger, hardship, or retribution that is enough to cause a reasonable person of ordinary sensitivity to do [or submit to] something that he or she would not otherwise do [or submit to]." CALCRIM 1045.  California courts have recognized that duress is distinct from force, as it "involves psychological coercion.  Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relevant ages and sizes." *People v. Senior*, 3 Cal. App. 4th 765, 775 (1992).

Thus, CPC § 289(a)(1)(A) criminalizes sexual touch where there is no consent, whether that lack of consent is the result of physical force or psychological duress.  Further, CPC § 289(a)(1)(A) makes such an offense punishable by imprisonment for at least three years, thus satisfying Article 2 of the extradition treaty.

---

[2] The Court also notes that there is an issue as to whether Defendant could be prosecuted under 18 U.S.C. § 2244(a)(3), as the incidents at issue did not occur in the special maritime and territorial jurisdiction of the United States or an institutional setting.  Given the court's finding that statutory rape is not analogous to the indecent assault charge, the court need not decide this issue.

### ii. Probable Cause

The Court also finds that Defendant's conduct would satisfy a charge under CPC § 289(a)(1)(A), to the extent there was sexual penetration. The Court previously found that there was probable cause based on B.B.'s statements, and that Defendant's attempts to discredit B.B. were unpersuasive. (*See* Certificate of Extraditability Order at 9-15.)

Based on B.B.'s statements, the Court finds that there is probable cause as to the § 149 Indecent Assault charge. "Sexual penetration" is defined as "the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object . . . ." CPC § 289(k)(1). "Foreign object," in turn, includes "any part of the body, except a sexual organ." CPC § 289(k)(2). Here, B.B. described incidents in Toronto between August 1975 and June 1978, where Defendant would go to B.B.'s room and bring her to his van. (Speakman Aff. ¶¶ 27, 30, Dkt. No. 41 at 20-63.) Defendant would have B.B. lie down beside him, fondle her breasts and genitals, pull her nightie off and lie on top of her, kiss her, and rub his groin against her. (Speakman Aff. ¶ 27.) On one of B.B.'s visits to Toronto, Defendant required B.B. to massage his genitals, after which he lay on top of her, fondled her breasts and genitals, and put his fingers in her vagina. (Speakman Aff. ¶ 29.) Additionally, after penetrating B.B.'s vagina with his penis during Mother's Day weekend in 1977, Defendant would masturbate B.B. and become enraged if she did not have an orgasm. (Speakman Aff. ¶ 33.) Like the other incidents, this occurred in Defendant's van. (Speakman Aff. ¶ 31.) The Court finds that the fondling of B.B.'s genitals, the placement of fingers in B.B.'s vagina, and the masturbation of B.B. constitute "sexual penetration" by a "foreign object." The fondling of B.B.'s breasts, however, do not satisfy the "sexual penetration" requirement and could not be charged under CPC § 289(a)(1)(A).

Second, there is probable cause to believe there was duress. "When deciding whether the act was accomplished by duress," the fact finder is to "consider all the circumstances, including the age of the other person and (his/her) relationship to the defendant." 1 CALCRIM 1045 (2022). Here, B.B. was between twelve and sixteen and Defendant was in his mid-twenties when she was in a relationship with Defendant. (Speakman Aff. ¶¶ 4, 6, 8.) During that time, she was subject to

1  physical violence, threats of violence, and controlling behavior by a person of authority over her.
2  For example, Defendant controlled when B.B. could sleep, go to the bathroom, brush her teeth,
3  shower, and look in a mirror.  (Speakman Aff. ¶¶ 13-14.)  Defendant would slap B.B. in the face
4  when she began to fall asleep, verbally assault her, grab and twist her wrist, and raise his hand as if
5  to hit her.  (Speakman Aff. ¶¶ 13, 15, 16.)  B.B. described being "paralyzed by fear" in
6  Defendant's presence and stated that her time with him "was lived in severe anxiety and terror,
7  never knowing what would trigger his rage."  (Speakman Aff. ¶ 15, 17.)  Defendant would also
8  verbally humiliate and demoralize B.B. before sexually abusing her and become angry and
9  enraged with her when she was stiff or failed to orgasm.  (Speakman Aff. ¶¶ 28, 33, 34.)  In short,
10  B.B. lacked genuine consent due to fear and a desire not to be hurt by an authority figure with
11  significant control over her life, thus demonstrating duress.

12        This finding is consistent with the Court's previous conclusion that the Mother's Day rape
13  would satisfy a charge under CPC § 261.  (Certificate of Extraditability Order at 9.)  CPC § 261
14  criminalizes sexual intercourse "[w]here it is accomplished against a person's will by means of
15  force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or
16  another."  Similar to how duress has been defined as to CPC § 289(a)(1)(A), CPC § 261(b) defines
17  "duress" as "[a] direct or implied threat of force, violence, danger, or retribution sufficient to
18  coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would
19  not have been performed or acquiesce in an act to which one otherwise would not have
20  submitted."  Facts to consider likewise include a victim's age and her relationship to the
21  defendant.  Applying this definition, the Court concluded that there was duress because B.B., who
22  was fourteen at the time, "states that she was subject to a pattern of physical violence, threats of
23  physical violence, and controlling behavior by a person of authority over her."  (Certificate of
24  Extraditability Order at 9.)

25        At the hearing, Defendant repeatedly argued that the Court's findings were the product of
26  "emotions" rather than the law, yet Defendant provided no legal analysis, authority, or support for
27  these alleged errors.  For example, Defendant asserted that the United States was required to
28  identify the specific date of each specific action but provided no legal authority in support.  It is

7

unclear such a stringent requirement would be practicable, particularly with a minor victim who alleges that she was molested and sexually assaulted repeatedly throughout the years. Defendant also suggested that there were "numerous cases" in California and federal court that indicate uncorroborated evidence of sexual assault is not sufficient for probable cause but did not identify a single such case. *But see United States v. Federbush*, 625 F.2d 246, 252 (9th Cir. 1980) (explaining that "[t]he statements of a victim-witness to a crime need not be independently corroborated" in finding probable cause); *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976) ("A detailed eyewitness report of a crime is self-corroborating; it supplies its own indicia of reliability."). Finally, rather than focus on the narrow issue of whether there is dual criminality as to the Indecent Assault charge, Defendant's counsel attempted to re-litigate issues such as the Court's previous ruling rejecting the attacks on B.B.'s credibility and on the statute of limitations. Defendant's unsupported arguments are unpersuasive.

### IV.  CONCLUSION

For the reasons stated above, the Court finds that the conduct underlying the Indecent Assault charge, would be criminal in the United States, specifically CPC § 289(a)(1)(A).

IT IS SO ORDERED.

Dated: July 18, 2022

KANDIS A. WESTMORE
United States Magistrate Judge